UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Americore Holdings, LLC, *et al.*,[1] | ) Case No. 19-61608-grs |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |
|  | ) Honorable Gregory R. Schaaf |
|  | ) |

**MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR
ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I)
CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND
SATSIFY PREPETITION OBLIGATIONS RELATED THERE TO; (II) RENEW
AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES; (III)
HONOR THE TERMS OF THE PREMIUM FINANCING AGREEMENTS AND PAY
PREMIUMS THEREUNDER; AND (IV) ENTER INTO NEW PREMIUM FINANCING
AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby moves (the "Motion") under section 105, 363, 1107(a), 1108, and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of interims and final orders authorizing the Debtors to (i) continue insurance covered entered into prepetition obligations related thereto; (ii) renew, amend, supplement, extend, or purchase Insurance Policies (as defined below); (iii) honor the terms of the Premium Financing Agreements (as defined below) and pay premiums thereunder; and (iv) enter into new Premium

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

1

20763241.2

Financing Agreements in the ordinary course of business. In further support of the Motion, the Debtors respectfully represents as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## Background

2. On December 30, 2019 (the "Petition Date"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Kentucky (the "Court"). The Debtors continue to manage and operate its business as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. To date, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors has not been appointed in this chapter 11 bankruptcy case (the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Case. On December 31, the Court ordered the U.S. Trustee to appoint an ombudsman for the Debtors by January 21, 2020 [Doc. No. 7]. No ombudsman has yet to be selected.

3. The Debtors' business operations focus has been on the operation and management of rural community hospitals.

4. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the Chapter 11 Cases are contained in the *Declaration of Grant White in Support of First Day Motions of Debtors and Debtors-in Possession* (the "First Day Declaration"), which is anticipated to be filed prior to hearing on this Motion.

2

20763241.2

**Relief Requested**

5.  By this Motion, the Debtors request entry of interim and final orders authorizing the Debtors to (i) continue insurance covered entered into prepetition obligations related thereto; (ii) renew, amend, supplement, extend, or purchase Insurance Policies (as defined below); (iii) honor the terms of the Premium Financing Agreements (as defined below) and pay premiums thereunder; and (iv) enter into new Premium Financing Agreements in the ordinary course of business.

**The Insurance Policies and Related Payment Obligations**

6.  In the ordinary course of business, the Debtors maintain approximately __ insurance policies that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). These policies provide coverage for, among other things, the Debtors' property, general liability, medical malpractice liability, excess umbrella liability, directors' and officers liability, employer's liability, operator's liability, and pollution and environmental legal liability (collectively, the "Insurance Policies"). A schedule to the Insurance Policies is attached hereto as **Exhibit A**.[2]

7.  The aggregate annual premium for the Insurance Policies is approximately $2,042,387 not including applicable taxes and surcharges, deductibles, and broker and consulting fees and commissions.

8.  The Debtors finance premiums under certain of their Insurance Policies (collectively, the "Financed Policies") because it is not economically advantageous for the Debtors to pay the premiums on the Financed Policies, in full, on a lump-sum, quarterly, or

---

[2] In addition to the Insurance Policies listed on Exhibit A attached hereto, the Debtors maintain numerous insurance policies with respect to, among other things, employee health, dental, disability, and life insurance benefits. These programs are described, and relief is requested with respect to such programs, in the Debtors' *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Prepetition Wages, Benefits and Other Compensation, and (B) Continue Employee Compensation and Employee Benefits Programs, and (II) Granting Related Relief* filed contemporaneously herewith.

3

20763241.2

monthly basis. Accordingly, in the ordinary course of business, the Debtors finance the premiums on the Financed Policies pursuant to premium financing agreements (together, the "Premium Financing Agreements") with Bank Direct Capital ("BDC"). In consideration for BDC's obligation to pay the Debtors' insurance premiums on account of the Financed Policies, the Premium Financing Agreements require the Debtors to pay BDC an initial down payment, followed by 11 monthly payments. A schedule setting forth the Financed Policies, the primary terms of the respective Premium Financing Agreements, and the amount outstanding under each Financed Policy is attached hereto as **Exhibit B**.

9.  The Debtors' obligations under the Premium Financing Agreements are secured by all sums payable to the applicable Debtor under the Financed Policies, including, among other things, any gross unearned premiums and any payment on account of loss that results in a reduction of unearned premiums in accordance with the terms of the Financed Policies.

10. If the Debtors were unable to continue honoring their obligations under the Premium Financing Agreements, BDC may seek relief from the automatic stay to terminate the Financed Policies to recoup their losses. The Debtors could then be required to obtain replacement insurance on an expedited basis and likely at significant cost to their estates. The Debtors likely would face great hardship if they were required to obtain replacement insurance and pay a lump-sum premium for the Financed Policies in advance. Even if the Financed Polices were not terminated, any interruption in the Debtors' payments could have a severe, adverse effect on the Debtors' ability to finance premiums for future polices.

11. Continuation of the Debtors' Insurance Policies, and entry into new insurance policies, is essential to the preservation of the value of the Debtors' business and operations. Moreover, in many instances, insurance coverage is required by the regulations, laws, and

contracts that govern the Debtors' commercial activities, including the U.S. Trustee's requirement that a debtor maintain adequate coverage given the circumstances of its chapter 11 case. Accordingly, to ensure uninterrupted coverage, the Debtors request authority to maintain their existing Insurance Policies, pay any prepetition obligations related thereto, honor their obligations under the Premium Financing Agreements, and enter into new Insurance Policies in the ordinary course of business. In addition, to the extent that the Premium Financing Agreements expire during the course of the Chapter 11 Cases, the Debtors seek authority to renew their Premium Financing Agreements without further Court approval.

12. The Debtors respectfully submit that renewal of the Premium Financing Agreements falls squarely within their ordinary course of business and, but for the constraints of section 364 of the Bankruptcy Code, the Debtors would not need the Court's prior approval to renew the Premium Financing Agreements. To reduce the administrative burden, as well as to confirm their ability to satisfy one of their obligations of operating as debtors in possession, the Debtors seek the Court's authority now to renew the Premium Financing Agreements when and as necessary in the Debtors' business judgment.

13. Pursuant to the Insurance Policies, the Debtors may be required to pay various deductibles or retention amounts (the "<u>Insurance Deductibles</u>"), depending upon the type of claim and insurance policy involved.  Under certain policies, the Insurance Carriers may pay claimants and then invoice the Debtors for any Insurance Deductible.  In such situations, the Insurance Carriers may have prepetition claims against the Debtors and attached hereto as **Exhibit C** are a list of known claims associated with these Insurance Carriers.  While the Debtors are not aware of any additional Insurance Deductibles that are due and owing as of the

5

Petition Date, the Debtors seek authority to honor any amounts owed to the Insurance Carriers to ensure uninterrupted coverage under their Insurance Policies.

### The Insurance Brokers

14. The Debtors utilize various insurance brokers, including Beyond Risk Consultants, LLC, Hub International; and Arthur J. Gallagher Risk Management Services (collectively, the "Insurance Brokers") to obtain their Insurance Policies. The Insurance Brokers primarily assist the Debtors with the procurement and negotiation of the Insurance Policies, enabling the Debtors to obtain the Insurance Policies on advantageous terms and at competitive rates. The Debtors pay fees (the "Brokerage Fees") to the Insurance Brokers in an annual amount of approximately $71,000. The Brokerage Fees are paid to the Insurance Brokers either on an installment basis or commission basis as policies are renewed. The Debtors have approximately $22,850 currently due and owing in Broker Fees, as reflected in Exhibit C, as of the Petition Date and the Debtors seek authority to honor any amounts owed to the Insurance Brokers to ensure uninterrupted coverage under their Insurance Policies.

### Argument

**A. The Bankruptcy Code and U.S. Trustee Require the Continuation of the Insurance Policies.**

15. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by regulations, laws, and contracts that govern the Debtors' commercial activities in the healthcare industry, as we as the operating guidelines issued by the Office of the United States Trustee (the "U.S. Trustee Operating Guidelines"). Accordingly, the Debtors believe it is essential to their estates and

consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines that they continue to satisfy all obligations related to the Insurance Policies and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

**B. Satisfying Obligations Under the Insurance Policies in the Ordinary Course of Business is Warranted.**

16. Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. *See* 11 U.S.C. § 366(c)(1). In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

17. Section 105(a) of the Bankruptcy Code further provides that a court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of

7

20763241.2

necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts are authorized to approve orders allowing payment of prepetition claims, which is necessary for the debtors to have a successful reorganization). "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (internal citations omitted).

18.    In a long line of well-established cases, federal courts consistently have permitted postposition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g., Miltenberger v. Logansport C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [indispensable] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order

8

authorizing payment of prepetition wages, salaries, expenses, and benefits); and recently recognized with approval by the Supreme Court in *Jevic Holding Corp.,* 137 S. Ct. at 985. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

19. Satisfying possible outstanding or future obligations related to the Insurance Policies is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity. Continuation of the Insurance Policies is essential to preserving uninterrupted operations and the value of the Debtors' estates. Failing to maintain the Insurance Policies would impair—if not altogether halt—the Debtors' ability to operate, resulting in a material adverse effect on the Debtors' business and the value of their estates.

**C. The Court Should Authorize the Debtors to Honor and Renew their Premium Financing Agreements.**

20. Payment of prepetition premiums and amounts owing under the Premium Financing Agreements and Broker Fees is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.  Moreover, pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. *See, e.g., In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (D. Colo. 1985) (authorizing interim financing agreement where debtor's business judgment indicated financing was necessary and reasonable for benefit of estate). As discussed above, the Debtors believe that continuing to perform under the Premium Financing Agreements on a postpetition basis is in the best interests of their estates.

Moreover, in light of their financial circumstances, alternative insurance premium finance companies may not be willing to provide insurance premium financing to the Debtors on attractive market terms on a postpetition basis. Simply put, it is critical for the Debtors to continue to perform under their existing Premium Financing Agreements

**Requested Relief Satisfies Bankruptcy Rule 6003**

21.     Bankruptcy Rule 6003 provides that "[e]xcpet to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding … a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition …." FED. R. BANKR. P. 6003(b).

22.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

**Requested for Waiver of Bankruptcy Rules 6004(A) and (H)**

23.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a). Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As set forth above, the immediate payment of any amounts related to the Insurance Policies is essential to prevent potentially irreparable damage to the Debtors' operations, value, and ability to reorganize. Accordingly, the Debtors submit that ample cause exists to justify a

10

20763241.2

waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

### Interim Approval Should Be Granted and a Final Hearing Should Be Scheduled

24. The Debtors respectfully request that the Court conduct a preliminary hearing on the Motion and, on an interim basis, grant the relief requested in this Motion. In addition, the Debtors respectfully request that the Court schedule a final hearing on this Motion at the Court's convenience following entry of an interim order. Such relief is necessary in order to maintain and preserve the ongoing operations of the Debtors.

25. Any Insurance Carrier that does not object to the Debtors' maintenance of their Insurance Policies by the applicable objection deadline set for a final hearing on the Motion is directed to continue to maintain the Debtors' Insurance Policies in the ordinary course.

### Reservation of Rights

26. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

### Notice

27. Notice of this Motion shall be provided to: (i) the U.S. Trustee; (ii) the Debtors' thirty largest creditors on a consolidated basis; (iii) the Debtors' secured creditors; and (iv) all other parties who have requested notice in the Chapter 11 Cases. The Debtors submit, due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, no other

20763241.2

notice need be given.

28.     Notice is hereby given that the foregoing shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Second Floor Courtroom, Lexington, Kentucky on Wednesday, January 8, 2020 at 8:30 am or as soon as counsel may be heard.

WHEREFORE, the Debtors respectfully requests that the Court enter the Interim Order, pending a final hearing, the Final Order, granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 6, 2020                    Respectfully submitted,

/s/ James R. Irving
James R. Irving
April A. Wimberg
Christopher B. Madden
Bingham Greenebaum Doll LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone:    (502) 587-3606
Facsimile:    (502) 540-2215
E-mail:       jirving@bgdlegal.com
              awimberg@bgdlegal.com
              cmadden@bgdlegal.com

*Proposed counsel to the Debtors and Debtors In Possession*