UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Americore Holdings, LLC, *et al.*,[1] | ) | Case No. 19-61608-grs |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Gregory R. Schaaf |
| | ) | |

**OBJECTION OF THE DEBTORS AND DEBTORS IN POSSESSION TO THE EMERGENCY MOTION OF THE COMMONWEALTH OF PENNSYLVANIA FOR THE DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby object (the "Objection") to the *Emergency Motion of the Commonwealth of Pennsylvania For The Determination that The Automatic Stay Does Not Apply or, In The Alternative, For Relief From The Automatic Stay* [Docket No. 84] (the "Lift Stay Motion") filed by the Attorney General of the Commonwealth of Pennsylvania (the "Attorney General"). In support of the Objection, the Debtors respectfully state as follows:

**INTRODUCTION**

1. The Attorney General is seeking to modify the automatic stay imposed by section 362 of title 11 of the United States Code (the "Bankruptcy Code") to proceed with litigation

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

1

pending as *Commonwealth of Pennsylvania v. Americore Health, LLC et al.*, Civil Action Case No. 70081 of 2017, M.D. (the "State Court Litigation") pending before the Court of Common Pleas of Lawrence County, Pennsylvania Orphans' Court Division (the "State Court"). Specifically, the Attorney General seeks to litigate its *Petition to Enforce Purchase Agreement and for Monetary Damages* (the "Petition") against the Debtors on by relying on the narrow exception to the automatic stay contained in section 364(b)(4) of the Bankruptcy Code. However, the Attorney General is not seeking to enforce its "police and regulatory power." Rather, the Attorney General is seeking – explicitly in the name of its very own Petition – to enforce a contract against the Debtors and recovery monetary damages. The Attorney General asserts in its Petition that the Debtors have failed to operate one of their largest assets, the Elmwood City Hospital ("ECH"), under the terms of order and asset purchase agreement by which the Debtors acquired ECH. The Attorney General seeks entry of an order compelling the Debtors to comply with the terms of the asset purchase agreement (which the Debtors cannot afford to do), and failing compliance that the Debtors should be required to surrender one of their most valuable assets – ECH – and pay monetary damages to the Commonwealth of Pennsylvania and other parties.

2. Essentially, the Attorney General seeks relief from the automatic stay to litigate in the State Court to compel the turnover of one of the Debtors' most valuable assets and payment by the Debtors for monetary damages. The Attorney General makes no allowance for the interests of the Debtors' creditors in ECH. Indeed, the relief sought by the Attorney General in the Lift Stay Motion would frustrate the "prime bankruptcy policy of equality of distribution among creditors of the debtor." *Union Bank v. Wolas*, 502 U.S. 151, 161, 112 S. Ct. 527, 533 (1991).

## ARGUMENT

3. Governmental units are bound by the automatic stay imposed by section 362 of the Bankruptcy Code. *See In re Pearson*, 917 F.2d 1215, 1216 (9th Cir. 1990); *see also Penn Terra, Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 272 (3d Cir. 1984) ("the fact that Congress created an exception to the automatic stay for certain actions by governmental units itself implies that such units are otherwise affected by the stay."). "Exceptions to the stay are generally to be construed narrowly." *In re Del Ross*, Bankruptcy Case No. 96-30427, Chapter 13, 1998 Bankr. LEXIS 1869, at *9 (Bankr. D.N.J. Feb. 27, 1998); *see also In re Weisberg v. Shearson Lehman Bros., Inc.*, 136 F.3d 655, 659 n. 6 (9th Cir. 1998).

4. The Attorney General cites to *Penn Terra,* an opinion from the United States Court of Appeals for the Third Circuit for the proposition that the police powers exception to the automatic stay contained in section 362(b)(4) is to be read broadly, yet the Third Circuit cautioned against that interpretation in a subsequent opinion. *In re Nortel Networks, Inc.*, 669 F.3d 128, 140 (3d Cir. 2011). In *Nortel*, the Third Circuit clarified that its "broad" interpretation of the exception in *Penn Terra* was limited to federal-state preemption questions related to environmental hazards. *Id*. Contrary to all of the Attorney General's assertions about the legislative history of section 362 of the Bankruptcy Code, the *Nortel* court clarified that "the legislative history *expressly* supports a narrow construction of the police power exception." *Id at* 140 n.13 (emphasis added).

5. Courts within the Sixth Circuit apply two tests to determine whether an action qualifies as a proceeding pursuant to a governmental unit's police or regulatory power: the pecuniary purpose test and the public policy test. "[P]ursuant to these complementary tests, an action will only be exempt from the automatic stay of the Bankruptcy Code if the action has been

3

instituted to effectuate the public policy goals of the governmental entity, as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights." *Chao v. Hosp. Staffing Servs.*, Inc., 270 F.3d 374, 386 (6th Cir. 2001). Here, the Attorney General fails both tests.

6. "'[P]olice or regulatory power' refers to the enforcement of state laws affecting health, welfare, morals, and safety, *but not* regulatory laws that directly conflict with the control of the res or property by the bankruptcy court." *Missouri v. U. S. Bankr. Court for E. D.*, 647 F.2d 768, 776 (8th Cir. 1981) (quoted with approval in *Hospital Staffing*) (emphasis added). Here, the Attorney General seeks to litigate with the Debtors in the State Court, where the Attorney General seeks to force the Debtors to pay money damages, force the Debtors to operate ECH as a hospital (which the Debtors cannot afford to do) or to divest the Debtors of ECH. The Attorney General is therefore seeking relief which "directly conflict[s] with the control of the res or property by the bankruptcy court." *Id.* Indeed, because the Commonwealth of Pennsylvania has already ordered that the hospital at ECH be closed, it is difficult for the Attorney General to argue that there is an immediate concern regarding "health, welfare, morals and safety." There may be a long-term public policy reason to have an open hospital in Ellwood City, PA, but there is no need to modify the automatic stay on emergency notice to pursue that long-term public policy at the expense of the Debtors and its creditors.

7. The Attorney General relies on *Hospital Staffing* throughout the Lift Stay Motion as it argues that the government can seize a debtor's assets based on public policy assertions. *See* Motion ¶ 94, 95, 99, 102. In *Hospital Staffing*, the debtor in possession served patients through various health services, including home healthcare, throughout the country. *Id* at 378. There, the United States Secretary of Labor sued in Tennessee circuit court asserting violations of the Fair

4

Labor Standards Act. *Id*. The *Hospital Staffing* Court held that mere enforcement of the law is not a sufficient public policy to satisfy the test, and that there was no police or regulatory exception to the automatic stay in that action. *Id* at 394.

I. **THE ATTORNEY GENERAL CANNOT SATISFY THE PECUNIARY PURPOSE TEST.**

8. "Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property, and not to matters of public safety." *Hospital Staffing* at 387. Matters of public safety are excepted from the stay, while matters related to pecuniary interests are not. *Id*. Government agencies are often granted exceptions from the stay to enforce compliance with environmental laws. *See e.g. City of New York v. Exxon Corp.*, 932 F.2d 1020, 24 C.B.C.2d 1737 (2d Cir. 1991); *United States v. Nicolet, Inc.*, 857 F.2d 202, 19 C.B.C.2d 1405 (3d Cir. 1988); *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 18 C.B.C.2d 1256 (6th Cir. 1988); *Commonwealth Oil Refining Co., Inc. v. United States Envtl. Protection Agency (In re Commonwealth Oil Refining Co. Inc.)*, 805 F.2d 1175, 15 C.B.C.2d 1387 (5th Cir. 1986), cert. denied, 483 U.S. 1005, 107 S. Ct. 3228, 97 L. Ed. 2d 734 (1987); *Penn Terra, Ltd. v. Department of Envtl. Resources*, 733 F.2d 267, 10 C.B.C.2d 949 (3d Cir. 1984); *United States v. Federal Resources Corp.*, 525 B.R. 759 (D. Idaho 2015). The Attorney General has not cited to any authority which would permit it to "completely" divest the Debtors from one of their most valuable assets – ECH, yet the Attorney General seeks authority to do that all the same. *See* Motion ¶ 76(d).

9. The right to performance on a court order can be a claim to be discharged in Bankruptcy. *See Ohio v. Kovacs*, 469 U.S. 274, 279, 105 S. Ct. 705, 708 (1985). In *Kovacs* the

state of Ohio secured several affirmative and negative orders against an individual including one requiring the individual to clean up a polluted property. *Id*. However, the court found that the only possibility of performance was through the payment of money. *Id*. Accordingly, the affirmative orders were dischargeable debts, and the stay did not apply. *Id* at 71 n. 11 ("The automatic stay provision does not apply to suits to enforce the regulatory statutes of the State, but the enforcement of such a judgment by seeking money from the bankrupt – what the Court of Appeals for the Sixth Circuit concluded was involved in this case – is another matter.").

10.    Here, the Attorney General's primary goal is to enforce essentially a breach of contract by asserting control over an asset held for the benefit of creditors and compelling the Debtors' to pay monetary damages.  Just as in *Kovacs*, none of the requests for relief the Attorney General wishes to pursue in the Litigation pending in State Court are performable absent money payment.  In the title of the Petition the Attorney General admits it is for "Monetary Damages" and in the prayer for relief in the Petition the Attorney General asks the Debtors to, among other things, "pay" and "remit" monies and alleges that it has cause because the Debtors "private pecuniary benefit" from ECH is allegedly unwarranted.  Indeed, the ultimate remedy for the Commonwealth of Pennsylvania is divestiture of the Debtors' assets.  The purpose of the Attorney General's Litigation and Petition is pecuniary and is therefore not excluded from the automatic stay.

## II.    THE ATTORNEY GENERAL CANNOT SATISFY THE PUBLIC POLICY TEST.

11.    "Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy." *Hospital Staffing* at 385. Here, the Attorney General is asserting a right a nonprofit may have had in the

State Court to divest the Debtors' interest in a key asset, ECH, but not one that primarily furthers public policy.

12. ECH is closed but for maintenance, security and other limited staff. The Debtors are not seeing patients at ECH. As noted in the Motion, the Commonwealth of Pennsylvania's own Department of Health ordered that the Debtors cease operating ECH as a hospital. Motion ¶ 58 ("Upon information and belief, on November 27, 2019, the Commonwealth of Pennsylvania Department of Health issued a ban on admission and suspension of emergency department services."). Now the Attorney General of the Commonwealth of Pennsylvania claims to have an "Emergency." The Lift Stay Motion completely fails to articulate why the hospital that it prohibited from serving patients 50 days ago is critically needed in the community or how proceeding in the Litigation will allow the hospital to reopen faster than the chapter 11 process would allow. The Attorney General cannot explain the public policy that requires both shutting down a hospital, and demanding that the Debtors immediately surrender the hospital's assets (without any compensation for creditors) so that the hospital may resume operations.

13. In *Hospital Staffing*, the United States Secretary of Labor sued to prevent the distribution of assets created by workers that had not been paid for their work. *Id* at 378. The Secretary of Labor argued enforcing the provisions of the Fair Labor Standards Act was an effectuation of public policy. *Id.* The United States Court of Appeals for the Sixth Circuit disagreed, noting "the suit is not in furtherance of her statutory powers to regulate and enforce labor standards, but rather is designed to and would, if allowed to proceed, promote the private rights of unpaid workers vis-a-vis other creditors of the debtor's estate." *Id*.

14. Here, the Attorney General repeatedly laments the alleged unpaid compensation due to the Debtors' employees. *See* Motion at ¶ ¶ 61 – 66, 68 – 69. One of the purposes of the

Litigation is to compel payment of those claims, just as in *Hospital Staffing*. Now, as in *Hospital Staffing,* the Attorney General is merely promoting the private rights of workers over the other creditors. This is an insufficient to reason to find the exception to the automatic stay applies in this action.

For the foregoing reasons Debtors respectfully request the Court deny the Motion.

Dated January 16, 2020                                         Respectfully submitted,

/s/ James R. Irving
James R. Irving
April A. Wimberg
Christopher B. Madden
BINGHAM GREENEBAUM DOLL LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
Facsimile: (502) 587-3695
Email: jirving@bgdlegal.com
           awimberg@bgdlegal.com
           cmadden@bgdlegal.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 16, 2020, the foregoing Notice was served electronically through the Court's ECF system to all persons receiving electronic notifications in the Chapter 11 Cases.

/s/ James R. Irving

James R. Irving

20794252.2