UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
London Division

| | |
|---|---|
| In re: | Case No. 19-61608 |
| Americore Holdings, LLC, et al.[1], | Chapter 11 |
| Debtors in Possession. | Jointly Administered |

**United States Trustee's Motion to Appointment a Trustee or Examiner Under § 1104 or to Dismiss the Cases**

Paul A. Randolph, Acting United States Trustee, moves the Court to appoint a trustee or examiner under 11 U.S.C. § 1104, or in the alternative to dismiss the case. In support of this motion, the United States Trustee states as follows:

*Notice of Hearing*

> Please take notice that this Motion will be heard by the Court on February 20, 2020 at 9:00 a.m. in the Second Floor Courtroom, U.S. Bankruptcy Court, 100 East Vine Street, Lexington, KY 40507.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

1

*Jurisdiction and Background*

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. This matter is a core proceeding.

2. The United States Trustee has standing to bring this Motion pursuant to 11 U.S.C. §§ 307.

3. On December 31, 2019, the Debtors filed their voluntary petitions for relief under chapter 11. The Debtors remain in possession.

4. The Debtors are the owners and/or operators of four separate hospitals, with a location in each of Kentucky, Pennsylvania, Arkansas, and Missouri. Upon information and belief, the hospital operations at the facilities located in Kentucky and Pennsylvania have completely ceased.

5. While the Debtors' bankruptcy schedules have not yet been filed, the four hospital operations are linked by Grant White's common ownership. Based on the organization chart filed within the Declaration of Grant White in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"), Grant White has a majority ownership interest in each of the debtors. ECF No. 11, Ex. A.

6. As will be outlined in the following sections, upon information and belief Grant White has: grossly mismanaged the Debtors; has not operated the hospitals in a manner that is consistent with public safety and welfare;

has not been truthful or candid with this Court; is not trusted by his current or potential DIP lenders, is under civil and criminal investigation (including an FBI raid on the Pennsylvania facility and White's personal residence); and has improperly siphoned money from the Debtors for his personal benefit.

*The Debtors' False Statements Regarding Cash Collateral*

7. At the first-day hearings held on January 6, 2020, the Debtors, through their counsel, stated that the Debtors' need for cash was paramount and dire. Specifically, Debtors' counsel stated that St. Alexius was concerned that it would "run out of certain medical supplies and food for patient safety" if cash was not made immediately available. ECF No. 25. As such, the Court made $75,000 in cash collateral available to the Debtors on an interim basis. ECF No. 20.

8. Similarly, at the evidentiary hearing on potential DIP financing held on January 17, 2020, the Debtors, through Toni Knoche, who is the managing director of revenue cycle at the Debtors, stated that it was "iffy" if the Debtors would be able to make their next payroll without DIP financing. ECF No. 122. Additionally, Knoche stated that the Debtors will need $1.5 million "over the next couple of weeks" to maintain hospital operations, such as paying employees or purchasing medicine. ECF No. 122. When asked by Debtors' counsel if without the DIP financing the Debtors had "any path

3

forward to maintain the hospital operations as they are," Knoche stated that "it would be very difficult." ECF No. 122.

9. However, as of the filing of this motion, the Debtors have had enough cash to meet three separate payroll obligations. The United States Trustee is unaware how the Debtors, with a supposed dire and imminent need for $1.5 million in DIP financing, have been able to continue to operate at least two hospitals. The United States Trustee must assume that either: (1) the Debtors significantly overstated their need for DIP financing at the January 17, 2020 hearing; or (2) the Debtors have cut corners that have placed patients at significant risk.

10. However, because the Debtors have yet to file their bankruptcy schedules, the Court, the United States Trustee, creditors, and other stake holders remain unaware of the Debtors' financial condition.

*The Debtors Did Not Operate the Hospitals in a Manner Consistent with Public Safety*

11. The Pennsylvania Department of Health issued a report outlining numerous violations of various Pennsylvania statutes and regulations at the Ellwood City hospital. *See* ECF No. 84, Ex. J. For example, due to the Debtor's nonpayment, a vendor repossessed various equipment necessary for surgeries regarding hip, wrist, ankle, and other fractures. *Id.* Ex. J, at 16–20. The Pennsylvania Department of Health also found numerous expired medicines in the CT room, pediatric emergency room, and on adult crash

carts. *Id.* Ex. J, at 22–24. Ellwood City limited their surgical and emergency care capabilities to Monday–Wednesday, from the hours of 7:30 a.m. to 3:30 p.m., in violation of a Pennsylvania requirement that the hospital provide 24-hour emergency care. *Id.* Ex. J, at 43–46.

12. Ultimately the above-described violations lead to the Commonwealth of Pennsylvania closing the Ellwood City hospital due to unsafe patient conditions. While Pennsylvania developed a plan that would allow Ellwood City to reopen, upon information and belief, the Debtors have abandoned that plan. As such, the Ellwood City hospital will remain closed.

13. The Debtors also have grave patient safety issues at the other hospitals owned by the Debtors. For example, at the January 17, 2020 hearing, Knoche stated that St. Alexius had to make the decision between paying employees "or buying supplies and medications." ECF No. 122. Additionally, Knoche also stated that Izard County Medical Center was unable to purchase emergency stroke medication, leading to obvious and significant patient safety issues.

*Creditors and Potential DIP Lenders Have No Trust in Grant White*

14. At the first day hearings, counsel for the Third Friday Total Return fund noted that "his client doesn't have much faith in Mr. White." ECF No. 25. Similarly, upon information and belief, DIP financing is available to the Debtors from multiple parties on terms more favorable than those previously

5

presented to this Court, but a condition on that financing is that Grant White relinquish control over the Debtors. Upon information and belief, White has refused and will continue to refuse to relinquish control.

*Grant White and Ellwood City are Under Criminal Investigation*

15. Upon information and belief, Elwood City Medical Center was raided by the Federal Bureau of Investigation on or around January 30, 2020. Upon information and belief, Grant White's personal residence was raided by the Federal Bureau of Investigation on or around January 29, 2020. To the best of the United States Trustee's knowledge, White has not been charged or convicted of any crime. However, the above-described investigations must limit White's ability to devote time to the management of the Debtors. Additionally, upon information and belief, Grant White has inappropriately siphoned money from the Debtors for his personal benefit.

*Grant White has Failed to Attend the Individual Debtor Interview*

16. Section XIII of the Court's Chapter 11 Operating Order requires the Debtor, through senior management, to attend an initial debtor interview ("IDI") with the United States Trustee. ECF No. 5, at 4. Additionally, under section 1112(b)(4)(H), the Court may dismiss a bankruptcy case if the debtor fails to "attend meetings reasonably requested by the United States Trustee."

17. The United States Trustee scheduled the Debtors' IDI for January 28, 2020 and February 3, 2020. Shortly before the two above meetings, the

Debtors contacted the United States Trustee and asked that the IDI be rescheduled. As of the filing of this motion, the United States Trustee and the Debtors have not agreed on a new time to hold the Debtors' IDI.

*Americore Previously Failed to Operate a Hospital in Lee County, Virginia*

18.    On or around the Summer of 2016, Grant White, through Americore, began to speak to the county commissioners of Lee County, Virginia about potentially reopening a hospital in their rural community. In the Summer of 2017, Lee County agreed to sell Americore their hospital building on the condition that a hospital be timely opened and operated. However, by the end of 2018, White and Americore had failed to reopen the hospital.[2] Upon information and belief, the project has been abandoned and Americore's actions have left Lee County with significant unpaid bills.

*Law & Analysis*

19.    The United States Trustee, as set forth above, believes that "cause" is present to appoint a trustee under § 1104(a)(1) or (2). In the alternative, if the Court determines that a trustee is not warranted, to appoint an examiner should be appointed under § 1104(c). In the alternative, the Court should dismiss the above-captioned cases under § 1112(b) if such actions are in the best interest of creditors.

---

[2] Upon information and belief, Grant White made a $340,000 down payment on a $890,000 home in Ft. Lauderdale, Florida around August of 2018, the same month that Americore stopped working towards opening the hospital in Lee County, Virginia.

*Appointment of a Trustee under § 1104(a)*

20. Under § 1104(a), the Court "shall order the appointment of a trustee — (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement" or "(2) if [the appointment of a trustee] is in the interests of creditors, any equity security holders, and other interests of the estate."

21. Because the word "shall" is used within § 1104(a), if the United States Trustee demonstrates cause, "the Courts have no discretion but must appoint a trustee." *In re Ford*, 36 B.R. 501, 504 (Bankr. W.D. Ky. 1983). The burden of proof rests on the United States Trustee by a preponderance of the evidence. *See Keeley & Grabanki Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship)*, 455 B.R. 153, 162–63 (B.A.P. 8th Cir. 2011); *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 384 (Bankr. C.D. Cal. 2015); *In re Golden Park Estates, LLC*, 2015 WL 3643479, at *5 (Bankr. D.N.M. 2015) (holding that the Tenth Circuit "would likely use a preponderance of the evidence standard"); *In re Costa Bonita Beach Resort*, 479 B.R. 14, 44 (Bankr. D.P.R. 2012).[3] The ultimate decision of whether or not to appoint a

---

[3] Although many courts state that the burden is one of "clear and convincing evidence," those courts largely rely on *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989), which was decided before the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279 (1991). In that case, involving an action under § 523, the Supreme Court held that a preponderance of the evidence burden normally applies in bankruptcy. While the desire of a Debtor to remain in possession is an important interest, it "cannot reasonably be said to be any more important than a chapter 7 debtor's interest" in

trustee is vested in the bankruptcy judge's discretion. *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005).

22. When deciding if "cause" exists, courts are not limited to the four statutorily enumerated examples—fraud, dishonesty, incompetence, gross mismanagement—but instead may evaluate other issues, such as the materiality of the improper conduct, the appropriateness of any insider dealings, the existence of preferences or fraudulent transfers, management's unwillingness to pursue legal actions, management's conflicts of interest, management's self-dealings, as well as any other factor the Court deems relevant. *Id.*

23. Courts generally do not second-guess a debtor's business judgment, but after a debtor seeks the protection of the bankruptcy court, the debtor's pre- and post-petition actions are subject to judicial scrutiny. *Id.* at 592–93. Once a debtor files for bankruptcy protection, the debtor's management owes creditors "the highest duty of care and loyalty." *Id.* at 593; *see also Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985).

24. For example, in *In re Nartron Corp.*, the court found "cause" to appoint a trustee based on the debtor's prepetition payments to insiders and conflicts of interest in the debtor's willingness to pursue litigation against insiders. *In*

---

discharging a debt. *In re Veblen W. Dairy LLP,* 434 B.R. 550, 555 (Bankr. D.S.D. 2010). The Sixth Circuit has not decided the issue.

9

*re Narton Corp.*, 330 B.R. 573; *see also In re Citizens Corp.*, 2012 WL 649853, at *8–9 (Bankr. M.D. Tenn. 2012). Similarly, the Fifth Circuit, in *In re Cajun Electric Power*, upheld the bankruptcy court's appointment of a trustee based on the debtor-in-possession's conflicts of interest with its creditors. *Cajun Elec. Power Coop., Inc. v. Cent. La. Elec. Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 74 F.3d 599, 600 (5th Cir. 1996).

25. Fraud is not required before a court may find "cause," as a trustee may be appointed based on the debtor-in-possession's failure to "inform [itself] of all material information reasonably available" before making business decisions. *In re Nartron Corp.*, 330 B.R. at 593; *see also Commodity Futures Trading Comm'n*, 471 U.S. at 355; *In re Microwave Prods.*, 102 B.R. at 672. Similarly, an Ohio court appointed a trustee based on the debtor's numerous poor business decisions which, in the aggregate, "caused a loss of confidence in the Debtor's management of crisis proportions." *In re Cardinal Indus., Inc.*, 109 B.R. 755, 766 (Bankr. S.D. Ohio 1990).

26. Based on the facts as outlined above, the Debtors' management has engaged in each of the four enumerated examples of cause: fraud, dishonesty, incompetence, and gross mismanagement, as well as other actions that demand an independent trustee.

27. First, upon information and belief, White has improperly siphoned money from the Debtors. This is buttressed by the FBI's investigation into

10

White, which culminated in at least two raids in late January 2020. Second, Knoche stated that the Debtors' would need $1.5 million to operate their two currently operating hospitals for approximately two weeks. However, it is more than two weeks after the DIP hearing, and the Debtors continue to operate. The Debtors appear to have made false statements to this Court in an attempt to inappropriately obtain DIP financing. Third, the Debtors management is incompetent. Not only were the Debtors unable to successfully open a hospital in Lee County, Virginia, but the Debtors' hospitals in Kentucky and Pennsylvania are currently closed. The Debtors' current lenders, as well as potential future DIP lenders, are unwilling to loan to an entity controlled by Grant White, further evidencing his incompetence. Finally, the Debtors operations have been grossly mismanaged. Based upon Knoche's testimony at the DIP hearing, the Debtors two remaining hospitals had to choose between paying employees and buying medication. The Izard County hospital did not have the money to purchase life-saving stroke medication.

28.    Other factors requiring the appointment of an independent trustee are present, such as major conflicts between management's interests and the Debtors' interests. Upon information and belief, Grant white has improperly siphoned money from the Debtors and will not pursue litigation against himself for preferences and fraudulent transfers. Such conflicts of interest

11

and self-dealings between the Debtor and management often result in the appointment of a chapter 11 trustee. *See In re Cajun Elec.*, 74 F.3d at 600; *Lowenschuss v. Lowenschuss (In re Lowenschuss)*, 171 F.3d 673 (9th Cir. 1999); *In re Sharon Steel*, 871 F.2d 1217, 1228 (3d Cir. 1989); *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133 (10th Cir. 1988); *Narton Corp.*, 330 B.R. at 592.

29. Based on the above, the Court should appoint a chapter 11 trustee under § 1104(a).

30. In the alternative, § 1104(a)(2) requires the appointment of a trustee if the appointment "is in the interest of creditors, any equity security holders, and other interests of the estate," creating "a flexible standard which allows for the appointment of a trustee, even though cause may not exist, when so doing would serve the interests of creditors and the estate." *In re Nartron Corp.*, 330 B.R. at 592. In other words, under § 1104(a)(2), a court conducts a cost-benefit analysis to determine if creditors, equity security holders, and other estate interests are better served by leaving the debtor in possession or by appointing a trustee. *In re Nat'l Staffing Servs., LLC*, 338 B.R. 31, 33–34 (Bankr. N.D. Ohio 2005).

31. When making a determination under § 1104(a)(2), courts often evaluate the following factors: "(i) the overall management of debtor, both past and present, (ii) the trustworthiness of debtor's management, (iii) the

confidence or lack thereof of the business community and of creditors in present management, and (iv) practical considerations, such as the benefits derived by the appointment of a trustee, balanced against costs." *In re Citizens Corp.*, 2012 WL 649853, at *9 (*quoting In re Celeritas Tech., LLC*, 446 B.R. 514, 520 (Bankr. D. Kan. 2011).

32. The above-captioned cases are designed for the appointment of a trustee based on the cost-benefit standard. The Debtors have been mismanaged by Grant White, leading to the closure of two hospitals, the failure to open another, and the near closure of two more. Grant White is not trustworthy, evidenced by various criminal investigations, as well as the United States Trustee's belief that White improperly siphoned money out of the Debtors. The business community has also lost all trust in White, evidenced by creditors and potential DIP lenders decisions to no longer work with Americore if White has control of the entities. Upon information and belief, DIP funding on terms significantly more favorable than those previously presented to this Court are available if White is removed.

33. Importantly, each of the currently open hospitals are caring for real people. The closure of these hospitals would be devastating to the communities they serve, both from a patient health and economic perspective. White has shown an inability to effectively manage the hospitals. A competent chapter 11 trustee with significant healthcare experience is the

best opportunity for each hospital to become financially stable and provide excellent care to its patients.

*In the Alternative, Appointment of an Examiner is Appropriate*

34. If the Court decides that the appointment of a trustee is not warranted:

> the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity. . . if—
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)(1)–(2).

35. When making a determination under § 1104(c)(1), the Court should determine whether, based on the totality of the circumstances, the appointment of an examiner is in the best interest of the estate. *See In re*

*Gliatech, Inc.*, 305 B.R. 832, 836 (Bankr. N.D. Ohio 2004). Estate assets should not be expended on an examiner that will only assist one party, but instead on investigations that will benefit numerous interested parties. *Id.* (rejecting the appointment of an examiner to investigate an action which would only benefit one class of creditors, noting that the creditor should bear the burden of the investigation, not the bankruptcy estate).

36. If an examiner is appointed, its investigation normally centers on a debtor's "alleged fraud, dishonesty, incompetence, misconduct, mismanagement, or other irregularities." *In re Gliatech,* 305 B.R. at 835 (*quoting* 11 U.S.C. § 1104(c)). However, the existence of one of the statutorily enumerated examples is not required, as courts are granted broad discretion in deciding when and why to appoint an examiner. *See In re Mich. BioDiesel, LLC*, 466 B.R. 413, 420–21 (Bankr. W.D. Mich. 2011).

37. For example, in *In re Michigan BioDiesel*, a bankruptcy court ordered the appointment of an examiner under § 1104(c) to better understand complex taxation issues which would have an outsized effect on the ultimate outcome of the case. 466 B.R. at 420–21; *see also In re Pub. Serv. Co. of N.H.*, 99 B.R. 177 (Bankr. D.N.H. 1989) (appointing an examiner to assist in mediation). Similarly, an examiner could help evaluate complex Medicare and Medicaid bulling issues, which will likely be the central issue as this bankruptcy case moves forward.

38. Under § 1104(c)(2), if a debtor's qualifying debts exceed $5,000,000, the Court must appoint an examiner. *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500–01 (6th Cir. 1990). However, the Court retains the discretion to tailor the scope of the examiner's investigation. *Id.* at 501.

39. While the Debtors schedules have yet to be filed, upon information and belief, the Debtors' qualifying debts exceed the $5,000,000 limit. Additionally, if the Debtors continue to fail to file their bankruptcy schedules, the Court should adopt a presumption that the Debtors' qualifying debts exceed the statutory limit.

*In the Alternative, Case Dismissal is Appropriate*

40. Under § 1112(b), the Court may dismiss a chapter 11 bankruptcy case if dismissal is in the best interests of creditors and "cause" is present. Section 1112(b)(4) contains a non-exhaustive list of examples of "cause." The United States Trustee believes that the above alleged facts clearly constitute cause, including but not limited to "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" (§ 1112(b)(4)(A)); gross mismanagement (§ 1112(b)(4)(b)), "failure to comply with an order of the court" (§ 1112(b)(4)(E)); and failure to "attend meetings reasonably requested by the United States Trustee" (§ 1112(b)(4)(H)).

41. Therefore, if dismissal is in the best interests of creditors, the United States Trustee requests that the Court dismiss the above-captioned cases.

WHEREFORE, the United States Trustee respectfully requests that an order be entered appointing a trustee or examiner, or dismissing the above-captioned cases, whichever is in the best interests of creditors.

Dated: February 4, 2020   **Paul A. Randolph**
Acting United States Trustee

By: */s/ Bradley M. Nerderman*
John L. Daugherty
Assistant U.S. Trustee
Rachelle C. Dodson
Bradley M. Nerderman
Trial Attorneys
Office of the U.S. Trustee
100 E. Vine St., Suite 500
Lexington, KY 40507
(859) 233-2822

**Certificate of Service**

I certify that on February 4, 2020, I served a copy of the foregoing (i) via ECF noticing upon all parties registered to receive notice electronically, and (ii) via first class mail, postage prepaid, upon all creditors and parties in interest listed on the attached matrix.

*/s/ Bradley M. Nerderman*
Bradley M. Nerderman

Baxter Regional Medical Center
C/O Ron Peterson, President & CEO
624 Hospital Drive
Mountain Home, AR 72653

Midwest Emergency Dept. Serv, Inc.
C/O Kevin Meder
600 Washington Avenue, Suite 1800
Saint Louis, MO 63101

Horizon Mental Health
C/O Winfield, Post & Schell
17 North Second Street 12th Floor
Harrisburg, PA 17107

Dinakar Golla
C/O Avrum Levicoff,
4 PPG Pl., Suite 200
Pittsburgh, PA 15222

Johnson & Johnson Healthcare Sys.
5972 Collections Ctr. Dr.
Chicago, IL 60693

Bard C.R. Inc.
C/O Napoleon Ramos
P.O. Box 75767
Charlotte, NC 28275

Palamerican Security, Inc.
C/O Roger Rees
8th Avenue North Suite 203
St. Petersburg, FL 33704

Central Tox LLC
525 Round Rock W. Cr.
Round Rock, TX 78681

Medline Industries
C/O Michael S. Baim, The CKB Firm
30 N. Lasalle St, Suite 1520
Chicago, IL 60602

The Talbot Group, LLC
C/O Donna Talbot
11741 W. Romin Rd
Post Falls, ID 83854

Healthland CPSI
C/O Troy Dolly
6600 Wall Street
Mobile, AL 36695

AHN Emergency Group of Ellwood,
C/O Kevin Allen, Michael Pest
Exkert Seanmans Cherin & Mellott,
600 Grant Street, 44th Floor
Pittsburgh, PA 15210

Western Healthcare
C/O Jacob Norvell
13155 Noel Rd.Suite 200
Dallas, TX 75240

Philips Healthcare
C/O Robert Kennedy
P.O. Box 403831
Atlanta, GA 30301

Aya Healthcare Inc.
C/O Shannon Steely
P.O. Box 123519, Dept 3519
Dallas, TX 75312

McKesson Medical Surgical
C/O Marlena Waldrum
12755 Highway 55, Suite R200
Minneapolis, MN 55441

Faultless
C/O Terry Mason
2030 S. Broadway
Saint Louis, MO 63104

White River Planning and Development District, Inc.
C/O Regan Miller
PO Box 2396
Batesville, AR 72503

Ortho Clinical Diagnostics
P.O. Box 3655
Carol Stream, IL 60132

Western Healthcare
C/O Scott Webb
13155 Noel Rd., Suite 200
Dallas, TX 75240

Beckman
C/O Raymond Wendolowski,
Bernstein Burkley
707 Grant St.Suite 2200, Gulf Tower
Pittsburgh, PA 15219

Jones Day
C/O Chris Anderson
77 West Wacker Drive
Chicago, IL 60601

Calico Rock Med, LLC
C/O Darren Gibbs
Law Offices of Darren A. Gibbs
3729 N. Crossover Road, Suite 111
Fayetteville AR 72703

Jones Day
C/O Chris Anderson
77 West Wacker Drive
Chicago, IL 60601

Specialists in Anesthesia PC
C/O Dr. Brad Bernstein
500 S. Meramec Drive
Saint Louis, MO 63105

Sysco
3850 Mueller Rd
Saint Charles, MO 63301

Nurses PRN
1101 E. South River Street
Appleton, WI 54915

Correct Care, Inc.
C/O Nancy Scearce
229 Saint John Ln
Covington, LA 70433

Missouri Dep't of Higher Education
C/O Jaron D. Vail, MFA
P.O. Box 1469
Jefferson City, MO 65102

The Third Friday Total Return Fund,
C/O Michael E. Lewitt
85 N. Congress Avenue
Delray Beach, FL 33445

| | | |
|---|---|---|
| Pelorus Fund, LLC<br>C/O Pelorus Equity Group, Inc.<br>124 Tustin Avenue, Suite 200<br>Newport Beach, CA 92663 | Pelorus Fund, LLC<br>C/O Bibin Mannattuparampil Geraci<br>90 Discovery<br>Irvine, CA 92618 | Penn Med LLC<br>C/O Jeffery P. Meyers, Myers Law<br>17025 Perry Highway<br>Warrendale, PA 15086 |
| Toby Mug Financing, LLC<br>C/O Roger Herman, Rosenblum Boldenhersh<br>7733 Forsyth Blvd., Suite 400<br>St. Louis, MO 63105 | Dell Financial Services LLC<br>One Dell Way<br>Mail Stop – PS2DF-23<br>Round Rock, TX 78682 | Air Liquide Healthcare America Co<br>C/O Capital Services, Inc.<br>1675 S. State Street, Suite B<br>Dover, DE 19901 |
| App Group International, LLC<br>85 Broad Street, 75th Floor<br>New York, NY 10004 | Corporation Services Company<br>P.O. Box 2576<br>Springfield, IL 62708 | CT Corporation Systems<br>Attn: SPRS<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 |
| BQR Capital, LLC<br>C/O Pelorus Equity Group, Inc.<br>124 Tustin Avenue, Suite 200<br>Newport Beach, CA 92663 | Gibbs Technology Leasing – HG1,<br>3236 West Edgewood Road, Suite A<br>Jefferson City, MO 65109 | HOP Capital<br>323 Sunny Island Blvd. #501<br>Sunny Isles Beach, Florida 33160 |
| EIN CAP, Inc.<br>160 Pearl Street, Floor 5<br>New York, NY 10005 | HMFCG Inc.<br>368 New Hemstead Rd.<br>New City, NY 10956 | Med One Capital Funding, LLC<br>10712 South 1300 East<br>Sandy, UT 84094 |
| Republic Bank<br>PO Box 17170<br>Salt Lake City, UT 84117 | Titan Loan Servicing, LLC<br>C/O Pelorus Equity Group, Inc.<br>124 Tustin Avenue, Suite 200<br>Newport Beach, CA 92663 | Smart Business<br>561 Northeast 79th Street<br>Miami, FL 33138 |
| Koven Omens Trust Dated June 26, 2015<br>C/O Pelorus Equity Group, Inc.<br>124 Tustin Avenue Suite 200<br>Newport Beach, CA 92663 | The McNee Family Trust Dated 1/17/08<br>C/O Pelorus Equity Group, Inc.<br>124 Tustin Avenue, Suite 200<br>Newport Beach, CA 92663 | Trust of R. and G. Glitz Dated 12/11/07<br>C/O Pelorus Equity Group, Inc.<br>124 Tustin Avenue, Suite 200<br>Newport Beach, CA 92663 |
| Leyda Bequer, Trustee of Bequer Trust<br>23461 S. Pointe Drive, Suite 215<br>Laguna Hills, CA 92653 | Americore Holdings, LLC and its Subsidiaries<br>3933 S. Broadway<br>Saint Louis, MO 63118 | Internal Revenue Service<br>P.O Box 7346<br>Philadelphia, PA 19101 |
| U.S. Attorney's Office<br>Eastern District of Kentucky<br>260 W. Vine St., Suite 400<br>Lexington, KY 40507 | Kentucky Department of Revenue<br>Legal Branch – Bankruptcy Section<br>P.O. Box 5222<br>Frankfort, KY 40602 | Missouri Department of Revenue<br>Bankruptcy Unit<br>P.O. Box 475<br>301 West High Street<br>Jefferson City, MO 65105 |
| Arkansas Department of Finance and Administration<br>1509 W 7th St.<br>Little Rock, AR 72201 | Pennsylvania Dept of Revenue<br>C/O Pennsylvania Attorney General, Nancy Walker<br>Strawberry Square<br>Harrisburg, PA 17120 | |