# Exhibit A

# Koenig Affidavit

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re: | ) <br> ) Chapter 11 <br> ) |
| AMERICORE HOLDINGS, LLC, *et al.*,[1] | ) Case No. 19–61608-grs <br> ) |
| Debtors. | ) Jointly Administered <br> ) <br> ) Honorable Gregory R. Schaaf <br> ) |

**AFFIDAVIT OF SUZANNE A. KOENIG IN SUPPORT OF THE APPLICATION
OF THE PATIENT CARE OMBUDSMAN FOR ORDER AUTHORIZING HER
RETENTION AND EMPLOYMENT OF SAK MANAGEMENT SERVICES, LLC AS
MEDICAL OPERATIONS ADVISOR *NUNC PRO TUNC* TO JANUARY 21, 2020**

I, Suzanne A. Koenig, being duly sworn, deposes and say:

1.  I am the President of SAK Management Services, LLC ("**SAK**"). I also am the duly appointed patient care ombudsman in the captioned chapter 11 cases (the "**Cases**"). I submit this affidavit (the "**Affidavit**") on behalf of SAK in support of the Application[2] for entry of an Order, pursuant to §§ 105, 333 and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the retention and employment of SAK, as my medical operations advisor *nunc pro tunc* to January 21, 2020.

2.  Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

[2] Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Application

## QUALIFICATIONS OF SAK MANAGEMENT SERVICES, LLC

3. SAK has substantial experience in managing and turning around distressed health care businesses. SAK has served as medical operations advisor in connection my appointment as patient care ombudsman in the following cases: *In re New York Westchester Square Medical Center*, Chapter 11 Case No. 06-13050 (Bankr. S.D.N.Y.); *In re Brotman Medical Center, Inc.*, Chapter 11 Case No. 07-19705 (Bankr. C.D. Cal.); *In re Johnny Kumar Jain, M.D.* Chapter 11 Case No. 10-24550 (Bankr. C.D. Cal.); *In re Meridian Behavioral Health LLC,* Chapter 11 Case No. 11-10860 (Bankr. S.D.N.Y.); *In re Christ Hospital, a New Jersey not-for-profit corporation*, Case No. 12-12906 (Bankr. D. N.J.); *In re ICL Holding Company Inc.*, *et al.,* Case No. 12-13319 (Bankr. D. Del.); *In re Horizon Health Center, Inc.*, Case No. 13-26348 (Bankr. D.N.J.); *In re Fairmont General Hospital, Inc., et al.*, Case No. 13-01054 (Bankr. N.D. W.Va.) and *In re Curae Health, Inc.*, Case No. 18-05665 (Bankr. M.D. Tenn.).

4. SAK's staff consists of experienced and licensed nurses, social workers and dieticians.

## SAK'S DISINTERESTEDNESS

5. To the best of my knowledge and information after due inquiry, except as disclosed herein, SAK has no connections with the Debtors, their creditors, any other party in interest herein or their respective attorneys or professionals, and does not hold or represent any entity having an adverse interest in connection with these Cases, except as disclosed herein. For so long as SAK is employed as medical operations advisor to the patient care ombudsman in these Cases, and absent further order of this Court, SAK will not accept employment from any other entity in connection with these Cases.

6. In connection with my appointment as patient care ombudsman and in order to prepare this Affidavit, SAK completed a conflicts check by comparing those names set forth on **Exhibit 1** (the "**Potentially Interested Parties**") to SAK's clients and other connections. This inquiry revealed that SAK has relationships with certain of the Potentially Interested Parties in matters unrelated to the Debtor or these Cases, which relationships are disclosed on **Exhibit 2**.

7. SAK specializes in the distressed management of health care businesses and may have relationships with parties in interest not currently known to me who may be creditors of the Debtors in matters unrelated to the Debtors or these Cases. To the extent that SAK discovers any such information, SAK will promptly disclose such information to the Court on notice to creditors and the United States Trustee.

8. Based on the foregoing and except as set forth herein, SAK, insofar as I have been able to ascertain based on the information currently available to me, does not represent any interest adverse to the Debtors in the matters upon which SAK is to be engaged. To the best of my knowledge, information and belief, SAK is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that SAK:

(a) is not a creditor, equity security holder or insider of the Debtors;

(b) is not, and was not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

(c) does not have an interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

9. No member or employee of SAK is a relative of the Honorable Gregory R. Schaaf, the Bankruptcy Judge presiding over these Cases or the United States Trustee.

## SCOPE OF EMPLOYMENT

10. The professional services SAK is expected to provide include, but shall not be limited to, the following:

- (a) Conducting interviews of patients, family members, guardians and facility staff as required;

- (b) Reviewing license and governmental permits;

- (c) Reviewing adequacy of staffing, supplies and equipment;

- (d) Reviewing safety standards;

- (e) Reviewing facility maintenance issues or reports;

- (f) Reviewing patient, family, staff or employee complaints;

- (g) Reviewing risk management reports;

- (h) Reviewing litigation relating to the Debtors;

- (i) Reviewing patient records;

- (j) Reviewing any possible sale, closure or restructuring of the Debtors and how it impacts patients;

- (k) Reviewing other information, as applicable to the Debtors and these Cases, including, without limitation, patient satisfaction survey results, regulatory reports, utilization review reports, discharged and transferred patient reports, staff recruitment plans and nurse/patient/acuity staffing plans;

- (l) Reviewing various financial information, including, without limitation, current financial statements, cash projections, accounts receivable reports and accounts payable reports to the extent such information may impact patient care; and

- (m) Assisting the Ombudsman with such other services as may be required under the circumstances of these Cases, including any diligence or investigation required for the reports to be submitted by the Ombudsman.

## PROFESSIONAL COMPENSATION

11. SAK intends to apply for compensation for professional services rendered in connection with these Cases subject to the approval of the Court and in compliance with

-4-

applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and Orders of the Court, plus reimbursement of actual, necessary expenses and other charges incurred.

12. The rates for professionals that SAK anticipates being asked to provide services to assist me in discharging my duties as a bankruptcy court-appointed patient care ombudsman represent a discount from SAK's standard rates for all other work. SAK historically has agreed to apply such discounted rates in connection with matters in which SAK is retained to assist me in discharging my duties as a bankruptcy court-appointed patient care ombudsman. The hourly rates applicable to the principal professionals proposed to be employed are:

| Professional | Rate Per Hour |
| --- | --- |
| Suzanne Koenig | $400 |
| Joyce Ciyou | $375 |
| Anzhelika Shatrov | $375 |
| Richard Snider | $375 |
| Danielle Prosperini | $100 |

13. In addition, other professionals employed by SAK may be requested to provide services on an as needed basis. Generally, SAK's hourly rates for all of its professionals range between $175 and $450 on a non-discounted basis. SAK's hourly rates are subject to periodic adjustments to reflect economic and other conditions. The hourly rates will likely be adjusted upward as of January 1, 2021 and annually thereafter.

14. The hourly rates set forth above, although discounted from its standard rates, are SAK's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate SAK for its work and cover fixed and routine overhead expenses, but also in recognition of the sometimes special requirements of health care-related bankruptcy cases in which I am appointed as patient care ombudsman.

15. It also is SAK's policy to charge its clients in all areas of practice for all expenses incurred in connection with the client's case, including, among other things, mail and express mail charges, special or hand delivery charges, photocopying charges, courier services, overnight delivery services, docket and court filing fees, telecommunications, travel expenses, expenses for working meals, computerized research and any other incidental costs advanced by the firm specifically for these matters, at the rates commonly charged for such costs to other SAK clients.

16. In addition, SAK intends to seek compensation for all time and expenses associated with its retention as a professional, including the preparation of this Application, the Koenig Affidavit, and related documents, as well as any monthly, interim or final fee applications.

17. Other than as set forth herein, there is no proposed arrangement to compensate SAK other than as may be applicable under the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court or Orders entered by the Court in these Cases.

18. SAK has not shared, nor agreed to share (a) any compensation it may receive with any other party or person, or (b) any compensation another person or party has received or may receive.

19. Finally, consistent with Part D(1) of the UST Guidelines, I state as follows:

| Questions required by Part D(I) of 2013 UST Guidelines: | Answer: |
|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? | In accordance with an agreement reached with the U.S. Trustee's office some time ago regarding billing rates for patient care ombudsman engagements the rates set forth herein for SAK are discounted from SAK's standard hourly rates. |

36601442.2 03/04/2020

-7-

| | |
|---|---|
| Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? | No. |
| If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and reasons for the difference. | SAK was not selected to provide services for the patient care ombudsman until after her appointment by the U.S. Trustee on January 21, 2020, *i.e.*, post-petition. SAK's rates are consistent with those pre-petition and what they have charged for providing services to the patient care ombudsman in past representations. |
| Has your client approved your respective budget and staffing plan, and if so, for what budget period? | The patient care ombudsman and SAK expect to develop a prospective budget and staffing plan, recognizing that in the course of these Cases, there may be unforeseeable fees and expenses that will need to be addressed. |

20. By reason of the foregoing, I believe that SAK is eligible to be retained as my medical operations advisor in the Cases pursuant to §§ 105, 330 and 333 of the Bankruptcy Code and the applicable Bankruptcy Rules.

I declare under penalty of perjury under the laws of the United States of America and the State of Illinois that the foregoing is true and correct.

Executed this 28th day of February, 2020 at Chicago, Illinois.

**SAK Management Services LLC**

*/s/ Suzanne A. Koenig*
Suzanne A. Koenig

Subscribed and sworn to before me on this 28th day of February, 2020.

*/s/ Danielle Prosperini*
Notary Public

My Commission Expires:

DANIELLE PROSPERINI
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
August 09, 2021

**EXHIBIT 1 - Potentially Interested Parties**

**Debtors**
- Americore Holdings, LLC
- Americore Health, LLC
- Americore Health Enterprises, LLC
- Ellwood Medical Center, LLC
- Ellwood Medical Center Real Estate, LLC
- Ellwood Medical Center Operations, LLC
- Pineville Medical Center, LLC
- Izard County Medical Center, LLC
- Success Healthcare 2, LLC
- St. Alexius Properties, LLC
- St. Alexius Hospital Corporation #1

**Debtors' Prepetition Secured Creditors**
- The Third Friday Total Return Fund, L.P.
- Pelorus Fund, LLC
- Penn Med LLC
- Toby Mug Financing, LLC
- Dell Financial Services LLC
- Air Liquide Healthcare America Corp.
- App Group International, LLC
- BQR Capital, LLC
- Gibbs Technology Leasing – HG1, LLC
- HOP Capital
- EIN CAP, Inc.
- HMFCG Inc.
- Med One Capital Funding, LLC
- Republic Bank
- Titan Loan Servicing, LLC
- Koven Omens Trust Dated June 26, 2015
- The McNee Family Trust Dated 1/17/08
- Trust of R. and G. Glitz Dated 12/11/07
- Leyda Bequer, Trustee of Bequer Trust
- Corporation Services Company
- CT Corporation Systems

**Insiders**
- Grant White

**Debtors' 30 Largest Unsecured Creditors**
- Baxter Regional Medical Center
- Healthland CPSI
- Beckman
- Midwest Emergency Dept. Services, Inc.

- AHN Emergency Group of Ellwood, LTD
- Jones Day
- Horizon Mental Health
- Western Healthcare
- Calico Rock Med, LLC
- Dinakar Golla
- Philips Healthcare
- Johnson & Johnson Healthcare Sys.
- Aya Healthcare Inc.
- Specialists in Anesthesia PC
- Bard C.R. Inc.
- McKesson Medical Surgical
- Sysco
- Palamerican Security, Inc.
- Faultless
- Nurses PRN
- Central Tox LLC
- White River Planning and Development
- Correct Care, Inc.
- Medline Industries
- Ortho Clinical Diagnostics
- Missouri Dep't of Higher Education and Workforce Develop.
- Baxter Regional Medical Center-Lab Cultures
- The Talbot Group, LLC
- Western Healthcare

**Debtors' Known Equity Security Holders and Officers**
- Grant White, Manager of Debtors
- Mosc Enterprises, LLC
- White Management, Inc.
- Americore Capital, LLC

**Judges Sitting in the United States Bankruptcy Court for the Eastern District of Kentucky**
- Hon. Tracey N. Wise
- Hon. Gregory R. Schaaf

**Office of the United States Trustee—Region 8, Lexington, KY Office**
- John Daugherty
- Rachelle C. Dodson
- Chris Dupont
- Carol Ingle
- Bradley M. Nerderman
- Tracy Walters
- Carmen Webb
- Todd Wright

36601442.2 03/04/2020

## **EXHIBIT 2**

| Name of Entity Searched | Brief Description of Relationship |
|---|---|
| Medline Industries Inc. | SAK operates certain skilled nursing facilities and Medline Industries Inc. is a vendor for certain of such facilities. |
| Sysco Memphis, LLC Sysco of Memphis | SAK operates certain skilled nursing facilities and Sysco. is a vendor for certain of such facilities. |