This email is addressed to the entire Trustee Team, including the accountants from Glass Ratner, the legal counsel from Baker Law and the patient care ombudsman. Indeed, it is addressed to every person who was appointed by the Federal Bankruptcy Court (Honorable Judge Gregory Schaaf) for the purpose of administering Case Number 6:19-bk-61608, re: Americore Holdings, LLC.

I write this email on my own behalf because I believe it to be in the interests of the Hospital's 400 employees. It is being copied to the Trustee Team, the lead counsel of the Creditors' Committee as well as to all Hospital Managers, to the General Counsel for the Missouri Hospitals Association (MHA), to the Mayor of the City of St. Louis (Mayor Lyda Krewson) and also to our Ward's Alderwoman (Cara Spencer).

Dear Trustee Team,

1. **REMOTE WORKING.** First and foremost, and I am sure you are all fully aware of this already, but it is extremely important that remote working status is observed. It is the recommended strategy based on several federal agencies and experts. The MHA implemented remote status last Tuesday. Per the MHA *"The best course would be to notify the visiting personnel of the concerns and request further meetings be conducted remotely. If they do not consent, [the Hospital] should file a motion on an emergency basis seeking the court's order regarding remote meetings being mandatory for the time being."* I am very optimistic that the Trustee Team will respect this position and that no such emergency motion will be necessary. Therefore, anybody flying into St. Louis from a high-infection state (which does include every member of the Trustee Team as far as I am aware, but this rule applies to every human being, and not just the Trustee Team), and who is planning to visit St. Alexius Hospital, will be barred from entering until the Hospital Administration deems otherwise. They may wait in their hotel room for such a decision to be made, but it may be simpler to communicate your travel plans ahead of time (say > 24 hours before arriving) to see if entry to the Hospital will be allowed or not. More than likely, if someone does fly in from a high-infection state, they will be asked to self-quarantine locally for 14 days, before being allowed to enter the Hospital. Please be assured that these precautions are not to be taken personally. They are purely for social distancing purposes in order to prevent infections, especially among the elderly and immunocompromised patients who frequent our Hospital.
2. **REPORTS.** As you are all aware, the U.S. trustee is responsible for monitoring the debtor in possession's operation of the business and the submission of operating reports and fees. The Trustee Team has been onsite for a full 4 weeks

now and I do need to ask when we should expect to see the operating reports, including an Income Statement, a Balance Sheet, a Statement of Cash Flows, Budgets by Department and all Notes to Financial Statements (to provide additional information pertaining to the Hospital's operations and financial position). Under my leadership, I strongly recommend that the Hospital maintains an atmosphere of transparency and clear communication in order to function efficiently. Hence, these financial statements should be made available to the Hospital Leadership, and to the Hospital Managers, as soon as they are available. It is of great importance to the local community, to the City of St. Louis and to the State of Missouri, that St. Alexius Hospital survives, ideally into the hands of a reputable operator. I will continue to do everything in my power to ensure this happens.

3. **PAYING VENDORS.** When the Trustee Team tells one of my Hospital Managers that they understand our needs, then their actions need to reflect those words. Over the past 4 weeks, many of my managers have had purchase orders (including COVID-19 related ones) which often take 48-72 hours to get funded at best, and can take 2 weeks to get funded at worst. This results in the vendor not being able to deliver supplies until much later than they are urgently needed. In other words, a terrible delay in the delivery of urgent medical supplies ensues. If we cannot afford them, then we need to state that we cannot afford them, but the managers should not be led to believe that a payment will be made a lot earlier than it is actually done. Let's communicate a little better than we have been doing.

4. **BANK AUTHORIZATION CONTINGENCY.** Since the Trustee Team arrived, I and another Manager at the Hospital were [quite appropriately] removed from being a signer to the bank accounts. However, I have since learned that only one person (Carol Fox) has replaced me as signer and as authorizer of wire transfers. God forbid anything should happen to Ms. Fox, but would it not be prudent to have at least two signers and two wire-transfer authorizers on the account? For example, a suitable candidate would be Michael Thatcher, the acting CFO. Why is he not a check-signer? Please may I get an explanation for this apparent lack of bank authorization contingency planning? Or rather, please reassure me that a contingency plan does exist and elaborate on that. Furthermore, it is my fervent hope that the Trustee Team will consider granting Hospital Leadership at least viewing access to the bank accounts, so that intelligent discussions can be had regarding critical issues affecting the Hospital.

5. **SECURING DATA.** Why were the previous CEO's and the previous CNO's emails not evaluated by the Trustee Team? Surely it should be standard operating

procedure to secure all those emails to discover what happened prior to the bankruptcy petition. Please explain this lack of research.

6. **WORKING WITH LEADERSHIP, INSTEAD OF AGAINST LEADERSHIP.** It was our understanding that a Chapter 11 trustee is supposed to work **in concert with** the Hospital's administration (meaning the St. Alexius Hospital leadership), rather than doing whatever the Trustee wants, regardless of our wishes and objections. For example,
    a. the suspension of the Hyperbaric Chamber operations will risk putting many patients at risk for preventable amputations and thus placing the Hospital into great legal exposure, has been vehemently opposed by me and the managers, even though we have repeatedly provided data that proves its profitability. Why are we being ignored?
    b. Another example is the insouciant reappointment of Tom Saggio as Director of Quality, who bluntly admitted to us (Carol Fox, Dr. Kraeger and myself) in an in-person interview that he was the willful perpetrator of the IJ (Immediate Jeopardy Investigation by the State) being reported directly to the State instead of first to the CNO. I find this behavior seriously at odds with the position he is now being offered. I learned of his reappointment from HR and I do not know who made this offer to him, but I'm having to guess that it was Ms. Fox. When I spoke with the Head of Security this morning, he told me that he was not informed by anyone of this reappointment, and the last he heard was that Mr. Saggio was not allowed to enter the Hospital. I do not know whether or when anyone was going to notify Security of this change of plan.
    c. The Lutheran School Of Nursing came up with a wonderful plan to 'borrow' over $200,000 from a Foundation Grant to assist with nursng student hardship funding, which would result in no liens, contracts or obligations from the Hospital. As CEO, I approved this after looking at the details, but we are still awaiting a decision by the Trustee Team. Why is it taking so long to analyze something that should take 15 minutes of thinking?
    d. My suggestion that St. Alexius accept transfers from other area hospitals with regard to non-COVID overflow patients during the imminent inpatient crisis, although well-received by the Presidents of both Mercy and BJC, was demurred by Ms. Fox during a conference call on March 19th. It was both obviously and repeatedly stated that this suggestion would never be 'cashflow negative' for St. Alexius, and quite to the contrary, would both serve as a valuable resource for our community as well as help the Hospital financially in a considerable way.

7. **FINANCIAL ADVICE AND RECOMMENDATIONS.** I would like to suggest that the Trustee Team continue to offer their financial advice and to make formal recommendations to Hospital Leadership but not to obstruct operations that are morally right, legally necessary and financially viable, such as the Hyperbaric chamber (which by the way has negligible to zero risk of incurring COVID transmission). Similarly, the Trustee Team should serve to keep the Hospital Leadership informed and apprised of all suggestions and developments, including the marketing of the Hospital for 363 Auction. The Hospital Leadership should no longer be obstructed in providing good quality patient care in a financially viable and legally sound manner.

Finally, I wish to reiterate that I send this email on my own, as CEO of the Hospital. I have not consulted with any other individual with regard to the crafting of this letter. If there are to be adverse repercussions as a result of this letter, they must only be directed towards me and nobody else in the Hospital.

Sincerely,

Sonny Saggar, M.D.
Chief Executive Officer
St. Alexius Hospital