IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| Americore Holdings, LLC, *et al.*,[1] ) | |
| ) | Case No. 19-61608-grs |
| *Debtors*. ) | |
| ) | Jointly Administered |
| ) | |
| _____ ) | Hon. Gregory R. Schaaf |

### MOTION OF ALLIED BENEFIT SYSTEMS, INC. TO COMPEL DEBTOR TO ASSUME OR REJECT ADMINISTRATIVE SERVICES AGREEMNT AND FOR RELATED RELIEF

ALLIED BENEFIT SYSTEMS, INC. ("Allied"), by and through its undersigned counsel, hereby moves this Court for the entry of an order, pursuant to section 365(d)(2) of the Bankruptcy Code, compelling Debtor, St. Alexius Hospital Corporation #1 (the "Debtor") to immediately assume or reject its Administrative Services Agreement with Allied dated April 1, 2019 (the "Agreement"), and for related relies. In support thereof, Allied respectfully states as follows:

**Introduction**

1. Allied is timely performing all of its obligations under its Agreement with the Debtor. The Trustee is not. Namely, the Trustee has failed to timely fund requests from Allied for the payment of claims of plan members under its self-funded health plan. The Trustee's failure to timely fund these requests results in the accrual administrative claims of Allied and the Debtor's healthcare plan members. As of the filing of this Motion, Allied's post-petition claim has grown to an amount of not less than $63,456.82. In the event that immediate relief does not issue from

---

[1] The Debtors in these jointly administered Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses: Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

1

this Court, Allied's administrative claim will continue to grow while Allied is precluded from taking any action to terminate its executory contract with the Debtor. In other words, Allied will be required to continue to honor its obligations to the Debtor – at great expense – without assurance from the Trustee that Allied will be made whole.

2. As a result, Allied requests the immediate entry of an Order compelling the Trustee to assume or reject the Debtor's Agreement with Allied, or, in the alternative, requiring the Trustee to immediately cure existing post-petition defaults and honor its post-petition obligations under the Agreement pending the Trustee's final decision on whether to assume or reject the Agreement.

**Background**

3. On December 31, 2019 (the "Petition Date"), the Debtor and its debtor affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

4. On or around February 20, 2020, Carol Fox was appointed to serve as Chapter 11 Trustee for the Debtors and continues to serve in that capacity today.

5. The Debtor and Allied are parties to the Agreement, pursuant to which Allied agreed to provide services as a third-party administrator with respect to the Debtor's self-funded group health plan, including the processing of healthcare claims of the Debtor's plan members, in exchange for the payment of fees as outlined in section 3 of the Agreement and Exhibit B thereto. A true and accurate copy of the Agreement is attached hereto as **Exhibit A**.

6. The Debtor's obligations under the Agreement include the funding of healthcare claims, as follows:

> The Employer shall provide funds to be used to make Benefit Plan payments to, or on behalf of, plan participants as funds are needed to cover such payments. It shall be the Employer's responsibility to provide funds sufficient to cover Benefit Plan Payments. The Claims Processor shall not be liable for provider/facility charges claimed as

> a result of purported lost discounts, or for any other expenses incurred as a result of purported lost discounts.

**(Exhibit A, ¶ 6).**

7. The Agreement further provides that the Debtor's failure to fund such healthcare claims within five (5) business days' written notice is grounds for termination of the Agreement:

> [I]f the Employer fails to respond to a request by the Claims Processor to provide or make available funds for Benefit Plan payments or other payments processed by the Claims Processor pursuant to this Agreement, the Claims Processor may immediately suspend providing administrative services under this Agreement until the requested funds have been provided or made available. The Claims Processor may also terminate this Agreement immediately if the Employer fails to provide requested funds within five (5) business days of written notice by the Claims Processor.

**(Exhibit A, ¶ 10).**

8. The Debtor is the sole payor of its self-funded plan, and Allied has no obligation under the Agreement to pay claims of plan members which are unfunded by the Debtor.

9. Following the Petition Date, through January of 2020, the Debtor continued open communication with Allied and assured Allied that funding requests for the payment of plan members' claims would be honored on a weekly basis. The Debtor was current on its funding obligations under the Agreement through January 30, 2020.

10. However, beginning in February of 2020, the Debtor became less responsive to Allied, and has become increasingly delinquent in the timeliness of its payments to Allied in response to funding requests. By way of example, a funding request submitted by Allied to the Debtor on February 10, 2020 was not paid until March 10, 2020.

11. The failure by the Debtor to timely remit funding to Allied results in the late payment or (if funding is never received) the non-payment of the healthcare claims of the Debtor's plan members. Such delinquency in funding not only jeopardizes any applicable PPO discounts

with respect to the claims of in-network providers, but also exposes the plan members to balance billing by all providers for the payment of these claims themselves.

12.     Additionally, the failure of the Debtor to fund these claims promptly may nullify any applicable claim reimbursements from the Debtor's stop loss carrier, the policy of which expires on March 31, 2020, with a three-month run-out period (this, of course, presupposes that the Debtor pays Allied's March invoice in the amount of $56,853.56– which includes the bundled monthly stop loss premium – promptly).

13.     The Debtor's plan members currently utilize prescription cards through CVS Caremark under the Debtor's plan as an accommodation. These prescription cards allow plan members to obtain their drug prescriptions at the pharmacy without having to pay the cost of the drugs at the point of sale. Instead, plan members are only responsible for any applicable cost sharing, such as a co-pay.

14.     However, in order for plan members to use their prescription drug cards, Allied must pay for the cost of the drugs to CVS Caremark itself and collect reimbursement from the Debtor at a later time. As such, Allied bears full exposure to CVS Caremark for any failure to fund by the Debtor.

15.     As of March 2020, the following funding requests have been made by Allied, which remain unpaid by the Debtor:

| Date | Amount |
|---|---|
| 2/24/2020 | $75,632.19[2] |
| 3/2/2020 | $66,659.19 |
| 3/9/2020 | $61,972.49[3] |
| 3/16/2020 | $35,311.12 |
| 3/23/2020 | $54,623.95[4] |

---

[2] This amount includes $28,999.19 in unfunded sums for prescription-related transactions by the Debtor's employees.
[3] This amount includes $15,179.96 in unfunded sums for prescription-related transactions by the Debtor's employees.
[4] This amount includes $19,277.67 in unfunded sums for prescription-related transactions by the Debtor's employees.

16. On March 13, 2020, Allied sent the Trustee a letter requesting the Trustee's written commitment that the Debtor: (i) intends to immediately bring itself current with respect to its obligations under the Agreement; and (ii) will comply with all of its obligations under the Agreement, including, but not limited to its obligation to fund claims within 5 days of a funding request, on a going-forward basis. A true and accurate copy of this March 13, 2020 correspondence is attached hereto as **Exhibit B**.

17. As of the filing of this Motion, Allied has received no response from the Trustee to the March 13, 2020 correspondence or to subsequent attempts to obtain a response.

## Jurisdiction

18. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and 1334. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

19. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

20. The statutory predicate for the relief sought herein is section 365 of the Bankruptcy Code and rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

## Relief Requested

21. By this Motion, Allied requests the entry of an Order: (i) compelling the Trustee's immediate assumption or rejection of the Agreement; and (ii) in the event of assumption, requiring the Trustee: (a) to cure all existing defaults or provide adequate assurance that the Trustee will promptly cure such defaults; (b) to compensate or provide adequate assurance that the Trustee will promptly compensate Allied for any actual pecuniary loss resulting from the Debtor's defaults; and (c) to provide adequate assurance of future performance under the Agreement; or, in the alternative (iii) in the event of rejection, authorizing Allied to take any and all actions necessary and appropriate to effectuate the Termination of the Agreement; or, in the alternative to immediate

assumption/rejection (iv) requiring the Trustee to immediately cure all post-petition defaults and perform all of its obligations under the Agreement pending the Trustee's final decision on whether to assume or reject the Agreement.

## Basis for Relief

22. Pursuant to section 365(d)(2) of the Bankruptcy Code, "[i]n a case under Chapter … 11 … the trustee may assume or reject an executory contract … at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2).

23. Pursuant to section 365(b)(1) of the Bankruptcy Code, if there has been a default under the Agreement, the Trustee may not assume the agreement unless the Trustee:

> **(A)** cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
> **(B)** compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> **(C)** provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

24. The Debtor's slow payment and/or non-payment of plan members' claims constitutes a material breach of its obligations under the Agreement.

25. As of March 20, 2020, unfunded claims of plan members which accrued prior to the Petition Date total $88,927.27. Unfunded claims of plan members which accrued after the Petition Date presently total $150,647.72 and will continue to grow.

26. Additionally, Allied continues to be liable to CVS Caremark for prescription drug purchases of the Debtor's plan members on a daily basis. To date, Allied has incurred unfunded prescription drug claims which accrued after the Petition Date totaling $63,456.82.

27. Finally, the Debtor's breach of its obligations under the Agreement places Allied in the untenable position of being required to continue to administer claims under the Debtor's self-funded health plan for free, while unfunded claims (including administrative claims of plan members and Allied) continue to grow, and Allied is unable to terminate the Agreement pending the Debtor's decision whether to assume or reject the Agreement. Without the entry of an Order requiring the Debtor to immediately assume or reject the Agreement, Allied will be harmed as the Debtor continues to accept the benefits of the Agreement without abiding by its obligations to Allied thereunder.

28. Allied believes that the parties' continued performance under the Agreement is of mutual benefit to the Trustee, the Debtor's estate and to Allied. By continuing to perform, the Trustee will ensure that: (i) administrative claims of employees do not continue to accrue on account of healthcare insurance premiums that were likely deducted from payroll but went unfunded by the Debtor; and (ii) the administrative claim of Allied does not continue to grow on account of accrued and unfunded fees and prescription card liabilities covered by Allied for the benefit of the Debtor.

29. However, unless the parties return to the state of affairs in existence prior to the Petition Date, Allied cannot continue to perform under the contract.

30. As a result, Allied respectfully requests the entry of an Order: (i) compelling the Trustee's immediate assumption or rejection of the Agreement; and (ii) in the event of assumption, requiring the Trustee: (a) to cure all existing defaults or provide adequate assurance that the Trustee will promptly cure such defaults; (b) to compensate or provide adequate assurance that the Trustee will promptly compensate Allied for any actual pecuniary loss resulting from the Debtor's defaults; and (c) to provide adequate assurance of future performance under the Agreement; or, in the alternative (iii) in the event of rejection, authorizing Allied to take any and all actions necessary and appropriate to effectuate the Termination of the Agreement.

31. In the event that this Court does not require the Trustee to immediately assume or reject the Agreement, Allied alternatively requests that the Trustee be required to immediately cure all post-petition defaults and perform all of its obligations under the Agreement pending the Trustee's final decision on whether to assume or reject the Agreement. *See In re Entertainment, Inc.*, 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998)("§ 365(d) requires that a debtor perform its obligations under a lease or executory contract pending assumption or rejection.")

WHEREFORE, ALLIED BENEFIT SYSTEMS, INC. respectfully requests the entry of an Order: (i) compelling the Trustee's immediate assumption or rejection of the Agreement; and (ii) in the event of assumption, requiring the Trustee: (a) to cure all existing defaults or provide adequate assurance that the Trustee will promptly cure such defaults; (b) to compensate or provide adequate assurance that the Trustee will promptly compensate Allied for any actual pecuniary loss resulting from the Debtor's defaults; and (c) to provide adequate assurance of future performance under the Agreement; or, in the alternative (iii) in the event of rejection, authorizing Allied to take

any and all actions necessary and appropriate to effectuate the Termination of the Agreement; or, in the alternative to immediate assumption/rejection (iv) requiring the Trustee to immediately cure all post-petition defaults and perform all of its obligations under the Agreement pending the Trustee's final decision on whether to assume or reject the Agreement.

Dated:  March 24, 2020

    Respectfully submitted,

    DINSMORE & SHOHL LLP

    /s/ Ellen Arvin Kennedy
    Ellen Arvin Kennedy, Esq.
    John M. Spires, Esq.
    100 West Main Street, Suite 900
    Lexington, KY 40507
    Telephone: (859) 425-1000
    Facsimile: (859) 425-1099
    Email: ellen.kennedy@dinsmore.com
          john.spires@dinsmore.com
    *Counsel for Allied Benefit Systems, Inc.*

## NOTICE

PLEASE TAKE NOTICE that Movant, Allied Benefit Systems, Inc., hereby requests that the Court, at its convenience, set this matter for hearing as soon as is practicable.

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24th day of March, 2020, a true and accurate copy of the foregoing was served via this Court's CM/ECF noticing system upon all parties receiving notice in this case.

    /s/ Ellen Arvin Kennedy
    *Counsel for Allied Benefit Systems, Inc.*

16185593.1