# BURKE, WARREN, MACKAY & SERRITELLA, P.C.

330 NORTH WABASH AVENUE
SUITE 2100
CHICAGO, ILLINOIS 60611-3607
TELEPHONE (312) 840-7000
FACSIMILE (312) 840-7900
www.burkelaw.com

Brian P. Welch
Direct Dial Number
(312) 840-7117
bwelch@burkelaw.com

March 13, 2020

**Via E-Mail**
Jimmy D. Parrish
Baker & Hostetler LLP
jparrish@bakerlaw.com
*Counsel to Carol L. Fox, Chapter 11 Trustee for St. Alexius Hospital Corporation #1*

    Re:   *In re Americore Holdings, LLC, et al.*, Bankr. E.D. Ky. 19-61608
           **Debtor**: St. Alexius Hospital Corporation #1 (the "Debtor")

Dear Mr. Parrish:

We represent Allied Benefit Systems, Inc. ("Allied"). Allied and the Debtor are parties to an Administrative Services Agreement Group No A19145 dated April 1, 2019 (the "Agreement"). A true and accurate copy of the Agreement is enclosed with this correspondence for your reference.

Pursuant to the Agreement, Allied agreed to provide services as a third-party administrator with respect to the Debtor's self-funded group health plan, including the processing of healthcare claims of the Debtor's plan members. The Debtor's obligations under the Agreement include the funding of these healthcare claims, as follows:

> The Employer shall provide funds to be used to make Benefit Plan payments to, or on behalf of, plan participants as funds are needed to cover such payments. It shall be the Employer's responsibility to provide funds sufficient to cover Benefit Plan Payments. The Claims Processor shall not be liable for provider/facility charges claimed as a result of purported lost discounts, or for any other expenses incurred as a result of purported lost discounts.

(Agreement, 6). The Agreement further provides that:

> [I]f the Employer fails to respond to a request by the Claims Processor to provide or make available funds for Benefit Plan payments or other payments processed by the Claims Processor pursuant to this Agreement, the Claims Processor may immediately

BURKE, WARREN, MACKAY & SERRITELLA, P.C.

> suspend providing administrative services under this Agreement until the requested funds have been provided or made available. The Claims Processor may also terminate this Agreement immediately if the Employer fails to provide requested funds within five (5) business days of written notice by the Claims Processor.

(Agreement, ¶ 10). As such, the Debtor is the sole payor of its self-funded plan.

On December 31, 2019 (the "Petition Date"), the Debtor and various affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing various Chapter 11 cases in the United States Bankruptcy Court for the Eastern District of Kentucky. We understand that, on or around February 20, 2020, Carol Fox was appointed to serve as Chapter 11 Trustee for the Debtor (the "Trustee") and continues to serve in that capacity today. Following the Petition Date, through January 2020, the Debtor continued open communication with Allied, and assured Allied that funding requests for the payment of employee claims would be honored on a weekly basis, and the Debtor remained current on its funding obligations through January 30, 2020.

However, beginning in February of 2020, the Debtor became less responsive to Allied, and has become increasingly delinquent in the timeliness of its payments to Allied in response to funding requests. By way of example, a funding request submitted by Allied to the Debtor on February 10, 2020 was not paid until March 10, 2020. The failure by the Debtor to timely remit funding to Allied results in the late payment or (if funding is never received) the non-payment of the healthcare claims of the Debtor's plan members. Such delinquency in funding not only jeopardizes any applicable PPO discounts with respect to the claims of in-network providers, but also exposes the plan members to balance billing by all providers for the payment of these claims themselves.

Of equal importance, the failure of the Debtor to fund these claims promptly may nullify any applicable claim reimbursements from the Debtor's stop loss carrier, the policy of which expires March 31, 2020, with a three-month run-out period (this, of course, presupposes that the Debtor pays Allied's March invoice – which includes the bundled monthly stop loss premium – promptly).

As of the service of this correspondence, additional requests which remain unfunded include:

| Date | Amount |
| --- | --- |
| 2/17/2020 | $15,745.57 |
| 2/24/2020 | $75,632.19[1] |
| 3/2/2020 | $66,659.19 |
| 3/9/2020 | $61,972.49[2] |

Additionally, the Debtor's plan members currently utilize prescription cards through CVS Caremark under the Debtor's plan as an accommodation. The prescription cards allow these plan members to obtain their drug prescriptions at the pharmacy without having to pay the cost of the drug at the point of sale. Rather, these plan members are only responsible for any applicable cost sharing, such as co-pays.

---

[1] This amount includes $28,999.19 in unfunded sums for prescription-related transactions by the Debtor's employees.
[2] This amount includes $15,179.96 in unfunded sums for prescription-related transactions by the Debtor's employees.

**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**

However, in order for the plan members to use their prescription drug cards, Allied must pay for the cost of the drugs to CVS Caremark itself and collect reimbursement from the Debtor on the back-end. As such, Allied bears full exposure to CVS Caremark for any failure to fund by the Debtor. To date, Allied's claim for unfunded prescription card amounts is $44,179.15, the entirety of which constitute expenses after the Petition Date.

By this letter, Allied requests that the Trustee provide her commitment, in writing, that the Debtor: (i) intends to immediately bring itself current with respect to its obligations under the Agreement; and (ii) will comply with all of its obligations under the Agreement, including, but not limited to its obligation to fund claims within 5 days of a funding request, on a going-forward basis. Allied believes that the parties' continued performance under the contract is of mutual benefit to all sides. By continuing to perform, the Trustee will ensure that: (i) administrative claims of employees do not continue to accrue on account of healthcare insurance premiums that were likely deducted from payroll but went unfunded by the Debtor; and (ii) the administrative claim of Allied does not continue to grow on account of accrued and unfunded prescription card liabilities covered by Allied for the benefit of the Debtor. However, unless the parties return to the state of affairs in existence prior to the Petition Date, Allied cannot continue to perform under the contract.

Thank you for your immediate attention to the matters set forth in this letter. If you have any questions whatsoever, please do not hesitate to contact me directly. We look forward to a successful resolution of the issues set forth herein.

Very truly yours,

By: /s/ Brian P. Welch

BPW/gb