**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION**

| | |
|---|---|
| IN RE:<br><br>AMERICORE HOLDINGS, LLC, *et al.*[1]<br><br>Debtors. | **Chapter 11<br>Jointly administered**<br><br>Case No. 19-61608 |
| ST. ALEXIUS HOSPITAL CORPORATION #1,<br><br>Plaintiff,<br><br>v.<br><br>JOVITA CARRANZA, in her capacity as Administrator for the U.S. Small Business Administration,<br><br>Defendants. | Adversary No. 20-_____ |

## COMPLAINT

St. Alexius Hospital Corporation #1 ("St. Alexius"), as a debtor (Case No. 19-61610) in the Chapter 11 cases being jointly administered under the lead case of *In re Americore Holdings, LLC* (St. Alexius, individually, the "Debtor" and collectively with the jointly administered cases, the "Debtors"), and by and through Carol L. Fox, the Chapter 11 Trustee ("Ms. Fox" or "Trustee"), files this Complaint against the United States Small Business Administration (the "SBA") acting through Jovita Carranza, in her capacity as the Administrator of the SBA (the "Administrator"), stating as follows:

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Further, pursuant to Local Rule 83.12, all matters arising under or arising in or related to cases arising under title 11 are referred to the Bankruptcy Court. *Amedisys, Inc., et al. v. Nat'l Century Fin. Enters., Inc. (In re Nat'l Century Fin. Enters., Inc.),* 423 F.3d 567, 573 (6th Cir.2005) (district courts may refer title 11 cases and related cases to bankruptcy courts). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding. 28 U.S.C. § 157(b)(2).

2. The Debtor consents to entry of final orders by this Court in this adversary proceeding.

## PARTIES

3. The Debtor is a for-profit business corporation organized under the laws of Missouri and located in St. Louis, Missouri.

4. The Administrator can sue and be sued on behalf of SBA in any court of general jurisdiction. 15 U.S.C. § 634(b).

## GENERAL BACKGROUND

5. On December 31, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code.[2]

6. On February 20, 2020 the Court entered an agreed order for the appointment of a Chapter 11 Trustee and directing the United States Trustee ("UST") to immediately appoint a Chapter 11 Trustee in the Debtors' jointly administered cases. (Doc. No. 258).

---

[2] All references to the "Bankruptcy Code" herein refer to Title 11 of the United States Code.

7.      On February 21, 2020 the UST filed its Notice of Appointment of Ms. Fox as Chapter 11 Trustee (Doc. No. 260), and on February 24, 2020 Ms. Fox filed her Notice of Acceptance of the appointment as Trustee (Doc. No. 269).

8.      The Trustee operates property of the Debtor in two locations. The primary location, St. Alexius Hospital (the "Hospital"), is located at 3933 S. Broadway, St. Louis, Missouri and offers 24/7 services in the south St. Louis area in a zip code with 28,000 residents whose annual median household income is less than $33,000. The Hospital offers an emergency department, intensive care unit, and radiology, cardiology, therapy, and psychiatric services as well as a senior care center.

9.      The Hospital employs over 300 employees most of whom live paycheck to paycheck. The Hospital primarily treats uninsured patients, and patients who rely on Medicare and Medicaid. The Hospital has served the St. Louis community since 1869.  Closure of the Hospital "would be devastating… both from a patient health and economic perspective." (Doc. No. 166, p. 13 ¶ 33).

10.     The Debtor's other property is located at 3535 S. Jefferson Avenue and houses the St. Alexius Primary Care Office and the Psychiatric Intensive Outpatient Program, in addition to the Lutheran School of Nursing, which has been training nurses for over 100 years. A medical pavilion at this location also serves as a medical office building for area physicians.

11.     Missouri has been under a "stay at home" order since April 6, 2020. The stay at home order was to remain in effect until Friday, April 24, 2020, but was further extended to May 3, 2020. A true and correct copy of Missouri's stay at home orders are attached hereto as **Exhibits A** and **B**.

12.     A significant portion of the Debtor's revenue is derived from outpatient procedures and non-essential office visits or medical procedures.  Following the issuance of Missouri's stay at home orders, non-essential medical procedures and office visits were postponed, rescheduled or canceled. These cancellations and deferrals have had—and are expected to continue to have— at least a 25%

3

4833-0742-0091.1

reduction in the Debtor's cash receipts alone, a substantial blow to a hospital that is still suffering the ill effects of prior management (Doc. No. 166, p. 2 ¶ 6).

13. On April 27, 2020, Missouri issued guidelines for a slow reopening of certain businesses until May 31, 2020, however, the Debtor anticipates significant delays in scheduling elective procedures and emergency room visits due to, among other things, nursing home lockdowns and the population's wariness to seek medical care in light of the COVID-19 pandemic.

14. On or about March 27, 2020, Congress enacted and the President signed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act").

15. The CARES Act included stimulus funds designed to assist businesses and ensure that American workers continue to be paid despite the economic impact of COVID-19 and social distancing measures.

16. Section 1102 of the CARES Act establishes the Paycheck Protection Program ("PPP") as a convertible loan program under § 7(a) of the Small Business Act, codified in 15 U.S.C § 636. While nominally called a "loan," PPP disbursements are treated as grants—and there are no repayment obligations—if, among other things, 75% of the PPP funds are used for payroll and wage expenses. Section 1102 of the CARES Act does not prohibit extending funds under the PPP to a chapter 11 debtor.

17. A party can obtain funds under the PPP by applying with any federally insured participating lender using an application form created by the SBA, and the SBA guaranties the loan.

18. On or about April 2, 2020, the SBA released forms of applications for the PPP. Other than completing the official form of application, there is no underwriting, and the Administrator is relying upon assistance of commercial lenders acting in concert with the SBA to administer the PPP.

19. Even though § 1102 of the CARES Act does not prohibit extending funds under

4

PPP to a chapter 11 debtor, the PPP application form asks whether "the Applicant . . . [is] presently involved in any bankruptcy" and then goes on to state that answering "yes" to that question means a request for PPP funds will not be approved.

20.      The Debtor is in urgent need of the funds provided under the PPP to pay nurses, physicians, and other clinical personnel critical to the safe and secure operations of the Debtor, and the treatment and care of patients, including those with the COVID-19 virus. The PPP funds are critical to the payroll obligations of the Debtor at this unprecedented historical time created by COVID-19.

21.      On April 9, 2020, the Trustee finalized the Debtor's application (the "Application") for the PPP funds to upload to the Debtor's commercial lender, U.S. Bank. A true and correct copy of the Application is attached as **Exhibit C.** However, U.S. Bank's online system did not permit the uploading of the Application at that time, rather, U.S. Bank first required responses to certain questions appearing on screen about the Debtor's business, and reported that it would thereafter invite applicants to log into the loan portal to upload documents. U.S. Bank acknowledged the Debtor's interest in the program on April 9, 2020 and indicated it would be in further communication.

22.      On April 13, 2020 U.S. Bank emailed Debtor's counsel thanking the Debtor for its "interest in partnering with U.S. Bank on the SBA Paycheck Protection Program (PPP)." A true and correct copy of the April 13, 2020 correspondence is attached as **Exhibit D.**

23.      Three days later, on April 16, 2020, U.S. Bank informed Debtor's counsel via email that:

> This morning, the Small Business Administration announced that it has exhausted the funds provided under the CARES Act and is seeking additional funding from Congress.

5

> Even with thousands of employees working around the clock, we were not able to satisfy the overwhelming demand from our customers. We remain optimistic that Congress will authorize additional funding. However, we will not be accepting new applications for the Paycheck Protection Program at this time.
>
> Our goal is to reopen the application if and when Congress approves additional funds. You will be notified via email of any updates.

A true and correct copy of the April 16, 2020 correspondence is attached as **Exhibit E.**

24. PPP funds are available on a first come, first served basis. The Debtor did not receive any PPP funds prior to their exhaustion under the first tranche of PPP funding.

25. On April 15, 2020, the SBA published in the Code of Federal Regulations an "interim final rule" implementing the PPP (the "First SBA Rule"). The First SBA Rule, like the CARES Act, says nothing about bankruptcy debtors being ineligible for the PPP.

26. Subsequently, on or about April 23, 2020, Congress enacted legislation making additional funds available for PPP.

27. On April 28, 2020, an SBA interim final rule (the "Second SBA Rule") became effective and applies to all applications submitted under the PPP through June 30, 2020, or until funds made available for the PPP are exhausted. A true and correct copy of the interim final rule is attached hereto as **Exhibit F**. The rule states that "[i]f the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." The stated basis for this rule is that the Administrator "determined that providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or non-repayment of unforgiven loans."

28. Although U.S. Bank advised it would provide email notification of updates regarding the availability of additional funding, no such update was received by the Debtor, the

Trustee, or the Trustee's counsel.

29. Understanding that additional funds had become available, the Debtor again sought to apply for the PPP loan with U.S. Bank. Attached hereto as **Composite Exhibit G** are three screenshots taken throughout the PPP application process. Approximately one minute after the Debtor responded "yes" to the question asking whether the Applicant or any owner of the Applicant was "presently …involved in any bankruptcy" the Debtor received a message stating that it was ineligible for the PPP through U.S. Bank.

30. Upon information and belief, U.S. Bank did not permit the Debtor to apply for a PPP loan because of the bankruptcy ineligibility provisions promulgated by the SBA.

31. The Debtor is an eligible borrower under PPP and seeks to ensure adequate funds are available under this second tranche of PPP funding once its discrimination claim under § 525(a) of the Bankruptcy Code is resolved and the Debtor's request for PPP funding is processed and the deadline for any and all administrative and judicial remedies has expired.

32. Specifically, other than presently being involved in a bankruptcy case, the Debtor meets the eligibility requirements under the PPP because: (i) the Debtor is a business with fewer than 500 employees; (ii) neither the Debtor nor any individual owning 20% or more of the equity of the Debtor is subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole; (iii) neither the Debtor nor any owner of the Debtor has been convicted, pleaded guilty, pleaded nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation including probation before judgment; and (iv) neither the Debtor, any owner of the Debtor, or any business owned or controlled by any of them, obtained a direct or guaranteed loan from the SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years causing a loss to the government.

7

4833-0742-0091.1

33. On May 3, 2020 the Trustee, through counsel, received correspondence from U.S. Bank indicating the digital application for the PPP was open for "eligible businesses." Attached hereto as **Exhibit H** is a true and correct copy of the email received from U.S. Bank. As such, on May 4, 2020, the Debtor again attempted to upload the Application to the PPP program, only to be deemed "ineligible" yet again based upon the Debtor's affirmative response to the question inquiring as to whether the Applicant was presently involved in a bankruptcy. Attached hereto as **Composite Exhibit I** are screenshots taken throughout the PPP application process, the last of which again deems the Debtor to be ineligible for the PPP.

34. The Trustee believes that U.S. Bank would be willing to advance funds to the Debtor through the PPP if the Application (or a subsequently amended application) can be processed and approved as meeting SBA's requirements.

35. The Trustee projects that the Debtor will run out of money to pay ongoing expenses by mid-July if it is unable to obtain funds from the PPP or other sources. This could result in the Debtor being forced to immediately close its business without sufficient funds for an orderly wind-down or to complete the sales process outlined in the Trustee's motion seeking approval of bidding procedures filed with the Court on April 24, 2020 (Doc. No. 482). This would cause irreparable harm to the Debtor, and to the St. Louis community served by the Debtor for over 100 years.

36. The timeline in the prior paragraph could accelerate if there is a widespread outbreak of COVID-19 in the Debtor's service area or another event that adversely affects the Debtor's cash flow.

37. Upon information and belief, the SBA has advised participating lenders that a borrower's status as a chapter 11 debtor means that the borrower is ineligible to participate in the PPP. This belief is based upon the Trustee's review of an e-mail exchange in which the SBA told Machias Savings Bank, a commercial lender in Maine, not to process a PPP application for a

8

4833-0742-0091.1

hospital debtor on the basis of that debtor's "yes" answer to question 1 on its PPP application, confirming it was presently involved in a bankruptcy case. A true and correct copy of the e-mail between the SBA and Machias Savings Bank is attached hereto as **Exhibit J**. This document was filed on the docket in an adversary proceeding initiated by that debtor on April 27, 2020. *See Penobscot Valley Hospital v. Carranza (In re Penobscot Valley Hospital)*, Adv. Pro. 20-1005, Docket Entry 1 (Bankr. D. Me.).

## COUNT I

### (Preliminary and Permanent Injunction)

38. The Debtor incorporates the allegations of each of the prior paragraphs as if set forth fully herein.

39. The Debtor is entitled to seek relief against the Administrator and all those acting in concert with her under Rule 65 of the Federal Rules of Civil Procedure, which is applicable to this action pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure.

40. There is no prohibition in the CARES Act or under § 7(a) of the Small Business Act prohibiting lending to debtors.

41. Moreover, the CARES Act specifically waives all underwriting considerations under § 7(a) of the Small Business Act.

42. The Debtor is likely to prevail on the merits of its claim for an injunction as well as for declaratory relief.

43. The balance of hardships favors issuance of preliminary injunctive relief. The inability to obtain PPP funds could cause the Debtor to suffer immediate and irreparable harm by forcing the Debtor to liquidate. Preliminary and permanent injunctive relief while this matter is pending will not harm the Defendant.

44. The Debtor seeks an order enjoining SBA or any commercial lender provided notice of the Court's order, *see* Fed. R. Civ. P. 65(d)(2)(C), from denying an application under PPP on the basis that the applicant is a debtor in bankruptcy and requiring that an application of the Debtor to participate in PPP be considered without the words "or presently involved in any bankruptcy" being considered.

45. Due to the "first come, first served" nature of PPP appropriations, the Debtor further seeks an order enjoining SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to the Application (or any subsequent application filed shortly hereafter) until the Debtor's claims in this Complaint are resolved.

## COUNT II

### (Declaratory Relief)

46. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

47. The Debtor is entitled to seek declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

48. Neither the CARES Act nor the Small Business Act prohibit disbursements under PPP to the Debtor based on its status as a debtor under chapter 11 of the Bankruptcy Code.

49. The Debtor has a legal right to apply for funds under PPP and to have its Application (or any amended application) considered on the same terms as other applicants without regard to its status as a debtor under chapter 11 of the Bankruptcy Code. By prohibiting U.S. Bank from processing the Application, and by prohibiting disbursements to debtors under PPP, the Administrator has exceeded her statutory authority.

50. The Debtor is entitled to a declaratory judgment that the CARES Act requires its Application to be considered on the same terms as other qualified businesses that are not presently debtors in cases arising under the Bankruptcy Code.

## COUNT III

### (11 U.S.C. § 525(a))

51. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

52. Section 525(a) of the Bankruptcy Code prohibits the federal government from discriminating against a person based on that person's status as a debtor with respect to a "license, permit, charter, franchise, or other similar grant[.]"

53. The Debtor is a debtor in a case under chapter 11 of the Bankruptcy Code.

54. PPP constitutes a federal program within the meaning of § 525(a) of the Bankruptcy Code in that the program is designed to provide forgivable loans to qualified businesses that are akin to grants.

55. The Debtor is a small business within the meaning of the CARES Act and is eligible to participate in funding of forgivable loans, which are functionally grants, under PPP.

56. The Debtor has, in fact, sized its PPP funding request to be forgivable and, to the extent any funds would not qualify for forgiveness, intends to immediately repay (and there is no prepayment penalty under PPP).

57. The screen shots attached hereto as **Composite Exhibits G** and **I** the bankruptcy-related question on the Application, and the Second SBA Rule demonstrate that the SBA has violated § 525(a) of the Bankruptcy Code with respect to the Debtor.

58. SBA has violated § 525(a) of the Bankruptcy Code for the reasons stated in this Complaint.

4833-0742-0091.1

## COUNT IV

### (Mandamus – 28 U.S.C. § 1361)

59. The Debtor incorporates each of the prior paragraphs as if set forth fully herein.

60. The Administrator has a duty to implement the laws enacted by Congress. This non-discretionary duty includes implementing the PPP in a manner that does not violate § 525(a) of the Bankruptcy Code. The Administrator breached this duty.

61. The Debtor has the right to have an application for funds pursuant to the PPP considered without discrimination based on the Debtor's status as a bankruptcy debtor.

62. The Administrator has no discretion to discriminate against the Debtor based on its status as a debtor in bankruptcy.

63. Upon information and belief, there are no administrative remedies available to the Debtor at this time. The Trustee bases this belief on the allegation of Penobscot Valley Hospital in a complaint filed on April 27, 2020 that it has a similar belief and that such belief is based on communications between Congressional staff and SBA. *Penobscot Valley Hospital v. Carranza (In re Penobscot Valley Hospital)*, Adv. Pro. 20-1005, Docket Entry 1 (Bankr. D. Me.).

## RELIEF REQUESTED

With respect to **Count I**, the Debtor seeks the following relief:

(A) A preliminary injunction enjoining SBA or any commercial lender from denying an application or declaring an application ineligible to participate in the PPP on the basis that the applicant is a debtor in bankruptcy or because of the words "or presently in bankruptcy" on the Administrator's PPP application. The Debtor requests that this relief be granted until such time as a final judgment is entered on its claims in Count II, Count III, and Count IV;

(B) A preliminary injunction enjoining SBA from issuing loan guaranties or approving PPP applications in an amount that would leave insufficient funds for the Debtor's funding pursuant to the Application (or any amended application) until entry of final judgment on the Debtor's Claims in Count II, Count III, and Count IV; and

(C) Permanent injunctive relief with respect to the relief in the two immediately preceding sub-paragraphs.

With respect to **Count II**, the Debtor seeks the following relief:

(A) That the Court enter a declaratory judgment that the CARES Act does not prohibit the Application from being considered on the same terms as other qualified business that are not debtors in cases arising under the Bankruptcy Code and which are also seeking PPP funding.

With respect to **Count III**, the Debtor seeks the following relief:

(A) A determination that SBA has violated § 525(a) of the Bankruptcy Code with respect to the Debtor's Application; and

(B) A determination that SBA has violated § 525(a) of the Bankruptcy Code by issuing the Second SBA Rule and promulgating a PPP application form excluding debtors.

(C) Damages in an amount not less than $5.105 million the event that the Court does not grant the relief requested in Count I on a temporary or preliminary basis and it is later determined that the Debtor was eligible for PPP funds but none remain available.

With respect to **Count IV**, the Debtor seeks the following relief:

4833-0742-0091.1

(A) Entry of judgment directing the Administrator to process any application of the Debtor under PPP without discriminating against the Debtor based on its status as a debtor in bankruptcy.

(B) Damages in an amount not less than $5.105 million the event that the Court does not grant the relief requested in Count I on a temporary or preliminary basis and it is later determined that the Debtor was eligible for PPP funds but none remain available.

With respect to Count I, Count II, Count III, and Count IV, the Debtor requests that it be awarded attorneys' fees and costs pursuant to 28 U.S.C. 2412(b).

Date: May 6, 2020

        */s/ Tiffany Payne Geyer*
        Tiffany Payne Geyer
        Fla. Bar. No. 421448
        Elizabeth A. Green
        Fla. Bar. No. 0600547
        Jimmy D. Parrish
        Fla. Bar. No. 0526401
        **BakerHostetler, LLP**
        200 South Orange Ave.
        Suite 2300
        Orlando, FL 32801
        Tel. 407-649-4079
        Fax: 407-841-0168
        tpaynegeyer@bakerlaw.com

        *Counsel to Chapter 11 Trustee*

## VERIFICATION

I, Carol L. Fox, am the Chapter 11 Trustee of St. Alexius Hospital Corporation #1 and declare under penalty of perjury under the laws of the United States of America that the allegations in paragraphs 3, 5 through 15, 18 through 24, 28 through 37 and 63 of the foregoing Complaint are true and accurate, to the best of my knowledge and belief, and, if not based on my own personal knowledge, that I believe such allegations to be true and correct.

Date: May 6, 2020

*[Signature: Carol L. Fox, Chapter 11 Trustee]*

Solely in her capacity as Chapter 11 Trustee of Americore Holdings, LLC, *et al.*, and not in any other capacity