UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

In re:                                                Chapter 11

AMERICORE HOLDINGS, LLC, *et al.*,                    Case No. 19-61608 (GRS)

    Debtors.[1]                                   Jointly Administered

_____/

### JOINT PLAN OF REORGANIZATION PROPOSED
### BY THE THIRD FRIDAY TOTAL RETURN FUND, LLP

June 10, 2020

Respectfully submitted,

Bradley S. Shraiberg, Esq.
Joshua B. Lanphear, Esq.
**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for The Third Friday Total Return Fund, LLP
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: jlanphear@slp.law

By:   */s/ Bradley S. Shraiberg*
      Bradley S. Shraiberg
      Florida Bar. No. 121622
      Joshua B. Lanphear
      Florida Bar No. 125421

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (6887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

# TABLE OF CONTENTS

ARTICLE I – DEFINITIONS ................................................................................ 5
ARTICLE II – BACKGROUND OF DEBTORS AND COMMENCEMENT OF THESE
CHAPTER 11 CASES ...................................................................................... 14
    2.01.   Background of Debtors and its Principals ............................................14
    2.02.   Third Friday and the Debtors' Pre-Petition Efforts at Reorganization ............15
    2.03.   Commencement of Chapter 11 Cases ................................................. 15
    2.04.   Other Significant Events ................................................................. 15
    2.05.   Retained Professionals .................................................................. 16
ARTICLE III – SUBSTANTIVE CONSOLIDATION OF DEBTORS' ESTATES ................. 17
ARTICLE IV – TREATMENT OF UNCLASSIFIED CLAIMS:
ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES
TRUSTEE'S FEES ..........................................................................................18
    4.01.   Allowed Administrative Claims .......................................................18
    4.02.   Priority Tax Claims ......................................................................19
    4.03.   United States Trustee's Fees ...........................................................19
ARTICLE V – CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS.. ...............19
ARTICLE VI – TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS......20
    6.01.   Class 1 - Allowed Third Friday Secured Claims ......................................20
    6.02.   Class 2 – Allowed Other Secured Claims .............................................20
    6.03.   Class 3 – Allowed General Unsecured Claims .......................................21
    6.04.   Class 4 – Allowed Equity Interests in the Debtors ..................................22
ARTICLE VII – VOTING AND DISTRIBUTIONS, ALLOWANCE OF CERTAIN
CLAIMS, AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED
ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS .............23
    7.01.   Solicitation Votes ........................................................................23
    7.02.   Voting of Claims .........................................................................23
    7.03.   Method of Distribution Under the Plan ...............................................23
    7.04.   Distributions Withheld for Disputed Claims .........................................24
    7.05.   Procedures for Allowance or Disallowance of Disputed Claims ..................25
    7.06.   Disbursing Agent ........................................................................26
    7.07.   Setoffs and Recoupment ................................................................27
    7.08.   Estimations of Claims ...................................................................27
    7.09.   No Recourse ..............................................................................27
    7.10.   Amendments to Claims .................................................................28
    7.11.   Post-petition Interest on Claims .......................................................28
    7.12.   Unclaimed Funds ........................................................................28
    7.13.   Cancellation of Existing Equity Interests .............................................28
    7.14.   Allocation of New Equity Interests ...................................................28
ARTICLE VIII – EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................29
    8.01.   Assumption or Rejection of Executory Contracts and Unexpired Leases .........29
    8.02.   Cure of Defaults .........................................................................30
    8.03.   Bar Date for Filng Proofs of Claim Relating to Executory Contracts and
          Unexpired Leases Rejected Pursuant to the Plan ....................................30
    8.04.   Indemnification Obligations ............................................................31

8.05.    Compensation and Benefits Programs ……………………………………………31
ARTICLE IX – MEANS FOR IMPLEMENTATION AND EFFECT OF
CONFIRMATION OF PLAN …………………………………………………………32
9.01.    General ……………………………………………………………………32
9.02.    Corporate Existence …………………………………………………………32
9.03.    The Reorganized Debtors and Vesting of Assets ………………………………32
9.04.    Effectiveness of Securities, Instruments and Agreements ………………………32
9.05.    Corporate Action ……………………………………………………………33
9.06.    Approval of Agreements ……………………………………………………33
9.07.    No Change of Control Rights ………………………………………………33
9.08.    Administration After the Effective Date ……………………………………33
9.09.    Term of Bankruptcy Injunction or Stays ……………………………………33
9.10.    Estate of Actions ……………………………………………………………33
9.11.    Discharge of Debtors ………………………………………………………34
9.12.    Injunction …………………………………………………………………34
9.13.    Release by Holders of Claims and Interests …………………………………35
9.14.    Plan Release of Third Friday ………………………………………………35
9.15.    Injunction Against Interference with the Plan ………………………………35
9.16.    Votes Solicited in Good Faith ………………………………………………35
ARTICLE X – CONFIRMATION AND EFFECTIVENESS OF THE PLAN …………………36
10.01.   Conditions Precedent to Confirmation ………………………………………36
10.02.   Effect of Failure of Conditions ……………………………………………36
10.03.   Waiver of Conditions ………………………………………………………37
ARTICLE XI – RETENTION OF JURISDICTION …………………………………………37
ARTICLE XII – MISCELLANEOUS PROVISIONS ………………………………………38
12.01.   Effectuating Documents and Further Transactions ……………………………38
12.02.   Exemption from Transfer Taxes ……………………………………………38
12.03.   Authorization to Request Prompt Tax Determinations …………………………39
12.04.   Exculpation ………………………………………………………………39
12.05.   Injunction Relating to Exculpation …………………………………………39
12.06.   The Dissolution and Release of the Committee ………………………………39
12.07.   Post-Effective Date Fees and Expenses ……………………………………40
12.08.   Payment of Statutory Fees …………………………………………………40
12.09.   Amendment or Modification of Plan …………………………………………40
12.10.   Severability ………………………………………………………………40
12.11.   Revocation or Withdrawal of the Plan ………………………………………41
12.12.   Binding Effect Notices ……………………………………………………41
12.13.   Notices ……………………………………………………………………41
12.14.   Governing Law ……………………………………………………………42
12.15.   Withholding and Reporting Requirements ……………………………………42
12.16.   Section 1125(e) of the Code ………………………………………………42
12.17.   Filing of Additional Documents ……………………………………………42
12.18.   No Admissions ……………………………………………………………42
12.19.   Waiver of Bankruptcy Rule 3020(e) and 7062 ………………………………42
12.20.   Time ………………………………………………………………………42
12.21.   Substantial Consummation …………………………………………………43

12.22. Final Decree ................................................................................................................. 43
12.23. Inconsistency ............................................................................................................... 43
12.24. No Interest or Attorneys' Fees .................................................................................... 43
12.25. Successors and Assigns ............................................................................................... 43
12.26. Headings ...................................................................................................................... 43
12.27.  No Penalty for Prepayment ....................................................................................... 43
12.28. Savings Clause ............................................................................................................ 43
12.29. Remedy of Defects ...................................................................................................... 43
ARTICLE XIII - CONCLUSION ..................................................................................... 44
CERTIFICATE OF SERVICE ............................................................................................ 45

## JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Third Friday Total Return Fund, LLP ("Third Friday" or the "Plan Proponent") proposes the following plan of reorganization under section 1121(a) of the Code:

## ARTICLE I – DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

*"Actions"* shall mean (except as expressly provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or agreement entered into in connection with the Plan) all actions that a bankruptcy trustee or debtor-in-possession is empowered to bring pursuant to the Code, including, without limitation, any cause of action, lawsuit, adversary proceeding, contested matter, claim objection, Avoidance Action, or right of the Debtor or the Estate against any Person, and all claims, third-party claims, counterclaims, cross-claims, setoff, offset, or other defenses, all choate and inchoate actions, rights of action, causes of action, causes in action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, whether fixed, contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or unasserted, known or unknown, direct or indirect, derivative, or otherwise, and the proceeds thereof, of, or belonging to, the Debtor or the Estate, that are or may be pending on the Effective Date, or instituted by the Reorganized Debtors after the Effective Date, against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code or any applicable state law, whether asserted, commenced, or filed in the Bankruptcy Court, or any other court or tribunal.

*"Administrative Claim"* shall mean a claim for payment of an administrative expense under section 503 of the Code that is entitled to priority under section 507(a)(1) of the Code and any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

*"Allowed Administrative Claim Payment"* shall mean the amount of the Purchase Price provided by Third Friday or its assigns on or before the Effective Date to be used to pay one hundred percent (100%) of the Allowed professional fee claims constituting Allowed Administrative Claims under section 503(b)(2) of the Code that are entitled to priority under section 507(a)(1) of the Code, specifically excluding Administrative Claims incurred in the ordinary course of the Debtors' business.

*"Affiliate"* shall mean with respect to any Person, any other Persons that would fall within the definition assigned to such term in section 101(2) of the Code, if such Person was a debtor in a case under the Code.

*"Allowed"* is used herein to describe any Claim or Equity Interest that is an Allowed Claim or an Allowed Equity Interest.

"***Allowed Amount***" shall mean with respect to a Claim (a) the amount of a Claim that was listed in the Debtors' schedules as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the schedules if no objection to such proof of claim or amount listed in the schedules has been interposed within the applicable period of limitation fixed by the Code or the Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a fee request, such amount as shall be fixed by an order of the Court which has become a Final Order.  In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Petition Date.

"***Allowed Claim***" shall mean any Claim which is not a Disputed Claim for which an Allowed Amount has been finally determined in such Allowed Amount.

"***Americore Enterprises***" shall mean Americore Health Enterprises, LLC

"***Americore Health***" shall mean Americore Health, LLC.

"***Americore Health Loan Agreement***" is defined in Section 2.02 of the Plan.

"***Americore Holdings***" shall mean Americore Holdings, LLC.

"***Americore Holdings Loan Agreement***" is defined in Section 2.02 of the Plan.

"***Article***" shall mean one of the numbered articles of the Plan.

"***Assets***" shall mean any and all right, title, and interest of the Debtors in and to Property of the Estates, as defined under and included in section 541(a) of the Code, including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtors in any and all real or personal property of any nature, including any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, tax refunds, cash, deposit accounts, reserves, deposits, equity interests, contractual rights, intellectual property rights, claims, causes of actions, assumed executory contracts and unexpired leases, other general intangibles, and the proceeds, products, offspring, rents or profits thereof.

"***Assumed Contract***" shall mean an Executory Contract (as modified or amended pursuant to the Plan, prior order of the Court, or by agreement of the parties) that is assumed by a Debtor pursuant to the Plan.

"***Assumption List***" shall mean the list of executory contracts and unexpired leases to be assumed pursuant to Article VIII of the Plan, which shall be filed with the Court on or before fourteen (14) days prior to the commencement of the Confirmation Hearing.

*"Avoidance Actions"* shall mean any and all Actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

*"Back-End Payment"* subject to two 180-day Options described below, shall mean the Reorganized Debtors' obligation to pay Allowed General Unsecured Claims up to an additional $1,000,000 within two (2) years of the Effective Date (the *"Two-Year Anniversary"*) so that Allowed General Unsecured Claims receive total Pro Rata distributions of $5,000,000. However, the Reorganized Debtors shall not have an obligation to make the Back-End Payment in an amount more than what is required to provide the Allowed General Unsecured Creditors more than total Pro Rata distributions of $5,000,000 or to pay anything more than $1,000,000 as a Back-End Payment even if the total Pro Rata distributions to Allowed General Unsecured Creditors are less than $4,000,000 as of the Two-Year Anniversary.

*"Ballot"* shall mean the ballot upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

*"Ballot Deadline"* shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

*"Business Day"* shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Kentucky are authorized or required to close.

*"Cases"* shall mean the above-referenced chapter 11 cases pending before the United States Bankruptcy Court for the Eastern District of Kentucky.

*"Cash"* shall mean legal tender of the United States of America.

*"Chapter 11 Trustee"* shall me Carol L. Fox.

*"Claim"* shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; (c) without limiting the generality of the foregoing, all Administrative Claims, Priority Claims, Secured Claims, and Unsecured Claims.

*"Claims Bar Date"* shall mean the last date set by the Court for creditors, other than a governmental unit, and holders of Equity Interests to file Proofs of Claim or Equity Interest in the Case.

*"Class"* shall mean a group of Claims or Equity Interests classified together pursuant to Article V of the Plan.

*"Code"* shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

*"Collateral"* shall mean any property or interest in Property of the Estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Code or otherwise is invalid under the Code or applicable state law.

*"Committee"* shall mean The Official Committee of Unsecured Creditors formed by Paul A. Randolph, Acting United States Trustee in these Cases pursuant to 11 U.S.C. § 1102(a)(1).

*"Confirmation"* shall mean the entry by the Court of the Confirmation Order.

*"Confirmation Date"* shall mean the date on which the Clerk of the Court enters the Confirmation Order on the Docket.

*"Confirmation Hearing"* shall mean a hearing held by the Court to consider Confirmation of the Plan pursuant to section 1128 of the Code.

*"Confirmation Order"* shall mean the order entered by the Court confirming the Plan, which shall contain such provisions as the Plan Proponent desires and shall otherwise be in a form and substance satisfactory to the Plan Proponent.

*"Court"* shall mean the United States Bankruptcy Court for the Eastern District of Kentucky, including any Bankruptcy Judge thereof, and any court having competent jurisdiction to hear appeals from the Bankruptcy Judges thereof.

*"Creditor"* shall mean any Person holding a Claim or Equity Interest, including Administrative Claims and Claims of the kind specified in sections 502(b), 502(h), and 502(i) of the Code, and such Person's heirs, successors, assigns, executors, and personal representatives.

*"Debtors"* shall mean Americore Holdings, Americore Health, Americore Enterprises, Ellwood Medical Center, Ellwood Real Estate, Ellwood Operations, Pineville Medical Center, Izard County Medical, Success Healthcare, St. Alexius Properties, and St. Alexius Hospital.

*"Disbursing Agent"* shall mean the Plan Administrator or such Person(s) as the Plan Administrator may designate with approval of the Court.

*"Disputed Amount"* shall mean with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the amount, if any, of such Claim which the party objecting thereto concedes.

*"Disputed Claim"* shall mean any Claim for which an Allowed Amount has not yet been determined, and with respect to which an objection has been interposed on or prior to the Confirmation Date or such other date as may be fixed by the Court and which objection has not

been withdrawn or determined by a Final Order, or which is listed on the schedules as disputed, contingent or unliquidated, including, though not limited to, Disputed Secured Claims, Disputed Priority Claims and Disputed General Unsecured Claims. Distributions withheld for Disputed Claims are described in Article VII of the Plan.  Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

"*Disputed Claims Reserve*" is defined in Section 7.04(a) of the Plan.

"*Docket*" shall mean the docket maintained in this Case by the Clerk of the Court.

"*Effective Date*" shall be, unless otherwise provided for in the Confirmation Order, the later of (i) fourteen (14) days from the date of the entry of the Confirmation Order and (ii) satisfaction of the conditions precedent to the occurrence of the Effective Date set forth in Section 10.01 of the Plan occurs.

"*Ellwood Medical*" shall mean Ellwood Medical Center, LLC.

"*Ellwood Operations*" shall mean Ellwood Medical Center Operations, LLC.

"*Ellwood Real Estate*" shall mean Ellwood Medical Center Real Estate, LLC.

"*Entity*" shall have the meaning set forth in section 101(15) of the bankruptcy Code and includes, without limitation, any Person, estate, trust, or governmental unit, and the United States trustee.

"*Equity Interest*" shall mean any ownership or equity interest in the Debtors, including without limitation, interests evidenced by common or preferred stock, warrants, options, or other rights to purchase any ownership or equity interest in the Debtors.

"*Estate*" shall mean the estate that was created by the commencement of the Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges and Causes of Action of the Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or the Estate shall have had as of the Petition Date, or which the Debtor or the Estate acquired after the commencement of the Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

"*Estate Actions*" shall mean all Actions, including Avoidance Actions, owed by the Debtors' Estates.

"*Exculpated Parties*" is defined in Section 12.04 of the Plan.

"*Executory Contract*" shall mean a contract or unexpired lease to which any of the Debtors is a party and that is executory within the meaning of section 365 of the Code.

"*Face Amount*" shall mean with respect to a particular Claim, (a) if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed

by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount of such Claim that was listed in the Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated; or (b) if the holder of such Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, the amount stated in such proof of claim; or (c) with respect to a fee request, the net amount to which the applicant would be entitled if its application were to be granted in full.

*"**Final Order**"* shall mean an order or judgment of the Court as entered on the Docket that has not been reversed, stayed, modified, or amended, and respecting which the time to appeal, petition for certiorari or seek reargument, review or rehearing has expired, and as to which no appeal, reargument, petition for certiorari, review or rehearing is pending, or as to which any right to appeal, reargue, petition for certiorari or seek review or rehearing has been waived in writing in a manner satisfactory to the Debtor, or, if any appeal, reargument, petition for certiorari, review or rehearing thereof has been denied, the time to take further appeal or to seek certiorari or further rehearing, review or reargument has expired.  If any provision of the Plan requires the entry of a Final Order as a condition to the occurrence or performance of an act, the Debtor may waive such requirement in accordance with the Plan.

*"**General Unsecured Claim**"* shall have the same meaning as Unsecured Claim.

*"**Governmental Claims Bar Date**"* shall mean the last date set by the Court for a governmental unit to file Proofs of Claim in the Case.

*"**Impaired**"* shall mean an Allowed Claim or Allowed Equity Interest that is Impaired within the meaning of section 1124 of the Code.

*"**Insider(s)**"* shall mean those Persons defined in section 101(31)(B) of the Code.

*"**Izard County Medical**"* shall mean Izard County Medical Center, LLC.

*"**Lien**"* shall mean a charge against or interest in any item of Property of the Estate to secure payment of a debt or performance of an obligation.

*"**New Equity**"* shall mean the interests evidenced by preferred stock, common stock or other instruments evidencing an ownership interest in the Reorganized Debtors, authorized to be issued pursuant to the Plan.

*"**Other Secured Claim(s)**"* shall mean a Secured Claim against any of the Debtors that is not held by Third Friday or otherwise specifically classified in Article V of the Plan and treated in Article VI of the Plan.

*"**Objection Deadline**"* is defined in Section 7.05 of the Plan.

*"**Objection to Rejection Claims Deadline**"* is defined in Section 7.05 of the Plan.

*"**Option**"* shall mean two options to extend the Two-Year Anniversary for 180 days each.

*"Oversight Committee"* shall mean a committee comprised of three holders of Allowed General Unsecured Claims, which committee shall be constituted upon the Effective Date.

*"Patient Care Ombudsman"* shall mean Suzanne Koenig.

*"Payment Trigger Date"* is defined in Section 4.02 of the Plan.

*"Person"* shall mean any individual, sole proprietorship, partnership (general or limited), joint venture, trust, unincorporated organization, association, corporation, institution, entity, or government (whether federal, state, county, city, municipal or otherwise, including, without limitation, any instrumentality, division, agency, body, political subdivision or department thereof).

*"Petition Date"* shall mean December 31, 2019, the date on which the Debtors commenced these Cases by filing voluntary petitions under Chapter 11 of the Code.

*"Pineville Medical"* shall mean Pineville Medical Center, LLC.

*"Plan"* shall mean this Joint Plan of Reorganization in the present form or as it may be modified, amended, or supplemented from time to time.

*"Plan Administrator"* shall mean Carol L. Fox or such Person(s) as Carol L. Fox may designate with approval of the Court.

*"Plan Proponent"* shall mean Third Friday.

*"Plan Supplement"* shall mean, among other things, the Assumption List and any other supplemental documents described herein that shall be identified and otherwise filed with the Clerk of the Court on or before fourteen (14) days prior to the commencement of the Confirmation Hearing.

*"Priority Claim"* shall mean a Claim that is entitled to priority (other than a Priority Tax Claim) under section 507 of the Code.

*"Priority Tax Claim"* shall mean a Claim (other than an Administrative Claim or Priority Claim) that is entitled to priority under section 507(a)(8) of the Code.

*"Pro Rata"* shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim to the Allowed Amount of such Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Claim is included to the amount of all Allowed Claims of that Class, unless otherwise defined in the Plan.  Whenever a Disputed Claim has not been finally resolved, an appropriate reserve for payment of such Disputed Claim shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Claim upon final resolution of the dispute.

*"Property of the Estate"* shall mean the property defined in section 541 of the Code.

*"Purchase Price"* shall mean the sum of (i) Third Friday's credit bid in the amount of all outstanding principal, interest and fees due under the Third Friday Loan Agreements and the Third Friday Forbearance Agreements as of the Petition Date; and (ii) $22,000,000 in Cash provided by Third Friday or its assigns to the Plan Administrator on or before the Effective Date to be used first for payment of the Allowed Administrative Claim Payment, second for distributions to holders of Allowed Other Secured Claims in accordance with the classification and treatment proscribed in Class 2 of this Plan, and third for Pro Rata distributions to holders of Allowed General Unsecured Claims in accordance with the classifications and treatment proscribed in Class 3 of this Plan.  In the event that that the balance of the $22,000,000 after payment of the Allowed Administrative Claim Payment and payments to holders of Allowed Other Secured Claims does not equal at least $1,000,000, Third Friday agrees to increase the Cash component of the Purchase Price to an amount necessary to provide, at a minimum, a Pro Rata distribution of $1,000,000 to holders of Allowed General Unsecured Claims on the Effective Date.

*"Released Parties"* shall mean the Debtors and each of its respective current, <u>but not former</u>, directors, officers, employees, representatives, members, affiliates, agents, attorneys, financial advisors, and professionals, and the Reorganized Debtors and the Committee and each of their respective members, attorneys, professionals and agents.

*"Reorganized Debtors"* shall mean Americore Holdings, Americore Health, Americore Enterprises, Ellwood Medical Center, Ellwood Real Estate, Ellwood Operations, Pineville Medical Center, Izard County Medical, Success Healthcare, St. Alexius Properties, and St. Alexius Hospital, as reorganized entities on or after the Effective Date.

*"Rules"* shall mean the Federal Rules of Bankruptcy Procedure.

*"Schedules"* shall mean the Schedules of assets and liabilities originally filed by the Debtor with the Court as the same may be amended from time to time.

*"Section"* shall mean a numbered subsection of any Article of the Plan.

*"Secured Claim"* shall mean a Claim secured by a Lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Code to the extent of the value of the interest attributable to such Claim in the Estate's interest in such property or to the extent of the amount subject to set-off.

*"Secured Taxing Authority Claims"* shall mean ad valorem taxes assessed against real property owned by the Debtors, if any, in the ordinary course of business.

*"St. Alexius Hospital"* shall mean St. Alexius Hospital Corporation #1.

*"St. Alexius Properties"* shall mean St. Alexius Properties, LLC.

***"Substantial Consummation"*** shall mean that the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

***"Success Healthcare"*** shall mean Success Healthcare 2, LLC.

***"Third Friday"*** shall mean The Third Friday Total Return Fund, LLP.

***"Third Friday Forbearance Agreements"*** is defined in Section 2.02 of the Plan.

***"Third Friday Loan Agreements"*** is defined in Section 2.02 of the Plan.

***"Two-Year Anniversary"*** the date that is two (2) years of the Effective Date.

***"Unimpaired"*** shall mean an Allowed Claim or Allowed Equity Interest that is <u>not</u> Impaired within the meaning of section 1124 of the Code.

***"Unsecured Claim"*** shall mean a Claim other than a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Claim.

***"U.S. Trustee's Fees"*** shall consist of those fees due to the United States Trustee as required pursuant to 28 U.S.C. §1930(a)(6).

***"Voting Record Date"*** shall mean the date established by the Court as the voting record date in an order approving the Disclosure Statement.

***"Rules of Construction and Interpretation"***

The following rules of construction shall be applicable for all purposes of the Plan unless the context clearly requires otherwise:

(a) The terms "include", "including", and similar terms shall be construed as if followed by the phrase "without being limited to."

(b) Words of masculine, feminine, or neutral gender shall mean and include the correlative words of the other genders, and words importing the singular number shall mean and include the plural number, and vice-versa.

(c) All article, section, and exhibit or appendix captions are used for convenience and reference only, and in way define, limit, or describe the scope or intent of, or in any way affect, any such article, section, exhibit, or appendix.

## ARTICLE II – BACKGROUND OF DEBTORS AND
## COMMENCEMENT OF THESE CHAPTER 11 CASES

**2.01.    Background of Debtors and its Principals**

The Debtors are in the business of managing and acquiring distressed hospitals in rural communities.  Although at one time the Debtors owned five hospitals, as of the Petition Date, the Debtors owned two open hospitals and one closed hospital.

The corporate organization and summary of the Debtors is as follows:

Americore Holdings is a holding company owned indirectly by Grant White.  *See* ECF No. 11, Declaration of Grant White (the "White Declaration") at Exhibit A (the "Organizational Chart").

Americore Holdings owns controlling interests in four subsidiaries: non-debtor entities Americore Real Estate, LLC ("Americore Real Estate") and Americore Lab Services, LLC ("Americore Lab"), and Debtors, Success Healthcare and Americore Health.  *See id.*  Non-debtor entities Americore Real Estate and Americore Lab do not appear to be operating entities.  *See id.*

Debtor Success Healthcare is a holding company for Debtors, St. Alexius Properties and St. Alexius Hospital.  In turn, St. Alexius Properties owns the St. Louis, Missouri real property on which the St. Alexius hospital, medical office building and nursing school are located.  St Alexius Hospital owns the hospital and nursing school.  *See* White Declaration at ¶¶ 12-13.  The real property owned by St. Alexius Properties is valued at approximately $43 million.  *See id.* at Exhibit C and St. Alexius Properties' schedules filed at ECF No. 24 in Case No. 19-61611-GRS.

Debtor Americore Health wholly owns three subsidiaries of its own: Debtor Americore Enterprises, and two inactive, non-debtor entities, Americore Health Management, LLC and Americore Billing Solutions, LLC.  *See* Organization Chart.

Finally, Debtor Americore Enterprises owns controlling interests in four subsidiaries.  The first such subsidiary, Lee County Medical Center, LLC, is a non-debtor entity.

The second Americore Enterprises subsidiary is Debtor, Ellwood Medical.  Ellwood Medical wholly owns two additional Debtors, Ellwood Real Estate and Ellwood Operations.  Together, these entities own and operate a rural hospital in Ellwood City, Pennsylvania, with Ellwood Real Estate owning the real property on which the hospital is located, and Ellwood Operations operating the hospital itself.  *See* White Declaration at ¶¶ 6-9.  The real property owned by Ellwood Real Estate is valued at approximately $22.5 million.  *See id.* at Exhibit B and Ellwood Real Estate's schedules filed at ECF No. 25 in Case No. 19-61614-GRS.

The third Americore Enterprises subsidiary is a Debtor, Pineville Medical.  Pineville Medical formerly operated a hospital in Pineville, Kentucky; however, said hospital was sold prior to the Petition Date.  *See* White Declaration at ¶ 17.

The final American Enterprises subsidiary is likewise a Debtor, Izard County Medical.  Izard County Medical operates a hospital located in Calico Rock, Arkansas and leases it from a

third-party non-debtor.  *See* White Declaration at ¶¶ 10-11.  The hospital offers in-patient, out-patient, laboratory, radiology, physical therapy services, and an emergency room.  *Id.*

### 2.02.  Third Friday and the Debtors' Pre-Petition Efforts at Reorganization

In light of the foregoing, the Debtors required financing to restructure their debts.  The Debtors ultimately obtained financing from Third Friday.  The Debtors and Third Friday are parties to the following agreements:

(i)     That Loan and Security Agreement by and between Americore Health, LLC and The Third Friday Total Return Fund, L.P. dated as of January 2, 2018 as subsequently amended and modified (the "Americore Health Loan Agreement");

(ii)    That Loan and Security Agreement by and between Americore Holdings, LLC and The Third Friday Total Return Fund, L.P. dated as of May 1, 2018 as subsequently amended and modified (the "Americore Holdings Loan Agreement," and together with the Americore Health Loan Agreement, the "Third Friday Loan Agreements"); and

(iii)   Certain forbearance agreements between Grant White, Americore Holdings, Americore Health, Americore Enterprises, and Third Friday (collectively, the "Third Friday Forbearance Agreements").

Ultimately, on December 24, 2019, Third Friday declared the Third Friday Loan Agreements in default.

### 2.03.  Commencement of Chapter 11 Cases

Unable to service its debts, faced with multiple pending and potential lawsuits and receiverships, and default declared by Third Friday, the Debtors commenced these Cases in an attempt to reorganize on December 31, 2019.

### 2.04.  Other Significant Events

*Appointment of Patient Care Ombudsman*

On December 31, 2019, the Court ordered the United States Trustee to appoint a patient care ombudsman pursuant to section 333 of the Code and Rule 2007.2.

On January 21, 2020, Paul A. Randolph, Acting United States Trustee appointed Suzanne Koenig to serve as the Patient Care Ombudsman in these Cases.

The duties and responsibilities of the Patient Care Ombudsman are, in part, governed by the *Agreed Order Amending and Modifying the Terms of Appointment of the Patient Care Ombudsman* [ECF No. 354, Case No. 19-61608-GRS].

*Formation of Creditors Committee*

On January 23, 2020, Paul A. Randolph, Acting United States Trustee formed the Committee in these Cases pursuant to 11 U.S.C. § 1102(a)(1). The Committee consists of Beckman Coulter, Inc. (Chairperson); Baxter County Regional Hospital, Inc.; Specialists in Anesthesia, P.C.; Western Healthcare, LLC; Midwest Emergency Services; Dinakar Golla, M.D.; and Saint Louis University. *See* ECF No. 142, Case No. 19-61608-GRS.

*Appointment of Trustee*

On February 20, 2020, upon agreement of the Debtors, the United States Trustee, the Committee, Third Friday and Pelorus, the Court entered the *Agreed Order Appointing Chapter 11 Trustee* [ECF No. 258, Case No. 19-61608-GRS], thereby directing the United States Trustee to appoint a chapter 11 trustee in these Cases.

On February 21, 2020, Carol L. Fox was appointed as the Chapter 11 Trustee of the Debtors. ECF No. 260, Case No. 19-61608-GRS. The Chapter 11 Trustee is a principal at GlassRatner, a B. Riley Financial company, and is located in Fort Lauderdale, Florida.

**2.05.    Retained Professionals**

As summarized below, the Court authorized the retention of certain professionals in connection with these Cases.

The Court approved the Debtors' employment of Dentons Bingham Greenebaum LLP as general bankruptcy counsel to the Debtors. ECF No. 335, Case No. 19-61608-GRS. Thereafter, the Court authorized Dentons Bingham Greenebaum LLP to withdraw from representing the Debtors in these Cases. ECF No. 257, Case No. 19-61608-GRS.

The Court approved the Debtors' employment via the Chapter 11 Trustee of GlassRatner Advisory & Capital Group, LLC as financial advisor to the Debtors. ECF No. 400, Case No. 19-61608-GRS.

The Court approved the Committee's employment of Nelson Mullins Riley & Scarborough LLP, a law firm with offices located in Fort Lauderdale, Florida. ECF No. 304, Case No. 19-61608-GRS. The Court also approved the Committee's employment of Frost Brown Todd, LLC as local counsel to the Committee. ECF No. 379, Case No. 19-61608-GRS.

The Court approved the Chapter 11 Trustee's employment of Baker & Hostetler LLP as general bankruptcy counsel to the Chapter 11 Trustee. ECF No. 377, Case No. 19-61608-GRS. The Court also approved the Chapter 11 Trustee's employment of B. Riley FBR, Inc. as the Debtors' investment banker. ECF No. 444, Case No. 61608-GRS.

The Court approved the Patient Care Ombudsman's employment of Saul Ewing Arnstein & Lehr, LLP as counsel to the Patient Care Ombudsman, ECF No. 410, Case No. 19-61608-GRS, and SAK Management Services, LLC as medical operations advisor to the Patient Care Ombudsman. ECF No. 399, Case No. 19-61608-GRS.

## ARTICLE III – SUBSTANTIVE
## CONSOLIDATION OF DEBTORS' ESTATES

As of the Petition Date, there were eleven separate corporate Debtors. For the reasons set forth herein, the Plan Proponent seeks substantive consolidation of the eleven separate corporate Debtors into the Reorganized Debtors _solely for voting on, confirmation of and distributions hereunder_. As a result of such substantive consolidation, this Plan treats Claims against and Interests in each of the eleven separate corporate Debtors as Claims against and Interests in a single debtor entity. On the Effective Date, the Debtors will be substantively consolidated pursuant hereto and in accordance herewith into the Reorganized Debtors.

In support of such substantive consolidation, the Proponents assert that many of the factors set forth in the applicable decisional law supporting limited substantive consolidation as proposed hereunder are present in these Chapter 11 Cases. _See Eastgroup Props. v. Southern Motel Assocs., Ltd._, 935 F.2d 245 (11th Cir. 1991) (movant must demonstrate that (i) there is a substantial identity between entities to be consolidated, and (ii) consolidation is necessary to avoid some harm or to realize some benefit). _White, et al. v. Creditors Serv. Corp., et al. (In re Creditors Serv. Corp.)_, 195 B.R. 680, 689 (Bankr. S.D. Ohio 1996) ("Substantive consolidation may be limited to certain classes of claims, specific property, or may be appropriately conditioned.") (citing cases in support); _see also In re Baker & Getty Financial Services, Inc_., 974 F.2d 712, 721 (6th Cir. 2006) (for purposes of avoidance actions, transfers should be analyzed as of the date right before substantive consolidation).

The Plan Proponent's decision to seek substantive consolidation pursuant to the Plan is based on, among other things, an analysis of the facts and circumstances surrounding the Debtors, the consideration of the cost and delay attendant to the reconstruction of the Debtors' financial records, the net effect of the dividends payable hereunder if reconstruction of the Debtors' financial records and intercompany claim reconciliation were undertaken, and the practicality of the proposed treatment to Allowed General Unsecured Creditors, as proposed in Section 6.04 of the Plan. As set forth herein, such facts and circumstances overwhelmingly support the substantive consolidation of the Debtors as proposed herein.

The entry of the Confirmation Order shall constitute approval by the Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Code, effective as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates, solely for the purposes of voting on, confirmation of and distributions hereunder.

Specifically, on and after the Effective Date with respect to the Reorganized Debtors, (a) all assets and liabilities of the Debtors shall be treated as though they were pooled solely for purposes of voting on, confirmation of and distributions hereunder, (b) no distribution shall be made hereunder on account of any intercompany Claim held by any one of the Debtors against any of the other Debtors, (c) no distribution shall be made hereunder on account of any Interest held by any one of the Debtors in any of the other Debtors, (d) all Allowed Other Secured Claims against the Debtors shall be entitled to a single recovery on the Effective Date, and thus one distribution (and no multiple recovery) on any such Claim, (e) all Allowed General Unsecured Claims against the Debtors shall be entitled to receive a single Pro Rata distribution on the Effective Date from at least $1,000,000 and, to the extent applicable, further Pro Rata distributions

from the first dollars received from the net proceeds of the Estates Actions, from the first dollars received from the Back-End Payment, but in no event shall be entitled to receive more than 100% of its respective Claim or, in the aggregate, be entitled to receive more than its respective Pro Rata distribution of $5,000,000, and (f) every Claim filed or to be filed in any Case of any Debtor shall be deemed filed against the Reorganized Debtors and shall be one Claim against and one obligation of the Reorganized Debtors.

Notwithstanding the substantive consolidation of the Reorganized Debtors as provided herein, the substantive consolidation shall be solely for purposes of voting on, confirmation of and distributions hereunder and specifically shall not: (a) affect the legal and organization structure of each Debtor from and after the Effective Date; (b) destroy or otherwise affect the separate corporate existence of each Debtor and the ownership interest in each Debtor; or (c) affect any statutory fees paid by, or accrued in respect of, any Debtor to the U.S. Trustee or the Clerk of the Court from the Petition Date through the Effective Date.

This Plan shall be deemed a motion, pursuant to Rule 9013, by the Plan Proponent for limited and partial substantive consolidation of the Debtors with respect to the Plan as set forth herein. The Plan Proponent reserves the right to supplement the facts and law supporting the request for partial or limited substantive consolidation herein at or before the Confirmation Hearing. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation of the Plan and shall be determined by the Court at the Confirmation Hearing. Failure to timely object to substantive consolidation may result in consolidation of the Debtors in accordance herewith, without further hearing.

## ARTICLE IV - TREATMENT OF UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND UNITED STATES TRUSTEE'S FEES

The following Administrative Claims, Priority Tax Claims and U.S. Trustee's Fees will be treated as follows:

**4.01.    Allowed Administrative Claims.**

Allowed Administrative Claims arising in the ordinary course of the Debtors' business shall be paid upon the date on which such Claims become due in the ordinary course (and not from the Allowed Administrative Claim Payment), in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.

Allowed Administrative Claims of professionals employed in these Cases, arising under section 503(b)(2) of the Code and that are entitled to priority under section 507(a)(1) of the Code, shall be paid 100% of the amount allowed by the Court upon application to the Court, first, from retainers held by professionals and, second, to the extent said retainers are insufficient to satisfy the respective professional Allowed Administrative Claim, from the Allowed Administrative Claim Payment provided by Third Friday or its assigns.

Other than ordinary course Allowed Administrative Claims and professional Allowed Administrative Claims (both addressed above) and those Claims otherwise specifically dealt with in the Plan, any remaining Allowed Administrative Claims shall be paid 100% of their respective Allowed Administrative Claims in Cash from the Debtors' operations, unless otherwise ordered by the Court or agreed to by the holder of such Claim, upon the latter of (i) the Effective Date, or (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

### 4.02.    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in § 1129(a)(9)(C) of the Code after the later of (i) the Effective Date and (ii) the date on which such Priority Tax Claim is Allowed (the "Payment Trigger Date"), with the maturity date by which all payments due to be no later than the last day of the twenty-fourth month after the Payment Trigger Date.  At the discretion of the Reorganized Debtors, payment in full of the total balance due on any such Priority Tax Claim may be made without penalty.

### 4.03.    United States Trustee's Fees

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.  The Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of the Case by the issuance of a Final Decree by the Court, or upon entry of an order of the Court dismissing the Case, or converting the Case to another chapter under the Code, and the Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.  The foregoing fees shall be paid from funds generated from the Reorganized Debtors' operations.

### ARTICLE V - CLASSIFICATION OF
### CLAIMS AND EQUITY INTERESTS

Pursuant to section 1122 of the Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors.  A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan, to the extent applicable, and receiving distributions pursuant to the Plan, to the extent applicable, only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.  In accordance with section 1123(a)(1) of the Code, Administrative Claims, Priority Tax Claims and United States Trustee Fees have not been classified.

For purposes of this Plan, the Classes of Claims against and Equity Interests in the Debtors shall be as follows:

| Class | Description | Status | Voting Status |
|-------|-------------|--------|---------------|
| Class 1 | Allowed Third Friday Secured Claim | Impaired | Yes |
| Class 2 | Allowed Other Secured Claims | Unimpaired | No |
| Class 3 | Allowed General Unsecured Claims | Impaired | Yes |
| Class 4 | Allowed Equity Interests | Impaired | Yes |

**ARTICLE VI –**
**TREATMENT OF CLASSIFIED**
**CLAIMS AND EQUITY INTERESTS**

**6.01.   Class 1 – Allowed Third Friday Secured Claims**

(a) <u>Description</u>.  Class 1 consists of the Allowed Third Friday Secured Claims against the Debtors.

(b) <u>Treatment</u>.  On the Effective Date, in exchange for the Purchase Price, and in full satisfaction, settlement, release, extinguishment and discharge of the Allowed Third Friday Secured Claim and any other Claim held by Third Friday against any of the Debtors or arising in or from the Third Friday Loan Agreements or the Third Friday Forbearance Agreement, the holder of the Allowed Third Friday Secured Claim shall receive one hundred percent (100%) of the Equity in each of the Debtors and the transfer of all Estate Actions to Third Friday.  As a result, Third Friday will own 100% of the Reorganized Debtors.  To avoid any doubt, following the Effective Date, the Reorganized Debtors shall not owe any obligation to, or be indebted to, Third Friday.

(c) <u>Voting</u>.  The Class 1 Claim is Impaired.  The holder of Class 1 Claims is entitled to vote to accept or reject the Plan.

**6.02.   Class 2 – Allowed Other Secured Claims**

(a) <u>Description</u>.  Class 2 consists of the Allowed Other Secured Claims against the Debtors.

(b) <u>Treatment</u>.  On the Effective Date, in full satisfaction, settlement, release, extinguishment and discharge of the Allowed Other Secured Claims or any other Claim held by a holder of an Allowed Other Secured Claim against any of the Debtors, including release of any Lien(s) in favor of such a holder against any of the Debtors, each holder of an Allowed Other Secured Claim shall receive a lump sum payment from the Plan Administrator in an amount equal to one hundred percent (100%) of the Allowed Amount of such Claim in Cash, or as otherwise ordered by the Court, as part of the Purchase Price provided by Third Friday.  The Plan Proponent anticipates that the amount of the Purchase Price net Allowed Administrative Claims will be sufficient to pay the Allowed Amount of each Allowed Other Secured Claim in full.

(c) Voting. The Class 2 Claims are Unimpaired. The holders of the Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to 1126(f) of the code and are not entitled to vote to accept or reject the Plan.

**6.03. Class 3 – Allowed General Unsecured Claims**

(a) Description. Class 3 consists of the Allowed General Unsecured Claims against the Debtors.

(b) Treatment. On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive from the $22,000,000 in Cash comprising a portion of the Purchase Price, a Pro Rata distribution of $5,000,000 from the Purchase Price net of Allowed Administrative Claims and Allowed Other Secured Claims.

In the event that there is not $5,000,000 remaining from the $22,000,000 in Cash comprising a portion of the Purchase Price after satisfying Allowed Administrative Claims and Allowed Other Secured Claims, Third Friday shall increase the Purchase Price to assure that holders of Class 3 Claims receive, at a minimum, a Pro Rata distribution of $1,000,000 on the Effective Date. In addition, holders of a Class 3 Claim shall have a lien on the net proceeds of the Estate Actions in an amount that brings the total amount available for Class 3 Claims to $5,000,000. The foregoing liens and security interests granted herein are to be automatically deemed perfected upon entry of the Confirmation Order without the necessity of the Class 3 Claimants taking possession, filing financing statements, mortgages or other documents. Although not required, upon request by the Class 3 Claimants, the Reorganized Debtors shall execute and deliver to the Class 3 Claimants any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other instruments or documents considered by the Class 3 Claimants to be necessary in order to perfect the security interests and liens in the Estate Actions, which actions shall not be deemed a violation of the automatic stay.

Specifically, prior to paying Third Friday any proceeds from the Estate Actions, as funds become available, holders of Class 3 Claims shall receive a Pro Rata distribution from the first dollars received from the Estate Actions, after expenses, up to an aggregate of $5,000,000. By way of example, if after paying Allowed Administrative Claims and Allowed Other Secured Claims, the pool to pay the Class 3 Claims is only $3,000,000 on the Effective Date, then the first $2,000,000 of net proceeds from the Estate Actions shall be paid, Pro Rata, to holders of Class 3 Claims (or an amount that satisfies their claims completely if it is less than an aggregate of $5,000,000).

The Reorganized Debtors shall meet with the Oversight Committee at least once a month to and through the earlier of payment of the $5,000,000 to the Allowed General Unsecured Creditors or the Two-Year Anniversary Date (the ***"Oversight Committee Meetings"***). At least 48 hours before a scheduled Oversight Committee Meeting, the Reorganized Debtors shall provide the Oversight Committee a detailed status of the

Estate Actions. In addition, the Reorganized Debtors shall obtain Oversight Committee approval of all material decisions regarding the Estate Actions, including decisions with respect to settlements.

In addition, upon the Two-Year Anniversary, the Reorganized Debtors shall pay Allowed General Unsecured Claims up to an additional $1,000,000 so that Allowed General Unsecured Claims receive total Pro Rata distributions of up to $5,000,000. However, the Reorganized Debtors shall not have an obligation to make the Back-End Payment in an amount more than what is required to provide the Allowed General Unsecured Creditors more than total Pro Rata distributions of $5,000,000 or to pay anything more than $1,000,000 as a Back-End Payment even if the total Pro Rata distributions to Allowed General Unsecured Creditors is less than $4,000,000 as of the Two-Year Anniversary.

Thirty (30) days before the Two-Year Anniversary, the Oversight Committee may provide the Reorganized Debtors notice that it is triggering a 180-day Option, upon which, the net collections of Estate Actions shall continue to be applied to the remaining amount of the $5,000,000 owed to the Class 3 Claimants, and the $1,000,000 Back-End shall be postponed until the end of the 180-day Option (the *"Option Protocol"*). The Oversight Committee may trigger a final 180-day Option by providing the Reorganized Debtors notice of such within 30 days of the expiration of the first 180-day Option, upon which the Option Protocol shall apply for another 180-day period.

Regardless of anything set forth within this Section, under no circumstance shall a holder of a Class 3 Claim receive more than 100% of its Allowed General Unsecured Claim.

Nothing in this Plan, including any provisions providing a discharge, release, or exculpation, shall affect Class 3 Claimants rights under this section.

(c) <u>Voting</u>.  The Class 3 Claims are Impaired.  The holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**6.04.  <u>Class 4 – Allowed Equity Interests in the Debtors</u>**

(a) <u>Description.</u>  Class 4 consists of the Allowed Equity Interests in each of the Debtors. Equity Interests consist of any share of preferred stock, common stock, or other instrument evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

(b) <u>Treatment</u>.  On the Effective Date, all Allowed Equity Interests in each the Debtors shall be deemed sold to Third Friday, and the holders of Allowed Equity Interests in each of the Debtors shall receive no distribution on account of such Allowed Equity Interest.

(c) <u>Voting</u>.  The Class 4 Claims are Impaired.  The holders of Allowed Equity Interests in the Debtors are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Code and are not entitled to vote to accept or reject the Plan.

<div align="center">

**ARTICLE VII - VOTING AND DISTRIBUTIONS, ALLOWANCE
OF CERTAIN CLAIMS, AND TREATMENT OF DISPUTED,
CONTINGENT AND UNLIQUIDATED ADMINISTRATIVE
<u>EXPENSE CLAIMS, CLAIMS AND EQUITY INTERESTS</u>**

</div>

**7.01.   Solicitation of Votes**

Classes 1 and 3 are Impaired.  In accordance with sections 1126 and 1129 of the Code, each holder of an Allowed Claim (*i.e.*, not a Disputed Claim) as of the Voting Record Date in Class 1 and Class 3 shall be entitled to vote to accept or reject the Plan.  Any holder of a Disputed Claim is not entitled to vote on the Plan unless its Claim is estimated by the Court.

An Impaired Class of Claims will have accepted the Plan if: (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Code.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

Class 2 is Unimpaired.  Accordingly, the holders of an Allowed Other Secured Claim in Class 2 are conclusively deemed to have accepted the Plan and the solicitation of acceptances with respect to such Class is therefore not required under section 1126(f) of the Code.

Class 4 is Impaired.  However, the holders of an Allowed Equity Interest in Class 4 are conclusively deemed to have rejected the Plan and the solicitation of acceptances with respect to such Class is therefore not required under section 1126(g) of the Code.

**7.02.   Voting of Claims**

Each holder of an Allowed Claim that is entitled to vote on the Plan pursuant to the Code shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.  **<u>Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.</u>**

**7.03.   Method of Distribution Under the Plan**

(a)      Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim in the manner provided for in the Plan at the address of such holder as listed on the schedules and/or

proof of Claim as of the date of the Confirmation Hearing unless the Debtors or the Reorganized Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the schedules.

(b)     Any payment of Cash made by the Reorganized Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)     Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)     No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Reorganized Debtors to any holder of a Claim unless a request therefore is made in writing to the Reorganized Debtors, as applicable, or unless the distribution is a final distribution.

(e)     When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in this Section of the Plan.

(f)     In the event that any distribution to any holder is returnable as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Reorganized Debtors has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date or the distribution date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(g)     At the close of business on the date of the Confirmation Hearing, the claims register in each of these Cases shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtors or the Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer of any Claims occurring after the date of the Confirmation Hearing; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the date of the Confirmation Hearing and prior to the Effective Date.  The Debtors and the Reorganized Debtors, as applicable shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the date of the Confirmation Hearing.

**7.04.    Distributions Withheld for Disputed Claims**

(a) Establishment and Maintenance of Reserve

Following the Effective Date, on each distribution date, the Reorganized Debtors shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to one hundred percent (100%) of the Distributions to which holders of Disputed Claims, including Disputed Unsecured Claims and Disputed Secured Claims, would be entitled to

under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Reorganized Debtors or the Court in accordance with the Plan (the "Disputed Claims Reserve").

(b) Property Held in Disputed Claims Reserve

Cash in the Disputed Claims Reserve shall (together with all dividends or other accretions or distributions thereon) be held in trust by the Reorganized Debtors for the benefit of the potential recipients of such Cash and shall not constitute property of the Reorganized Debtors.

To the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of Cash and any other consideration in the Disputed Claims Reserve over the amount of Cash and any other consideration actually distributed on account of such Disputed Claim shall be, first, reallocated and redistributed to Holders of Allowed Claims in accordance with this Plan and, second, to the extent all payments are made in accordance with this Plan, vested in the Reorganized Debtors.

(c) Distributions Upon Allowance of Disputed Claims

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any distribution date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtors upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

(d) Expenses of Disputed Claims Reserve

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtors on or after the Effective Date with respect to the Disputed Claims Reserve shall be paid by the Reorganized Debtors.

**7.05.  Procedures for Allowance or Disallowance of Disputed Claims**

(a) Objections to and Resolution of Claims

Any and all objections to any Claim must be filed by the date established by the Court (the "Objection Deadline"), or with respect to rejection claims, within thirty days of their filing (the "Objection to Rejection Claims Deadline").

Any party in interest, including without limitation the Chapter 11 Trustee, the Reorganized Debtors and the Plan Proponent, may file and prosecute any and all objections to any Claim. In the event that a party in interest settles any claim objection, the party in interest may seek approval by submitting an Agreed Order in a form acceptable to said party in interest and the holder of the Disputed Claim. In the event that a party in interest and the holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the party in interest will set the contested matter for hearing before the Court and will provide all interested parties, including the holder of the Disputed Claim, with notice of the date set.

Subject to applicable law, from and after the Effective Date, any party in interest, including without limitation the Chapter 11 Trustee, the Reorganized Debtors and the Plan Proponent, will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan.  Any and all objections to any Claim must be filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline.  An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Court at any time on or before the Claim Objection Deadline.  The failure to object to any Claim or Interest for voting purposes will not be deemed a waiver of the right to object to, or re-examine, any such Claim in whole or in part.  All objections shall be litigated to Final Order; *provided, however*, that following the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any of its objections without approval of the Court.

(b) <u>No Distribution Pending Allowance</u>

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is disputed, the full amount of such Claim or Interest shall be treated as a Disputed Claim or Disputed Interest for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Equity Interest (in whole or in part).

(c) <u>Disallowed Claims</u>

All Claims held by Persons against whom an Action has commenced under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed disallowed pursuant to this Section 7.05(c) of the Plan shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

**7.06.    Disbursing Agent**

The Plan Administrator, or such Person(s) as the Plan Administrator may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims, and will make all Distributions required to be distributed under the Plan.  Any Disbursing Agent may employ or contract with other entities to assist in or make the Distributions required by the Plan.  Each Disbursing Agent will serve without bond, and each Disbursing Agent, will receive, without further Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out of pocket expenses incurred in connection with such services from the Reorganized Debtors on terms acceptable to the Reorganized Debtors.

## 7.07. Setoffs and Recoupment

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, set off (pursuant to the provisions of sections 553 and 362 of the Code or other applicable law) against or recoup from any Claim or Equity Interest and the payments to be made pursuant to the Plan in respect of such Claim or  Equity Interest, any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors, as applicable, may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors, as applicable, of any setoff or recoupment right it may have against the holder of such Claim or Equity Interest.

## 7.08. Estimations of Claims

For purposes of calculating and making Distributions under the Plan, the Debtors or the Reorganized Debtors, and the holder of a Disputed Claim shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtors or the Reorganized Debtors, and the holder of a Disputed Claim may at any time request that the Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Code or otherwise regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Court has ruled on any such objection, and the Court will retain jurisdiction to estimate any Claim at any time during litigation concerning such objection to any claim, including without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Court estimates any contingent or unliquidated claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

## 7.09. No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtors, or any of their respective professionals, consultants, officers, directors or Affiliates or their respective successors or assigns, or any of their respective property.  However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**7.10.   Amendments to Claims**

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law.   After the Confirmation Date, a Claim may not be amended without the authorization of the Court.   Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtors or the Reorganized Debtors, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

**7.11.   Post-petition Interest on Claims**

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

**7.12.   Unclaimed Funds**

Any funds unclaimed for the period described in paragraph 6.03(f) above shall be forfeited by the holder and will revest in the Reorganized Debtors.

Additionally, if any distribution to a holder of an Allowed Claim remains unclaimed for a period of six months after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant shall not be entitled to any further distributions hereunder.   A distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the schedules or in a proof of Claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

**7.13.   Cancellation of Existing Equity Interests**

On the Effective Date, all existing Equity Interests in the Debtors shall be deemed, and shall be, cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.

**7.14.   Allocation of New Equity Interests**

As soon as reasonably practicable following the Effective Date, in exchange for the Purchase Price, the Reorganized Debtors shall authorize one hundred percent (100%) of New Equity to Third Friday or its assigns,[2] which shall be free and clear of all liens, claims or encumbrances of any kind or nature.   All shares of New Equity allocated and issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.

---

[2] It is anticipated that Third Friday will create a single purpose entity to own 100% of New Equity.

Each distribution and issuance referred to herein shall be governed by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Person receiving such distribution or issuance.

## ARTICLE VIII - EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

**8.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases**

(a) <u>Executory Contracts and Unexpired Leases</u>

The Code grants the Debtors the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease: (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, (iii) which is listed by the Chapter 11 Trustee on her Assumption and Assignment Notice as provided by DE 541 and 542, or (iv) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than fourteen (14) days prior to the Confirmation Hearing; provided, however, that the Debtors or the Reorganized Debtors shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected. The Debtors or the Reorganized Debtors shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby. The listing of a document on the Assumption List shall not constitute an admission by the Debtors or the Reorganized Debtors that such document is an executory contract or an unexpired lease, or that the Debtors or the Reorganized Debtors have any liability thereunder.

(b) <u>Schedules of Assumed Executory Contracts and Unexpired Leases;</u>
<u>Inclusiveness</u>

Each executory contract and unexpired lease listed or to be listed on the Assumption List that relates to the use or occupancy of real property shall be deemed to include: (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on the Assumption List, and (ii) all executory contracts or unexpired leases appurtenant to the premises listed on the Assumption List, including, without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers,

uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises, unless any of the foregoing agreements previously have been assumed.

(c) <u>Insurance Policies</u>

Each of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, including without limitation, any retrospective premium rating plans relating to such policies, shall be treated as executory contracts under the Plan. Notwithstanding the foregoing, distributions under the Plan to any holder of a Claim covered by any insurance policies and related agreements, documents or instruments that are assumed hereunder, shall comply with the treatment provided under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver or release of any Action that the Debtors may hold against any entity, including, without limitation, the insurers under any of the Debtors' policies of insurance.

(d) <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases</u>

Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute: (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article VIII of the Plan, and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.

**8.02. Cure of Defaults**

To the extent that cure payments are due with respect to an executory contract or unexpired lease to be assumed pursuant to the Plan, the amount of such cure payment shall be listed in the Assumption List. To the extent that the non-debtor party to any executory contract or unexpired lease disagrees with the cure amount listed in the Assumption List, such party must file a notice of dispute with the Court and serve such notice on the Debtors no later than five (5) days prior to the Confirmation Hearing. Except as may otherwise be agreed to by the parties or provided herein, within ninety (90) days after the Effective Date, the Reorganized Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of the Code. Except as otherwise provided herein, all disputed defaults that are required to be cured shall be cured either within ninety (90) days of the entry of a Final Order determining the amount, if any, of the Debtors' or Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. If there are any objections filed, the Court shall hold a hearing. In the event the Court determines that the cure amount is greater than the cure amount listed by the Debtors, the Reorganized Debtors may elect to reject the contract or unexpired lease and not pay such greater cure amount.

**8.03. Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Court and/or served upon the Debtors and the Reorganized Debtors or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after

the later of: (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order, and (iii) notice of an amendment to the Assumption List.  Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan.

ANY CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT IS NOT FILED WITHIN THE TIMES SET FORTH HEREIN OR IN THE CONFIRMATION ORDER WILL BE AUTOMATICALLY DISALLOWED, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST, AS APPLICABLE, THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR PROPERTY OF THE FOREGOING PARTIES, WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR THE REORGANIZED DEBTORS, AS APPLICABLE, OR FURTHER NOTICE TO, OR ACTION, ORDER OR APPROVAL OF THE COURT OR ANY OTHER ENTITY, AND ANY CLAIM ARISING OUT OF THE REJECTION OF THE EXECUTORY CONTRACT OR UNEXPIRED LEASE SHALL BE DEEMED FULLY SATISFIED, RELEASED, AND DISCHARGED.

### 8.04.  Indemnification Obligations

For purposes of the Plan, the obligations of the Debtors to defend, indemnify, reimburse, or limit the liability against any claims or obligations of its present and former directors, officers or employees who served as directors, officers and employees, respectively, on or after the Petition Date, pursuant to the Debtors' certificate of incorporation or bylaws, applicable state law or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.  Notwithstanding the above, the Debtors and the Reorganized Debtors shall have no obligation whatsoever and shall not be entitled to defend, indemnify, reimburse, or limit liability for any director, officer or employee who did not serve in such capacity for the Debtors after the Petition Date.

### 8.05.  Compensation and Benefit Programs

Except as provided in the Plan and Assumption List, and other than stock option or similar plans which will be cancelled as part of the treatment of any Class of Claims or Class of Equity Interests under the Plan, all employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its directors, officers, and employees who served as directors, officers and employees, respectively, after the Petition Date, including, without limitation, all savings plans, retirement plans (exclusive of defined benefit plans), health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed pursuant to sections 365(a) and 1123(b)(2) of the Code; *provided, however*, that the Reorganized Debtors reserve the right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

## ARTICLE IX - MEANS FOR IMPLEMENTATION
## AND EFFECT OF CONFIRMATION OF PLAN

**9.01.    General**

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

**9.02.    Corporate Existence**

Except as otherwise provided in the Plan, the Reorganized Debtors shall continue to exist after the Effective Date, with all powers of a corporation, pursuant to the applicable law in the jurisdiction in which the Reorganized Debtors is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws are amended or superseded by the Plan or otherwise, and to the extent such documents are amended or superseded, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.  Following the Effective Date, the Reorganized Debtors may operate its business free of any restrictions imposed by the Code, the Rules or by the Court, subject only to the terms and conditions of this Plan and Confirmation Order.  Following the Effective Date, the Reorganized Debtors shall be owned one hundred percent (100%) by Third Friday.

**9.03.    The Reorganized Debtors and Vesting of Assets**

Except as otherwise expressly provided in the Plan and the Confirmation Order, on the Effective Date, the Reorganized Debtors shall be vested with all of the property of the Estate, free and clear of all Claims, Liens, encumbrances, charges, and other interests, including but not limited to those of holders of Claims and holders of Equity Interests.  The Reorganized Debtors shall assume all of the Debtors' rights, obligations and liabilities under the Plan.

Pursuant to section 1141 of the Code, the property of the Estate of the Debtors, including without limitation, the Assets, shall be transferred to and vest in the Reorganized Debtors on the Effective Date, free and clear of all Liens, Claims and Interests of holders of Claims and Equity Interests, including any party asserting any claims against or interests in the Debtors, except as otherwise expressly provided in the Plan or the Confirmation Order.

**9.04.    Effectiveness of Securities, Instruments and Agreements**

On the Effective Date, the Debtors, the Chapter 11 Trustee, the Reorganized Debtors or Third Friday, as applicable, shall execute and deliver such further documents, instruments, and agreements as are necessary to effectuate and further evidence the terms and conditions of the Plan.  On the Effective Date, all documents described in the Plan Supplement and all other agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall

become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

## 9.05.    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or members of the Debtors or the Reorganized Debtors or its successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the new membership interests and documents relating thereto, the adoption of the Reorganized Debtors' articles of organization, the adoption of the Reorganized Debtors' operating agreement, and the election or appointment, as the case may be, of managers or officers of the Reorganized Debtors pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to applicable general business organization law, without any requirement of further action by the stockholders, directors or members of the Debtors or Reorganized Debtors.

## 9.06.    Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Assumption List, the Plan, and all such transactions, subject to the occurrence of the Effective Date.

## 9.07.    No Change of Control Rights

Except as provided in the Plan and Confirmation Order, any acceleration, vesting or similar change of control rights of any Person under employment, benefit or other arrangements with the Debtors that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

## 9.08.    Administration After the Effective Date

After the Effective Date, the Reorganized Debtors may operate their businesses, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules.

## 9.09.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## 9.10.    Estate Actions

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Estate Actions accruing to the Debtors, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Reorganized Debtors, subject to the lien set forth in Section 6.03 of the Plan.  To avoid any doubt, in exchange for the Purchase Price and as described in Section 6.01 of the plan, the Reorganized Debtors (and therefore the Estate Actions) shall be owned 100% by Third Friday.  The Reorganized Debtors

shall have the authority, but not the obligation, to commence and prosecute such Estate Actions. Further, section 547 of the Code enables a debtor in possession to avoid transfers to a creditor, based upon an antecedent debt, made within ninety (90) days of the petition date, which enables the creditor to receive more than it would under a liquidation.  Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value.  The Reorganized Debtors will analyze payments made by the Debtors to creditors within ninety (90) days (or in the case of Insiders, one year) before the Petition Date (as set forth in item 3(a) in the Debtors' Statement of Financial Affairs) to determine which such payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions.  After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Estate Actions with the approval of the Court.

### 9.11.  Discharge of Debtors

*Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, their Estate, any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtors and Equity Interests in the Debtors shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan.*

### 9.12.  Injunction

*Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors or Equity Interest in the Debtors, are permanently enjoined, on and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or the Reorganized Debtors, or against the property or interests in property of the Debtors or the Reorganized Debtors, on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation from the Debtors or the Reorganized Debtors, or against the property or interests in property of the Debtors or the Reorganized Debtors, on account of any such Claim or Equity Interest.  The injunctions described herein shall extend to the successors of the Debtors, including, without limitation, the Reorganized Debtors, and their respective properties and interests in property.*

### 9.13.    Release by Holders of Claims and Interests

*The Plan, and the provisions and distributions set forth herein, is a full and final settlement and compromise of all Claims and causes of action, whether known or unknown, that holders of Claims against the Debtors and/or Equity Interests in the Debtors may have against any of the Released Parties pursuant to sections 1123(b)(3) and (6) of the Code and Rule 9019. In consideration of the obligations of the Debtors and the Reorganized Debtors under the Plan, the securities, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, each holder of a Claim against the Debtors and Equity Interest in the Debtors shall be deemed to forever release, waive and discharge all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the Debtors' or the Reorganized Debtors' respective obligations under this Plan and the securities, contracts, instruments, releases and other agreements and documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the these Cases or the conduct thereof, or this Plan. Notwithstanding the foregoing, nothing in the foregoing or the Confirmation Order shall release any Claim or causes of action for gross negligence or willful misconduct.*

### 9.14.    Plan Release of Third Friday

*As of the Effective Date, except as otherwise provided herein or in the Confirmation Order, upon receipt of the Purchase Price, the Debtors and their Estates indefeasibly release and discharge Third Friday, its respective agents, attorneys, representatives, employees, officers, directors, members, successors, assigns, parents, subsidiaries, affiliates, heirs, executors, administrators, and each of them from all demands, controversies, actions, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated, in law or in equity, from the beginning of the world to the Effective Date.*

### 9.15.    Injunction Against Interference with the Plan

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims, Equity Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

### 9.16.    Votes Solicited in Good Faith

The Plan Proponent has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code, and on account of such solicitation will not, be liable at any time for the violation of any

applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## ARTICLE X - CONFIRMATION AND
## EFFECTIVENESS OF THE PLAN

### 10.01.  Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived pursuant to Section 10.03 of the Plan:

(i)      The Court shall have approved the information contained in the Disclosure Statement as adequate;

(ii)     The Confirmation Order shall be in form and substance reasonably acceptable to the Plan Proponent, the Chapter 11 Trustee, and the Committee, and include, among other things, a finding of fact that the Plan Proponent, and its respective present and former members, officers, directors, employees, advisors, attorneys, and agents acted in good faith within the meaning of and with respect to all of the actions described in section 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions;

(iii)    The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iv)     The Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Debtors and Reorganized Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

(v)      The statutory fees owing to the United States Trustee shall have been paid in full; and

(vi)     All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

### 10.02.  Effect of Failure of Conditions

If the Confirmation Order is vacated by the Court, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (i) constitute a waiver or release of any Action by, or Claims against, the Debtors or (ii) prejudice in any manner the rights of the Debtors.

## 10.03.  Waiver of Conditions

The Plan Proponent may waive in writing one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth in Section 10.01 of the Plan.

## ARTICLE XI - RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    to hear and determine all Actions, including, without limitation, Actions commenced by the Debtors, the Reorganized Debtors, or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)    to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)    to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)    to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h)    to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)    to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)    to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)    to recover all Assets of the Debtors and Property of the Estate, wherever located;

(l)      to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)      to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtors for all taxable periods through the Effective Date for all taxable periods of the Debtors through the liquidation and dissolution of such entity);

(p)      to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)      to hear any other matter not inconsistent with the Code; and

(r)      to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtors under applicable environmental laws.

The grant of jurisdiction to the Bankruptcy Court herein over a matter or issue does not mean that Bankruptcy Court approval is required for such matters or issues, nor does it otherwise affect the substantive legal requirements or the requirements in any agreement pertaining to such matters or issues.

## ARTICLE XII - MISCELLANEOUS PROVISIONS

### 12.01.  Effectuating Documents and Further Transactions

The Debtors or the Reorganized Debtors, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### 12.02.  Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, including new membership interests, creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or

sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 12.03.  Authorization to Request Prompt Tax Determinations

The Reorganized Debtors is authorized to request an expedited determination under section 505(b) of the Code of the tax liability of the Debtor, for all taxable periods through the Effective Date.

### 12.04.  Exculpation

*Subject to the occurrence of the Effective Date, neither the Debtors, the Reorganized Debtors, nor any of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives (the "Exculpated Parties") shall have or incur any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan; provided, however, that the foregoing shall not operate as a waiver or release for (i) any express contractual obligation owing by any such Person, (ii) willful misconduct or gross negligence, and (iii) with respect to professionals, liability arising from claims of professional negligence which shall be governed by the standard of care otherwise applicable to professional negligence claims under applicable non-bankruptcy law, and, in all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided further that nothing in the Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to the Plan.*

### 12.05.  Injunction Relating to Exculpation

*The Confirmation Order will contain an injunction, effective on the Effective Date, permanently enjoining the commencement or prosecution by the Debtors, the Reorganized Debtors and any other Person, whether derivatively or otherwise, of any Action or causes of action exculpated, released or discharged pursuant to this Plan against the Exculpated Parties.*

### 12.06.  The Dissolution and Release of the Committee

*On the Effective Date, the Committee shall be dissolved and the members, employees, agents, advisors, affiliates, and representatives (including, without limitation, attorneys, financial advisors, and other Professionals) shall be released from any and all liabilities, damages, claims, causes of action, and rights incurred or otherwise relating to their role as Committee members by or from any party-in-interest, holder of a Claim, holder of an Equity Interest, the Debtors and their current and former officers, directors, employees and agents, and the Reorganized Debtors expressly excluding fraud, gross negligence and willful misconduct. The Committee and its members, as of the Effective Date, shall be discharged of and from all*

*further authority, duties, responsibilities, and obligations related to, arising from and in connection with these Cases.*

### 12.07.  Post-Effective Date Fees and Expenses

Except as otherwise provided in the Plan and Confirmation Order, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### 12.08.  Payment of Statutory Fees

The Reorganized Debtors shall be responsible for timely payment of unpaid, but accrued fees incurred on or before the Effective Date of the Plan pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Reorganized Debtors shall file with the Court and serve on the United States Trustee a quarterly financial report regarding all income and disbursements, including all plan payments, for each quarter (or portion thereof) the Case remains open.

### 12.09  Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Plan Proponent at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Plan Proponent shall have complied with section 1125 of the Code.  The Plan may be altered, amended or modified by the Reorganized Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Plan Proponent, and without the approval of the Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### 12.10.  Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any

other provision of the Plan.  The Court, at the request of the Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 12.11.  Revocation or Withdrawal of the Plan

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan Proponent revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtors or any other Person, an admission against interests of the Debtors, nor shall it prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

### 12.12.  Binding Effect Notices

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

### 12.13.  Notices

All notices, requests and demands to or upon the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.  Notices shall be sent or delivered to the following:

**To the Reorganized Debtors:**

The Third Friday Total Return Fund, L.P.
Attn: Michael E. Lewitt
85 N. Congress Ave.
Delray Beach, FL. 33445

**With a copy to:**

Shraiberg, Landau & Page, P.A.
Attorneys for the Reorganized Debtors
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Phone: (561) 443-0800/Fax: (561) 998-0047
Attn: Bradley S. Shraiberg, Esq.

### 12.14. Governing Law

Except to the extent the Code, Rules or other federal law is applicable, or to the extent the Plan or any agreement entered into pursuant to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Kentucky, without giving effect to the principles of conflicts of law of such jurisdiction.

### 12.15. Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtors or the Reorganized Debtors, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### 12.16. Section 1125(e) of the Code

As of the Confirmation Date, the Plan Proponent shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code. As of the Confirmation Date, the Plan Proponent and its respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, Affiliates and representatives shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Code in the offer and issuance of the new securities hereunder, and therefore are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections hereof or other offer and issuance of new securities under the Plan.

### 12.17. Filing of Additional Documents

On or before Substantial Consummation of the Plan, the Plan Proponent shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.18. No Admissions

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

### 12.19. Waiver of Bankruptcy Rule 3020(e) and 7062

The Plan Proponent may request that the Confirmation Order include (a) a finding that Rules 3020(e) and 7062 shall not apply to the Confirmation Order; and (b) authorization for the Plan Proponent to consummate the Plan immediately after entry of the Confirmation Order.

### 12.20. Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Court, the provisions of Rule 9006 shall apply.

### 12.21.  Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code.

### 12.22.  Final Decree

Once there has been Substantial Consummation of the Plan, the Reorganized Debtors shall file a motion with the Court to obtain a final decree to close the Case.

### 12.23.  Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### 12.24.  No Interest or Attorneys' Fees

Except as otherwise provided under the Plan, or as ordered by the Court, no interest, penalty or other charge, including any late charge, arising from and after the Petition Date, an no award or reimbursement of any attorneys' fees or other related cost or disbursement, shall be allowed on, or in connection with, any Claim, unless otherwise provided under the Plan or awarded by the Court.

### 12.25.  Successors and Assigns

This Plan and all the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

### 12.26.  Headings

The headings of articles, paragraphs and sub-paragraphs in this Plan are inserted for convenience only and shall not affect the interpretation of any provision of this Plan.

### 12.27.  No Penalty for Prepayment

Neither the Debtors nor the Reorganized Debtors shall be liable for payment of any sum or interest in the form of a penalty relating to the prepayment of any Claim treated under this Plan.

### 12.28.  Savings Clause

Any minor defect or inconsistency in the Plan may be corrected or amended by the Confirmation Order.

### 12.29.  Remedy of Defects

After the Effective Date, the Reorganized Debtors may, with approval of the Court, and so

long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtors.

## ARTICLE XIII - CONCLUSION

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtors.  This Plan, when approved and confirmed by the Court, shall be deemed binding on the Debtors, the Reorganized Debtors, and all creditors and all parties in interest and their successors and assigns in accordance with section 1141 of the Bankruptcy Code.

**DATED: June 10, 2020**

                    **PLAN PROPONENT:**

                    The Third Friday Total Return Fund, LLP

By: _____
                      Third Friday GP, LLC, General Partner
                      Michael E. Lewitt, Manager

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case

on this the 10th day of June, 2020.

<div style="margin-left: 40%;">

Respectfully submitted,

Bradley S. Shraiberg, Esq.
Joshua B. Lanphear, Esq.
**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for the Plan Proponent
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: jlanphear@slp.law


By:  /s/ *Bradley S. Shraiberg*
    Bradley S. Shraiberg
    Florida Bar. No. 121622
    Joshua B. Lanphear
    Florida Bar No. 125421

</div>