UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICORE HOLDINGS, LLC, *et al.*, | Case No. 19-61608 (GRS) |
| Debtors.[1] | Jointly Administered |

_____/

**DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF REORGANIZATION
PROPOSED BY THE THIRD FRIDAY TOTAL RETURN FUND, LLP**

June 10, 2020

Respectfully submitted,

Bradley S. Shraiberg, Esq.
Joshua B. Lanphear, Esq.
**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for The Third Friday Total Return Fund, LLP
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: jlanphear@slp.law

By: __/s/ *Bradley S. Shraiberg*_____
Bradley S. Shraiberg
Florida Bar. No. 121622
Joshua B. Lanphear
Florida Bar No. 125421

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (6887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................5

    A.    Overview of the Plan ............................................................................7
    B.    Voting Instructions...............................................................................8

II.    BACKGROUND OF DEBTORS and .............................................................8

Debtors' prepetition efforts at reorganization.............................................................8

III.    THE CHAPTER 11 CASE ..............................................................................10

    A.    Commencement of the Chapter 11 Case...........................................10
    B.    Other Significant Events ....................................................................10
    C.    Retained Professionals .......................................................................11
    D.    The Claims Process.............................................................................11
    E.    Objection to Claims of Pelorus Equity Group, Inc. .........................12

IV.    CHAPTER 11 PLAN .......................................................................................13

    A.    Plan Overview.....................................................................................14
    B.    Substantive Consolidation of Debtors' Estates.................................14
    C.    Unclassified Claims ...........................................................................15
        1.    Allowed Administrative Claims ...........................................15
        2.    Priority Tax Claims...............................................................15
        3.    United States Trustee's Fees .................................................16
    D.    Treatment of Claims ...........................................................................16
    E.    Distributions Under the Plan..............................................................18
    F.    Procedures for Allowance or Disallowance of Disputed Claims.........................19
    G.    Executory Contracts and Unexpired Leases ......................................20
    H.    Amendment, Modification or Revocation of the Plan ..........................21
    I.    Means for Implementation and Effect of Confirmation of Plan .........................21
        1.    Discharge of Debtor..............................................................21
        2.    Injunction Related to Discharge............................................21
        3.    Plan Release of Third Friday ................................................22
        4.    Injunction Against Interference with the Plan .........................22
        5.    Votes Solicited in Good Faith...............................................22
        6.    Term of Bankruptcy Injunction or Stays ..............................22
    J.    Conditions Precedent to Effectiveness of Plan .................................23
    K.    Retention of Jurisdiction ....................................................................23
    L.    Post-Confirmation Date Service List .................................................23

V.    CONFIRMATION OF THE PLAN..................................................................23

    A.    Solicitation of Votes ..........................................................................23
    B.    Confirmation Hearing .........................................................................23
    C.    Confirmation Standards ......................................................................24

VI.     Funding and feasibility of the Plan ...................................................................24

        A.      Risks to the Creditors.....................................................................24
        B.      Best Interests Test and Liquidation Analysis.......................................25
        C.      Funding the Purchase Price.............................................................26
        D.      Feasibility....................................................................................26

VII.    ALTERNATIVES TO THE PLAN ...............................................................26

                1.      Liquidation Under Chapter 7 ................................................27
                2.      Alternative Plan of Reorganization.........................................27

CONCLUSION..............................................................................................27

## EXHIBIT INDEX

EXHIBIT A:        Chapter 11 Plan Filed by The Third Friday Total Return Fund, LLP

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION
PROPOSED BY THE THIRD FRIDAY TOTAL RETURN FUND, LLP**

---

**THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS
PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION
HEARING.**

---

## I.    INTRODUCTION

The Third Friday Total Return Fund, LLP ("Third Friday" or the "Plan Proponent") provides this Disclosure Statement (the "Disclosure Statement") to all of the Debtors'[2] creditors in order to permit such creditors to make an informed decision in voting to accept or reject the Plan of Reorganization Proposed By The Third Friday Total Return Fund, LLP (the "Plan") dated and filed on June 10, 2020 with the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court" or the "Court") in connection with the above-captioned cases (the "Cases").   A copy of the Plan is attached to this Disclosure Statement as **Exhibit A**. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."  Capitalized terms used herein but not otherwise defined have the meaning assigned to such terms in the Plan.

The Disclosure Statement is presented to certain holders of Claims against the Debtors in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code" or the "Code").   Section 1125 of the Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtors' creditors, to make an informed judgment whether to accept or reject the Plan.  The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED.   THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING DEBTORS (PARTICULARLY AS TO THE VALUE OF ITS PROPERTY) ARE AUTHORIZED BY PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS.   ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR PLAN PROPONENT, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

---

[2] Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF DEBTORS AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE PLAN PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE PLAN PROPONENTS OR THE DEBTORS FINANCIAL CONDITION IS ACCURATE OR COMPLETE.  THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE PLAN PROPONENT'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS ARE CORRECT.  THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF DEBTORS AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL,

BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS
CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS
CONTEMPLATED THEREBY.

Pursuant to the Bankruptcy Code, the Plan was filed with the Bankruptcy Court on June
10, 2020 and this Disclosure Statement was filed thereafter.  The Bankruptcy Court will schedule
a hearing on approval of this Disclosure Statement and on confirmation of the Plan (the
"Confirmation Hearing") to be held at the United States Bankruptcy Court, Community Trust
Building, 100 East Vine Street, Suite 200, Lexington, Kentucky 40507.  If hearings have not
resumed at the courthouse, the hearing will be conducted telephonically and all parties in interest
must arrange to appear solely telephonically.  For more information, please visit  https://www.
kyeb.uscourts.gov/telephonic-hearing-instructions.  At the Confirmation Hearing, the Bankruptcy
Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the
Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please
contact Shraiberg, Landau & Page, P.A., 2385 NW Executive Center Drive, Suite 300, Boca
Raton, FL 33431, Phone: (561) 443-0800, Facsimile: (561) 998-0047.

A.      **Overview of the Plan**

**THE DESCRIPTION OF THE PLAN SET FORTH HEREIN CONSTITUTES A
SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE
PLAN DOCUMENTS.    THE PLAN IS ATTACHED AS EXHIBIT A TO THIS
DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN
THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for reorganization.  The
fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances
so as to maximize recoveries to its creditors.  With this purpose in mind, individuals and businesses
sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation.
Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the
treatment and rights to be afforded to creditors and stockholders with respect to their claims against
and interests in a debtor's bankruptcy estate.

The Plan divides the Claims against the Debtors into Classes.  Certain Claims—in
particular, Administrative Claims—remain unclassified in accordance with section 1123(a)(1) of
the Code.  The Plan assigns all other Claims and Interests as described below.[3]

---

[3] The figures described in this table are rough estimates that are likely higher than the actual amounts of Allowed
Claims.  The rough estimates are based upon initial schedules filed by the Debtors (which the Plan Proponent submits
are incomplete and inaccurate), proofs of claims filed against the respective Debtors as of June 10, 2020, and the
notices of claim of lien on the docket as of June 10, 2020.  The figures are subject to change due to, among other
things, the passage of the General Bar Date and forthcoming objections to claims.  As discussed in Article III, Section
E of this Disclosure Statement, the Plan Proponent submits that the actual Allowed Amount of the Secured Claim held
by Pelorus will be significantly lower than the amount asserted in its Notices of Claims of Lien at Case No. 19-61608-
GRS, ECF Noa. 583 and 585.  The Plan Proponent also submits that many duplicate General Unsecured Claims have
been filed against each of the Debtors, which will be removed from the final Allowed Amounts of Class 3 Claims.
The Plan Proponent reserves the right to amend this Disclosure Statement and the claim estimations provided herein.

### B.    Voting Instructions

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|---|---|---|---|---|---|
| N/A | Administrative Claims | $1,000,000 | $1,000,000 | 100% | Unclassified and not entitled to vote |
| N/A | Priority Claims | $2,411,740.82 | $2,411,740.82 | 100% | Unclassified and not entitled to vote |
| N/A | US Trustee's Fees | Currently unknown | Currently unknown | 100% | Unclassified and not entitled to vote |
| 1 | Allowed Third Friday Secured Claim | $25,780,016.07 | $25,780,016.07 | In exchange for the Purchase Price, Third Friday shall receive 100% of the Equity in each of the Debtors and the transfer of all Estate Actions | Impaired and entitled to vote |
| 2 | Allowed Other Secured Claims | Less than $22,952,898.87 | Less than $22,952,898.87 | 100% | Unimpaired and not entitled to vote |
| 3 | Allowed General Unsecured Claims | Less than $113,911,487.48 | Less than $113,911,487.48 | Pro Rata distribution of $5 million | Impaired and entitled to vote |
| 4 | Equity | N/A | N/A | 0% | Impaired and not entitled to vote |

The Bankruptcy Code entitles only holders of impaired claims who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on the Plan. Holders of classes of claims that will receive no distributions under a proposed plan are deemed to reject that plan and, therefore, not entitled to vote on the Plan. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

Under the Plan, Classes 1 and 3 are Impaired and entitled to vote to accept or reject the Plan. Class 2 is Unimpaired and not entitled to vote on the Plan pursuant to section 1126(f) of the Code. Class 4 is Impaired but not entitled to vote on the Plan pursuant to section 1126(g) of the Code. Moreover, Class 4 consists of insider equity claims, and its votes are therefore not calculated when determining whether the Plan has been accepted or rejected.

## II.    BACKGROUND OF DEBTORS AND
## DEBTORS' PREPETITION EFFORTS AT REORGANIZATION

The Debtors are in the business of managing and acquiring distressed hospitals in rural communities. Although at one time the Debtors owned five hospitals, as of the Petition Date, the Debtors owned two open hospitals and one closed hospital.

The corporate organization and summary of the Debtors is as follows:

Americore Holdings is a holding company owned indirectly by Grant White. *See* ECF No. 11, Declaration of Grant White (the "Underline White Declaration") at Exhibit A (the "Organizational Chart").

Americore Holdings owns controlling interests in four subsidiaries: non-debtor entities Americore Real Estate, LLC ("Americore Real Estate") and Americore Lab Services, LLC ("Americore Lab"), and Debtors, Success Healthcare and Americore Health. *See id.* Non-debtor entities Americore Real Estate and Americore Lab do not appear to be operating entities. *See id.*

Debtor Success Healthcare is a holding company for Debtors, St. Alexius Properties and St. Alexius Hospital. In turn, St. Alexius Properties owns the St. Louis, Missouri real property on which the St. Alexius hospital, medical office building and nursing school are located. St Alexius Hospital owns the hospital and nursing school. *See* White Declaration at ¶¶ 12-13. The real property owned by St. Alexius Properties is valued at approximately $43 million. *See id.* at Exhibit C and St. Alexius Properties' schedules filed at ECF No. 24 in Case No. 19-61611-GRS.

Debtor Americore Health wholly owns three subsidiaries of its own: Debtor Americore Enterprises, and two inactive, non-debtor entities, Americore Health Management, LLC and Americore Billing Solutions, LLC. *See* Organization Chart.

Finally, Debtor Americore Enterprises owns controlling interests in four subsidiaries. The first such subsidiary, Lee County Medical Center, LLC, is a non-debtor entity.

The second Americore Enterprises subsidiary is Debtor, Ellwood Medical. Ellwood Medical wholly owns two additional Debtors, Ellwood Real Estate and Ellwood Operations. Together, these entities own and operate a rural hospital in Ellwood City, Pennsylvania, with Ellwood Real Estate owning the real property on which the hospital is located, and Ellwood Operations operating the hospital itself. *See* White Declaration at ¶¶ 6-9. The real property owned by Ellwood Real Estate is valued at approximately $22.5 million. *See id.* at Exhibit B and Ellwood Real Estate's schedules filed at ECF No. 25 in Case No. 19-61614-GRS.

The third Americore Enterprises subsidiary is a Debtor, Pineville Medical. Pineville Medical formerly operated a hospital in Pineville, Kentucky; however, said hospital was sold prior to the Petition Date. *See* White Declaration at ¶ 17.

The final American Enterprises subsidiary is likewise a Debtor, Izard County Medical. Izard County Medical operates a hospital located in Calico Rock, Arkansas and leases it from a third-party non-debtor. *See* White Declaration at ¶¶ 10-11. The hospital offers in-patient, out-patient, laboratory, radiology, physical therapy services, and an emergency room. *Id.*

Following a series of lawsuits and the inability to service their debts, the Debtors required financing to restructure their debts. The Debtors ultimately obtained financing from Third Friday. The Debtors and Third Friday are parties to the following agreements:

(i)     That Loan and Security Agreement by and between Americore Health, LLC and The Third Friday Total Return Fund, L.P. dated as of January 2, 2018 as subsequently amended and modified (the "Americore Health Loan Agreement");

(ii)   That Loan and Security Agreement by and between Americore Holdings, LLC and The Third Friday Total Return Fund, L.P. dated as of May 1, 2018 as subsequently amended and modified (the "Americore Holdings Loan Agreement," and together with the Americore Health Loan Agreement, the "Third Friday Loan Agreements"); and

(iii)   Certain forbearance agreements between Grant White, Americore Holdings, Americore Health, Americore Enterprises, and Third Friday (collectively, the "Third Friday Forbearance Agreements").

Ultimately, on December 24, 2019, Third Friday declared the Third Friday Loan Agreements in default.

## III.   THE CHAPTER 11 CASE

### A.   Commencement of the Chapter 11 Case

Unable to service its debts, faced with multiple pending and potential lawsuits and receiverships, and default declared by Third Friday, the Debtors commenced these Cases in an attempt to reorganize on December 31, 2019.

### B.   Other Significant Events

#### Appointment of Patient Care Ombudsman

On December 31, 2019, the Court ordered the United States Trustee to appoint a patient care ombudsman pursuant to section 333 of the Code and Rule 2007.2.

On January 21, 2020, Paul A. Randolph, Acting United States Trustee appointed Suzanne Koenig to serve as the Patient Care Ombudsman in these Cases.

The duties and responsibilities of the Patient Care Ombudsman are, in part, governed by the *Agreed Order Amending and Modifying the Terms of Appointment of the Patient Care Ombudsman* [ECF No. 354, Case No. 19-61608-GRS].

#### Formation of Creditors Committee

On January 23, 2020, Paul A. Randolph, Acting United States Trustee formed the Committee in these Cases pursuant to 11 U.S.C. § 1102(a)(1). The Committee consists of Beckman Coulter, Inc. (Chairperson); Baxter County Regional Hospital, Inc.; Specialists in Anesthesia, P.C.; Western Healthcare, LLC; Midwest Emergency Services; Dinakar Golla, M.D.; and Saint Louis University. *See* ECF No. 142, Case No. 19-61608-GRS.

#### Appointment of Trustee

On February 20, 2020, upon agreement of the Debtors, the United States Trustee, the Committee, Third Friday and Pelorus, the Court entered the *Agreed Order Appointing Chapter 11 Trustee* [ECF No. 258, Case No. 19-61608-GRS], thereby directing the United States Trustee to appoint a chapter 11 trustee in these Cases.

On February 21, 2020, Carol L. Fox was appointed as the Chapter 11 Trustee of the Debtors. ECF No. 260, Case No. 19-61608-GRS. The Chapter 11 Trustee is a principal at GlassRatner, a B. Riley Financial company, and is located in Fort Lauderdale, Florida.

## C.    Retained Professionals

As summarized below, the Court authorized the retention of certain professionals in connection with these Cases.

The Court approved the Debtors' employment of Dentons Bingham Greenebaum LLP as general bankruptcy counsel to the Debtors. ECF No. 335, Case No. 19-61608-GRS. Thereafter, the Court authorized Dentons Bingham Greenebaum LLP to withdraw from representing the Debtors in these Cases. ECF No. 257, Case No. 19-61608-GRS.

The Court approved the Debtors' employment via the Chapter 11 Trustee of GlassRatner Advisory & Capital Group, LLC as financial advisor to the Debtors. ECF No. 400, Case No. 19-61608-GRS.

The Court approved the Committee's employment of Nelson Mullins Riley & Scarborough LLP, a law firm with offices located in Fort Lauderdale, Florida. ECF No. 304, Case No. 19-61608-GRS. The Court also approved the Committee's employment of Frost Brown Todd, LLC as local counsel to the Committee. ECF No. 379, Case No. 19-61608-GRS.

The Court approved the Chapter 11 Trustee's employment of Baker & Hostetler LLP as general bankruptcy counsel to the Chapter 11 Trustee. ECF No. 377, Case No. 19-61608-GRS. The Court also approved the Chapter 11 Trustee's employment of B. Riley FBR, Inc. as the Debtors' investment banker. ECF No. 444, Case No. 61608-GRS.

The Court approved the Patient Care Ombudsman's employment of Saul Ewing Arnstein & Lehr, LLP as counsel to the Patient Care Ombudsman, ECF No. 410, Case No. 19-61608-GRS, and SAK Management Services, LLC as medical operations advisor to the Patient Care Ombudsman. ECF No. 399, Case No. 19-61608-GRS.

The Trustee and other Estate professionals may seek to engage additional professionals following the filing of this Disclosure Statement.

## D.    The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The Court establishes a "bar date"—a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims, the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The deadline for filing Proofs of Claims against the Debtors, other than claims of governmental units and Administrative Claims shall be the last date for creditors to file Proofs of

Claim in the Cases, which the Court established as **June 17, 2020** (the "General Bar Date").  *See* the Court's Order Establishing Bar Dates for Filing of Proofs of Claim and Approving Form and Manner of Notice [Case No. 19-61608-GRS, ECF No. 544].

As described in more detail in Section 9.10 of the Plan, on the Effective Date, in exchange for the Purchase Price, Third Friday shall receive 100% of the Equity in each of the Debtors and the transfer of the Estate Actions.  Following the Effective Date, Third Friday or its assigns shall review, analyze and resolve Claims on an ongoing basis as part of the claim reconciliation process.

Nonetheless, additional claims may be asserted against the Debtors subsequent to the expiration of the General Bar Date and the actual ultimate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Plan Proponent's estimates. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

**E.    Objection to Claims of Pelorus Equity Group, Inc.**

**(a) Success Healthcare, St. Alexius Properties, and St. Alexius Hospital**

One June 4, 2020, the Trustee filed the *Chapter 11 Trustee's Objection to Pelorus Equity Group, Inc.'s Notice of Claim of Liens Against St. Alexius Debtors* [Case No. 19-61608-GRS, ECF No. 610], wherein the Trustee objected to the *Claim of Lien* [Case No. 19-61608-GRS, ECF No. 585] filed by Pelorus against St. Alexius Properties and St. Alexius Hospital to deny Pelorus' request to credit bid to acquire assets of St. Alexius Properties and St. Alexius Hospital.  The Trustee's objection, and the arguments raised therein, was joined and adopted by Third Friday [Case No. 19-61608-GRS, ECF No. 614] and the Committee [Case No. 19-61608-GRS, ECF No. 617].

Pelorus' Claim of Lien asserts a claim in the amount of $10,654,960.54 purportedly secured by certain real and personal property of St. Alexius Properties, St. Alexius Hospital and Success Healthcare, and Pelorus' intention to credit bid at any proposed sale of said collateral.

The Trustee's objection, joined by Third Friday and the Committee, raises numerous bases to deny Pelorus the right to credit bid, including without limitation (i) that St. Alexius Hospital is not a party to any of the loan agreements submitted with Pelorus' Claim of Lien or otherwise liable for any amounts due or owing under said loan agreements, (ii) that Pelorus does not hold any security interest in the assets of St. Alexius Hospital, (iii) that Pelorus has failed to file an accounting of funds advanced by Pelorus and payments made under the relevant loan agreements in support of its asserted claim, (iv) that the interest under the loan agreements violates applicable law governing usury, (v) that the relevant loan agreements are unconscionable under applicable law, (vi) that Pelorus received certain avoidable transactions under applicable state statutes, (vii) that Pelorus' asserted claim incorporates unenforceable claims against the Debtors' Estates, (viii) that Pelorus engaged in inequitable conduct in negotiating the loan agreements, and (ix) that Pelorus' asserted claim is subject to equitable subordination pursuant to section 510(c) of the Code. Without limitation, the foregoing bases likewise support an objection to any claim asserted by Pelorus against any of the Debtors.

For more detail regarding the Pelorus' relationship with certain of the Debtors and the foregoing bases for the Trustee's objection to Pelorus' Claims of Liens, see the Trustee's objections at Case No. 19-61608-GRS, ECF Nos. 610 and 612.

**(b) Ellwood Operations, Ellwood Medical, and Ellwood Real Estate**

One June 4, 2020, the Trustee filed the *Chapter 11 Trustee's Objection to Pelorus Equity Group, Inc.'s Notice of Claim of Liens Against Ellwood Debtors* [Case No. 19-61608-GRS, ECF No. 612], wherein the Trustee objected to the *Claim of Lien* [Case No. 19-61608-GRS, ECF No. 583] filed by Pelorus against Ellwood Operations, Ellwood Medical, and Ellwood Real Estate to deny Pelorus' request to credit bid to acquire assets of Ellwood Operations, Ellwood Medical, and Ellwood Real Estate.  The Trustee's objection, and the arguments raised therein, was joined and adopted by Third Friday [Case No. 19-61608-GRS, ECF No. 615] and the Committee [Case No. 19-61608-GRS, ECF No. 618].

Pelorus' Claim of Lien asserts a claim in the amount of $4,094,292.49 purportedly secured by certain real and personal property of Ellwood Operations, Ellwood Medical, and Ellwood Real Estate, and Pelorus' intention to credit bid at any proposed sale of said collateral.

The Trustee's objection, joined by Third Friday and the Committee, raises numerous bases to deny Pelorus the right to credit bid, including without limitation (i) that Pelorus has failed to establish the validity and enforceability of its asserted claim and security interest against the Ellwood debtors, (ii) that the relevant loan agreements violate applicable state law prohibiting usurious interest and fees, and (iii) that Pelorus has failed to file an accounting of funds advanced by Pelorus and payments made under the relevant loan agreements in support of its asserted claim. Without limitation, the foregoing bases likewise support an objection to any claim asserted by Pelorus against any of the Debtors.

For more detail regarding the Pelorus' relationship with certain of the Debtors and the foregoing bases for the Trustee's objection to Pelorus' Claims of Liens, see the Trustee's objections at Case No. 19-61608-GRS, ECF Nos. 610 and 612.

**(c) All Debtor Entities**

For the avoidance of doubt, the Plan Proponent intends to object, or support objections raised by other movants, to all proofs of claims filed by Pelorus against any of the Debtors.

## IV.  <u>CHAPTER 11 PLAN</u>

**THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN.  CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN.  SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF**

CLAIMS ARE URGED TO REVIEW THE PLAN CAREFULLY.  THE PLAN, IF CONFIRMED, WILL BE BINDING ON DEBTORS AND ALL HOLDERS OF CLAIMS.

**A.    Plan Overview**

The Plan Proponent believes that confirmation of the Plan provides the best opportunity for maximizing recoveries for Creditors.

**B.    Substantive Consolidation of Debtors' Estates**

As described in more detail in Article III of the Plan, the Plan proposes substantive consolidation of the eleven separate corporate Debtors into the Reorganized Debtors *solely for voting on, confirmation of and distributions hereunder*.  As a result of such substantive consolidation, the Plan treats Claims against and Interests in each of the eleven separate corporate Debtors as Claims against and Interests in a single debtor entity.

The entry of the Confirmation Order shall constitute approval by the Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Code, effective as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates, solely for the purposes of voting on, confirmation of and distributions hereunder.  On the Effective Date, the Debtors will be substantively consolidated pursuant hereto and in accordance herewith into the Reorganized Debtors.

Specifically, on and after the Effective Date with respect to the Reorganized Debtors, (a) all assets and liabilities of the Debtors shall be treated as though they were pooled solely for purposes of voting on, confirmation of and distributions hereunder, (b) no distribution shall be made hereunder on account of any intercompany Claim held by any one of the Debtors against any of the other Debtors, (c) no distribution shall be made hereunder on account of any Interest held by any one of the Debtors in any of the other Debtors, (d) all Allowed Other Secured Claims against the Debtors shall be entitled to a single recovery on the Effective Date, and thus one distribution (and no multiple recovery) on any such Claim, (e) all Allowed General Unsecured Claims against the Debtors shall be entitled to receive a single Pro Rata distribution on the Effective Date from at least $1,000,000 and, to the extent applicable, further Pro Rata distributions from the first dollars received from the net proceeds of the Estates Actions, and the Back-End Payment, but in no event shall be entitled to receive more than 100% of its respective Claim or, in the aggregate, be entitled to receive more than its respective Pro Rata distribution of $5,000,000, and (f) every Claim filed or to be filed in any Case of any Debtor shall be deemed filed against the Reorganized Debtors and shall be one Claim against and one obligation of the Reorganized Debtors.

Notwithstanding the substantive consolidation of the Reorganized Debtors as provided herein, the substantive consolidation shall be solely for purposes of voting on, confirmation of and distributions hereunder and specifically shall not: (a) affect the legal and organization structure of each Debtor from and after the Effective Date; (b) destroy or otherwise affect the separate corporate existence of each Debtor and the ownership interest in each Debtor; or (c) affect any statutory fees paid by, or accrued in respect of, any Debtor to the U.S. Trustee or the Clerk of the Court from the Petition Date through the Effective Date.

The Plan shall be deemed a motion, pursuant to Rule 9013, by the Plan Proponent for limited and partial substantive consolidation of the Debtors with respect to the Plan as set forth Article III of the Plan.   The Plan Proponent reserves the right to supplement the facts and law supporting the request for partial or limited substantive consolidation herein at or before the Confirmation Hearing.   Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation of the Plan and shall be determined by the Court at the Confirmation Hearing.   Failure to timely object to substantive consolidation may result in consolidation of the Debtors in accordance herewith, without further hearing.

## C.    Unclassified Claims

### 1.    Allowed Administrative Claims

Allowed Administrative Claims arising in the ordinary course of the Debtors' business shall be paid upon the date on which such Claims become due in the ordinary course (and not from the Allowed Administrative Claim Payment), in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims.

Allowed Administrative Claims of professionals employed in these Cases, arising  under section 503(b)(2) of the Code and that are entitled to priority under section 507(a)(1) of the Code, shall be paid 100% of the amount allowed by the Court upon application to the Court, first, from retainers held by professionals and, second, to the extent said retainers are insufficient to satisfy the respective professional Allowed Administrative Claim, from the Allowed Administrative Claim Payment provided by Third Friday or its assigns.

Other than ordinary course Allowed Administrative Claims and professional Allowed Administrative Claims (both addressed above) and those Claims otherwise specifically dealt with in the Plan, any remaining Allowed Administrative Claims shall be paid 100% of their respective Allowed Administrative Claims in Cash from the Debtors' operations, unless otherwise ordered by the Court or agreed to by the holder of such Claim, upon the latter of (i) the Effective Date, or (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

The Plan Proponent estimates that there will be a total of approximately $1,000,000.00 in Allowed Administrative Claims.

### 2.    Priority Tax Claims

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in § 1129(a)(9)(C) of the Code after the later of (i) the Effective Date and (ii) the date on which such Priority Tax Claim is Allowed (the "Payment Trigger Date"), with the maturity date by which all payments due to be no later than the last day of the twenty-fourth month after the Payment Trigger Date.   At the discretion of the Reorganized Debtors, payment in full of the total balance due on any such Priority Tax Claim may be made without penalty.

### 3.      United States Trustee's Fees

The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.  The Debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of the Case by the issuance of a Final Decree by the Court, or upon entry of an order of the Court dismissing the Case, or converting the Case to another chapter under the Code, and the Debtors shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.  The foregoing fees shall be paid from funds generated from the Reorganized Debtors' operations.

### D.      Treatment of Claims

### Class 1.  Allowed Third Friday Secured Claim

(a)      Description.  Class 1 consists of the Allowed Third Friday Secured Claims against the Debtors in the approximate aggregate amount of $25,780,016.07.

(b)      Treatment. On the Effective Date, in exchange for the Purchase Price, and in full satisfaction, settlement, release, extinguishment and discharge of the Allowed Third Friday Secured Claim and any other Claim held by Third Friday against any of the Debtors or arising in or from the Third Friday Loan Agreements or the Third Friday Forbearance Agreement, the holder of the Allowed Third Friday Secured Claim shall receive one hundred percent (100%) of the Equity in each of the Debtors and the transfer of all Estate Actions to Third Friday.  As a result, Third Friday will own 100% of the Reorganized Debtors.  To avoid any doubt, following the Effective Date, the Reorganized Debtors shall not owe any obligation to, or be indebted to, Third Friday.

(c)      Impairment.  The Class 1 Claims are Impaired.  The holders of the Class 1 Claims are entitled to vote to accept or reject the Plan.

### Class 2.  Allowed Other Secured Claims

(a)      Description.  Class 2 consists of the Allowed Other Secured Claims against the Debtors in the approximate aggregate amount of $22,952,898.87.[4]

(b)      Treatment.   On the Effective Date, in full satisfaction, settlement, release, extinguishment and discharge of the Allowed Other Secured Claims or any other Claim held by a holder of an Allowed Other Secured Claim against any of the Debtors, including release of any Lien(s) in favor of such a holder against any of the Debtors, each holder of an Allowed Other Secured Claim shall receive a lump sum payment from the Plan Administrator in an amount equal to one hundred percent (100%) of the Allowed Amount of such Claim in Cash, or as otherwise ordered by the Court, as part of the Purchase Price provided by Third Friday.  The Plan Proponent anticipates that the amount of the Purchase Price net Allowed Administrative Claims will be sufficient to pay the Allowed Amount of each Allowed Other Secured Claim in full.

---

[4] For explanation on why the Plan Proponent submits the actual Allowed Amount of Class 2 Claims will be significantly lower, see footnote 3.

(c)    <u>Impairment</u>.  The Class 2 Claims are Unimpaired.  The holders of the Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to 1126(f) of the code and are not entitled to vote to accept or reject the Plan.

### **Class 3. <u>Allowed General Unsecured Claims</u>**

(a)    <u>Description</u>. Class 3 consists of the Allowed General Unsecured Claims against the Debtors in the approximate aggregate amount of $113,911,487.48.[5]

(b)    <u>Treatment</u>.  On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive from the $22,000,000 in Cash comprising a portion of the Purchase Price, a Pro Rata distribution of $5,000,000 from the Purchase Price net of Allowed Administrative Claims and Allowed Other Secured Claims.

In the event that there is not $5,000,000 remaining from the $22,000,000 in Cash comprising a portion of the Purchase Price after satisfying Allowed Administrative Claims and Allowed Other Secured Claims, Third Friday shall increase the Purchase Price to assure that holders of Class 3 Claims receive, at a minimum, a Pro Rata distribution of $1,000,000 on the Effective Date.  In addition, holders of a Class 3 Claim shall have a lien on the net proceeds of the Estate Actions in an amount that brings the total amount available for Class 3 Claims to $5,000,000. The foregoing liens and security interests granted herein are to be automatically deemed perfected upon entry of the Confirmation Order without the necessity of the Class 3 Claimants taking possession, filing financing statements, mortgages or other documents. Although not required, upon request by the Class 3 Claimants, the Reorganized Debtors shall execute and deliver to the Class 3 Claimants any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other instruments or documents considered by the Class 3 Claimants to be necessary in order to perfect the security interests and liens in the Estate Actions, which actions shall not be deemed a violation of the automatic stay.

Specifically, prior to paying Third Friday any proceeds from the Estate Actions, as funds become available, holders of Class 3 Claims shall receive a Pro Rata distribution from the first dollars received from the Estate Actions, after expenses, up to an aggregate of $5,000,000. By way of example, if after paying Allowed Administrative Claims and Allowed Other Secured Claims, the pool to pay the Class 3 Claims is only $3,000,000 on the Effective Date, then the first $2,000,000 of net proceeds from the Estate Actions shall be paid, Pro Rata, to holders of Class 3 Claims (or an amount that satisfies their claims completely if it is less than an aggregate of $5,000,000).

The Reorganized Debtors shall meet with the Oversight Committee at least once a month to and through the earlier of payment of the $5,000,000 to the Allowed General Unsecured Creditors or the Two-Year Anniversary Date (the "Oversight Committee Meetings"). At least 48 hours before a scheduled Oversight Committee Meeting, the Reorganized Debtors shall provide the Oversight Committee a detailed status of the Estate Actions. In addition, the Reorganized Debtors shall obtain Oversight Committee approval of all material decisions regarding the Estate Actions, including decisions with respect to settlements.

---

[5] For explanation on why the Plan Proponent submits the actual Allowed Amount of Class 3 Claims will be significantly lower, see footnote 3.

In addition, upon the Two-Year Anniversary, the Reorganized Debtors shall pay Allowed General Unsecured Claims up to an additional $1,000,000 so that Allowed General Unsecured Claims receive total Pro Rata distributions of up to $5,000,000. However, the Reorganized Debtors shall not have an obligation to make the Back-End Payment in an amount more than what is required to provide the Allowed General Unsecured Creditors more than total Pro Rata distributions of $5,000,000 or to pay anything more than $1,000,000 as a Back-End Payment even if the total Pro Rata distributions to Allowed General Unsecured Creditors is less than $4,000,000 as of the Two-Year Anniversary.

Thirty (30) days before the Two-Year Anniversary, the Oversight Committee may provide the Reorganized Debtors notice that it is triggering a 180-day Option, upon which, the net collections of Estate Actions shall continue to be applied to the remaining amount of the $5,000,000 owed to the Class 3 Claimants, and the $1,000,000 Back-End shall be postponed until the end of the 180-day Option (the "Option Protocol"). The Oversight Committee may trigger a final 180-day Option by providing the Reorganized Debtors notice of such within 30 days of the expiration of the first 180-day Option, upon which the Option Protocol shall apply for another 180-day period.

Regardless of anything set forth within this Section, under no circumstance shall a holder of a Class 3 Claim receive more than 100% of its Allowed General Unsecured Claim.

Nothing in this Plan, including any provisions providing a discharge, release, or exculpation, shall affect Class 3 Claimants rights under this section.

(c)    Impairment.  The Class 3 Claims are Impaired.  The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### Class 4.  Allowed Equity Interests in the Debtors

(a)    Description.  Class 4 consists of the Allowed Equity Interests in each of the Debtors.  Equity Interests consist of any share of preferred stock, common stock, or other instrument evidencing an ownership interest in the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

(b)    Treatment.  On the Effective Date, all Allowed Equity Interests in each the Debtors shall be deemed sold to Third Friday, and the holders of Allowed Equity Interests in each of the Debtors shall receive no distribution on account of such Allowed Equity Interest.

(c)    Impairment.  The Class 4 Claims are Impaired.  The holders of Allowed Equity Interests in the Debtors are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Code and are not entitled to vote to accept or reject the Plan.

### E.    Distributions Under the Plan

Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors to the holder of each Allowed Claim in the manner provided for in the Plan at the address of such holder as listed on the schedules and/or proof of Claim as of the date of the Confirmation Hearing unless the Debtors or the Reorganized

Debtors have been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the schedules.

Any payment of Cash made by the Reorganized Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Reorganized Debtors to any holder of a Claim unless a request therefore is made in writing to the Reorganized Debtors, as applicable, or unless the distribution is a final distribution.

When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number.  Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in this Section of the Plan.

In the event that any distribution to any holder is returnable as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Reorganized Debtors have determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that any distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date or the distribution date, whichever shall apply, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

At the close of business on the date of the Confirmation Hearing, the claims register in each of these Cases shall be closed, and there shall be no further changes in the record holders of any Claims.  The Debtors or the Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer of any Claims occurring after the date of the Confirmation Hearing; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the date of the Confirmation Hearing and prior to the Effective Date.  The Debtors and the Reorganized Debtors, as applicable shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the date of the Confirmation Hearing.

## F.    Procedures for Allowance or Disallowance of Disputed Claims

### 1.    Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims

The deadline to object to any claim will be set by the Court (the "Objection Deadline").  Any party in interest, including without limitation the Chapter 11 Trustee, the Reorganized Debtors and the Plan Proponent, may file and prosecute any and all objections to any Claim.  In the event that a party in interest settles any claim objection, the party in interest may seek approval by submitting an Agreed Order in a form acceptable to said party in interest and the holder of the

Disputed Claim. In the event that a party in interest and the holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the party in interest will set the contested matter for hearing before the Court and will provide all interested parties, including the holder of the Disputed Claim, with notice of the date set.

### 2.    Unclaimed Funds

Any funds unclaimed for the period described of the Plan shall be forfeited by the holder and shall revest in the Reorganized Debtors pursuant to section 347(b) of the Code.

### 3.    Establishment and Maintenance of Reserve

Following the Effective Date, on each distribution date, the Reorganized Debtors shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to one hundred percent (100%) of the Distributions to which holders of Disputed Claims, including Disputed Unsecured Claims and Disputed Secured Claims, would be entitled to under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Reorganized Debtors or the Court in accordance with the Plan (the "Disputed Claims Reserve").

### 4.    Distributions Upon Allowance of Disputed Claims

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any distribution date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtors upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan.

## G.    Executory Contracts and Unexpired Leases

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtors and any Person shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease: (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, (iii) which is listed by the Chapter 11 Trustee on her Assumption and Assignment Notice as provided by DE 541 and 542, or (iv) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than fourteen (14) days prior to the Confirmation Hearing; provided, however, that the Debtors or the Reorganized Debtors shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.

The Debtors or the Reorganized Debtors shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on the Assumption List shall not constitute an admission by the Debtors or the Reorganized Debtors that such document is an executory contract or an unexpired lease, or that the Debtors or the Reorganized Debtors have any liability thereunder.

## H.    Amendment, Modification or Revocation of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Plan Proponent at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Plan Proponent shall have complied with section 1125 of the Code.  The Plan may be altered, amended or modified by the Reorganized Debtors at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Plan Proponent, and without the approval of the Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

## I.    Means for Implementation and Effect of Confirmation of Plan

### 1.    Discharge of Debtor

*Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, their Estate, any of the assets or properties under the Plan.  Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtors and Equity Interests in the Debtors shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtors, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan*.

### 2.    Injunction Related to Discharge

*Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors or Equity Interest in the*

*Debtors, are permanently enjoined, on and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtors or the Reorganized Debtors, or against the property or interests in property of the Debtors or the Reorganized Debtors, on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation from the Debtors or the Reorganized Debtors, or against the property or interests in property of the Debtors or the Reorganized Debtors, on account of any such Claim or Equity Interest.  The injunctions described herein shall extend to the successors of the Debtors, including, without limitation, the Reorganized Debtors, and their respective properties and interests in property.*

3.    **Plan Release of Third Friday**

*As of the Effective Date, except as otherwise provided herein or in the Confirmation Order, upon receipt of the Purchase Price, the Debtors and their Estates indefeasibly release and discharge Third Friday, its respective agents, attorneys, representatives, employees, officers, directors, members, successors, assigns, parents, subsidiaries, affiliates, heirs, executors, administrators, and each of them from all demands, controversies, actions, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated, in law or in equity, from the beginning of the world to the Effective Date*

4.    **Injunction Against Interference with the Plan**

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims, Equity Interests, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

5.    **Votes Solicited in Good Faith**

The Plan Proponent has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

6.    **Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**J.       Conditions Precedent to Effectiveness of Plan**

The Plan shall not become effective unless and until the conditions set forth in Section 10.01 of the Plan shall have been satisfied or waived.

**K.       Retention of Jurisdiction**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for all matters specifically described in Article XI of the Plan.

**L.       Post-Confirmation Date Service List**

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall continue to be effective, and further notices will be sent to such Entities.

## V.       <u>CONFIRMATION OF THE PLAN</u>

**A.       Solicitation of Votes**

Classes 1 and 3 are Impaired.  In accordance with sections 1126 and 1129 of the Code, each holder of an Allowed Claim (*i.e.*, not a Disputed Claim) as of the Voting Record Date in Class 1 and Class 3 shall be entitled to vote to accept or reject the Plan.  Any holder of a Disputed Claim is not entitled to vote on the Plan unless its Claim is estimated by the Court.

An Impaired Class of Claims will have accepted the Plan if: (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Code.  A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.  Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

Class 2 is Unimpaired.  Accordingly, the holders of an Allowed Other Secured Claim in Class 2 are conclusively deemed to have accepted the Plan and the solicitation of acceptances with respect to such Class is therefore not required under section 1126(f) of the Code.

Class 4 is Impaired.  However, the holders of an Allowed Equity Interest in Class 4 are conclusively deemed to have rejected the Plan and the solicitation of acceptances with respect to such Class is therefore not required under section 1126(g) of the Code.

**B.       Confirmation Hearing**

The Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan at the United States Bankruptcy Court for the Eastern District of Kentucky, located at the United States Bankruptcy Court, Community Trust Building, 100 East Vine Street, Suite 200, Lexington, Kentucky 40507.  If hearings have not resumed at the

courthouse, the hearing will be conducted telephonically and all parties in interest must arrange to appear solely telephonically.  For more information, please visit  https://www.kyeb.uscourts.gov/ telephonic-hearing-instructions.  The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.  The Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to Confirmation must be in writing, specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim.  Any such objection must be filed with the Court, and serviced so that it is received by the Court and the following parties on or before the deadline set by the Court:

> Shraiberg, Landau & Page, P.A.
> Attorneys for the Plan Proponent
> 2385 N.W. Executive Center Drive, Suite 300
> Boca Raton, Florida 33431
> Attn: Bradley S. Shraiberg, Esq.
>
> -and-
>
> Office of the U.S. Trustee
> Attn: John L. Daugherty and Bradley M. Nerderman
> 100 E. Vine St. #500
> Lexington, KY 40507

## C.    Confirmation Standards

For a plan to be confirmed, the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Code.  Section 1129 of the Code also imposes requirements that with respect to each class of claims, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims that is impaired under the Plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Code have been met.  The Plan Proponent believes that the Plan satisfies all of the requirements for confirmation for the reasons stated below.

## VI.    FUNDING AND FEASIBILITY OF THE PLAN

## A.    Risks to the Creditors

The Plan Proponent does not anticipate that there are any significant federal tax consequences the Plan would have on Creditors.  As stated above, the Disclosure Statement will not be construed to be advice on the tax, securities or other legal effects of the Plan. Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

**B.     Best Interests Test and Liquidation Analysis**

With respect to each impaired Class of Claims, confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  To determine what holders of Claims of each impaired Class would receive if the Debtors were liquidated under chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in the context of a chapter 7 liquidation case and the assets were liquidated by a chapter 7 trustee.  The cash amount that would be available for satisfaction of Claims would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtors, augmented by the unencumbered cash held by the Debtors at the time of the commencement of the liquidation case.

The Debtors' cost of liquidation under chapter 7 would include the fees payable to the chapter 7 trustee as well as those fees payable to other professionals that such a chapter 7 trustee might engage.  The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending chapter 11 Cases, including any unpaid expenses incurred by the Debtors of the chapter 11 Trustee during the Chapter 11 Cases such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Allowed Claims.

The Plan Proponent believes that each holder of an Allowed Claim will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Code on such date.  In a chapter 7 liquidation, Class 3 Allowed General Unsecured Claims would likely not receive a distribution, as the Debtor's cash on hand would be paid to Class 1 and/or Class 2.  The distribution to Class 3 is being made possible by the Purchase Price provided by the Plan Proponent, which is a voluntary contribution that will not be present in a chapter 7 liquidation.  Rather, in chapter 7 liquidation, Class 3 would only be entitled to proceeds from the liquidation of available unencumbered assets.  The Plan Proponent does not believe these unencumbered assets will provide value to creditors, or can be liquidated in a timeframe, that is comparable with the Purchase Price provided by the Plan Proponent.

The Plan Proponent's financial advisor, Kapila Mukamal, is in the process of drafting a liquidation analysis.  However, at this time, the Debtors' schedules on file are incomplete and inaccurate, and the Trustee has not yet finalized and filed amended schedules.  The Trustee is in the process of finalizing financial statements of each of the Debtors as of the Petition Date and amended schedules based thereon.  Upon receipt of accurate financial statements of each of the Debtors and/or amended schedules, the Plan Proponent's financial advisor will complete the liquidation analysis and the Plan Proponent will file same with the Court.

The Plan Proponent anticipates that the liquidation analysis will confirm that Class 3 Allowed General Unsecured Claims will not receive any distribution in a chapter 7 liquidation other than proceeds from the Estates Actions, which the Plan Proponent proposes to provide to Class 3 Allowed General Unsecured Claims pursuant to Plan.  *See* Article IV, Section D above.

## C.    Funding the Purchase Price

Article I of the Plan defines "Purchase Price" as the sum of (i) Third Friday's credit bid in the amount of all outstanding principal, interest and fees due under the Third Friday Loan Agreements and the Third Friday Forbearance Agreements as of the Petition Date; and (ii) $22,000,000 in Cash provided by Third Friday or its assigns to the Plan Administrator on or before the Effective Date to be used first for payment of the Allowed Administrative Claim Payment, second for distributions to holders of Allowed Other Secured Claims in accordance with the classification and treatment proscribed in Class 2 of this Plan, and third for Pro Rata distributions to holders of Allowed General Unsecured Claims in accordance with the classifications and treatment proscribed in Class 3 of this Plan.  In the event that that the balance of the $22,000,000 after payment of the Allowed Administrative Claim Payment and payments to holders of Allowed Other Secured Claims does not equal at least $1,000,000, Third Friday agrees to increase the Cash component of the Purchase Price to an amount necessary to provide, at a minimum, a Pro Rata distribution of $1,000,000 to holders of Allowed General Unsecured Claims on the Effective Date.

The Plan Proponent submits that it has sufficient capital to fund the Purchase Price.

## D.    Feasibility

Section 1129(a)(11) of the Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization.  For purposes of determining whether the Plan meets this requirement, the Plan Proponent has analyzed its ability to meet its financial obligations as contemplated thereunder.

The Plan Proponent believes that it will be able to provide the payments contemplated under the Plan based on the fact that the Plan Proponent possesses the wherewithal and intent to provide the Purchase Price.

Based on the foregoing, the Plan Proponent believes it will be able to provide for all payments required pursuant to the Plan.  Accordingly, the Plan Proponent asserts that it is able to perform all of its obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Code.

## VII.    <u>ALTERNATIVES TO THE PLAN</u>

Although this Disclosure Statement is intended to provide information to assist a holder of a Claim or Interest in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed and consummated, the alternatives to the Plan include (i) piecemeal, forced liquidation of the Debtors under chapter 7 of the Code; (ii) an alternative plan of reorganization; or (iii) dismissal of the Cases leaving creditors and interest holders to pursue available non-bankruptcy remedies.

1.      **Liquidation Under Chapter 7**

If no plan is confirmed, the chapter 11 Cases may be converted to a cases under chapter 7 of the Code, pursuant to which a chapter 7 trustee would be selected to liquidate the Debtors' assets for distribution in accordance with the priorities established by chapter 7 of the Code. As discussed above, the Plan Proponent believes that liquidation under chapter 7 would increase significantly the amount of Allowed Administrative Claims, including professional administrative claims, and decrease the amount available for Allowed General Unsecured Claims. In a chapter 7 liquidation: (i) the Debtors' assets would have to be sold or otherwise disposed of in a forced sale situation over a short period of time, (ii) additional administrative expenses would be involved in the appointment of a chapter 7 trustee and other professionals, and (iii) additional expenses and claims, some of which would be entitled to priority, would be generated during the liquidation.

2.      **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Chapter 11 Trustee or another party in interest may attempt to formulate an alternative plan. Such a plan might involve either a reorganization and continuation of the Debtor's businesses or an orderly liquidation of its assets. Most likely, it will involve liquidation of the Debtors. Given the time and expense in formulating a chapter 11 plan, the Plan Proponent is not aware of any party in interest willing to formulate and seek confirmation of a separate plan.

3.      **Dismissal of the Chapter 11 Case**

If the chapter 11 Cases are dismissed, creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against the Debtors. However, in that event, creditors would be faced with the costs and difficulties of attempting to collect claims on a piecemeal basis and would be competing with the collection efforts of other creditors.

## CONCLUSION

For all the reasons set forth herein, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives. Consequently, the Plan Proponent urges all eligible holders of Impaired Claims to vote to **accept** the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Court.

**DATED: June 10, 2020**

                **PLAN PROPONENT:**

                The Third Friday Total Return Fund, LLP

By: _____
                    Third Friday GP, LLC, General Partner
                    Michael E. Lewitt, Manager

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on June 10,

2020.

Respectfully Submitted,

**SHRAIBERG, LANDAU & PAGE, P.A.**
Attorneys for the Plan Proponent
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: jlanphear@slp.law

By: __/s/ *Bradley S. Shraiberg*_____
      Bradley S. Shraiberg
      Florida Bar. No. 121622
      Joshua B. Lanphear
      Florida Bar No. 125421

EXHIBIT A

Chapter 11 Plan

[*See* ECF No. 639]