**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

---------------------------------------------------------- x
:
In re:                                    :   Chapter 11
:
Americore Holdings, LLC, *et al.*,[1]      :   Case No. 19-61608
:   (Jointly Administered)
Debtors.                     :
:
---------------------------------------------------------- x

**OBJECTION TO AMENDED MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
ASSETS (ST. ALEXIUS) IN ACCORDANCE WITH APPROVED BID PROCEDURES,
AS MODIFIED; (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN ACCORDANCE WITH
THE BID PROCEDURES; AND (C) GRANTING RELATED RELIEF**

The Third Friday Total Return Fund, L.P. ("Third Friday"), by and through its undersigned counsel, hereby objects to the *Amended Motion for Entry of an Order (a) Authorizing the Sale of Substantially All of the Debtors' Assets (St. Alexius) in Accordance with Approved Bid Procedures, as Modified; (b) Authorizing the Assumption and Assign of Executory Contracts and Unexpired Leases in Accordance with the Bid Procedures; and (c) Granting Related Relief* (the "Motion" or "Sale Motion") filed by the chapter 11 trustee, Carol F. Fox (the "Trustee"). ECF No. 744.

**INTRODUCTION**

Through the Sale Motion, the Trustee seeks to sell substantially all of the assets of St. Alexius Properties, LLC, St. Alexius Hospital Corporation #1 and Success Healthcare 2, LLC (the

---

[1] The Debtors in these chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Healther Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation # 1 (2766).

{2337/000/00503755}                                   1

"Alexius Debtors") to the winner of a competitive auction being held on July 28, 2020. Sale Mot. ¶ 14. However, despite Third Friday timely submitting a qualified bid that exceeds the stalking horse's bid by some $1 million, the Trustee took the position that Third Friday was not a qualified bidder and excluded it from the auction.

Additionally, Third Friday has filed a chapter 11 plan of reorganization (the "Plan") [ECF No. 639]. Under the Plan, Third Friday proposes to acquire the equity interests in all of the above-captioned debtors, Americore Holdings, LLC, *et al.* (the "Debtors"), in exchange for *inter alia* fully paying allowed secured claims in cash, and paying general unsecured creditors *pro rata*. *See* Plan art. VI. The sale of the Alexius Debtors' assets, however, will moot the Plan, as Third Friday will of course not purchase equity in shell companies whose assets have been sold. This dynamic has raised the prospect of a conflict for the Trustee. By advocating a sale of the Alexius Debtors' assets, the Trustee may be benefitting creditors of the Alexius Debtors at the expense of creditors of the remaining Debtors, who would be paid under the Plan.

It is black letter law that an estate fiduciary must maximize the value obtained from a sale. There is no legitimate business reason to exclude Third Friday from the auction, and there is a high probability that the Trustee is conflicted in this transaction. The Court should deny the sale.

## BACKGROUND[2]

1. As stated in the Sale Motion, SA Hospital Acquisition is the stalking horse bidder for the Alexius Debtors' assets. Sale Mot. ¶ 15. The stalking horse bid includes a $17 million cash purchase price, and the bidder is protected by a breakup fee of three percent (3.0%) of such price, or $510,000.00. Sale Mot. ¶ 17; ECF No. 764 (order approving stalking horse bidder).

---

[2] For purposes of brevity the background set forth in the Sale Motion is incorporated by reference and capitalized terms shall have the meanings ascribed to them in the Sale Motion unless otherwise defined herein. *See* Sale Mot. ¶¶ 1–18. Third Friday sets forth additional relevant information in its background section *infra*.

2. Pursuant to the St. Alexius Modified Bid Procedures, potential purchasers of the assets must submit to the Trustee by Friday July 24, *inter alia*: (a) an executed asset purchase agreement without contingencies such as financing or due diligence, (b) a cash deposit, and (c) reasonably satisfactory written evidence of the purchaser's ability to close and perform on the sale at a price equal to 125% of the bid amount if such purchaser is declared the winning bidder. ECF No. 697-1 at pp. 2–4 (bidding requirements).

3. On Friday July 24 Third Friday complied with said procedures. Third Friday, *inter alia*, submitted an APA substantially identical to that of SA Hospital Acquisition except for a cash purchase price of $18 million, i.e. $1 million higher than that of the stalking horse. A copy of the e-mail and attached APA are attached as **EXHIBIT "A"**. A redline of the APA showing changes from that of the stalking horse contract is attached as **EXHIBIT "B"**.

4. Also on July 24 Third Friday submitted to the Trustee a commitment letter from a third-party lender, First Wall Street Capital, demonstrating its wherewithal to perform under the APA. A copy of the e-mail and attached commitment letter is attached as **EXHIBIT "C"**. The same day Third Friday sent a second commitment letter from a separate lender, Wosnhtons Corporation, to the Trustee. A copy of the e-mail attaching the second commitment letter is attached as **EXHIBIT "D"**.[3]

5. On Sunday July 26—two days after providing its bid package to the Trustee, and only two days prior to the auction—the undersigned e-mailed the Trustee's Investment Banker to ascertain as to Third Friday's status as a qualified bidder. Incredibly, the Investment Banker had not even reviewed all of the materials provided, including the Wosnhtons commitment. Third

---

[3] To protect the integrity of the auction, the limits on the First Wall Street Capital and Wosnhtons Corporation financing amounts in the commitment letters are redacted. Third Friday can provide unredacted copies of the letters following the auction and/or to the Court for *in camera* review.

{2337/000/00503755}    3

Friday accordingly resent the commitment on Monday July 27. A copy of that e-mail is attached as **Exhibit "E"**.

6.   Third Friday also repeatedly attempted to contact the Trustee and Investment Banker regarding its bid on Sunday July 26. Follow-up e-mails on this topic are attached as **Exhibit "F"**.

7.   On July 28, 2020 the Trustee conducted the auction without deeming Third Friday a qualified bidder.

8.   There was no legitimate reason to exclude a bidder whose bid exceeds that of the Stalking Horse by $1 million. Even accounting for the $510,000.00 breakup fee, the difference in the bids could have resulted in hundreds of thousands of dollars in additional cash for the estates.

9.   The Court should deny the sale.

## ARGUMENT

**A.   There is No Legitimate Business Reason to Exclude Third Friday from the Auction.**

Asset sales under § 363(b) of the Bankruptcy Code "fall under the rubric of the 'business judgment' test." *In re Bakalis*, 220 B.R. 525, 532 (E.D.N.Y. 1998) (citing 3 Collier on bankruptcy § 363.02[1][g], at 363–14 (Lawrence P. King, ed., 15 ed. Rev. 1997)). Although a trustee's business judgment under this test enjoys deference, "this discretion is not without limit." *Bakalis*, 220 B.R. at 532. "<u>A duty is imposed upon the trustee to maximize the value obtained from a sale, particularly in liquidation cases</u>." *Bakalis*, 220 B.R. at 532 (citations omitted) (emphases supplied). "To ensure compliance with those duties, a bankruptcy court is generally afforded wide latitude in deciding whether to grant or deny approval of estate asset sales." *Id.*

Third Friday respectfully submits that cause exists to deny the sale in this instance. The entire point of an auction of the Alexius Debtors' assets is to ensure that the purchase price realized

for the assets is fair and reasonable. Excluding Third Friday from the auction, when it submitted a bid that exceeds that of the stalking horse by $1 million (or net $490,000.00 accounting for the $510,000.00 breakup fee) is not a reasonable exercise of business judgment by the Trustee.

This is not a situation where a trustee selects a lower bid, but one that provides other benefits to the estate such as certainty and a quick closing, over a nominally higher bid. *See Bakalis*, 220 B.R. at 533 (approving selection of lower bid "because of the perceived certainty and estimated rapidity with which the transaction would likely close."). The Third Friday bid is substantially identical of the stalking horse but for a $1 million increase in the cash component of the purchase price.

The Trustee has not even attempted to defend her delay in responding to Third Friday's repeated inquiries or exclusion of Third Friday from the auction. By conducting the auction without Third Friday, the Trustee by definition has not realized the highest and best price for the Alexius Debtors' assets. The Sale Motion should be denied.

**B.     The Trustee Is Conflicted.**

In addition to the business judgment issues referenced *supra*, the sale is improper due to a conflict on the part of the Trustee.

As the Court is aware, these chapter 11 cases are being jointly administered and are not substantively consolidated. *See Order Granting Motion of the Debtors and Debtors in Possession for Entry of an Order Directing the Joint Administration of the Debtors' Chapter 11 Cases* (ECF No. 60) (granting relief sought in motion seeking joint administration of the Debtors' estates). There is a significantly different legal implication when cases are substantively consolidated (*i.e.*, taking all the Debtors assets and liabilities and pooling them together) as opposed to jointly administered (*i.e.*, administering cases jointly to provide easier monitoring and greater efficiency).

*Compare* Fed. R. Bankr. P. 1015, Notes of Advisory Committee ("Joint administration as distinguished from consolidation may include combining the estates by using a single docket for the matters occurring in the administration, including the listing of filed claims, the combining of notices to creditors of the different estates, and the joint handling of *other purely administrative matters . . . .*") (emphasis added), *with Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966) ("[Substantive consolidation results in] intercompany claims of the debtor companies [] [being] eliminated, the assets of all debtors [] [being] treated as commons assets and claims of outside creditors against any of the debtors are treated as against the common fund . . . ."). As a result, the Trustee has a fiduciary duty to each Debtor entity individually and not to all Debtors collectively.

<u>The Trustee as a fiduciary to each Debtor entity and must maximize value to each Debtor entity individually</u>. *See Martin-Trigona v. Ferrari (In re WHET, Inc.)*, 750 F.2d 149, 149 (1st Cir. 1984) ("[Trustees] owe[] a fiduciary duty to debtor and creditors alike to act fairly and protect their interests"); *U.S., et al. v. Trustee (In re Rigden)*, 795 F.2d 727, 730 (9th Cir. 1986) ("The trustee . . . has a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors."); CHAPTER 11 TRUSTEE HANDBOOK 19 (2004) ("[A] chapter 11 trustee is a fiduciary charged with protecting the interests in the bankruptcy estate of all parties, including all classes of creditors and the debtor."). In other words, the Trustee cannot properly exercise her fiduciary duties to one Debtor entity at the expense of the other. *See, e.g.*, *In re LTHM Houston-Operations, LLC*, 2014 WL 5449737, at *4 (Bankr. S.D. Tx. Oct. 24, 2014) (noting that the court was concerned with the potential conflicts of interests related to an estate professional as they relate to the Trustee's "disinterestedness"); *In re Raymond Professional Group, Inc.*, 421 B.R. 891, 903 (Bankr. N.D. Ill. 2009) (noting that professionals allowed to represent multiple debtors in Chapter

11 "must be especially careful" not to violate their fiduciary duties "by preferring one debtor over another"); *In re SunCruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) ("Fiduciary obligations include the duty of loyalty and good faith which forbid . . . business operators from using their position of trust and control over the rights of other parties to further their own private interest, either by usurping opportunities, holding undisclosed conflicts, or otherwise exploiting their position.") (quoting *In re Microwave Products of America, Inc.*, 102 B.R. 666, 672 (Bankr. W.D. Tenn. 1989)) (internal quotations omitted).  If the Trustee's exercise of her fiduciary duties with respect to one estate prejudiced another estate, a conflict of interest would result.

A conflict of interest is not to be taken lightly.  In this case, there is a looming, if not actual, conflict between the Trustee's dual roles as a fiduciary for the Alexius Debtors and the remaining Debtors.  As a fiduciary for the former group, the Trustee may well believe that an auction and sale process is the best way to maximize the value of the Alexius Debtors' assets.  Importantly, however, the Plan filed by Third Friday promises to pay <u>all</u> creditors in these cases based upon the Alexius sale <u>not</u> occurring, and Third Friday instead purchasing the Debtors' equity interests.  *See generally* Plan.  Put another way, the interests of the Alexius creditors and remaining creditors are at odds—the former group may recover more in the Trustee's sale, while the latter may recover more if the sale does not occur and the Plan is confirmed.

The Trustee cannot advocate both positions and serve both creditor bodies at the same time.

Third Friday is confident that the Trustee will argue that in her "business judgment" she believes Third Friday will not be able to fund the Plan and therefore a sale of the Alexius Debtors' assets separately will maximize value to all creditor constituencies.  That position simply does not hold water.  Third Friday has provided the Trustee with <u>four</u> different commitment letters from reputable lenders (both foreign and domestic).  The Trustee has not specified any concrete

evidence that pursuing the sale of substantially all of the assets of the Alexius Debtors will maximize value to the remaining Debtors' estates and is not a conflict of interest.

WHEREFORE, Third Friday requests entry of an order denying the Sale Motion and granting such other relief the Court deems just and equitable.

Dated: July 28, 2020

          **SHRAIBERG, LANDAU & PAGE, P.A.**
          Attorneys for The Third Friday Total Return Fund, L.P.
          2385 NW Executive Center Drive, Suite 300
          Boca Raton, Florida 33431
          Telephone: 561-443-0800
          Facsimile: 561-998-0047
          Email: bss@slp.law

          By: */s/ Bradley Shraiberg*_____
          Bradley S. Shraiberg
          Fla. Bar No. 121622

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this the July 28, 2020.

          */s/ Bradley Shraiberg*_____
          Bradley S. Shraiberg
          Fla. Bar No. 121622