# EXHIBIT 49

DocuSign Envelope ID: E0AEE5E0-A410-47F2-99A3-DB86DFE16262

Case 19-61608-grs   Doc 833-49   Filed 07/29/20   Entered 07/29/20 08:18:59   Desc
Exhibit 49. Lease Agreement dated 3/28/2019 for personal residence of Grant Whi   Page 2 of 4

# CALIFORNIA ASSOCIATION OF REALTORS®

# RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT

(C.A.R. Form LR, Revised 6/18)

Date __03/28/2019__, _____ **Shwick, Inc** _____ ("Landlord") and
_____ **Americore Holdings LLC** _____ ("Tenant") agree as follows ("Agreement"):

1. **PROPERTY:**
   A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as: **6857 Crest Rd, Rancho Palos Verdes, CA 90275-4554** ("Premises").
   B. The Premises are for the sole use as a personal residence by the following named person(s) **only:** **Grant White, Kelly Sauve, Xander White**.
   C. The following personal property, maintained pursuant to paragraph 11, is included: _____
   _____ or ☐ (if checked) the personal property on the attached addendum is included.
   D. The Premises may be subject to a local rent control ordinance _____.

2. **TERM:** The term begins on (date) __April 12, 2019__ ("Commencement Date"). If Tenant has not paid all amounts then due; (i) Tenant has no right to possession or keys to the premises and; (ii) this Agreement is voidable at the option of Landlord, 2 calendar days after giving Tenant a Notice to Pay (C.A.R. Form PPN). Notice may be delivered to Tenant (i) in person; (ii) by mail to Tenant's last known address; or (iii) by email, if provided in Tenant's application or previously used by Tenant to communicate with Landlord or agent for Owner. If Landlord elects to void the lease, Landlord shall refund to Tenant all rent and security deposit paid.
   **(Check A or B):**
   ☐ A. **Month-to-Month:** This Agreement continues from the commencement date as a month-to-month tenancy. Tenant may terminate the tenancy by giving written notice at least 30 days prior to the intended termination date. Tenant shall be responsible for paying rent through the termination date even if moving out early. Landlord may terminate the tenancy by giving written notice as provided by law. Such notices may be given on any date.
   ☒ B. **Lease:** This Agreement shall terminate on (date) __March 31, 2020__ at __5:00__ ☐ AM/ ☒ PM. Tenant shall vacate the Premises upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy shall be created which either party may terminate as specified in paragraph 2A. Rent shall be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement shall remain in full force and effect.

3. **RENT:** "Rent" shall mean all monetary obligations of Tenant to Landlord under the terms of the Agreement, except security deposit.
   A. Tenant agrees to pay $__8,950.00__ per month for the term of the Agreement.
   B. Rent is payable in advance on the **1st (or** ☐ _____ **) day** of each calendar month, and is delinquent on the next day.
   C. If Commencement Date falls on any day other than the day Rent is payable under paragraph 3B, and Tenant has paid one full month's Rent in advance of Commencement Date, Rent for the second calendar month shall be prorated and Tenant shall pay 1/30th of the monthly rent per day for each day remaining in the prorated second month.
   D. **PAYMENT: (1)** Rent shall be paid by ☐ personal check, ☐ money order, ☐ cashier's check, made payable to _____
   _____, ☒ wire/electronic transfer, or ☐ other _____.
   **(2)** Rent shall be delivered to (name) **Shwick, Inc,**
   (whose phone number is) _____ at (address) __529 S Broadway #902, Los Angeles CA 90013__
   _____, (or at any other location subsequently specified by Landlord in writing to Tenant) (and ☐ if checked, rent may be paid personally, between the hours of _____ and _____ on the following days _____).
   **(3)** If any payment is returned for non-sufficient funds ("NSF") or because tenant stops payment, then, after that: (i) Landlord may, in writing, require Tenant to pay Rent in cash for three months and (ii) all future Rent shall be paid by ☐ money order, or ☐ cashier's check.
   E. Rent payments received by Landlord shall be applied to the earliest amount(s) due or past due.

4. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay $__17,900.00__ as a security deposit. Security deposit will be ☒ transferred to and held by the Owner of the Premises, or ☐ held in Owner's Broker's trust account.
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (i) cure Tenant's default in payment of Rent (which includes Late Charges, NSF fees or other sums due); (ii) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest, invitee or licensee of Tenant; (iii) clean Premises, if necessary, upon termination of the tenancy; and (iv) replace or return personal property or appurtenances. **SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT.** If all or any portion of the security deposit is used during the tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered to Tenant. Within 21 days after Tenant vacates the Premises, Landlord shall: **(1)** furnish Tenant an itemized statement indicating the amount of any security deposit received and the basis for its disposition and supporting documentation as required by California Civil Code § 1950.5(g); and **(2)** return any remaining portion of the security deposit to Tenant.
   C. Security deposit will not be returned until all Tenants have vacated the Premises and all keys returned. Any security deposit returned by check shall be made out to all Tenants named on this Agreement, or as subsequently modified.
   D. No interest will be paid on security deposit unless required by local law.
   E. If the security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If the security deposit is held in Owner's Broker's trust account, **and** Broker's authority is terminated before expiration of this Agreement, **and** security deposit is released to someone other than Tenant, **then** Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been provided such notice, Tenant agrees not to hold Broker responsible for the security deposit.

Tenant's Initials ( _GW_ ) ( _[initials]_ )       Landlord's Initials ( _SW_ ) ( _____ )

© 2018, California Association of REALTORS®, Inc.
**LR REVISED 6/18 (PAGE 1 OF 8)**
RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 1 OF 8)

DocuSign Envelope ID: E0AEE5E0-A410-47F2-99A3-DB86DFE16262

Case 19-61608-grs    Doc 833-49    Filed 07/29/20    Entered 07/29/20 08:18:59    Desc
Exhibit 49 -Lease Agreement dated 3/28/2019 for personal residence of Grant Whi    Page 3 of 4

Premises: 6857 Crest Rd, Rancho Palos Verdes, CA 90275-4554    Date: 03/28/2019

5. **MOVE-IN COSTS RECEIVED/DUE:** Move-in funds shall be paid by ☐ personal check, ☐ money order, or ☐ cashier's check, ☒ wire/ electronic transfer.

| Category | Total Due | Payment Received | Balance Due | Date Due | Payable To |
|---|---|---|---|---|---|
| Rent from 04/12/2019 to 07/31/2019 (date) | $32,518.33 | | $32,518.33 | 04/08/2019 | Shwick, Inc |
| *Security Deposit | $17,900.00 | | $17,900.00 | 04/08/2019 | Shwick, Inc |
| Other | | | | | |
| Other | | | | | |
| Total | $50,418.33 | | $50,418.33 | | |

*The maximum amount of security deposit, however designated, cannot exceed two months' Rent for an unfurnished premises, or three months' Rent for a furnished premises.

6. **LATE CHARGE; RETURNED CHECKS:**
   A. Tenant acknowledges either late payment of Rent or issuance of a returned check may cause Landlord to incur costs and expenses, the exact amounts of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of Rent due from Tenant is not received by Landlord within **5 (or ☐ _____ ) calendar days** after the date due, or if a check is returned, Tenant shall pay to Landlord, respectively, an additional sum of $_____ or _____ % of the Rent due as a Late Charge and $25.00 as a NSF fee for the first returned check and $35.00 as a NSF fee for each additional returned check, either or both of which shall be deemed additional Rent.
   B. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of Rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall neither be deemed an extension of the date Rent is due under paragraph 3 nor prevent Landlord from exercising any other rights and remedies under this Agreement and as provided by law.

7. **PARKING: (Check A or B)**
   ☒ A. Parking is permitted as follows: *on property* _____
   _____
   The right to parking ☒ is ☐ is not included in the Rent charged pursuant to paragraph 3. If not included in the Rent, the parking rental fee shall be an additional $_____ per month. Parking space(s) are to be used only for parking properly registered and operable motor vehicles, except for trailers, boats, campers, buses or trucks (other than pick-up trucks). Tenant shall park in assigned space(s) only. Parking space(s) are to be kept clean. Vehicles leaking oil, gas or other motor vehicle fluids shall not be parked on the Premises. Mechanical work, or storage of inoperable vehicles, or storage of any kind is not permitted in parking space(s) or elsewhere on the Premises except as specified in paragraph 8.
   OR ☐ B. Parking is not permitted on the real property of which the Premises is a part.

8. **STORAGE: (Check A or B)**
   ☐ A. Storage is permitted as follows: _____
   The right to separate storage space ☐ is, ☐ is not, included in the Rent charged pursuant to paragraph 3. If not included in the Rent, storage space fee shall be an additional $_____ per month. Tenant shall store only personal property Tenant owns, and shall not store property claimed by another or in which another has any right, title or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.
   OR ☒ B. Except for Tenant's personal property, contained entirely within the Premises, storage is not permitted on the Premises.

9. **UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: *pool* _____. except _____ *landscaping* _____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined and directed by Landlord. If utilities are separately metered, Tenant shall place utilities in Tenant's name as of the Commencement Date. Landlord is only responsible for installing and maintaining one usable telephone jack and one telephone line to the Premises. Tenant shall pay any cost for conversion from existing utilities service provider.
   ☐ A. **Water Submeters:** Water use on the Premises is measured by a submeter and Tenant will be separately billed for water usage based on the submeter. See attached Water Submeter Addendum (C.A.R. Form WSM) for additional terms.
   ☐ B. **Gas Meter:** The Premises does not have a separate gas meter.
   ☐ C. **Electric Meter:** The Premises does not have a separate electrical meter.

10. **CONDITION OF PREMISES:** Tenant has examined Premises and, if any, all furniture, furnishings, appliances, landscaping and fixtures, including smoke alarm(s) and carbon monoxide detector(s).
    **(Check all that apply:)**
    ☐ A. Tenant acknowledges these items are clean and in operable condition, with the following exceptions: _____
    _____
    ☐ B. Tenant's acknowledgment of the condition of these items is contained in an attached statement of condition (C.A.R. Form MIMO).
    ☒ C. (i) Landlord will Deliver to Tenant a statement of condition (C.A.R. Form MIMO) ☐ within **3 days** after execution of this Agreement; ☐ prior to the Commencement Date; ☒ within **3 days** after the Commencement Date.
    (ii) Tenant shall complete and return the MIMO to Landlord within **3 (or ☐ _____ ) days** after Delivery. Tenant's failure to return the MIMO within that time shall conclusively be deemed Tenant's Acknowledgement of the condition as stated in the MIMO.

Tenant's Initials ( *GW* ) ( *TM* )    Landlord's Initials ( *SW* ) ( _____ )

LR REVISED 6/18 (PAGE 2 OF 8)

**RESIDENTIAL LEASE OR MONTH-TO-MONTH RENTAL AGREEMENT (LR PAGE 2 OF 8)**

**CALIFORNIA ASSOCIATION OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☒ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____
dated __March 28, 2019__, on property known as __6857 Crest Rd, Rancho Palos Verdes, CA 90275-4554__,
in which __Americore Holdings LLC__ is referred to as ("Buyer/Tenant")
and __Shwick, Inc__ is referred to as ("Seller/Landlord").

1. Grant White and The Third Friday Total Return Fund, L.P. are the guarantors of the lease agreement

2. Four months of advanced rent to be paid on April 8, 2019, August 1, 2019, and December 1, 2019. April's rent is prorated in the amount of $5,668.33.

3. Tenants, including Grant White and Kelly Suave, have the Right of First Refusal to purchase the property in the amount of $2,890,000 at any time during the lease agreement. If purchased, seller agrees to pay 5% of purchase price to cooperating brokers as commission which will be split evenly - M.O.R.E Realty, Matthew Oksas and Douglas Elliman, Samantha Barretto

4. All personal items of the landlords to be removed except pool table, bean bag chair, and outdoor furniture - 6 lounge chairs, 2 seating chairs, 1 table, and 1 umbrella. House to be delivered clean by professional cleaning company.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date __4/5/2019__
Buyer/Tenant __Grant White__
Americore Holdings LLC

Buyer/Tenant __[signature]__

Date __04/09/2019 07:00 PM GMT__
Seller/Landlord __Supal Wickramarachchi__
Shwick, Inc

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/15 (PAGE 1 OF 1)

ADDENDUM (ADM PAGE 1 OF 1)