**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

---------------------------------------------------------- x
                                                           :
In re:                                                     :   Chapter 11
                                                           :
Americore Holdings, LLC, *et al.*,[1]                      :   Case No. 19-61608
                                                           :   (Jointly Administered)
            Debtors.                                       :
                                                           :   **Re: Docket No. 929**
---------------------------------------------------------- x

## MOTION TO CLARIFY ORDER (A) APPROVING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

The Third Friday Total Return Fund, L.P. ("Third Friday") respectfully requests that the Court clarify the *Order (a) Approving Sale Free and Clear of All Liens, Claims and Encumbrances, (b) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (c) Granting Related Relief* (the "Sale Order") [ECF No. 929]. In support of this request Third Friday states:

### BACKGROUND

1.  On December 31, 2019 each of the above-captioned entities (together, the "Debtors") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy

---

[1] The Debtors in these chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Healther Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation # 1 (2766).

{2337/000/00512909}                              1

Code, 11 U.S.C. § 101 *et seq.* In February 2020 Carol Fox (the "Trustee") was appointed as chapter 11 trustee of the Debtors. ECF Nos. 258, 260 and 269.

2. On July 13, 2020 the Trustee, acting solely in her capacity as the trustee for three of the Debtors—St. Alexius Properties, LLC ("SAP"), St. Alexius Hospital Corporation #1 ("SAHC") and Success Healthcare 2, LLC ("SH2") (together, the "Sellers")—filed a motion to establish auction procedures and sell substantially all assets of the Sellers (together, the "Assets") to a third-party (the "Sale Motion"). ECF No. 744.

3. On November 12, 2020 the Court entered an order granting the Sale Motion (the "Sale Order") [ECF No. 929], and approving the sale of the Assets to third-party, SA Hospital Acquisition Group, LLC (together with any subsidiaries or assigns, the "Purchaser").

4. Prior to the sale, SAHC engaged in the business of delivering acute care services to the public through the St. Alexius Hospital located in Sr. Louis, Missouri. As such, the Sale Order contains several provisions regarding Missouri's Medicaid Program, known as MO HealthNet ("MO HealthNet"), and the Missouri Department of Social Services ("MDSS"). In particular, ¶ 64 of the Sale Order states:

> For the avoidance of doubt, notwithstanding anything to the contrary in this Order or the Modified Agreement, the MO HealthNet provider agreement for SAHC shall not be sold pursuant to section 363 of the Bankruptcy Code. Rather, per agreement, the MO HealthNet provider agreement shall be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code and in compliance with the MO HealthNet Program and with the approval of MDSS, provided however, upon agreement of the Debtors, Purchaser, MDSS and the Missouri Attorney General's Office ("MAG") based upon their respective reviews of all relevant facts and circumstances pertaining to the sale of SAHC, Purchaser, as assignee of SAHC's Mo HealthNet provider agreement shall not assume any of SAHC's liability to (a) make refunds or repayments to the MO HealthNet Program in connection with payments received by SAHC from MO HealthNet on or prior to the Closing, and (b) pay to MO HealthNet any fines or penalties imposed on

>           SAHC by MO HealthNet as a result of SAHC's acts or omissions on or prior to Closing, <u>which liability shall remain with the Debtor</u>, subject to all rights of set-off and recoupment between MDSS and the Debtors related to payments received by SAHC from MO HealthNet on or prior to the Closing and the acts or omissions of SAHC on or prior to Closing. It is acknowledged and agreed that the waiver provided in the previous sentence does not extend to civil or criminal claims that fall within the jurisdiction of the Medicaid Fraud Control Unit of the Missouri Attorney General's Office.

Sale Order ¶ 64 (emphasis supplied).

5. Given this language, ¶ 64 provides that:

- The MO HealthNet provider agreement for SAHC is being assumed and assigned to the Purchaser.

- However, the Purchaser is not assuming any of SAHC's liability to MO HealthNet regarding refunds, repayments, fines or penalties arising pre-closing.

- Rather, such "liability shall remain with the Debtor."

*Id.*

6. Third Friday respectfully requests that the Court clarify the Sale Order for two reasons. First, although the Sale Order defines plural term "Debtors" as SAP, SAHC and SH2, it does not define the singular term "Debtor" as any particular entity. *See* Sale Order 2 (defining "Debtors" but not "Debtor"). When ¶ 64 of the Sale Order states that MO HealthNet liabilities "shall remain with the Debtor," which is potentially SAHC, it is thus unclear what specific entity is being referred to.

7. Second, the Sale Motion requests authority, *inter alia*, to sell the Assets and assume and assign certain executory contracts and unexpired leases. *See* Sale Mot. 9 (wherefore clause). The Sale Motion does not seek authority for SAP or SH2 to assume liabilities under contracts to which SAHC is party.

8. The relief requested by Third Friday may substantially impact on the bankruptcy estates of the non-SAHC Sellers, i.e. SAP and SH2. SAP and SH2 did not receive any payments from MO HealthNet and should not be required to repay any amounts paid to SAHC by MO HealthNet. Only SAHC, the recipient of any payments from MO Healthnet, should be the source of recoupment.

9. The amount of money in question is potentially in the millions of dollars. Based on its analysis of SAHC's billing records for the 2018–19 period, Third Friday believes that SAHC may face significant recoupment liabilities. Until SAHC's cost reports for 2018–19 are completed and filed with MO HealthNet for review and approval, there can be no final determination of how large this liability actually will be. Moreover, even if it were appropriate for non-SAHC Debtors to assume the liability—which it is not—such Debtors lack the financial wherewithal to pay. Only one facility owned by the Debtors, Izard County Medical Center, is currently operating. Ellwood County Medical Center has been shut since October 2019. Beyond the businesses at those centers, the Debtors are non-operating entities with no assets or cash. Accordingly, Missouri would be unable to collect any recoupment payments were it dependent on the non-SAHC Debtors for payment of these liabilities.

## ARGUMENT

### A. The Court Should Clarify the Sale Order.

Section 105(a) of the Bankruptcy Code conveys broad equitable powers on bankruptcy courts "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [title 11]." *See* U.S.C. § 105(a). These powers include the "authority to interpret and clarify prior orders." *In re White Motor Credit Corp.*, 75 B.R. 944, 947 (Bankr. N.D. Ohio 1987).

Clarification of the Sale Order is again appropriate in this instance. The Sale Order does not define the term "Debtor"; however, it provides that liabilities under the SAHC MO HealthNet provider agreement "shall remain with the Debtor." *See* Sale Order ¶ 64. While the term "Debtor" in this instance presumably refers to SAHC, and not SAP or SH2, this is not explicit. Accordingly, the Court should clarify the Sale Order to confirm that only SAHC, and not other Debtors, are retaining any liabilities under the MO HealthNet provider agreement upon its assignment to the Purchaser.

### B.    In the Alternative, the Court Should Reconsider the Sale Order.

Fed. R. Civ. P. 59(e), as applied to this contested matter by Fed. R. Bankr. P. 9023, permits a court to "alter or amend a judgment" upon timely motion. *See* Fed. R. Civ. P. 59(e). Motions for reconsideration are customarily treated as motions to alter or amend a judgment under Rule 59. *Harshaw v. Bethany Christian Services*, 2010 WL 331708, at *4 (W.D. Mich. Jan. 22, 2010) (citations omitted).

A judgment can be altered under Rule 59(e) "for one of four reasons: (1) to correct a clear error of law; (2) to account for newly discovered evidence; (3) to accommodate an intervening change in the controlling law; or (4) to otherwise prevent manifest injustice." *McCoy v. Lake Cumberland Regional Hosp., LLC*, 2019 WL 1960335, at *2 (E.D. Ken. May 2, 2019) (citation omitted) (citation omitted). "A [trial] court has discretion to grant or deny a Rule 59(e) motion." *Id.* "Re-argument is not an appropriate purpose for a motion to reconsider." *Id.*

In the alternative to the clarification requested *supra*, reconsideration of the Sale Order is appropriate in this instance. Third Friday is not seeking to re-argue allegations that were made, or could have been made, prior to entry of the Sale Order. Rather, Third Friday is seeking to prevent the manifest injustice of SAP or SH2 owing liabilities under the SAHC MO HealthNet provider

agreement, when this relief was never sought in the Sale Motion. The Debtors have not been substantively consolidated and there is no reason why the Debtors, other than SAHC, should hold or retain liabilities under the MO HealthNet provider agreement.

[Remainder of Page Intentionally Left Blank]

**WHEREFORE**, Third Friday respectfully requests that the Court: (a) clarify that the term "Debtor" in ¶ 64 of the Sale Order applies only to SAHC, not SAP or SH2, such that SAP or SH2 are not assuming or retaining liabilities under the MO HealthNet provider agreement, (b) in the alternative, reconsider the Sale Order and hold that only SAHC, and not SAP or SH2, is assuming or retaining liabilities under the MO HealthNet provider agreement, and (c) grant such other and further relief as the Court deems just and proper.

Dated: November 23, 2020

        **SHRAIBERG, LANDAU & PAGE, P.A.**
        Attorneys for The Third Friday Total Return Fund, L.P.
        2385 NW Executive Center Drive, Suite 300
        Boca Raton, Florida 33431
        Telephone: 561-443-0800
        Facsimile: 561-998-0047
        Email: bss@slp.law

        By: */s/ Bradley Shraiberg*
        Bradley S. Shraiberg
        Fla. Bar No. 121622

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on this the 23rd day of November, 2020.

        */s/ Bradley Shraiberg*
        Bradley S. Shraiberg
        Fla. Bar No. 121622