## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## LONDON DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 19-61608 |
| | ) | |
| **Americore Holdings, LLC,** *et al.*[1] | ) | **Jointly administered** |
| | ) | |
| **Debtors.** | ) | **Chapter 11** |
| | ) | |

### NOTICE OF FILING IN RESPONSE TO THIRD FRIDAY TOTAL RETURN FUND, LP'S EMERGENCY MOTION TO VACATE SALE ORDER

**CAROL L. FOX,** the Chapter 11 Trustee, ("Ms. Fox" or "Trustee"), by and through her undersigned counsel hereby files the attached (A) Chapter 11 Trustee's Emergency Motion to Enforce Sale Order (Doc. No. 947); (B) December 13, 2020 Email; (C) December 25, 2020 Email; and (D) Order Granting Trustee's emergency Motion to Clarify Sale Order (Doc. 973) in response to Third Friday Total Return Fund, LP's Emergency Motion to Vacate Sale Order (Doc. 979).

DATED: December 30, 2020          Respectfully submitted,

**BAKER & HOSTETLER, LLP**
*/s/ Elizabeth A. Green*
Elizabeth A. Green, Esq.
Florida Bar No. 0600547
egreen@bakerlaw.com
Jimmy D. Parrish, Esq.
Florida Bar No. 526401
jparrish@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32802-0112
Telephone: 407-649-4000
Facsimile: 407-841-0168
*Attorneys for the Chapter 11 Trustee*

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 30, 2020, I electronically filed the foregoing including all exhibits with the Clerk of Court by using the Court's CM/ECF system, which will provide a Notice of Electronic Filing and copy to all parties requesting such notice.

*/s/ Elizabeth A. Green*
ELIZABETH A. GREEN

# Exhibit A

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### LONDON DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 19-61608 |
| | ) | |
| **Americore Holdings, LLC, *et al.***[1] | ) | **Jointly Administered** |
| | ) | |
| Debtors. | ) | **Chapter 11** |
| | ) | |

## CHAPTER 11 TRUSTEE'S EMERGENCY MOTION TO ENFORCE SALE ORDER

Carol L. Fox, the Chapter 11 Trustee ("Trustee") of Americore Holdings, LLC, and its affiliated debtors (collectively, the "Debtors"), files this emergency motion ("Motion") to enforce this Court's *Order (A) Approving Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Doc. No. 929) (the "November 11 Sale Order"), which approved the Modified Asset Purchase Agreement attached thereto (the "APA"), against the Court-approved buyer, SA Hospital Acquisition, LLC ("SA Acquisition"), and states as follows in support:

## INTRODUCTION

1.      SA Acquisition was chosen as the party making the "highest and best" offer for substantially all of the assets of St. Alexius Properties, LLC, St. Alexius Hospital Corporation #1, and Success Healthcare 2, LLC (collectively, the "St. Alexius Debtors") based on its financial ability to close the proposed sale and the absence of a financing contingency in the APA.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

1

Ultimately, the Court approved the Trustee's proposed sale to SA Acquisition in July 2020 and

entered the November 11 Sale Order requiring the parties to comply with the APA. The APA

requires SA Acquisition to close on the purchase "within five (5) business days following the entry

of an order of the Bankruptcy Court approving the Sale" unless the Trustee agreed to postpone the

closing. (APA, § 1.3). The Sale Order was entered on November 11, 2020, and thus required SA

Acquisition to close by November 18, 2020.

2.    Despite the lack of a financing contingency in the APA, SA Acquisition delayed

closing multiple times while it attempted to obtain financing to pay the purchase price. In an effort

to work cooperatively with the buyer and reach a consensual resolution, the Trustee agreed to

multiple extensions of the closing date.

3.    Recently, however, SA Acquisition has refused to close and has attempted to

renegotiate the APA on the basis that U.S. Department of Health and Human Services ("HHS")

issued additional guidance regarding what expenditures of CARES Act funds would qualify for

forgiveness, and the new guidance makes it more likely that SA Acquisition will owe money back

to the bankruptcy estates of the St. Alexius Debtors (collectively the "St. Alexius Bankruptcy

Estates") under the APA's indemnification provision. Specifically, HHS's guidance indicates that

while some expenditures can be immediately expensed in full and qualify for forgiveness, others

must be expensed in accordance with an applicable depreciation schedule (that is, expensed over

time) and are not fully forgiven. SA Acquisition asserts that this new guidance increases the

likelihood of triggering its indemnification obligation under the APA, and thus allows SA

Acquisition to refuse to close unless the Trustee renegotiates the APA on terms more favorable to

SA Acquisition.

4.      Before this dispute, SA Acquisition admitted that it was indemnifying the St. Alexius Bankruptcy Estates for pre-closing expenditures SA Acquisition approved that were ultimately not deemed forgivable: "we are also taking the indemnity risk that if the Cares act reporting… ends up with an item being denied and money is owed back, we are paying it.  We are driving the process on the list so we are responsible…Just confirming in writing." *See* Email from Ben Klein on behalf of SA Acquisition to the Trustee dated October 21, 2020, attached as **Exhibit A.** Now, however, SA Acquisition claims that it "never agreed to indemnify the Seller as to whether the calculations related to the expense were appropriate and/or consistent with the guidelines of the CARES Act." *See* Letter from Troy Schell dated December 8, 2020, attached as **Exhibit B.**

5.      SA Acquisition's failure to close is a clear breach of the APA. SA Acquisition's position is not supported by the plain language of the APA, the pleadings filed in this case, or the timing of the constantly evolving HHS guidance on the CARES Act. It has become clear to the Trustee that forward progress has stalled, and SA Acquisition is unwilling to close on the purchase under the APA unless the deal is renegotiated on terms more favorable to SA Acquisition.

6.      SA Acquisition's breach of the APA is inflicting significant damages on the St. Alexius Bankruptcy Estates on a *daily* basis and must stop. Accordingly, the Trustee seeks this Court's intervention to force SA Acquisition to comply with the Sale Order and APA and to award damages caused by SA Acquisition's breach.

## **BACKGROUND**

7.      On December 31, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.[2]

---

[2] All references to the "Bankruptcy Code" refer to 11 U.S.C. §§ 101 *et seq.*

8.     On February 4, 2020, the Court entered an agreed order for the appointment of a Chapter 11 trustee and directing the United States Trustee ("UST") to immediately appoint a Chapter 11 trustee in the Debtors' jointly administered cases (Doc. No. 258). On February 21, 2020, the UST filed its Notice of Appointment of Ms. Carol Fox as Chapter 11 Trustee (Doc. No. 260), and on February 24, 2020, Ms. Fox filed her Notice of Acceptance of the appointment as trustee (Doc. No. 269).

9.     On April 24, 2020, the Trustee filed a *Motion for Entry of Order: (I) Approving Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets (St. Alexius), (II) Establishing Procedures for the Assumption and/or Assignment by the Trustee of Certain Executory Contracts and Unexpired Leases, (III) Approving the Form and Manner of Notice of Bidding Procedures, (IV) Setting Objection Deadlines, and (V) Granting Related Relief* (Doc. No. 482) (the "Bid Procedures Motion"). The Trustee's bidding procedures were designed to maximize the value for the St. Alexius Bankruptcy Estates and ensure an orderly sale process, and included procedures related to due diligence, qualified bids, an auction, and the selection of a winning bidder.

10.     On May 5, 2020, the Court conducted a hearing on the Bid Procedures Motion and granted it via an order entered on May 12, 2020 (Doc. No. 541). As permitted by the bidding procedures, the Trustee subsequently modified the procedures as set forth in the Trustee's Notice of Modified Bid Procedures (Doc. Nos. 697).

11.     On July 10, 2020, the Trustee filed her Motion to Approve Designation of Stalking Horse Bidder (St. Alexius) and Break-Up Fee in Accordance with Approved Bid Procedures and Sale Motion (Doc. No. 737) ("Stalking Horse Motion"). The Stalking Horse Motion sought to approve SA Acquisition as the stalking horse bidder under the approved bid procedures and

authorize certain bid protections in favor of SA Acquisition in connection with the sale procedures. The Court granted the Stalking Horse Motion pursuant to an order dated July 16, 2020 (Doc. No. 764).

12.     On July 13, 2020, the Trustee filed the *Amended Motion for an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets (St. Alexius) in Accordance with Approved Bid Procedures, as Modified; (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases in Accordance with the Bid Procedures; and (C) Granting Related Relief and Request for Hearing on July 29, 2020 at 9:00 A.M. EST under section 363(f)* (Doc. No. 744) (the "Sale Motion"), seeking approval of the sale of substantially all the assets of St. Alexius Debtors.

13.     Following the submission of additional bids, the Trustee determined that SA Acquisition was the only party that submitted a qualified bid in accordance with bid procedures previously approved by the Court.

14.     On July 29, 2020, the Court conducted an evidentiary hearing on the Sale Motion, and on July 30, 2020, the Court ruled from the bench and approved the Trustee's Sale Motion.

15.     Throughout the summer and fall of 2020, HHS has issued guidance on the use of CARES Act Provider Relief Funds ("PRF") and modified that guidance.  For example, HHS PRF general information has been issued or modified on July 8, July 10, July 22, July 23, July 30, August 4, August 10, September 3, October 5, October 28, November 5, November 18, December 4, and December 11.[3]

16.     On October 28, 2020, the HHS guidance on use of PRF funds included the following question and answer clarifying that capital equipment (generally having a lifespan of

---

[3] *See* https://www.hhs.gov/coronavirus/cares-act-provider-relief-fund/faqs/provider-relief-fund-general-info/index.html#use-of-funds

more than one year) must be depreciated, while non-capital equipment (generally have a lifespan

of less than one year) may be fully expensed immediately:

> **Do providers report total purchase price of capital equipment or only the depreciated value? (*Added 10/28/20*).**
> Providers who use accrual or cash basis accounting may report the relevant depreciation amount based on the equipment useful life, purchase price and depreciation methodology otherwise applied.
> Providers may report an expense of items purchased with a useful life of 12 months or less if in accordance with existing accounting policies.

17.     On October 29, 2020, the Trustee filed *Chapter 11 Trustee's Motion to Approve Modified Asset Purchase Agreement and Enter Sale Order* (Doc. No. 913) (the "Motion to Modify APA"). As set forth in the motion, the primary purpose of the requested modification was to address the new and changing guidance from the HHS on the accounting treatment and forgiveness of funds provided to St. Alexius pursuant to the PRF created by the CARES Act. Due to the HHS's changing guidance, St. Alexius had approximately $10 to $12.5 million of unspent PRF funds that would be required to be returned to the federal government if not spent on qualifying expenses.

18.     Prior to reaching the modification with SA Acquisition outlined in the Motion to Modify APA, the Trustee was considering returning those unused funds to the federal government.

19.     However, after negotiating with SA Acquisition, the Trustee reached an agreement whereby the St. Alexius Bankruptcy Estates would spend the unused PRF funds on buyer-approved expenditures that were likely to be forgiven by the federal government as coronavirus-related expenses.  In exchange, SA Acquisition would indemnify the St. Alexius Bankruptcy Estates for any buyer-approved expenditures that were not ultimately forgiven and for which the St. Alexius Bankruptcy Estates owed back to the federal government. Thereafter, the Trustee and SA Acquisition worked together to identify needed expenditures that qualified for use under the CARES Act totaling between $10 million to $12.5 million.

4829-4793-6212.2

20.     The ultimate result of the modification was that SA Acquisition could approve the Trustee's use of an additional $10 to $12.5 million in unused PRF funds, and if those expenditures were on qualifying coronavirus-related expenses, such amounts would be forgiven.

21.     Using the PRF funds for the newly identified expenditures was net neutral to the St. Alexius Bankruptcy Estates because the funds could only be used as provided by HHS or returned to the federal government. In 2021, PRF participants must report their PRF expenditures and are required to pay back any amounts that were not used for the two approved purposes (that is, lost revenue and healthcare related expenses attributable to coronavirus). Accordingly, the APA was modified to require SA Acquisition to indemnify the St. Alexius Debtors for any claim asserted by HHS that any of the expenditures do not qualify as a healthcare related expense attributable to coronavirus.[4]

22.     On November 11, 2020, the Court entered the *Order (A) Approving Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Doc. No. 929) (the "November 11 Sale Order"), which approved the sale and the APA which included the indemnification.

23.     The Sale Order approved the sale and the terms and conditions APA, and directed the Trustee and SA Acquisition to close the transaction in accordance with the APA:

> Upon entry of this Order, Seller and Purchaser shall have the obligation to consummate the Closing pursuant to and subject to the terms of the Modified Agreement and this Order. At Closing, the Purchaser shall remit to the Trustee the Purchase Price, less the amount of any deposit held by the Trustee.

---

[4] The change in guidance from HHS also allowed St. Alexius Hospital Corporation #1 to seek forgiveness from the federal government for the PPP loan it received earlier this year under the CARES Act. The modified asset purchase agreement added a provision requiring SA Acquisition to pay St. Alexius Hospital Corporation #1 an additional $2.7 million in cash within 90 days of the Trustee providing notice of U.S. Bank's or the SBA's denial of the Trustee's request to forgive the PPP loan.

7

4829-4793-6212.2

November 11 Sale Order, ¶ 47.

24.    The APA provides that closing will occur within five business days after entry of the November 11 Sale Order (that is, by November 18, 2020):

> The consummation of the Sale (the "Closing") shall take place in escrow at the offices of the Title Company within five (5) business days following the entry of an order of the Bankruptcy Court approving the Sale or such later date as the parties may mutually agree in writing (the "Closing Date")…

APA, § 1.3.

25.    Since entry of the Sale Order, SA Acquisition has refused to close the transaction for multiple reasons.

26.    Approximately ten (10) days after the November 11 Sale Order was entered, it was clear that—despite the lack of a financing contingency in the APA—SA Acquisition could not close without financing and its proposed financing source needed additional time to evaluate the transaction and the terms and conditions under which it would extend credit to SA Acquisition. In an effort to work with the buyer and based upon the buyer's representations that it would close with or without financing, the Trustee agreed to extend closing.

27.    Thereafter, SA Acquisition asserted that it would not close because it "discovered" there was potential liability related to the State of Missouri Disproportionate Share Hospital Liability ("DSH Liability") and was concerned the November 11 Sale Order would not cut off this liability. However, documents disclosing this potential liability were in the Trustee's data room accessed by SA Acquisition, including copies of documents from the administrative proceeding and the Debtors' balance sheet, which included a liability on account of potential DSH Liability. At no time did SA Acquisition or its agents request additional information related to the DSH Liability.

8

28.     Beyond that, on November 25, 2020 the State of Missouri confirmed that the language in the November 11 Sale Order did in fact cut off the buyer's liability for DSH recoupment.  *See* November 25, 2020 email from State of Missouri's counsel to Debtors' counsel, attached as **Exhibit C.**  Still, SA Acquisition's lender demanded additional clarification.   On December 4, 2020, the State of Missouri agreed to language providing the requested clarification.  *See* December 4, 2020 email from State of Missouri's counsel to Debtors' counsel, attached as **Exhibit D**.  As it stands, while SA Acquisition has agreed to the clarification language, SA Acquisition has not approved the Trustee's filing of a motion to clarify the November 11 Sale Order because it continues to assert the indemnity issues allow it not to close.

29.     Additionally, SA Acquisition asserted that a notification issued on August 21, 2020,[5] by the Centers for Medicare and Medicaid Services ("CMS") allowed it not to close because it feared the update could create liability for SA Acquisition.  The Trustee and SA Acquisition were able to consensually resolve this issue.

30.     Ultimately, the Trustee and her counsel worked tirelessly with the buyer and its counsel to resolve these issues, and ultimately both were resolved consensually, which paved the way for a scheduled closing of the transaction on December 11, 2020.

31.     Recently, on December 11, 2020, SA Acquisition refused to close on the transaction, asserting that a change in guidance from HHS on how expenses are calculated with respect to expenditures of CARES Act funds allows them not the close because it could increase SA Acquisition's liability to the St. Alexius Bankruptcy Estates under the indemnity provision SA Acquisition agreed to in Section 5.10 of the APA.

---

[5] Publication 100-20, Transmittal 10315, Change Request 11642.

32.     Unfortunately, it has become clear to the Trustee that SA Acquisition is not committed to closing on the Court-approved sale, and is instead attempting to use its leverage to renegotiate a better and more advantageous deal for itself at the expense of the St. Alexius Bankruptcy Estates and their creditors.

## Relief Requested

33.     By this Motion, the Trustee respectfully requests that the Court enter an order:

(i)     finding that the buyer, SA Hospital Acquisition Group LLC, by and or through its subsidiaries, has materially breached the Court-approved Modified Asset Purchase Agreement dated October 29, 2020 by failing to close as required by Section 1.3 of the APA;

(ii)    forfeiting SA Acquisition's deposit to the Trustee pursuant to Section 11.1 of the APA;

(iii)   requiring SA Acquisition to specifically perform by closing on the transaction within seven days after entry of an order granting this Motion;

(iv)    awarding the Trustee damages against SA Acquisition and all guarantors under the APA; and

(v)     granting all other relief that is appropriate under the circumstances.

## Basis for Relief Requested

**A. This Court has jurisdiction and is the proper venue for this dispute.**

34.     It is beyond dispute that the Sale Order constitutes a valid and enforceable order of the Court, and that the Court issued the Sale Order within the scope of its authority and jurisdiction. Under 28 U.S.C. §§ 1334 and 157(b)(2)(N), bankruptcy courts have core subject-matter jurisdiction to approve the sale of estate assets. It is also well-settled that bankruptcy courts have the "corollary jurisdiction to interpret and enforce their own [sale] orders…" *Campbell v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 428 B.R. 43, 56-58 (S.D.N.Y. 2010); *See also Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151 (2009). As such, the provisions contained in

the Sale Order are binding on SA Acquisition, which subjected itself to the Court's jurisdiction,

collaborated on the terms of the proposed sale order, and received notice of the sale proceedings

and November 11 Sale Order. Additionally, the November 11 Sale Order itself confirms that it is

binding on the buyer. *See* November 11 Sale Order, ¶ 44 ("This Order shall be binding in all

respects upon…(f) the Purchaser and all successors and assigns of the Purchaser…); ¶ 73 ("This

Order and the Modified Agreement shall be binding in all respects…upon the Purchaser…).

35.      Similarly, it is clear this Court is the appropriate venue to determine disputes

related to the sale. In the APA, the parties irrevocably elected that this Court would be the "sole

forum for the adjudication of any matters arising under or relating to this Agreement." APA, §

13.3. The parties also "consent[ed] to the jurisdiction of the Bankruptcy Court," expressly waived

their right to challenge this Court's jurisdiction, and agreed to consent to this Court entering any

final order, judgment, or decree necessary to resolve a dispute relating to the sale or the APA. *Id.*

Additionally, in the Sale Order the Court expressly retained jurisdiction to interpret, implement,

and enforce the terms of the Sale Order and APA. November 11 Sale Order, ¶ 81.

**B.  SA Acquisition breached the APA.**

36.      SA Acquisition is in clear breach of the APA. Section 1.3 of the November 11 Sale

Order provides that closing must occur within five business days after entry of the Sale Order (that

is, by November 18, 2020). Each of the Purchaser's Condition Precedent identified in Article 8 of

the APA have been satisfied. Specifically, (i) the Trustee is able to satisfy all "Seller Deliverables

at Closing" as set forth under Section 1.4, (ii) the Trustee's representations and warranties under

Article II remain accurate, (iii) the Trustee has complied with all applicable covenants set forth in

Article IV, such as providing the buyer with access to the Debtors' records and facilitates, and (iv)

11

the Court approved the terms and conditions of the APA in the Sale Order, thus satisfying Article 6.

37.     During the closing process, SA Acquisition has identified multiple alleged "barriers" or "issues" to closing that they claim must be resolved before they will close. Despite disagreeing with SA Acquisition's imposition of non-existent closing conditions, the Trustee has worked tirelessly with SA Acquisition and resolved substantially all of their issues.

38.     Recently, however, SA Acquisition refused to close on the basis that a change in guidance from HHS on how expenses are calculated with respect to expenditures of CARES Act funds allows them not the close because it could increase SA Acquisition's liability to the St. Alexius Bankruptcy Estates under the indemnity provision in Section 5.10 of the APA.

39.     SA Acquisition is wrong – the constantly evolving guidance from HHS does not provide a basis for SA Acquisition to continue refusing to close on the Court-approved sale.

40.     Section 4.10 of the APA provides that the parties will spend the $10 million -12.5 million in PRF funds on expenses related to the coronavirus, with each such expenditure requiring mutual agreement of the Trustee and SA Acquisition:

> …Seller agrees that prior to Closing Seller and/or Debtors will spend all of the Unallocated Provider Relief Funds for "healthcare related expense attributable to coronavirus" for Hospital (as permitted by the CARES Act), which each such expenditure requiring mutual agreement of Seller and Purchaser.

APA, § 4.10. Related to those agreed expenditures, Section 5.10 provides that if the Trustee or St. Alexius Debtors are required to repay any of the agreed-upon expenditures because they do not ultimately meet the definition of a "healthcare related expense attributable to coronavirus," then SA Acquisition will indemnify the St. Alexius Bankruptcy Estates for those amounts.

> In the event Seller or Debtors are required to refund or repay to the federal government all or part of the Unallocated Provider Relief Funds expended by Seller or Debtors under Section 4.10 of this Agreement from October 1, 2020 through the

> Closing Date because such expenditure did not qualify as a "healthcare related expense attributable to coronavirus" under the CARES Act, Purchaser shall pay to Seller or Debtors the amount required to be so refunded or repaid within ninety (90) days after Seller or Debtor notify Purchaser in writing that such refund or repayment is being required by the federal government, the amount of such refund or repayment and all information received from the federal government explaining why such expenditure does not qualify as a "healthcare related expense attributable to coronavirus" under the CARES Act.

APA, § 5.10. Taken together, the APA establishes a straightforward process: instead of the Trustee returning the unused PRF funds, the Trustee and SA Acquisition would agree on how the funds would be spent, and if the expenditures fail to qualify as forgivable expenses under the CARES Act, SA Acquisition will indemnify the St. Alexius Bankruptcy Estates for that amount.

41.     The Trustee and SA Acquisition followed that process. Both parties agreed on the expenditures of the St. Alexius Bankruptcy Estates' unused PRF funds, with SA Acquisition directing the bulk of the expenditures.

42.     However, SA Acquisition is now concerned that some its approved uses of the PRF funds may not later qualify for forgiveness, which would trigger SA Acquisition's obligation to indemnify the St. Alexius Bankruptcy Estates under Section 5.10.

43.     The Trustee cannot and never could guarantee whether an expenditure will qualify as a healthcare expense attributable to coronavirus, which was the entire purpose of allowing SA Acquisition to approve all such expenses and including the indemnification provision. The Trustee was willing to expend the unused PRF funds in a way that was beneficial to SA Acquisition, but the Trustee could not guarantee such expenses would ultimately be forgiven, and if they were not, SA Acquisition would indemnify the St. Alexius Bankruptcy Estates for the unforgiven amounts.

44.     HHS's guidance on what will qualify for forgiveness under the CARES Act / PRF is constantly evolving, with new or modified guidance posted every few weeks. Both parties understood this and entered into the modified APA so SA Acquisition could access the $10-12.5

13

million of unused PRF the Trustee was considering returning to the federal government, while at the same time protecting the St. Alexius Bankruptcy Estates if the buyer-approved expenditures were ultimately found not to be eligible for forgiveness.

45.    SA Acquisition is evidently concerned that its indemnification may be triggered in the coming years, but that does not provide a basis to avoid a clear and unambiguous contract provision. When interpreting contracts, the court's goal is to "ascertain the intention of the parties and to give effect of that intention." *Vest v. Kan. City Homes, L.L.C.*, 288 S.W. 3d 304, 310 (Mo. Ct. App. W.D. 2009)[6] (internal citations and quotation marks omitted). The parties' intent "is determined based on the contract alone unless the contract is ambiguous." *Id.* at 310. If the parties' contract is unambiguous, "the intent of the parties is to be discerned from the contract alone based on the plain and ordinary meaning of the language used." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. 2012) (internal citations and quotation marks omitted).

46.    In this case, the APA is clear: the parties would agree on how to spend the unused PRF funds and if those expenditures ultimately did not qualify for forgiveness, the buyer would indemnify the St. Alexius Bankruptcy Estates for those amounts.  The Court should enforce the APA's plain meaning.

47.    To the extent the APA is ambiguous, it is clear the intent of the parties was for SA Acquisition to indemnify the St. Alexius Bankruptcy Estates for any expenditures that did not qualify for forgiveness.

48.    The Motion to Approve the Modified Asset Purchase Agreement that contained the indemnity provision was approved by SA Acquisition and supported at the hearing by SA Acquisition. Paragraph 24 of the motion stated "[s]ince the reporting of the PRF expenditures does

---

[6] The parties expressly agreed in the APA that Missouri law would govern the construction, performance, and enforcement of the APA. (APA § 13.3).

4829-4793-6212.2

not occur until after anticipated sale date of the Hospital, the Modified APA requires SA Hospital

Acquisition to indemnify the St. Alexius Debtors for any claim asserted by HHS that any of the

expenditures do not qualify under the CARES Act as appropriate use of the PRF payments."

Indemnity was an absolute requirement to the Trustee's agreement to spend the PRF funds for the

benefit of the hospital, which would only benefit SA Acquisition. The Trustee was not willing to

put the St. Alexius Bankruptcy Estates at risk because the criteria set forth by HHS is ever changing

and evolving.

49.    This intent is also evidenced by two emails sent by Ben Klein to the Trustee. On

October 21, 2020, Mr. Klein wrote to the Trustee "*we are also taking the indemnity risk that if*

*the Cares act reporting… ends up with an item being denied and money is owed back, we are*

*paying it. We are driving the process on the list so we are responsible*…**Just confirming in**

**writing**." (emphasis added). A copy of Mr. Klein's October 21, 2020, email is attached as Exhibit

A.

50.    Mr. Klein believed the Trustee was being too conservative in her expenditures and

on October 22, 2020, sent an email that states, "…we probably beat the details enough and

everyone knows the different ways to look at whether something is a covid expense or is not, but

now we just need to document as much as possible on the different items, and most importantly,

have the lawyers get the indemnification language done so you are comfortable with the indemnity

so you don't have to worry about this." A copy of Mr. Klein's October 22, 2020, email is attached

as **Exhibit E.**

51.    It is clear that SA Acquisition's attempt to assert it is not responsible to indemnify

the St. Alexius Bankruptcy Estates for changes in CARES Act reporting is just another ploy to

delay the closing and renegotiate the transaction on more favorable terms.

15

**C. The Court should compel specific performance and award damages to the St. Alexius Bankruptcy Estates.**

52.     APA Section 11.1 provides that upon the buyer's material default, the deposit is forfeited and the Trustee is entitled to sue for damages or specific performance, and in either instance, may recover fees, costs, and expenses incurred because of buyer's default:

> 11.1     Purchaser Default. If Purchaser commits any material default under this Agreement prior to Closing, (a) Purchaser shall be deemed to forfeit the Deposit and (b) Seller shall be entitled to sue for damages or specific performance of the terms of this Agreement and recover any and all fees, costs, and expenses, including, without limitation, any attorneys' fees and costs, incurred by Seller as a result of Purchaser's default. The foregoing remedies are in addition to the right to terminate this Agreement under Section 9.1. The termination of this Agreement pursuant to Section 9.1 shall not abrogate or limit the rights of Seller to retain the Deposit and sue for damages as provided in this Article XI.

APA, § 11.1.

53.     In this case, the Court should award the St. Alexius Bankruptcy Estates specific performance and damages resulting from SA Acquisition's breach. It is well established under applicable Missouri law that a breach of contract may give rise to two remedies. *Magruder v. Pauley*, 411 S.W. 3d 323, 331 (Mo. Ct. App. W.D. 2013). "One is an action at law for damages for the breach; the other is a suit at equity for the specific performance of the contract." *Id.* (internal citations and quotation marks omitted). In other words, "there is no prohibition against a court of equity decreeing both specific performance and awarding damages." *Metropolitan St. Louis Sewer Dist. v. Zykan*, 495 S.W.2d 643, 657 (Mo. 1973); *see e.g. Medical Plaza One, LLC v. Davis*, 552 S.W.3d 143, 162 (Mo. Ct. App. W.D. 2018) (affirming award of specific performance and damages against party that failed to timely close under settlement agreement).

54.     A plaintiff is entitled to specific performance as a matter of right if there is no adequate remedy at law and the contract is fair and plain. *Laclede Gas Co. v. Amoco Oil Co.*, 522 F.2d 33, 38 (8th Cir. 1975) (citing *Miller v. Coffeen*, 180 S.W.2d 100, 102 (Mo. 1955)). And while

16

"specific performance relating to the sale of personal property is less common than for real estate, specific performance is appropriate when the goods are unique or difficult to obtain elsewhere." *Havens Steel Co. v. Commerce Bank, N.A. (In re Havens Steel Co.)*, 317 B.R. 75, 87 (Bankr. W.D. Mo. 2004) (finding that debtor was entitled to specific performance of contract to buy steel that was custom-ordered or fabricated where contract "was fair and plain").

55.     In this case, an award of specific performance is appropriate. As an initial matter, the APA involves the sale of real property, which is unique by its very nature, making a money damages judgment alone insufficient. The related personal property is directly related to hospital operations, inventoried at appropriate amounts for the hospital uses, and would be difficult replace. Specific performance will simply require the buyer to do what it already promised and is required to do: that is, close on the purchase of the St. Alexius Bankruptcy Estates' assets at the agreed purchase price. Damages are also appropriate here because the St. Alexius Bankruptcy Estates have been harmed on a *daily* basis by the buyer's continuing breach of the APA and have been forced to incur attorneys' fees and costs. As such, the award of damages is distinct from an order requiring specific performance of the closing. *See e.g. Medical Plaza One,* 552 S.W. 3d at 163 (finding that court can award damages in addition to specific performance if the damages would be distinct and not a double recovery). The Court has the power and authority to "effectuate full and complete justice" between the parties, and damages are necessary here to adequately protect the St. Alexius Bankruptcy Estates from the buyer's breach. *See e.g. Magruder*, 411 S.W. at 332.

## Notice

56.     The Trustee seeks to have this Motion heard on an emergency basis. **Please take notice that the Trustee is requesting an emergency hearing on this Motion for Thursday, December 17, 2020, at 9:00 a.m. (ET) or as soon thereafter as the Court's schedule permits.**

17

WHEREFORE, the Trustee respectfully request this Court enter an order, substantially in the form attached hereto as **Exhibit F**:

    (i)      finding that the buyer, SA Hospital Acquisition Group LLC, by and or through its subsidiaries, has materially breached the Modified Asset Purchase Agreement dated October 29, 2020;

    (ii)     forfeiting SA Hospital Acquisition, LLC's deposit to the Trustee pursuant to Section 11.1 of the APA;

    (iii)    requiring SA Hospital Acquisition to specifically perform by closing on the transaction within seven days after entry of an order granting this Motion;

    (iv)    awarding the Trustee damages against SA Hospital Acquisition and all guarantors under the APA; and

    (v)     granting all other relief that is appropriate under the circumstances.

Respectfully submitted this 15th day of December 2020.

_s/ Elizabeth A. Green_
ELIZABETH A. GREEN (*admitted pro hac vice*)
Florida Bar No. 600547
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone 407-649-4000
Facsimile 407-841-0168
egreen@bakerlaw.com
*Counsel to Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2020, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will provide a Notice of Electronic Filing and copy to all parties requesting such notice, and served the foregoing motion with all attachments via email to counsel to SA Acquisition.

_s/ Elizabeth A. Green_
ELIZABETH A. GREEN

## Exhibit A



**From:** Ben Klein <bklein@mtsconsulting.com>
**Sent:** Wednesday, October 21, 2020 8:21 AM
**To:** Carol Fox <cfox@brileyfin.com>
**Subject:** FYi

<span style="color:red">[EXTERNAL]</span>
On the way to the airport I spoke with troy. He is up to speed, that we are indemnifying you post closing for the 2.6/2.7 (i forgot the exact number). if the PPP loan is not forgiven we will owe you 2.6/2.7.
Also reiterated that we are also taking the indemnity risk that if the Cares act reporting (I made sure the staff added the reporting costs to the 12.5 so it does not come out of your money) ends up with an item being denied and money is owed back, we are paying it. We are driving the process on the list so we are responsible. Amanda's comments are being incorporated, but at the end of the day we are responsible.

Just confirming in writing.


Ben Klein
1 University Plaza
Suite 500
Hackensack, NJ 07601
201-470-5751

Notice: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank You.

PLEASE VISIT <https://brileyfin.com/disclosures/> FOR LEGAL DISCLOSURES.

# **Exhibit B**

SA HOSPITAL ACQUISITION GROUP, LLC

December 8, 2020

Elizabeth Green
Baker & Hostetler LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32801-3432

Re:    Americore Holdings, LLC; Case No. 19-61608

Dear Ms. Green:

Please note that I am in receipt of your correspondence to SA Hospital Acquisition Group's ("Purchaser") counsel regarding the correspondence I sent yesterday, as a principal of the Purchaser, to Ms. Fox.  Per your request, we will respond directly to you regarding the same.

Obviously, the issue at the forefront pertains to the CARES Act.  While I fundamentally disagree with your recital of the facts concerning the Missouri DSH and School of Nursing as concerns notice, the foregoing does not require further comment as it will clearly not advance the matter towards closing.

To that end, I will agree with you that there are constant changes to the CARES Act guidelines which is equally frustrating to both sides.  However, the indemnity provision was not agreed to as it relates to how the Trustee calculated the various expenditures.   Section 5.10 states the following:

> *5.10     Reimbursement for Certain Expenditures of Unallocated Provider Relief Funds.   In the event that Seller or Debtors are required to refund or repay to the federal government all or part of the Unallocated Provider Relief Funds expended by Seller or Debtors under Section 4.10 of this Agreement from October 1, 2020 through the Closing Date because **such expenditure did not qualify as a "healthcare related expense attributable to coronavirus" under the CARES Act,** Purchaser shall pay to Seller or Debtors the amount required to be so refunded or repaid within ninety (90) days after Seller or Debtors notify Purchaser in writing that such refund or repayment is being required by the federal government, the amount of such refund or repayment and all information received from the federal government explaining why **such expenditure does not qualify as a  "healthcare related expense attributable to coronavirus" under the CARES Act.  [Emphasis Added]***

This indemnity provision is specific as to whether the healthcare related expense is attributable to the coronavirus under the Cares Act.   In other words, Purchaser was willing to provide indemnification as concerns the equipment, supplies and/or expenditures that were determined to be a healthcare related expense.  That is also consistent with the email you provided within your correspondence.  However, we never agreed to indemnify the Seller as to whether the calculations related to the expense were appropriate and/or consistent with the guidelines of the CARES Act.  There is nothing within Section 5.10 which suggests the opposite.

Accordingly, we remain in the same position as yesterday and we need to get this resolved in an expeditious manner so we can close on December 11, 2020.  As set forth within our analysis yesterday, we believe that there remain an outstanding amount to be spent of $6,000,000.00.  While

*SA HOSPITAL ACQUISITION GROUP, LLC*

we are sympathetic to the changes of the CARES Act guidelines, we cannot agree to provide a blanket indemnity of $12,000,000.00.  We suggest that (a) the indemnification provision is reduced to $6,000,000.00, which sets forth the proper calculation for the equipment, supplies and expenditures; and (b) the additional $6,000,000.00 is place into an escrow account until HHS provides new guidelines and/or clarification.  This will provide protection for both Purchaser and Seller.

We remain committed to Saint Alexius Hospital and are well positioned to lead this hospital, following the Trustee's strong stewardship, into 2021 and for years to come.

Regards,

Troy Schell

# Exhibit C

| From: | Green, Elizabeth A. |
| To: | Layden, Andrew |
| Subject: | Fwd: could you call me ? it is important. 407 928 5105 |
| Date: | Tuesday, December 15, 2020 5:30:15 AM |

Elizabeth Green
Partner
Chair: Bankruptcy and Restructuring Group
BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036
C: 407-928-5105

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

Begin forwarded message:

> **From:** "Vitale, Desiree" <Desiree.Vitale@dss.mo.gov>
> **Date:** November 25, 2020 at 2:58:08 PM EST
> **To:** "Green, Elizabeth A." <egreen@bakerlaw.com>
> **Subject: RE: could you call me ?  it is important. 407 928 5105**

> [External Email: Use caution when clicking on links or opening attachments.]

> Because the debtor agreed to waive rights to DSH setoff/recoupments, MHD will not
> pursue the buyer for pre-bankruptcy DSH liability. In that same vein, the buyer would
> not have a claim or right to pre-bankruptcy  DHS credit.

> Thanks,

> Desiree J. Vitale
> Legal Counsel
> Department of Social Services
> MO HealthNet Division
> 615 Howerton Court
> Jefferson City, MO 65109-6806
> E-mail: Desiree.Vitale@dss.mo.gov

> The Department of Social Services' mission: Empower Missourians to live safe,
> healthy, and productive lives.

> **********************************************************************

> The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all

recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers the e-mail passes through as it goes from sender to recipient, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or the firm's computers or even some computer unconnected to either of us which the e-mail passes through. This office is communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communication to be sent in a different fashion, please advise our office AT ONCE.

-----Original Message-----
From: Green, Elizabeth A. <egreen@bakerlaw.com>
Sent: Wednesday, November 25, 2020 1:51 PM
To: Vitale, Desiree <Desiree.Vitale@dss.mo.gov>
Subject: Re: could you call me ? it is important. 407 928 5105

I want to confirm that any DSH liability for the litigation stays with the debtor and is not an obligation of the buyer.

thanks

Liz

Elizabeth Green
Partner
Chair: Bankruptcy and Restructuring Group BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036
C: 407-928-5105

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

On Nov 25, 2020, at 2:49 PM, Vitale, Desiree
<Desiree.Vitale@dss.mo.gov> wrote:

[External Email: Use caution when clicking on links or opening

attachments.]

I am in a meeting for another hour, but can call you after.

Thank you,

Desiree J. Vitale

Legal Counsel

Department of Social Services

MO HealthNet Division

615 Howerton Court

Jefferson City, MO 65109-6806

E-mail: Desiree.Vitale@dss.mo.gov

The Department of Social Services' mission: Empower Missourians to
live safe, healthy, and productive lives.

*************************************************************************
***

The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to
notify all recipients of e-mail that (1) e-mail communication is not a
secure method of communication, (2) any e-mail that is sent to you or by
you may be copied and held by various computers the e-mail passes
through as it goes from sender to recipient, (3) persons not participating
in our communication may intercept our communications by improperly
accessing your computer or the firm's computers or even some computer
unconnected to either of us which the e-mail passes through. This office
is communicating to you via e-mail because you have consented to
receive communications via this medium. If you change your mind and
want future communication to be sent in a different fashion, please
advise our office AT ONCE.



-----Original Message-----

From: Green, Elizabeth A. <egreen@bakerlaw.com>

Sent: Wednesday, November 25, 2020 1:47 PM

To: Vitale, Desiree <Desiree.Vitale@dss.mo.gov>

Subject: could you call me ? it is important. 407 928 5105

Elizabeth Green

Partner

Chair: Bankruptcy and Restructuring Group BakerHostetler LLP

200 S Orange Ave suite 2300

Orlando, Florida 32801

P: 407-649-4036

C: 407-928-5105

Sent from my iPhone to avoid delay.  Please excuse any typos or
misspellings.

_____

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged, confidential, or
protected by law. If you are not the intended recipient you are hereby
notified that any dissemination, copying or distribution of this email or
its contents is strictly prohibited.

If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The
content of this email is limited to the matters specifically addressed
herein and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore, we do
not accept responsibility for any errors or omissions that are present in
this email, or any attachment, that have arisen as a result of e-mail
transmission.

# **Exhibit D**

| | |
|---|---|
| **From:** | Green, Elizabeth A. |
| **To:** | Layden, Andrew |
| **Subject:** | Fwd: |
| **Date:** | Tuesday, December 15, 2020 5:30:52 AM |

Elizabeth Green
Partner
Chair: Bankruptcy and Restructuring Group
BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036
C: 407-928-5105

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

Begin forwarded message:

> **From:** "Vitale, Desiree" <Desiree.Vitale@dss.mo.gov>
> **Date:** December 4, 2020 at 1:19:11 PM EST
> **To:** "Green, Elizabeth A." <egreen@bakerlaw.com>
> **Subject: Re:**
>
> The state agrees to the modified language as previously discussed. What else would the state agree to?
>
> Thanks!
>
> ---
>
> **From:** Green, Elizabeth A. <egreen@bakerlaw.com>
> **Sent:** Friday, December 4, 2020 11:07:20 AM
> **To:** Vitale, Desiree
> **Subject:** Re:
>
> When I file a motion to have this language approved will can I represent that the state agrees?
>
> Elizabeth Green
> Partner
> BakerHostetler LLP
> 200 S Orange Ave suite 2300
> Orlando, Florida 32801
> P: 407-649-4036
>
> Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.
>
> On Dec 3, 2020, at 12:01 PM, Vitale, Desiree <Desiree.Vitale@dss.mo.gov> wrote:
>
> Agreed.
>
> Thank you,

*Desiree J. Vitale*
Legal Counsel
Department of Social Services
MO HealthNet Division
615 Howerton Court
Jefferson City, MO 65109-6806
E-mail: Desiree.Vitale@dss mo.gov

*The Department of Social Services' mission: Empower Missourians to live safe, healthy, and productive lives.*

*****************************************************************************

**The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers the e-mail passes through as it goes from sender to recipient, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or the firm's computers or even some computer unconnected to either of us which the e-mail passes through. This office is communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communication to be sent in a different fashion, please advise our office AT ONCE.**

---

**From:** Green, Elizabeth A. <egreen@bakerlaw.com>
**Sent:** Thursday, December 3, 2020 10:59 AM
**To:** Vitale, Desiree <Desiree.Vitale@dss.mo.gov>
**Subject:** Re:

I am setting forth the whole paragraph below so we all know what approved by you.

For the avoidance of doubt, notwithstanding anything to the contrary in this Order or the Modified Agreement, the MO HealthNet provider agreement for SAHC shall not be sold pursuant to section 363 of the Bankruptcy Code   Rather, per agreement, the MO HealthNet provider agreement shall be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code and in compliance with the MO HealthNet Program and with the approval of MDSS, provided however, the Debtors, Purchaser, MDSS and the Missouri Attorney General's Office ("MAG") **agree** based upon their respective reviews of all relevant facts and circumstances pertaining to the sale of SAHC, Purchaser, as assignee of SAHC's Mo HealthNet provider agreement, shall not assume any of SAHC's liability to (a) make refunds or repayments to the MO HealthNet Program in connection with payments received by SAHC from MO HealthNet on or prior to the Closing, **including, without limitation, any refunds or repayments to MO HealthNet Program in connection with Disproportionate Share Hospital payments ("DSH Payments") received by SAHC on or prior to the Closing, provided that SAHC and Purchaser hereby waive the right to receive any additional DSH Payments from MO HealthNet based on adjustments to or reallocations of DSH Payments previously paid by MO HealthNet to SAHC for Fiscal Years prior to Fiscal Year 2019,** and (b) pay to MO HealthNet any fines or penalties imposed on SAHC by MO HealthNet as a result of SAHC's acts or omissions on or prior to Closing, which liability shall remain with **SAHC**, subject to all rights of set-off and recoupment between MDSS and the Debtors related to payments received by SAHC from MO HealthNet on or prior to the Closing and the acts or omissions of SAHC on or prior to Closing   It is acknowledged and agreed that the waiver provided in the previous sentence does not extend to civil or criminal claims that fall within the jurisdiction of the Medicaid Fraud Control Unit of the Missouri Attorney General's Office

Elizabeth Green
Partner
BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

> On Dec 3, 2020, at 11:52 AM, Green, Elizabeth A. <egreen@bakerlaw.com> wrote:
>
> Thank you.  I really appreciate you being so responsive.  I know we are not your only issue .
>
> Liz
>
> Elizabeth Green
> Partner
> BakerHostetler LLP
> 200 S Orange Ave suite 2300
> Orlando, Florida 32801
> P: 407-649-4036
>
>
> Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.
>
>> On Dec 3, 2020, at 11:49 AM, Vitale, Desiree <Desiree.Vitale@dss.mo.gov> wrote:
>>
>> [External Email: Use caution when clicking on links or opening attachments.]
>>
>> The language below is fine.
>>
>> Thanks,
>>
>> Desiree J. Vitale
>> Legal Counsel
>> Department of Social Services
>> MO HealthNet Division
>> 615 Howerton Court
>> Jefferson City, MO 65109-6806
>> E-mail: Desiree.Vitale@dss.mo.gov
>>
>> The Department of Social Services' mission: Empower Missourians to live safe, healthy, and productive lives.
>>
>> **************************************************************************
>>
>> The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers the e-mail passes through as it goes from sender to recipient, (3) persons not participating in our communication

may intercept our communications by improperly accessing your
computer or the firm's computers or even some computer
unconnected to either of us which the e-mail passes through. This
office is communicating to you via e-mail because you have
consented to receive communications via this medium. If you
change your mind and want future communication to be sent in a
different fashion, please advise our office AT ONCE.

-----Original Message-----
From: Green, Elizabeth A. <egreen@bakerlaw.com>
Sent: Thursday, December 3, 2020 10:48 AM
To: Vitale, Desiree <Desiree.Vitale@dss.mo.gov>
Subject: Re:

Desiree
One more issue,  The lender has requested we change the words
upon agreeement because they think it connotes another agreement
is needed.  They would like to say by agreement of the Debtor and
the State of MO or any other language that is acceptable that
makes it clear that there is no other agreement required.

Is that ok with you ?

The case will be dismissed upon closing which I hope will be soon.

Liz

Elizabeth Green
Partner
BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036

Sent from my iPhone to avoid delay.  Please excuse any typos or
misspellings.

On Dec 3, 2020, at 11:31 AM, Vitale, Desiree
<Desiree.Vitale@dss.mo.gov> wrote:

[External Email: Use caution when clicking on links
or opening
attachments.]

Liz,

The language is fine. Do you know when the St Alexius will dismiss their administrative hearing cases?

Thanks,

Desiree J. Vitale

Legal Counsel

Department of Social Services

MO HealthNet Division

615 Howerton Court

Jefferson City, MO 65109-6806

E-mail: Desiree.Vitale@dss mo.gov

The Department of Social Services' mission: Empower Missourians to live safe, healthy, and productive lives.

*********************************************************************** ***

The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers the e-mail passes through as it goes from sender to recipient, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or the firm's computers or even some computer unconnected to either of us which the e-mail passes through. This office is communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communication to be sent in a different fashion, please advise our office AT ONCE.

-----Original Message-----
From: Green, Elizabeth A. <egreen@bakerlaw.com>
Sent: Thursday, December 3, 2020 6:45 AM
To: Vitale, Desiree <Desiree.Vitale@dss mo.gov>
Subject:

Good Morning

Have you been able to review the language I sent you ?

liz

Elizabeth Green

Partner

Chair: Bankruptcy and Restructuring Group

BakerHostetler LLP

200 S Orange Ave suite 2300

Orlando, Florida 32801

P: 407-649-4036

C: 407-928-5105

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

_____

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited.

If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.

# Exhibit E

**From:** Ben Klein <bklein@mtsconsulting.com>
**Sent:** Thursday, October 22, 2020 11:44 AM
**To:** Carol Fox <cfox@brileyfin com>
**Subject:** Fwd: St. Alexius: Proposed COVID-19 Expenditures

[EXTERNAL]
we might never finish going in a circle on this, and I don't blame Amanda at all, she has to be conservative since so much is unknown.
At the end of the day, if there is a take back and no money in the BK entity, they will take it from the Medicare money coming to me, plus I agreed to indemnify
the estate if we get this wrong and an item gets rejected.
Just my opinion, we probably beat the details enough and everyone knows the different ways to look at whether something is a covid expense or is not, but now
we just need to document as much as possible on the different items, and most importantly, have the lawyers get the indemnification language done so you are
comfortable with the indemnity so you don't have to worry about this.
I do believe at the end of the day if the want to take back money my voucher is where they will head…..

Ben Klein
1 University Plaza
Suite 500
Hackensack, NJ 07601
201-470-5751



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
### LONDON DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 19-61608 |
| | ) | |
| **Americore Holdings, LLC,** *et al.*[1] | ) | **Jointly administered** |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |

## ORDER GRANTING CHAPTER 11 TRUSTEE'S
## EMERGENCY MOTION TO ENFORCE SALE ORDER

Upon consideration of the motion (Doc. No. 947) filed by the Debtors, by and through

Carol L. Fox, the Chapter 11 Trustee ("Trustee") seeking an order enforcing the Court's November

11, 2020 Sale Order (Doc. No. 929) (the "Motion" and "Sale Order", respectively)[2] and upon

consideration of the circumstances and the record in this case; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors'

estates, their creditors and other parties in interest; and the Trustee having provided adequate and

appropriate notice of the Motion under the circumstances; and after due deliberation and good and

sufficient cause appearing therefor;

**IT IS ORDERED THAT:**

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).
[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

1.      The Motion is GRANTED as provided herein.

2.      SA Hospital Acquisition Group LLC by and or through its subsidiaries (collectively, "SA Acquisition"), has materially breached the Modified Asset Purchase Agreement dated October 29, 2020.

3.      SA Acquisition is hereby ordered and directed to specifically perform under the terms of Court-approved APA and close the transaction no later than December 24, 2020.

4.      SA Acquisition's deposit is hereby forfeited to the St. Alexius Bankruptcy Estates.

5.      The Court finds that the St. Alexius Bankruptcy Estates are entitled to an award of damages against SA Acquisition and any and all guarantors under the APA in an amount to be established by separate order of this Court.

6.      The Court reserves jurisdiction to supplement, interpret, and enforce this Order.

Order Tendered by:

*s/ Elizabeth A. Green*
ELIZABETH A. GREEN (*admitted pro hac vice*)
Florida Bar No. 600547
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone 407-649-4000
Facsimile 407-841-0168
egreen@bakerlaw.com
*Counsel to Chapter 11 Trustee*

4811-4930-3508.1

## **Exhibit B**

| | |
|---|---|
| **From:** | Green, Elizabeth A. |
| **To:** | Martin, Chad |
| **Subject:** | Fwd: Third Friday Stock Purchase Agreement (Americore)_(Baker comments 12-2-20) (CF 12-10-20).docx |
| **Date:** | Wednesday, December 30, 2020 9:22:18 AM |
| **Attachments:** | Third Friday Stock Purchase Agreement (Americore)_(Baker comments 12-2-20) (CF 12-10-20).docx |

Elizabeth Green
Partner
BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036


Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.



Begin forwarded message:


> **From:** "Green, Elizabeth A." <egreen@bakerlaw.com>
> **Date:** December 13, 2020 at 5:38:07 PM EST
> **To:** "Nathaniel L. Doliner" <ndoliner@carltonfields.com>, Jonathan Tre Dixon
> <JDixon@carltonfields.com>, "Parrish, Jimmy D." <jparrish@bakerlaw.com>
> **Subject: Third Friday  Stock Purchase Agreement (Americore)_(Baker
> comments 12-2-20) (CF 12-10-20).docx**



> All attached you will find comments from the trustee on the stock purchase
> agreement which you sent earlier. We are still working on it on our side , these are
> not final comments and we reserve rights to make additional comments if and
> when the process continues. I have a number of concerns related a stock sale and
> how that will impact the Estates that are not reflected in these comments


> Liz



> Elizabeth Green
> Partner
> Chair: Bankruptcy and Restructuring Group
> BakerHostetler LLP
> 200 S Orange Ave suite 2300
> Orlando, Florida 32801
> P: 407-649-4036
> C: 407-928-5105

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

---

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly proh bited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

## **Exhibit C**

| | |
|---|---|
| **From:** | Green, Elizabeth A. |
| **To:** | Martin, Chad |
| **Subject:** | Fwd: Americore |
| **Date:** | Wednesday, December 30, 2020 9:21:28 AM |

Elizabeth Green
Partner
BakerHostetler LLP
200 S Orange Ave suite 2300
Orlando, Florida 32801
P: 407-649-4036

Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

Begin forwarded message:

> **From:** "Green, Elizabeth A." <egreen@bakerlaw.com>
> **Date:** December 25, 2020 at 7:32:15 AM EST
> **To:** "Brad S. Shraiberg" <bss@slp.law>
> **Cc:** "Nathaniel L. Doliner" <ndoliner@carltonfields.com>, Jonathan Tre Dixon
> <JDixon@carltonfields.com>
> **Subject: Re: Americore**
>
> Brad
>
> We are planning on closing the transaction we have with SA  pursuant to the court
> order on or before December 31.   I will be happy to speak on Monday -
>
> Liz
>
> Elizabeth Green
> Partner
> Chair: Bankruptcy and Restructuring Group
> BakerHostetler LLP
> 200 S Orange Ave suite 2300
> Orlando, Florida 32801
> P: 407-649-4036
> C: 407-928-5105
>
> Sent from my iPhone to avoid delay.  Please excuse any typos or misspellings.

On Dec 24, 2020, at 10:35 PM, Brad S. Shraiberg <bss@slp.law>
wrote:


[External Email: Use caution when clicking on links or opening
attachments.]


I wanted to follow-up my email from yesterday.  We need to know
where the trustee stands on our offer. It is higher than the one you
currently have and there are no open contingencies other than a court
order. I'm sorry for sending this on Christmas Eve.  Let's see if we
can speak on Sunday.


I look forward to hearing from you.


Thanks.


Bradley Shraiberg

(561) 443-0801


Sent from my iPad

## **Exhibit D**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF KENTUCKY
# LONDON DIVISION

| | | | |
|---|---|---|---|
| In Re: | ) | | Case No. 19-61608 |
| | ) | | |
| Americore Holdings, LLC, *et al.*[1] | ) | | Jointly administered |
| | ) | | |
| Debtors. | ) | | Chapter 11 |
| | ) | | |

## ORDER GRANTING TRUSTEE'S EMERGENCY MOTION TO CLARIFY SALE ORDER AS TO PARAGRAPH 64 AND TO CLARIFY THAT SALE MAY BE TO AFFILIATE OF PURCHASER

Upon consideration of the Chapter 11 Trustee's Emergency Motion to Clarify Sale Order as to Paragraph 64 and to Clarify that Sale May Be to Affiliate of Purchaser ("Emergency Motion to Clarify" or "Motion"), which requested clarification of the Court's *Order (A) Approving Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (Doc. No. 929) (the "November 11 Sale Order"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Trustee having provided proper and adequate notice of the Motion under the circumstances; and after due deliberation and good and

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses):  Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

sufficient cause appearing therefor; it is hereby

**ORDERED:**

1.   The Emergency Motion to Clarify is granted as set forth in this Order.

2.   The introductory paragraphs of the November 11 Sale Order are modified as follows:

> … by and between the Trustee solely in her capacity as Chapter 11 Trustee of St. Alexius Properties, LLC ("SAP"), St. Alexius Hospital Corporation #1 ("SAHC"), and Success Healthcare 2, LLC ("SH2" and together with SAP and SAHC, the "Debtors") and SA Hospital Acquisition Group, LLC, a Delaware Limited Liability Company ("SA Hospital Acquisition"), and/or through its subsidiaries **or affiliates** (the "Purchaser") …

3.   Paragraph 64 of the November 11 Sale Order is modified as follows:

> For the avoidance of doubt, notwithstanding anything to the contrary in this Order or the Modified Agreement, the MO HealthNet provider agreement for SAHC shall not be sold pursuant to section 363 of the Bankruptcy Code. Rather, per agreement, the MO HealthNet provider agreement shall be assumed and assigned pursuant to and in accordance with section 365 of the Bankruptcy Code and in compliance with the MO HealthNet Program and with the approval of MDSS, provided however, the Debtors, Purchaser, MDSS and the Missouri Attorney General's Office ("MAG") **agree** based upon their respective reviews of all relevant facts and circumstances pertaining to the sale of SAHC, Purchaser, as assignee of SAHC's Mo HealthNet provider agreement, shall not assume any of SAHC's liability to (a) make refunds or repayments to the MO HealthNet Program in connection with payments received by SAHC from MO HealthNet on or prior to the Closing, **including, without limitation, any refunds or repayments to MO HealthNet Program in connection with Disproportionate Share Hospital payments ("DSH Payments") received by SAHC on or prior to the Closing, provided that SAHC and Purchaser hereby waive the right to receive any additional DSH Payments from MO HealthNet based on adjustments to or reallocations of DSH Payments previously paid by MO HealthNet to SAHC for Fiscal Years prior to Fiscal Year 2019**, and (b) pay to MO HealthNet any fines or penalties imposed on SAHC by MO HealthNet as a result of SAHC's acts or omissions on or prior to Closing, which liability shall remain with **SAHC**, subject to all rights of set-off and recoupment between MDSS and the Debtors related to payments received by SAHC from MO HealthNet on or prior to the Closing and the acts or omissions of SAHC on or prior to Closing. It is acknowledged and agreed that the waiver provided in the previous sentence does not extend to civil or criminal claims that fall within the jurisdiction of the Medicaid Fraud Control Unit of the Missouri Attorney General's Office.

4.   All of the modified language in Paragraphs 2 and 3 of this Order are and will be applicable to, and incorporated in, the November 11 Sale Order, including, without limitation, that the Purchaser (as such term is modified pursuant to this Order) is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code; the Purchaser proceeded in good faith in all aspects of the Sale; the Purchaser is entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code; the consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Section 363(b), Section 363(f), and Section 363(m) thereof; the transactions contemplated by the Modified Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending appeal; the Purchaser is a good faith buyer within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of Section 363(m) of the Bankruptcy Code.[2]

5.   The relief granted herein is and will be binding on any subsequent Chapter 11 trustee appointed in any of these Chapter 11 cases or upon any Chapter 7 trustee appointed in the event of a subsequent conversion of any of these Chapter 11 cases to cases under Chapter 7.

---

[2] Capitalized terms used in this paragraph shall have the meanings ascribed to them in the November 11 Sale Order.

4827-6484-4756.1

6.   To the extent that there are any inconsistencies between the terms of the Motion and this Order, this Order shall govern.

7.   The November 11 Sale Order, together with this Order, shall be read and construed as one order, and references in the November 11 Sale Order to the "Order" or the "Sale Order" will, and will be deemed to, incorporate references to this Order and the terms and provisions herein.

8.   The Debtors and Trustee are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

9.   Notwithstanding any Bankruptcy Rule or Local Rule that otherwise might delay the effectiveness of this Order, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.  The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.


Order Tendered By:

*/s/ Elizabeth A. Green*
Elizabeth A. Green
Florida Bar No. 0600547
egreen@bakerlaw.com
BAKER & HOSTETLER, LLP
200 S. Orange Avenue
Suite 2300
Orlando, Florida 32801
Telephone: 407-649-4000
Facsimile: 407-841-0168
*Attorneys for the Chapter 11 Trustee*


4827-6484-4756 1

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Tuesday, December 22, 2020**
**(grs)**