**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

| | | |
|---|---|---|
| In Re: | ) | Case No. 19-61608 |
| | ) | |
| **Americore Holdings, LLC, *et al.*,**[1] | ) | **Jointly Administered** |
| | ) | |
| Debtors. | ) | **Chapter 11** |
| | ) | |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF CHAPTER 11 TRUSTEE**
**FOR AMERICORE HOLDINGS, LLC AND AFFILIATED DEBTORS**

Dated April 26, 2023

*/s/ Elizabeth A. Green*

ELIZABETH A. GREEN (*admitted pro hac vice*)
Florida Bar No. 0600547
JIMMY D. PARRISH (*admitted pro hac vice*)
Florida Bar No. 526401
BAKER & HOSTETLER LLP
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32802-0112
Telephone: 407-649-4000
Facsimile: 407-841-0168
Email:    egreen@bakerlaw.com
          jparrish@bakerlaw.com

*Counsel to the Chapter 11 Trustee*

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC(3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation #1 (2766).

## TABLE OF CONTENTS

I. DEFINITIONS AND CONSTRUCTION OF TERMS ...............................................5
    A.    Definitions.................................................................................................5
    B.    Interpretation; Application of Definitions and Rules of Construction..................15

II. TREATMENT OF UNCLASSIFIED CLAIMS .....................................................15
    A.    Administrative Expense Claims.................................................................15
    B.    Professional Fee Claims..........................................................................15
    C.    Statutory Fees........................................................................................16
    D.    Priority Tax Claims.................................................................................16

III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............................16

IV. TREATMENT OF CLAIMS AND INTERESTS ...................................................17
    A.    Classification and Treatment of Claims and Equity Interests.............................17
        1.    Class 1 — Priority Non-Tax Claims.................................................17
        2.    Class 2 — Ellwood General Unsecured Claims. ................................18
        3.    Class 3 — Izard General Unsecured Claims......................................18
        4.    Class 4 — Pineville General Unsecured Claims.................................18
        5.    Class 5 — St. Alexius General Unsecured Claims. .............................18
        6.    Class 6 — Intercompany Claims. .....................................................19
        7.    Class 7 — Equity Interests...............................................................19
    B.    Limited Substantive Consolidation............................................................19
    C.    Unimpaired Claims .................................................................................21
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b)..............................21
    E.    Subordinated Claims ...............................................................................21
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.............................................................................................21
    G.    Disputes Concerning Impairment ..............................................................22

V. PROVISIONS REGARDING THE LIQUIDATING TRUST.................................22
    A.    Creation of Liquidating Trusts...................................................................22
    B.    Appointment of the Liquidating Trustee......................................................23
    C.    Assignment of Creditor Causes of Action ...................................................23
    D.    Ellwood Liquidating Trust .......................................................................24
        1.    Beneficiaries of the Ellwood Liquidating Trust.................................24
        2.    Vesting and Transfer of Ellwood Liquidating Trust Assets ....................24
    E.    Izard Liquidating Trust ...........................................................................25
        1.    Beneficiaries of the Izard Liquidating Trust......................................25
        2.    Vesting and Transfer of Izard Liquidating Trust Assets........................26
    F.    Pineville Liquidating Trust .......................................................................26
        1.    Beneficiaries of the Pineville Liquidating Trust.................................26

4854-5325-8041.11

| | | 2. | Vesting and Transfer of Pineville Liquidating Trust Assets | 27 |
| | G. | | St. Alexius Liquidating Trust | 28 |
| | | 1. | Beneficiaries of the St. Alexius Liquidating Trust | 28 |
| | | 2. | Vesting and Transfer of St. Alexius Liquidating Trust Assets | 28 |
| | H. | | Certain Powers and Duties of the Liquidating Trusts and Liquidating Trustee | 29 |
| | | 1. | General Powers of the Liquidating Trustee | 29 |
| | | 2. | Books and Records | 30 |
| | | 3. | Investments of Cash | 30 |
| | | 4. | Costs and Expenses of Administration of the Liquidating Trust | 30 |
| | | 5. | Retention of Professionals | 31 |
| | | 6. | Compensation of the Trustee and Trustee's Professionals | 31 |
| | | 7. | Reporting | 31 |
| | I. | | Post-Effective Date Notice | 31 |
| | J. | | Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtor | 32 |
| | K. | | Term of Liquidating Trust | 33 |
| | L. | | Limitation of Liability of the Liquidating Trustee | 33 |
| VI. MEANS FOR IMPLEMENTATION | | | | 34 |
| | A. | | Preservation of Right to Conduct Investigations. | 34 |
| | B. | | Prosecution and Resolution of Causes of Action and Avoidance Actions. | 34 |
| | C. | | Effectuating Documents and Further Transactions. | 34 |
| | D. | | Exemption from Securities Laws. | 34 |
| | E. | | Exemption from Certain Taxes and Fees. | 35 |
| | F. | | Debtors' Privileges as to Certain Causes of Action. | 35 |
| | G. | | Insurance Policies. | 35 |
| | H. | | Filing of Monthly and Quarterly Reports and Payment of Statutory Fees. | 36 |
| | I. | | Completion of Services of Professionals. | 36 |
| | J. | | Operations of the Debtors Between the Confirmation Date and the Effective Date. | 37 |
| | K. | | Preservation of Causes of Action | 37 |
| | | 1. | Vesting Causes of Action | 37 |
| | | 2. | Preservation of All Causes of Action Not Expressly Settled or Released | 37 |
| VII. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN | | | | 38 |
| | A. | | General Settlement of Claims and Equity Interests. | 38 |
| | B. | | Distribution Record Date. | 38 |
| | C. | | Transfer of Claims | 38 |
| | D. | | Method of Distributions Under the Plan | 38 |

1.      Method of Payment.................................................................38
2.      Procedure for Distribution of Liquidating Trust Assets ............38
3.      Delivery of Distributions .........................................................39
4.      Withholding and Reporting Requirements ...............................39
E.    Fractional Dollars; *De Minimis* Distributions...............................39
F.    Excess Funds...................................................................................40
G.    Unclaimed Distributions. ...............................................................40
H.    Set-Off and Recoupment.................................................................40
I.    Maximum Recovery and Postpetition Interest................................40
J.    Allocation of Distributions Between Principal and Interest. ...............41
K.    Prepayment. ...................................................................................41
L.    Objections to and Allowance of Disputed Claims ...............................41
1.      Claim Objection Deadline.......................................................41
2.      No Distribution Pending Allowance ........................................41
3.      Reserve of Cash Distributions .................................................41
4.      Distribution After Allowance ..................................................42
5.      Estimation ...............................................................................42
VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.................................42
A.    Rejection of Executory Contracts and Unexpired Leases......................42
B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...........43
IX. EFFECTIVENESS OF PLAN ....................................................................43
A.    Conditions Precedent to Effective Date ...........................................43
B.    Substantial Consummation .............................................................44
C.    Notice of Effective Date .................................................................44
D.    Satisfaction of Conditions...............................................................44
E.    Effect of Nonoccurrence of Conditions to Effective Date...................44
X. RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS .................44
A.    Settlement, Compromise and Release of Claims and Equity Interests.................44
B.    Release of Liens .............................................................................45
C.    Exculpation. ...................................................................................45
D.    Injunction. ......................................................................................46
E.    Prohibition of Discriminatory Treatment........................................47
F.    Termination of All Employee and Workers' Compensation Benefits.................47
G.    Exclusions and Limitations on Liability. .........................................47
H.    No Discharge of Claims. .................................................................47
XI. RETENTION OF JURISDICTION................................................................47
XII. MISCELLANEOUS PROVISIONS ..............................................................49
A.    Modification of Plan. .....................................................................49

4854-5325-8041.11

B.      Revocation of Plan. ......................................................................................50

C.      Nonconsensual Confirmation. .....................................................................50

D.      Binding Effect; Successors and Assigns. ....................................................50

E.      Term of Injunctions and Stays ...................................................................50

F.      Governing Law. ...........................................................................................50

G.      Reservation of Rights. .................................................................................51

H.      Effectuating Documents; Further Transactions. ........................................51

I.      Further Assurances. .....................................................................................51

J.      Discharge of the Chapter 11 Trustee .........................................................51

K.      Dissolution of the Debtors and Closing of the Chapter 11 Cases. .............51

L.      Dissolution of the Committee. ....................................................................51

M.      Exhibits. .......................................................................................................52

N.      Time. ............................................................................................................52

O.      Notice; Service of Documents. ...................................................................52

P.      Integration ...................................................................................................53

Q.      Non-Severability of Plan Provisions. .........................................................53

R.      Conflicts ......................................................................................................53

4854-5325-8041.11

# I.  DEFINITIONS AND CONSTRUCTION OF TERMS

## A.    Definitions.

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.    "**Administrative Expense Claim**" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Plan Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims. The government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

2.    "**Administrative Expense Claim Bar Date**" means June 1, 2023, at 5:00 p.m. (Eastern Standard Time), the deadline for filing requests for allowance and payment of Administrative Expense Claims or such other day as may be established by order of the Court.

3.    "**Allowed**" means, with respect to Claims: (a) any Claim for which a proof of Claim was filed (or a Claim that does not require the filing of a proof of Claim as provided for under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim has been filed; (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under the Plan and the Liquidating Trust Agreement; *provided* that with respect to any Claim described in clauses (a) and (b), such Claim shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance was timely filed (including, but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim is subsequently Allowed by a Final Order or through an agreement between the claimant and the Liquidating Trustee.  Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

4.    "**Assets**" means all tangible and intangible assets of every kind and nature of the specified debtor(s) or bankruptcy estate(s) within the meaning of section 541 of the Bankruptcy Code.

5.    "**Avoidance Actions**" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estates under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including,

4854-5325-8041.11

without limitation, all preference, fraudulent conveyance, fraudulent transfer, voidable transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

6.    "**Ballot**" means the ballot on which each Holder of a Claim entitled to vote to accept or reject this Plan casts such vote.

7.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended from time to time.  Unless otherwise stated, "section ___ " shall refer to the specified section of the Bankruptcy Code.

8.    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Kentucky, London Division.

9.    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

10.    "**Beneficial Interests**" means the beneficial interests in the Ellwood Liquidating Trust Units, Izard Liquidating Trust Units, Pineville Liquidating Trust Units, and St. Alexius Liquidating Trust Units, collectively.

11.    "**Beneficiaries**" or "**Liquidating Trust Beneficiaries**" means holders of beneficial interests in the Ellwood Liquidating Trust Units, Izard Liquidating Trust Units, Pineville Liquidating Trust Units, and St. Alexius Liquidating Trust Units, collectively.

12.    "**Business Day**" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

13.    "**Cash**" means legal tender of the United States of America and equivalents thereof.

14.    "**Causes of Action**" means all claims, actions, including the Avoidance Actions and any assigned Creditor Causes of Action, causes of action (including commercial tort claims), choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any Estate against any Person or Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted.

15.    "**Chapter 11 Cases**" means the Debtors' jointly administered bankruptcy cases commenced by the filing of voluntary petitions for relief for the Debtors on December 31, 2019, under chapter 11 the Bankruptcy Code, currently pending in the Bankruptcy Court as case nos.  19-61605-grs, 19-61606-grs, 19-61607-grs, 19-61608-grs, 19-61609-grs, 19-61610-grs, 19-61611-grs, 19-61612-grs, 19-61613-grs, 19-61614-grs, and 19-61615-grs.

16.    "**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

17. "**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

18. "**Class**" means any group of substantially similar Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

19. "**Clerk**" means the clerk of the Bankruptcy Court.

20. "**Committee**" or "**Creditors' Committee**" means the Official Committee of Unsecured Creditors of the Debtors, appointed in the Chapter 11 Cases by the United States Trustee on or about January 23, 2020, as such membership may be altered or amended.

21. "**Creditor**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

22. "**Debtors**" means Americore Holdings, LLC, Americore Health, LLC, Americore Health Enterprises, LLC, Ellwood Medical Center, LLC, Ellwood Medical Center Real Estate, LLC, Ellwood Medical Center Operations, LLC, Pineville Medical Center, LLC, Izard County Medical Center, LLC, Success Healthcare 2, LLC, St. Alexius Properties, LLC, and St. Alexius Hospital Corporation #1, collectively, as debtors in possession in the Chapter 11 Cases.

23. "**Disclosure Statement**" means the contemporaneously filed *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of Chapter 11 Trustee for Americore Holdings, LLC and Affiliated Debtors*, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time through substantial consummation thereof.

24. "**Disputed Claim**" means any Claim that is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, or which is objected to in whole or in part prior to the Claims Objection Deadline and has not been Allowed in whole or in part by settlement or Final Order or compromised, settled, or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under the Plan and the Liquidating Trust Agreements.

25. "**Disputed Claims Reserve**" means the reserve of Ellwood Liquidating Trust Assets, Izard Liquidating Trust Assets, Pineville Liquidating Trust Assets, or St. Alexius Liquidating Trust Assets, as applicable, established by the Liquidating Trustee for the benefit of Holders of Disputed Claims.

26. "**Distribution**" means any distribution to Holders of Allowed Claims, or their designated agents, Liquidating Trust Beneficiaries under or pursuant to this Plan and/or the Liquidating Trust Agreements.

27. "**Distribution Record Date**" means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

28. "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

4854-5325-8041.11

29.    "**Effective Date**" means the date on which the conditions specified in Article IX Section A of this Plan have been satisfied or waived in accordance with the terms hereof and the transactions contemplated hereunder have been consummated. The Debtors shall file a Notice of Effective Date on the Docket indicating the Effective Date of the Plan.

30.    "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

31.    "**Equity Interest**" means any equity or membership interest in any Debtor.

32.    "**Ellwood Beneficial Interests**" means the Beneficial Interests in the Ellwood Liquidating Trust, collectively.

33.    "**Ellwood Debtors**" means Americore Health, LLC, Americore Health Enterprises, LLC, Ellwood Medical Center, LLC, Ellwood Medical Center Real Estate, LLC, and Ellwood Medical Center Operations, LLC, collectively.

34.    "**Ellwood Estates**" means the bankruptcy estates of the Ellwood Debtors.

35.    "**Ellwood General Unsecured Claims**" means any and all Allowed General Unsecured Claims against the Ellwood Debtors, or any of them, collectively.

36.    "**Ellwood Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the Ellwood Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Ellwood Liquidating Trust Agreement.

37.    "**Ellwood Liquidating Trust Agreement**" means the agreement governing the Ellwood Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

38.    "**Ellwood Liquidating Trust Assets**" means any and all Assets of the Ellwood Debtors and their respective Estates as of the Effective Date, including, without limitation, the Ellwood Liquidating Trust Causes of Action, but excluding Izard Liquidating Trust Assets, Pineville Liquidating Trust Assets, St. Alexis Liquidating Trust Assets, and any Assets previously distributed, subject to distribution to other Creditors under the Plan, or not otherwise subject to recovery by Ellwood Liquidating Trust Beneficiaries.

39.    "**Ellwood Liquidating Trust Beneficiaries**" means the Beneficiaries of the Ellwood Liquidating Trust, collectively.

40.    "**Ellwood Liquidating Trust Units**" means beneficial interests in the Ellwood Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions from the Ellwood Liquidating Trust, as provided and in accordance with the Plan and Ellwood Liquidating Trust Agreement.

41.    "**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

4854-5325-8041.11

42. "**<u>Exculpated Parties</u>**" means each of the following solely in its capacity as such (i) the Trustee, (ii) GlassRatner Advisory & Capital Group LLC, d/b/a B. Riley Services, (iii) the Committee and its members in their capacities as members of the Committee, and (iv) the professionals and advisors of the foregoing parties.

43. "**<u>Executory Contract</u>**" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, as of the Petition Date between one or more of the Debtors and any Entity.

44. "**<u>Final Order</u>**" means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for certiorari, or to move for re argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re argument or rehearing shall then be pending; *provided, however*, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

45. "**<u>General Bar Date</u>**" means June 17, 2020, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of Claim against the Debtors for a Claim that arose prior to the Petition Date, as established pursuant to the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice* [Doc. No. 544].

46. "**<u>General Unsecured Claim</u>**" means any Claim against any Debtor that is (i) not an Administrative Expense Claim, Priority Tax Claim, or Priority Non-Tax Claim, but includes (a) any Claim arising from the rejection of an executory contract under section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estates' interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code, or (ii) otherwise determined by the Bankruptcy Court to be a general unsecured claim.

47. "**<u>Governmental Unit</u>**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

48. "**<u>Governmental Unit Bar Date</u>**" means December 28, 2020, the deadline for Governmental Units to file a proof of Claim against the Debtors for a Claim that arose prior to the Petition Date, as established pursuant to the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice* [Doc. No. 544].

49. "**<u>Holder</u>**" means the legal or beneficial holder of any Claim or Equity Interest.

50. "**<u>Impaired</u>**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

51. "**<u>Insurance Policies</u>**" means all insurance policies of the Debtors, including any D&O Policies.

4854-5325-8041.11

52.    "**Intercompany Claim**" means any Claim held by any of the Debtors against one or more of the Debtors.

53.    "**Izard Beneficial Interests**" means the Beneficial Interests in the Izard Liquidating Trust, collectively.

54.    "**Izard Debtor**" means Izard County Medical Center, LLC.

55.    "**Izard Estate**" means the bankruptcy estate of the Izard Debtor.

56.    "**Izard General Unsecured Claims**" means any and all Allowed General Unsecured Claims against the Izard Debtor, collectively.

57.    "**Izard Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the Izard Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Izard Liquidating Trust Agreement.

58.    "**Izard Liquidating Trust Agreement**" means the agreement governing the Izard Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

59.    "**Izard Liquidating Trust Assets**" means any and all Assets of the Izard Debtor and its respective Estate as of the Effective Date, including, without limitation, the Izard Liquidating Trust Causes of Action, but excluding Ellwood Liquidating Trust Assets, Pineville Liquidating Trust Assets, St. Alexis Liquidating Trust Assets, and any Assets previously distributed, subject to distribution to other Creditors under the Plan, or not otherwise subject to recovery by Izard Liquidating Trust Beneficiaries.

60.    "**Izard Liquidating Trust Beneficiaries**" means the Beneficiaries of the Izard Liquidating Trust, collectively.

61.    "**Izard Liquidating Trust Units**" means beneficial interests in the Izard Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions from the Izard Liquidating Trust, as provided and in accordance with the Plan and Izard Liquidating Trust Agreement.

62.    "**Liquidating Trusts**" means the Ellwood Liquidating Trust, Izard Liquidating Trust, Pineville Liquidating Trust, and St. Alexius Liquidating Trust, collectively.

63.    "**Liquidating Trust Advisors**" means any firm(s) or individual(s) retained by a Liquidating Trustee to serve as a legal counsel or provide other professional services in connection with the performance of the Liquidating Trustee's duties and responsibilities under this Plan or the applicable Liquidating Trust Agreement(s).

64.    "**Liquidating Trust Agreement**" means the agreements governing the Liquidating Trusts, and each of them, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

65.   "**Liquidating Trust Assets**" means the Ellwood Liquidating Trust Assets, Izard Liquidating Trust Assets, Pineville Liquidating Trust Assets, and St. Alexius Liquidating Trust Assets, collectively.

66.   "**Liquidating Trust Causes of Action**" means the Ellwood Liquidating Trust Causes of Action, Izard Liquidating Trust Causes of Action, Pineville Liquidating Trust Causes of Action, and St. Alexius Liquidating Trust Causes of Action, collectively.

67.   "**Liquidating Trust Operating Expenses**" means the overhead and other operational expenses of the Liquidating Trusts including, but not limited to, (i) reasonable compensation for the Liquidating Trustee in accordance with the Liquidating Trust Agreements, (ii) costs and expenses incurred by the Liquidating Trustee in administering the Liquidating Trusts, (iii) Statutory Fees that may become payable by the Liquidating Trusts after the Effective Date to the U.S. Trustee, and (iv) any fees and expenses payable to the Liquidating Trust Advisors.  To the extent possible, the Liquidating Trustee shall allocate Liquidating Trust Operating Expenses between the Ellwood Liquidating Trust, Izard Liquidating Trust, Pineville Liquidating Trust, and St. Alexius Liquidation Trust, which expenses shall be payable solely from the assets of the respective Liquidating Trust; *provided, however,* if allocation is not possible or practicable, the Liquidating Trust Operating Expenses shall be allocated between the Liquidating Trusts *pro rata*.

68.   "**Liquidating Trust Units**" means the Ellwood Liquidating Trust Units, Izard Liquidating Trust Units, Pineville Liquidating Trust Units, and St. Alexius Liquidating Trust Units, collectively.

69.   "**Liquidating Trustee**" means Carol Fox, the initial fiduciary responsible for administering the Liquidating Trusts, and any successor subsequently appointed pursuant to the Liquidating Trust Agreements.

70.   "**Local Rules**" means the of Bankruptcy Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky, as amended from time to time.

71.   "**Notice of Effective Date**" means a notice to be filed with the Bankruptcy Court by the Trustee upon the occurrence of all the conditions precedent to the Effective Date set forth in Article IX Section C of this Plan.

72.   "**Order**" means an order, opinion, or judgment of the Bankruptcy Court as entered on the Docket.

73.   "**Person**" has the meaning set forth in section 101(41) of the Bankruptcy Code.

74.   "**Petition Date**" means December 31, 2019, the date on which the Debtors commenced the Chapter 11 Cases.

75.   "**Pineville Beneficial Interests**" means the Beneficial Interests in the Pineville Liquidating Trust, collectively.

76.   "**Pineville Debtor**" means Pineville Medical Center, LLC.

4854-5325-8041.11

77.    "**Pineville Estate**" means the bankruptcy estate of the Pineville Debtor.

78.    "**Pineville General Unsecured Claims**" means any and all Allowed General Unsecured Claims against the Pineville Debtor, collectively.

79.    "**Pineville Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the Pineville Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Pineville Liquidating Trust Agreement.

80.    "**Pineville Liquidating Trust Agreement**" means the agreement governing the Pineville Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

81.    "**Pineville Liquidating Trust Assets**" means any and all Assets of the Pineville Debtor and its respective Estate as of the Effective Date, including, without limitation, the Pineville Liquidating Trust Causes of Action, but excluding Ellwood Liquidating Trust Assets, Izard Liquidating Trust Assets, St. Alexis Liquidating Trust Assets, and any Assets previously distributed, subject to distribution to other Creditors under the Plan, or not otherwise subject to recovery by Pineville Liquidating Trust Beneficiaries.

82.    "**Pineville Liquidating Trust Beneficiaries**" means the Beneficiaries of the Pineville Liquidating Trust, collectively.

83.    "**Pineville Liquidating Trust Units**" means beneficial interests in the Pineville Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions from the Pineville Liquidating Trust, as provided and in accordance with the Plan and Pineville Liquidating Trust Agreement.

84.    "**Plan**" means this *Joint Chapter 11 Plan of Liquidation of Chapter 11 Trustee for Americore Holdings, LLC and Affiliated Debtors*, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as the same may be altered, amended, or modified from time to time through substantial consummation thereof.

85.    "**Plan Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order on the Docket.

86.    "**Plan Confirmation Hearing**" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

87.    "**Plan Confirmation Order**" means an order entered by the Bankruptcy Court approving and confirming this Plan.

88.    "**Plan Documents**" means this Plan, the Plan Supplement, and all exhibits and schedules attached to any of the foregoing.

89.    "**Plan Proponent**" means the Trustee.

4854-5325-8041.11

90.    "**Plan Supplement**" means the appendix of any schedules or exhibits that may be filed at least seven (7) days prior to the deadline for submission of Ballots to vote to accept or reject a plan. The Plan Supplement will be filed with the Bankruptcy Court and served on the required notice parties.

91.    "**Preserved Claims and Causes of Action**" means the Claims and Causes of Action that shall be preserved and vest in the Liquidating Trusts in accordance with the Plan and shall be further described in the Plan Supplement.

92.    "**Priority Non-Tax Claim**" means unsecured Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

93.    "**Priority Tax Claim**" means an unsecured Claim, or a portion thereof, that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

94.    "**Privilege**" means the attorney client privilege, work product protections or other immunities (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by the Debtors or Estates as permitted under the Federal Rule of Evidence 501 and all other applicable law.

95.    "**Professional**" means any professional person employed by the Trustee, the Debtors or the Committee in the Chapter 11 Cases pursuant to sections 327, 363, or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court.

96.    "**Professional Fee Claim**" means a Claim under Bankruptcy Code Sections 328, 330(a), 331, or 503 for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

97.    "**Pro Rata Share**" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as such Claim.

98.    "**Rejection Damages Claim**" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by the Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

99.    "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

100.    "**St. Alexius Debtors**" means Americore Holdings, LLC, St. Alexius Properties, LLC, St. Alexius Hospital Corporation #1, and Success Healthcare 2, LLC, collectively.

4854-5325-8041.11

Case 19-61608-grs    Doc 1920    Filed 04/26/23    Entered 04/26/23 15:40:38    Desc Main
Document      Page 15 of 55

101.    "**St. Alexius Estates**" means the bankruptcy estates of the St. Alexius Debtors.

102.    "**St. Alexius General Unsecured Claims**" means any and all Allowed General Unsecured Claims against the St. Alexius Debtors, or any of them, collectively.

103.    "**St. Alexius Liquidating Trust**" means the trust that will come into existence upon the Effective Date and into which all of the St. Alexius Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the St. Alexius Liquidating Trust Agreement.

104.    "**St. Alexius Liquidating Trust Agreement**" means the agreement governing the St. Alexius Liquidating Trust, dated on or about the Effective Date, substantially in the form included in the Plan Supplement.

105.    "**St. Alexius Liquidating Trust Assets**" means any and all Assets of the St. Alexius Debtors and their respective Estates as of the Effective Date, including, without limitation, the St. Alexius Liquidating Trust Causes of Action, but excluding Ellwood Liquidating Trust Assets, Izard Liquidating Trust Assets, Pineville Liquidating Trust Assets, and any Assets previously distributed, subject to distribution to other Creditors under the Plan, or not otherwise subject to recovery by St. Alexius Liquidating Trust Beneficiaries.

106.    "**St. Alexius Liquidating Trust Beneficiaries**" means the Beneficiaries of the St. Alexius Liquidating Trust, collectively.

107.    "**St. Alexius Liquidating Trust Units**" means beneficial interests in the St. Alexius Liquidating Trust entitling each Holder thereof to receive its Pro Rata Share of Distributions from the St. Alexius Liquidating Trust, as provided and in accordance with the Plan and St. Alexius Liquidating Trust Agreement.

108.    "**Statutory Fees**" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

109.    "**Tax Code**" means the Internal Revenue Code of 1986, as amended.

110.    "**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

111.    "**Unclaimed Distribution Deadline**" means three (3) months from the date the Liquidating Trustee makes a Distribution.

112.    "**U.S. Trustee**" means the Office of the United States Trustee for the Eastern District of Kentucky.

113.    "**Voting Deadline**" means [•], 2022, at 5:00 p.m. (prevailing Central Time).

4854-5325-8041.11

**B.**    **Interpretation; Application of Definitions and Rules of Construction.**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, Article of, Schedule to, or Exhibit to this Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the subject "Liquidating Trust" and any reference to any "Liquidating Trust" shall be deemed to include a reference to the subject "Liquidating Trustee" unless the context otherwise requires. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

## II.  TREATMENT OF UNCLASSIFIED CLAIMS

**A.**    **Administrative Expense Claims.**

Unless otherwise agreed by the Holder of an Administrative Expense Claim and the Trustee or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash by the Trustee or Liquidating Trust, as applicable: (a) if Allowed as of the Plan Confirmation Date, on the Effective Date or as soon as practicable thereafter; (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and the Trustee or Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, no later than the Administrative Expense Claim Bar Date. Any request for the allowance of an Administrative Expense Claim not filed by such deadline shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.

**B.**    **Professional Fee Claims.**

Unless otherwise agreed by the Holder of the Professional Fee Claim and the Trustee or the Liquidating Trustee, as applicable, on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable

15

Professional, the Trustee or the Liquidating Trust, as applicable, shall pay all unpaid amounts approved by the Bankruptcy Court owing to such Professional from the Assets of the Estate (if paid on the Effective Date) or Liquidating Trust Assets (if paid after the Effective Date).  Upon agreement with the applicable Professional, the Trustee and/or the Liquidating Trust may also pay such approved amounts at a later date.  Each Professional shall estimate its Professional Fee Claims due for periods that have not been billed as of the Effective Date.  On or prior to thirty (30) days after service of notice of the Effective Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; *provided* that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities for work performed after the Effective Date as provided in Article V, Section H(6) of the Plan.  Notwithstanding the foregoing, in the event the Plan is confirmed and goes effective with respect to the St. Alexius Debtors, the Izard Debtor, and the Pineville Debtor (as the case may be) Professional Fee Claims against the St. Alexius Debtors shall be subordinated for the first $500,000 to be distributed under the Plan, Professional Fee Claims against the Izard Debtor shall be subordinated for the first $100,000 to be distributed under the Plan, and Professional Fee Claims against the Pineville Debtor shall be subordinated for the first $20,000 to be distributed under the Plan.

Objections to any Professional Fee Claim must be filed and served on counsel to the Liquidating Trustee and the requesting party no later than thirty (30) days after such Professional Fee Claim is filed with the Bankruptcy Court.

**C.**     **Statutory Fees.**

The Trustee shall pay all Statutory Fees due and owing as of the Effective Date in Cash on the Effective Date or as soon thereafter as is reasonably practicable.  The Liquidating Trustee shall pay all Statutory Fees arising or incurred on or after the Effective Date in the ordinary course from Liquidating Trust Assets.  The U.S. Trustee shall not be required to file any Administrative Expense Claim to establish entitlement to payment of any Statutory Fees under the Plan.

**D.**     **Priority Tax Claims.**

Unless otherwise agreed to by the Holder of the Priority Tax Claim and the Trustee or the Liquidating Trustee, as applicable, on the later of (i) the Effective Date or (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with Section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by the Trustee or the Liquidating Trustee, as applicable.

## III.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims and Equity Interests against the Debtors and/or Estates and specifies which of those Classes are (i) impaired or unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Code, and (iii) deemed to reject the Plan:

4854-5325-8041.11

| Plan Classification Table | | | | |
|---|---|---|---|---|
| **Class** | **Type** | **Status Under Plan** | **Voting Status** | **Recovery Estimate** |
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Ellwood General Unsecured Claims | Impaired | Entitled to Vote | 0-5% |
| 3 | Izard General Unsecured Claims | Impaired | Entitled to Vote | 0-5% |
| 4 | Pineville General Unsecured Claims | Impaired | Entitled to Vote | 0-5% |
| 5 | St. Alexius General Unsecured Claims | Impaired | Entitled to Vote | 0-5% |
| 6 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 7 | Equity Interests | Impaired | Deemed to Reject | 0% |

## IV.   TREATMENT OF CLAIMS AND INTERESTS

**A.    Classification and Treatment of Claims and Equity Interests.**

    **1.    Class 1 — Priority Non-Tax Claims.**

        a.    *Classification*:  Class 1 consists of all Allowed Priority Non-Tax Claims. Plan Proponent does not believe any of these claims exist, but if such claims exist and are allowed they will be treated as provided herein.

        b.    *Treatment*:  Each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction of such Holder's Allowed Claim: (i) Cash in an amount equal to such Allowed Claim on the Effective Date or as soon thereafter as is reasonably practicable, or if disputed, as provided in the Plan for treatment of Disputed Claims, or (ii) such other treatment consistent with the provisions of Section 1129(a)(9) of the Bankruptcy Code.

        c.    *Voting*:  Class 1 Priority Non-Tax Claims are unimpaired; Holders of such Claims are deemed to have accepted the Plan and are not entitled to vote.

2. **Class 2 — Ellwood General Unsecured Claims.**

    a.    *Classification*:  Class 2 consists of all Allowed Ellwood General Unsecured Claims.  Plan Proponent estimates that the amount of Allowed Ellwood General Unsecured Claims is approximately $207,000,000.

    b.    *Treatment*:  Each Holder of an Allowed Ellwood General Unsecured Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Ellwood Liquidating Trust Units.

    c.    *Voting*:  Class 2 Ellwood General Unsecured Claims are impaired; Holders of such Claims are entitled to vote on the Plan.

3. **Class 3 — Izard General Unsecured Claims.**

    a.    *Classification*:  Class 3 consists of all Allowed Izard General Unsecured Claims. Plan Proponent estimates that the amount of Allowed Izard General Unsecured Claims is approximately $4,100,000.

    b.    *Treatment*:  Each Holder of an Allowed Izard General Unsecured Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Izard Liquidating Trust Units.

    c.    *Voting*:  Class 3 Izard General Unsecured Claims are impaired; Holders of such Claims are entitled to vote on the Plan.

4. **Class 4 — Pineville General Unsecured Claims.**

    a.    *Classification*:  Class 4 consists of all Allowed Pineville General Unsecured Claims.  Plan Proponent estimates that the amount of Allowed Pineville General Unsecured Claims is approximately $2,000,000.

    b.    *Treatment*:  Each Holder of an Allowed Pineville General Unsecured Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of Pineville Liquidating Trust Units.

    c.    *Voting*:  Class 4 Pineville General Unsecured Claims are impaired; Holders of such Claims are entitled to vote on the Plan.

5. **Class 5 — St. Alexius General Unsecured Claims.**

    a.    *Classification*:   Class 5 consists of all Allowed St. Alexius General Unsecured Claims.  Plan Proponent estimates that the amount of Allowed St. Alexius General Unsecured Claims is approximately $14,000,000.

    b.    *Treatment*:  Each Holder of an Allowed St. Alexius General Unsecured Claim shall receive in full and final satisfaction of such Holder's Allowed Claim its Pro Rata Share of St. Alexius Liquidating Trust Units.

    c.    *Voting*:  Class 5 St. Alexius General Unsecured Claims are impaired; Holders of such Claims are entitled to vote on the Plan.

**6.    Class 6 — Intercompany Claims.**

    a.    *Classification*:  Class 6 consists of all Allowed Intercompany Claims.

    b.    *Treatment*:  All Allowed Intercompany Claims shall be cancelled. Holders of Intercompany Claims will receive no property or Distribution under the Plan on account of such Claims.

    c.    *Voting*:  Class 6 Intercompany Claims are impaired; Holders of such Claims are deemed to have rejected the Plan and are not entitled to vote.

**7.    Class 7 — Equity Interests.**

    a.    *Classification*:  Class 7 consists of all Equity Interests.

    b.    *Treatment*:  On the Effective Date, all Equity Interests will be deemed cancelled and extinguished.  Holders of Equity Interests will receive no property or Distribution under the Plan on account of such Equity Interests.

    c.    *Voting*:  Class 7 Equity Interests are impaired; Holders of such Equity Interests are deemed to have rejected the Plan and are not entitled to vote.

**B.    <u>Limited Substantive Consolidation.</u>**

The Plan provides for, and shall be deemed a motion for approval of, the limited substantive consolidation of (i) the Ellwood Debtors and Ellwood Estates and (ii) the St. Alexius Debtors and St. Alexius Estates, solely for the purposes of the Plan, including making any Distributions to Holders of Claims.   The following chart summarizes the Debtors to be consolidated into Ellwood Debtors and the St. Alexius Debtors:

| CONSOLIDATED INTO THE ELLWOOD DEBTORS | CONSOLIDATED INTO THE ST. ALEXIUS DEBTORS |
|---|---|
| Americore Health, LLC | Americore Holdings, LLC |
| Americore Health Enterprises, LLC | St. Alexius Properties, LLC |
| Ellwood Medical Center, LLC | St. Alexius Hospital Corporation #1 |
| Ellwood Medical Center Real Estate, LLC | Success Healthcare 2, LLC |
| Ellwood Medical Center Operations, LLC | |

4854-5325-8041.11

The Trustee believes that substantive consolidation of the above referenced debtors is consistent with the historical operations of these Debtors will have no material impact on distributions to Holders of Allowed Claims. The Izard Debtor, Izard Estate, Pineville Debtor, and Pineville Estate shall not be consolidated with any other Debtors or Estates.

On the Effective Date, (i) (a) all assets and liabilities of the Ellwood Debtors will, solely for Distribution purposes, be treated as if they were merged, (b) each Claim against the Ellwood Debtors will be deemed a single Claim against and a single obligation of the Ellwood Debtors, (c) all duplicative claims shall be deemed consolidated and merged into a single Claim against and a single obligation of the Ellwood Debtors, (d) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against each of the Ellwood Debtors, (e) all guarantees of any Ellwood Debtor of the payment, performance, or collection of obligations of the other Ellwood Debtor shall be eliminated and canceled, (f) all transfers, disbursements, and Distributions on account of Claims made by or on behalf of any of the Ellwood Estates hereunder will be deemed to be made by or on behalf of each of the Ellwood Estates, and (g) any obligation of the Ellwood Debtors as to Claims or Equity Interests will be deemed to be one obligation of each of the Ellwood Debtors, and (ii) (a) all assets and liabilities of the St. Alexius Debtors will, solely for Distribution purposes, be treated as if they were merged, (b) each Claim against the St. Alexius Debtors will be deemed a single Claim against and a single obligation of the St. Alexius Debtors, (c) all duplicative claims shall be deemed consolidated and merged into a single Claim against and a single obligation of the St. Alexius Debtors, (d) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against each of the St. Alexius Debtors, (e) all guarantees of any St. Alexius Debtor of the payment, performance, or collection of obligations of the other St. Alexius Debtor shall be eliminated and canceled, (f) all transfers, disbursements, and Distributions on account of Claims made by or on behalf of any of the St. Alexius Estates hereunder will be deemed to be made by or on behalf of each of the St. Alexius Estates, and (g) any obligation of the St. Alexius Debtors as to Claims or Equity Interests will be deemed to be one obligation of each of the St. Alexius Debtors.

Holders of Allowed Claims entitled to Distributions under the Plan shall be entitled to their share of assets available for Distribution without regard to which Ellwood Debtor or St. Alexius Debtor, as applicable, was originally liable for such Claim.

Notwithstanding the foregoing, limited substantive consolidation pursuant to hereto and the Confirmation Order and/or other Final Order of the Bankruptcy Court, shall not affect: (i) the legal and organizational structure of the Debtors; (ii) guarantees, liens, and security interests that are required to be maintained (a) under the Bankruptcy Code or (b) pursuant to the Plan; (iii) distributions from any Insurance Policies or proceeds of such policies; or (iv) the dissolution of any of the Debtors after the Effective Date in accordance with the authority and discretion of the Liquidating Trustee as provided in the Plan and Liquidating Trust Agreements.

The Trustee reserves the right at any time up to the conclusion of the Confirmation Hearing to (i) withdraw her request for Substantive Consolidation of any of these Chapter 11 Cases, (ii) seek Confirmation of the Plan as if there were no Substantive Consolidation, (iii) seek Confirmation of the Plan with respect to one Debtor even if Confirmation with respect to the other Debtors is denied, and/or (iv) may elect to dismiss or convert to Chapter 7 one or more of the

4854-5325-8041.11

Chapter 11 Cases to avoid the inefficiency of proposing Entity-specific Claims for which there would be no material impact on Distributions.

## C.      Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Trustee's rights in respect of any Claims that are unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are unimpaired. Unless deemed Allowed, Claims that are unimpaired shall remain Disputed Claims under the Plan.

## D.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b)

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one impaired Class of Claims. The Trustee shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.  The Trustee reserves the right to modify the Plan in accordance with Article XII of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Equity Interests to render such Class of Claims or Equity Interests unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## E.      Subordinated Claims

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Equity Interests and the respective Distributions, payments and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Trustee and Liquidating Trustee reserve the right to reclassify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## F.      Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes

Any Class of Claims or Equity Interests that does not have a Holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Equity Interests in such Class shall be deemed to have accepted the Plan.

### G.  **Disputes Concerning Impairment**

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## V.  **PROVISIONS REGARDING THE LIQUIDATING TRUST**

### A.  **Creation of Liquidating Trusts**

On the Effective Date, the Liquidating Trusts shall be established pursuant to the Plan and their respective Liquidating Trust Agreements for the purpose of, among other things, (i) investigating and, if appropriate, pursuing the Liquidating Trust Causes of Action, (ii) administering, monetizing and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims, if appropriate, and (iv) making all Distributions from the Liquidating Trusts as provided for in the Plan and the Liquidating Trust Agreements.  The Liquidating Trust Agreements shall be filed with the Plan Supplement.

Upon execution of the Liquidating Trust Agreements, the Liquidating Trustee shall be authorized to take all steps necessary to complete the formation of the Liquidating Trusts; *provided, that,* prior to the Effective Date, the Trustee may take such steps in furtherance of the formation of the Liquidating Trusts as may be necessary, useful or appropriate under applicable law to ensure that the Liquidating Trusts shall be formed and in existence as of the Effective Date. The Liquidating Trusts shall be administered by the Liquidating Trustee in accordance with the Liquidating Trust Agreements.

Except for those Liquidating Trust Assets attributable to the Disputed Claims Reserve, it is intended that the Liquidating Trusts be classified for federal income tax purposes as "liquidating trusts" within the meaning of section 301.7701-4(d) of the Treasury Regulations and as "grantor trusts" within the meaning of sections 671 through 679 of the Internal Revenue Code.  In furtherance of this objective, the Liquidating Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the Liquidating Trusts and have no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Liquidating Trusts. All Liquidating Trust Assets held by the Liquidating Trusts on the Effective Date (except for those assets attributable to the Disputed Claims Reserve) shall be deemed for federal income tax purposes to have been distributed by the Estates on a Pro Rata Share basis to those Holders of Allowed Claims that are entitled to receive Distributions from the Liquidating Trusts, and then contributed by such Holders to the applicable Liquidating Trust in exchange for the respective Beneficial Interests.  All Holders of Claims have agreed or shall be deemed to have agreed to use the valuation of the Assets transferred to the Liquidating Trusts as established by the Liquidating Trustee for all federal income tax purposes.  The Beneficiaries under the Liquidating Trusts will be treated as the grantors and deemed owners of the Liquidating Trusts.  The Liquidating Trusts will be responsible for filing information on behalf of the Liquidating Trusts as grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations.

4854-5325-8041.11

**B.**     **Appointment of the Liquidating Trustee**

The Trustee shall serve as the initial Liquidating Trustee(s).  The Liquidating Trustee may serve as trustee simultaneously for the Liquidating Trusts; *provided, however*, in the event of an actual conflict of interest, a successor for Liquidating Trustee shall be designated for one or more of the Liquidating Trusts in accordance with the applicable Liquidating Trust Agreement(s); *provided further* that the original Liquidating Trustee shall not be precluded from representing any remaining Liquidating Trust(s) due to the conflict of interest related to the Liquidating Trusts for which a successor Liquidating Trustee was appointed.  Further, if the Liquidating Trustee resigns or is removed, terminated, or otherwise unable to serve as the Liquidating Trustee for one or both of the Liquidating Trusts, then one or more successors shall be appointed as set forth in the Liquidating Trust Agreements.  Any successor Liquidating Trustee(s) appointed shall be bound by and comply with the terms of the Plan, the Plan Confirmation Order, and the Liquidating Trust Agreements.

All compensation for the Liquidating Trustee, and Liquidating Trust Advisors, shall be paid from the Liquidating Trust Assets, in accordance with the Liquidating Trust Agreements and as provided herein. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his or her duties unless otherwise ordered by the Bankruptcy Court.

On the Effective Date, all Beneficiaries of the Liquidating Trusts shall be deemed to have ratified and become bound by the terms and conditions of the Liquidating Trust Agreements.

**C.**     **Assignment of Creditor Causes of Action**

On the Effective Date of the Plan, and without further order of the Bankruptcy Court, any creditor of the Debtors who holds a claim against a third party related to the Debtors or related to the business of the Debtors (collectively, the "Creditor Cause(s) of Action") who wishes to assign such Creditor Cause of Action (collectively, the "Assigning Creditors), may assign or otherwise transfer such Creditor Cause of Action to the Liquidating Trusts for the purpose of commencing, prosecuting, settling, releasing, and/or liquidating the Creditor Cause of Action for the benefit of Liquidating Trust Beneficiaries.  Any assigned Creditor Cause of Action shall be included in the Causes of Action to be pursued by the Liquidating Trustee. To the Extent that the Liquidating Trustee obtains any benefit or collects any consideration arising out of a Creditor Cause of Action assigned by an Assigning Creditor, the Liquidating Trustee shall request Bankruptcy Court approval, upon notice and a hearing, to increase the allowed amount of such Assigning Creditor's Allowed Class 2, 3, 4, or 5 Claim (as the case may be) based on such obtained benefit and/or collected consideration by an appropriate amount of up to fifty percent (50%) of the Net Proceeds attributable to such Creditor Cause of Action.  Notwithstanding anything to the contrary in the Plan, it shall be a condition to any effective transfer of a Creditor Cause of Action by a Holder of an Unsecured Claim, and therefore a condition to benefitting from this section, that such Holder (a) evidence its ownership of such Creditor Cause of Action to the Liquidating Trustee and (b) execute an assignment agreement.

23

D.      **Ellwood Liquidating Trust**

1.      **Beneficiaries of the Ellwood Liquidating Trust**

On the Effective Date, each Holder of an Allowed Ellwood General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of Ellwood Liquidating Trust Units. Holders of Disputed Ellwood General Unsecured Claims shall be contingent Beneficiaries and funds for their Distributions shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

Upon the occurrence of the Effective Date, no other Entity or Person, including the Ellwood Debtors, shall have any interest, legal, beneficial, or otherwise, in the Ellwood Liquidating Trust, the Ellwood Liquidating Trust Assets, or the Ellwood Liquidating Trust Causes of Action; provided, however, the Ellwood Liquidating Trust must pay all Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims associated with the Ellwood Debtors prior to any distribution to Holders of Allowed Ellwood General Unsecured Claims.

The Ellwood Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Ellwood Liquidating Trust by the Liquidating Trustee. Any and all Ellwood Beneficial Interests shall be non-transferable except (i) upon death of the Holder, (ii) by operation of law or (iii) to an affiliate of the Holder. Ellwood Liquidating Trust Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The Ellwood Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Ellwood Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Ellwood Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

2.      **Vesting and Transfer of Ellwood Liquidating Trust Assets**

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Ellwood Liquidating Trust Assets shall vest in the Ellwood Liquidating Trust free and clear of all Claims, Liens, charges, or other encumbrances, on the condition that the Liquidating Trustee comply with the terms of the Plan. If the Liquidating Trustee defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to Chapter 7 Cases, all property vested in the Ellwood Liquidating Trust, and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the Ellwood Estates in the Chapter 7 Cases.

The Liquidating Trustee may abandon or otherwise not accept any Ellwood Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or will be unduly burdensome to the Ellwood Liquidating Trust. Any Ellwood Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Ellwood Liquidating Trust Assets. The Ellwood Liquidating Trust Assets shall vest in the Ellwood Liquidating Trust for the benefit of the Ellwood Liquidating Trust Beneficiaries. The Ellwood

4854-5325-8041.11

Debtors will have no further interest in or with respect to the Ellwood Liquidating Trust Assets or the Ellwood Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the Ellwood Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the Ellwood Liquidating Trust Agreement and Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Ellwood Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the Ellwood Liquidating Trust, including, but not limited to, prosecuting or settling all Ellwood Liquidating Trust Causes of Action in his or her capacity as trustee for the benefit of the Ellwood Liquidating Trust Beneficiaries.  As the representative of the Ellwood Estates, in his or her capacity as trustee for the benefit of the Ellwood Liquidating Trust Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Ellwood Debtors and Ellwood Estates with respect to all Ellwood Liquidating Trust Causes of Action assigned and transferred to the Ellwood Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Trustee, Ellwood Debtors, Ellwood Estates, and/or Committee, in all such Ellwood Liquidating Trust Causes of Action, whether or not such claims are pending in filed litigation.

## E.    Izard Liquidating Trust

### 1.    Beneficiaries of the Izard Liquidating Trust

On the Effective Date, each Holder of an Allowed Izard General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of Izard Liquidating Trust Units. Holders of Disputed Izard General Unsecured Claims shall be contingent Beneficiaries and funds for their Distributions shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

Upon the occurrence of the Effective Date, no other Entity or Person, including the Izard Debtor, shall have any interest, legal, beneficial, or otherwise, in the Izard Liquidating Trust, the Izard Liquidating Trust Assets, or the Izard Liquidating Trust Causes of Action; provided, however, the Izard Liquidating Trust must pay all Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims associated with the Izard Debtors prior to any distribution to Holders of Allowed Izard General Unsecured Claims.

The Izard Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Izard Liquidating Trust by the Liquidating Trustee.  Any and all Izard Beneficial Interests shall be non-transferable except (i) upon death of the Holder, (ii) by operation of law or (iii) to an affiliate of the Holder.  Izard Liquidating Trust Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The Izard Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Izard Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Izard Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

## 2.    Vesting and Transfer of Izard Liquidating Trust Assets

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Izard Liquidating Trust Assets shall vest in the Izard Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, on the condition that the Liquidating Trustee comply with the terms of the Plan.  If the Liquidating Trustee defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to Chapter 7 Cases, all property vested in the Izard Liquidating Trust and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the Izard Estates in the Chapter 7 Cases.

The Liquidating Trustee may abandon or otherwise not accept any Izard Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or will be unduly burdensome to the Izard Liquidating Trust. Any Izard Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Izard Liquidating Trust Assets. The Izard Liquidating Trust Assets shall vest in the Izard Liquidating Trust for the benefit of the Izard Liquidating Trust Beneficiaries. The Izard Debtor will have no further interest in or with respect to the Izard Liquidating Trust Assets or the Izard Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the Izard Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the Izard Liquidating Trust Agreement and Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Izard Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the Izard Liquidating Trust, including, but not limited to, prosecuting or settling all Izard Liquidating Trust Causes of Action in his or her capacity as trustee for the benefit of the Izard Liquidating Trust Beneficiaries.  As the representative of the Izard Estate, in his or her capacity as trustee for the benefit of the Izard Liquidating Trust Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Izard Debtor and Izard Estate with respect to all Izard Liquidating Trust Causes of Action assigned and transferred to the Izard Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Trustee, Izard Debtor, Izard Estate, and/or Committee, in all such Izard Liquidating Trust Causes of Action, whether or not such claims are pending in filed litigation.

## F.    Pineville Liquidating Trust

### 1.    Beneficiaries of the Pineville Liquidating Trust

On the Effective Date, each Holder of an Allowed Pineville General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of Pineville Liquidating Trust Units. Holders of Disputed Pineville General Unsecured Claims shall be contingent Beneficiaries and funds for their Distributions shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

Upon the occurrence of the Effective Date, no other Entity or Person, including the Pineville Debtor, shall have any interest, legal, beneficial, or otherwise, in the Pineville Liquidating Trust, the Pineville Liquidating Trust Assets, or the Pineville Liquidating Trust Causes of Action; provided, however, the Pineville Liquidating Trust must pay all Allowed Administrative

4854-5325-8041.11

Expense Claims, Allowed Professional Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims associated with the Pineville Debtor prior to any distribution to Holders of Allowed Pineville General Unsecured Claims.

The Pineville Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the Pineville Liquidating Trust by the Liquidating Trustee. Any and all Pineville Beneficial Interests shall be non-transferable except (i) upon death of the Holder, (ii) by operation of law or (iii) to an affiliate of the Holder. Pineville Liquidating Trust Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The Pineville Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the Pineville Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the Pineville Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

**2.      Vesting and Transfer of Pineville Liquidating Trust Assets**

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the Pineville Liquidating Trust Assets shall vest in the Pineville Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, on the condition that the Liquidating Trustee comply with the terms of the Plan. If the Liquidating Trustee defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to Chapter 7 Cases, all property vested in the Pineville Liquidating Trust and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the Pineville Estates in the Chapter 7 Cases.

The Liquidating Trustee may abandon or otherwise not accept any Pineville Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or will be unduly burdensome to the Pineville Liquidating Trust. Any Pineville Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be Pineville Liquidating Trust Assets. The Pineville Liquidating Trust Assets shall vest in the Pineville Liquidating Trust for the benefit of the Pineville Liquidating Trust Beneficiaries. The Pineville Debtor will have no further interest in or with respect to the Pineville Liquidating Trust Assets or the Pineville Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the Pineville Estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the Pineville Liquidating Trust Agreement and Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and Pineville Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the Pineville Liquidating Trust, including, but not limited to, prosecuting or settling all Pineville Liquidating Trust Causes of Action in his or her capacity as trustee for the benefit of the Pineville Liquidating Trust Beneficiaries. As the representative of the Pineville Estate, in his or her capacity as trustee for the benefit of the Pineville Liquidating Trust Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the Pineville Debtor and Pineville Estate with respect to all Pineville Liquidating Trust Causes of Action assigned and transferred to the Pineville Liquidating Trust,

and the Liquidating Trustee will be substituted and will replace the Trustee, Pineville Debtor, Pineville Estate, and/or Committee, in all such Pineville Liquidating Trust Causes of Action, whether or not such claims are pending in filed litigation.

## G.   <u>St. Alexius Liquidating Trust</u>

### 1.   **Beneficiaries of the St. Alexius Liquidating Trust**

On the Effective Date, each Holder of an Allowed St. Alexius General Unsecured Claim shall, by operation of the Plan and Plan Confirmation Order, receive a Pro Rata Share of St. Alexius Liquidating Trust Units. Holders of Disputed St. Alexius General Unsecured Claims shall be contingent Beneficiaries and funds for their Distributions shall be held by the Liquidating Trustee in the Disputed Claims Reserve pending allowance or disallowance of such Claims.

Upon the occurrence of the Effective Date, no other Entity or Person, including the St. Alexius Debtors, shall have any interest, legal, beneficial, or otherwise, in the St. Alexius Liquidating Trust, the St. Alexius Liquidating Trust Assets, or the St. Alexius Liquidating Trust Causes of Action; provided, however, the Pineville Liquidating Trust must pay all Allowed Administrative Expense Claims, Allowed Professional Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims associated with the St. Alexius Debtors prior to any distribution to Holders of Allowed St. Alexius General Unsecured Claims.

The St. Alexius Beneficial Interests shall not be evidenced by any certificate, security, receipt, or any other form or manner whatsoever, except as maintained on the books and records of the St. Alexius Liquidating Trust by the Liquidating Trustee. Any and all St. Alexius Beneficial Interests shall be non-transferable except (i) upon death of the Holder, (ii) by operation of law or (iii) to an affiliate of the Holder. St. Alexius Liquidating Trust Beneficiaries shall have no voting rights with respect to such Beneficial Interests. The St. Alexius Liquidating Trust shall have a term of five (5) years from the Effective Date, without prejudice to the rights of the St. Alexius Liquidating Trust and Liquidating Trustee to extend such term by the filing of a motion in the Bankruptcy Court, conditioned upon the St. Alexius Liquidating Trust not becoming subject to the Securities Exchange Act of 1934 (as now in effect or hereafter amended).

### 2.   **Vesting and Transfer of St. Alexius Liquidating Trust Assets**

Except as otherwise set forth in the Plan, pursuant to section 1141(b) of the Bankruptcy Code, the St. Alexius Liquidating Trust Assets shall vest in the St. Alexius Liquidating Trust free and clear of all Claims, Liens, charges or other encumbrances, on the condition that the Liquidating Trustee comply with the terms of the Plan. If the Liquidating Trustee defaults in performing under the provisions of this Plan and the Chapter 11 Cases are converted to Chapter 7 Cases, all property vested in the St. Alexius Liquidating Trust and all subsequently acquired property owned as of or after the conversion date shall revest and constitute property of the St. Alexius Estates in the Chapter 7 Cases.

The Liquidating Trustee may abandon or otherwise not accept any St. Alexius Liquidating Trust Assets that the Liquidating Trustee believes, in good faith, have no value or will be unduly burdensome to the St. Alexius Liquidating Trust. Any St. Alexius Liquidating Trust Assets that the Liquidating Trustee so abandons or otherwise does not accept shall cease to be St. Alexius

28

Liquidating Trust Assets. The St. Alexius Liquidating Trust Assets shall vest in the St. Alexius Liquidating Trust for the benefit of the St. Alexius Liquidating Trust Beneficiaries. The St. Alexius Debtors will have no further interest in or with respect to the St. Alexius Liquidating Trust Assets or the St. Alexius Liquidating Trust.

On the Effective Date, the Liquidating Trustee shall be deemed the representative of the of the St. Alexius Estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and as such shall be vested with the authority and power (subject to the St. Alexius Liquidating Trust Agreement and Plan) to, among other things: (i) administer, object to or settle any Claims; (ii) make distributions in accordance with the terms of the Plan and St. Alexius Liquidating Trust Agreement, and (iii) carry out the provisions of the Plan related to the St. Alexius Liquidating Trust, including, but not limited to, prosecuting or settling all St. Alexius Liquidating Trust Causes of Action in his or her capacity as trustee for the benefit of the St. Alexius Liquidating Trust Beneficiaries. As the representative of the St. Alexius Estates, in his or her capacity as trustee for the benefit of the St. Alexius Liquidating Trust Beneficiaries, the Liquidating Trustee will succeed to all of the rights and powers of the St. Alexius Debtors and St. Alexius Estates with respect to all St. Alexius Liquidating Trust Causes of Action assigned and transferred to the St. Alexius Liquidating Trust, and the Liquidating Trustee will be substituted and will replace the Trustee, St. Alexius Debtors, St. Alexius Estates, and/or Committee, in all such St. Alexius Liquidating Trust Causes of Action, whether or not such claims are pending in filed litigation.

## H.    Certain Powers and Duties of the Liquidating Trusts and Liquidating Trustee

### 1.    General Powers of the Liquidating Trustee

The rights and powers of the Liquidating Trustee are specified in the Liquidating Trust Agreements, which shall be filed with the Plan Supplement. This Section provides a summary of the terms of the Liquidating Trust Agreements. In the event of any conflict between this the Plan and the Liquidating Trust Agreements, the terms of the Liquidating Trust Agreements control, unless otherwise ordered in the Plan Confirmation Order.

Except as expressly set forth in this Plan, the Plan Confirmation Order, or the Liquidating Trust Agreements, and subject to his or her duties and obligations, the Liquidating Trustee, on behalf of the Liquidating Trusts, shall have absolute discretion in the administration of the Liquidating Trusts and Liquidating Trust Assets.

The Liquidating Trust Agreements generally will provide for, among other things: (i) the payment of the Liquidating Trust Operating Expenses; (ii) the payment of other reasonable expenses of the Liquidating Trusts; (iii) the retention and compensation of counsel, accountants, financial advisors, or other professionals for the Liquidating Trusts; (iv) the investment of Cash by the Liquidating Trustee within certain limitations, including those specified in the Plan; (v) the orderly liquidation of the Liquidating Trust Assets; (vi) litigation of the Liquidating Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action; and (vii) the prosecution and resolution of objections to such Claims as the Liquidating Trustee deems reasonable and appropriate.

On and after the Effective Date, the Liquidating Trustee shall have the power and responsibility to do all acts contemplated by the Plan and Liquidating Trust Agreements to be done by the Liquidating Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Liquidating Trust Assets and the distribution of the proceeds thereof, as contemplated by the Plan and in accordance with the Liquidating Trust Agreements. In all circumstances, the Liquidating Trustee shall act in its reasonable discretion in the best interests of the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreements.

The Liquidating Trustee, on behalf of the Liquidating Trusts, may employ, Liquidating Trust Advisors to assist in carrying out the Liquidating Trustee's duties under the Plan, Plan Confirmation Order, and Liquidating Trust Agreements and may compensate and reimburse the reasonable expenses of the Liquidating Trust Advisors as Liquidating Trust Operating Expenses from the Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreements upon approval by the Bankruptcy Court.  Absent a disqualifying actual conflict of interest, Liquidating Trust Advisors may be retained by one or more of the Liquidating Trusts.

The Liquidating Trust Agreements provide that the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Liquidating Trustee incurs or sustains, in good faith and without willful misconduct, gross negligence, or fraud, acting as Liquidating Trustee under or in connection with the Liquidating Trust Agreements.

## 2.      Books and Records

On or before the Effective Date, the Debtors shall provide the Liquidating Trustee an electronic copy of or access to any and all of their documents, books, records, files, and emails available to the Debtors and their Estates.

## 3.      Investments of Cash

To the extent provided in the Liquidating Trust Agreements, the Liquidating Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; *provided, however*, that such investments are permitted to be made by a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulation, as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

## 4.      Costs and Expenses of Administration of the Liquidating Trust

All Liquidating Trust Operating Expenses, including the costs associated with retaining Liquidating Trust Advisors, shall be the responsibility of the Liquidating Trust to which the Liquidating Trustee allocates such expenses in accordance with the Liquidating Trust Agreements and shall be paid from the Liquidating Trust Assets of the designated Liquidating Trust.

4854-5325-8041.11

5.      **Retention of Professionals**

The Trustee may retain and compensate attorneys and other professionals (including any professional who represented a party in interest in the Debtors' Bankruptcy Cases) to assist in his or her duties as the Trustee on such terms as the Trustee deems appropriate. The Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals. Professionals retained by the Trustee shall file applications for retention in accordance with the standards set forth by the Bankruptcy Code and the Bankruptcy Rules; provided, however, that professionals previously retained with Court approval in the Debtors' Bankruptcy Cases need not file applications for retention by the Trustee post-Confirmation, and the Trustee's retention of such professionals shall not be subject to Court approval.

6.      **Compensation of the Trustee and Trustee's Professionals**

The Trustee and the Trustee's professionals shall be entitled to receive reasonable compensation paid by the Trust with the Liquidating Trust Assets. The Trustee shall be compensated at her normal hourly rate, plus the reimbursement of her actual and necessary out of pocket expenses. No more frequently than once every 30 days, beginning after all Allowed pre-Confirmation administrative expense claims are paid and any other carve outs from specific recoveries for contingency fees agreed to by professionals retained after the Effective Date, the Trustee, her counsel and any other professional retained by the Trustee, shall file his, her or its statement(s) for services rendered and costs incurred with the Bankruptcy Court and such statement(s) will be electronically transmitted to all those parties entitled to notice through the electronic case filing system. The statements do not need to conform to the U.S. Trustee's guidelines for fee applications but must contain adequate information to enable parties in interest to review the reasonableness of the statements. A party in interest shall have 14 days to object to any such statement. If no objection is timely served upon the professional in respect of any such statement, then the Trustee shall promptly pay 100% of the fees and costs reflected in such statement. The Bankruptcy Court shall retain jurisdiction to adjudicate any dispute with respect to such statements or any professional's compensation request. The Trustee may, in her sole discretion, pay her and her professionals' compensation and other costs and expenses of the Trust before approving or making any Distributions to the Beneficiaries.

7.      **Reporting**

No later than forty-five (45) days after the last day of each calendar quarter in which the Liquidating Trusts shall remain in existence, the Liquidating Trustee shall file a report of all Liquidating Trust Assets held and received by the Liquidating Trusts, all available Cash disbursed to Beneficiaries, and all fees, income, and expenses related to the Liquidating Trusts during the preceding calendar quarter.

I.      **Post-Effective Date Notice**

After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidating Trustee is authorized to limit the list of parties

4854-5325-8041.11

in interest receiving notice of documents pursuant to Bankruptcy Rules 2002 to the U.S. Trustee and those parties in interest who have filed such renewed requests; *provided, however*, that the Liquidating Trustee also shall serve any known parties directly affected by or having a direct interest in, the particular filing.  Notice given in accordance with the foregoing procedures shall be deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**J.**      **Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Preparation and Filing of Tax Returns for Debtor**

For federal income tax purposes, it is intended that the Liquidating Trusts be classified as liquidating trusts under section 301.7701-4 of the Treasury Regulations and that such trusts be owned by their respective Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in each of the Liquidating Trust Assets ((i) to the extent of the value of their respective share in the applicable assets and (ii) except for those assets attributable to the Disputed Claims Reserve) and then contributed such interests to the Liquidating Trusts, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

The Trustee shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Estates (including final tax returns) for the period through and included the Effective Date.  The Debtors shall be responsible for filing all required federal, state, and local tax returns and/or informational returns for the Debtors (including final tax returns).

The Liquidating Trust shall be responsible for filing all required federal, state and local tax returns and/or informational returns for the Liquidating Trusts and Estates for the period on and after the Effective Date and shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority and all Distributions made by the Liquidating Trusts shall be subject to any such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Liquidating Trusts shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee to allow it to comply with its tax withholding and reporting requirements.  Any property to be distributed by the Liquidating Trusts shall, pending the implementation of such arrangements, be treated as an Unclaimed Distribution to be held by the Liquidating Trustee, as the case may be, until such time as the Liquidating Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.  If the Liquidating Trustee makes such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the subject Liquidating Trust and any Claim or Equity Interest in respect of such Distribution shall be disallowed and forever barred from receiving a Distribution under the Plan or Liquidating Trust Agreements.

4854-5325-8041.11

The Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Section 1.468B-9 of the Treasury Regulation, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Liquidating Trustee and the Holders of Beneficial Interests) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.  The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

## K.    Term of Liquidating Trust

The Liquidating Trustee shall be discharged and the Liquidating Trusts shall be terminated, at such time as (i) all Disputed or temporarily Allowed Claims have been resolved, (ii) all of the Liquidating Trust Assets have been liquidated, (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreements, the Plan and the Plan Confirmation Order have been fulfilled, (iv) all Distributions required to be made by the Liquidating Trusts under the Plan, the Liquidating Trust Agreements and the Plan Confirmation Order have been made, and (v) the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trusts be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion filed prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years per extension, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trusts as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  Upon the filing of such a motion, the term of the Liquidating Trusts shall be automatically extended through entry of a Final Order thereon, unless the extension would adversely affect the status of the Liquidating Trusts as a liquidating trust for federal income tax purposes.

## L.    Limitation of Liability of the Liquidating Trustee

As shall be provided in the Liquidating Trust Agreements, the Liquidating Trusts shall indemnify the Liquidating Trustee and any retained professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or Liquidating Trust Advisors may incur or sustain by reason of being or having been a Liquidating Trustee or Liquidating Trust Advisors for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee or any Liquidating Trust Advisors from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney or other professional and, as required any applicable rules of professional conduct, malpractice.

# VI.  **MEANS FOR IMPLEMENTATION**

## A.  **Preservation of Right to Conduct Investigations.**

The preservation for the Liquidating Trusts of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Liquidating Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order, held by the Trustee or Debtors prior to the Effective Date with respect to the Liquidating Trust Assets shall vest with the Liquidating Trusts and shall continue until dissolution of the Liquidating Trusts.

## B.  **Prosecution and Resolution of Causes of Action and Avoidance Actions.**

From and after the Effective Date, prosecution and settlement of all Causes of Action and Avoidance Actions conveyed to the Liquidating Trusts including any assigned Creditor Causes of Action shall be the sole responsibility of the respective Liquidating Trusts pursuant to the Plan and the Plan Confirmation Order.  The Liquidating Trustee may pursue such Causes of Action and Avoidance Actions, as appropriate, in accordance with the best interests of the Liquidating Trust Beneficiaries. From and after the Effective Date, with respect to the Liquidating Trust Assets, the Liquidating Trusts shall have exclusive rights, powers, and interests of the Debtors and/or Estates to pursue, settle, or abandon such Causes of Action and Avoidance Actions as the sole representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Notwithstanding the occurrence of the Effective Date, all Causes of Action and Avoidance Actions that are not expressly released or waived under the Plan are reserved and preserved and vest in the Liquidating Trusts in accordance with the Plan.

## C.  **Effectuating Documents and Further Transactions.**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, Plan Supplement, the Plan Confirmation Order and any other agreement or document related to or entered into in connection with the Plan, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice or Order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).  The Liquidating Trustee may, and all Holders of Allowed Claims receiving Distributions pursuant to the Plan, at the request or direction of the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## D.  **Exemption from Securities Laws.**

Any and all Beneficial Interests shall not constitute "securities" and under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trusts under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

E.  **Exemption from Certain Taxes and Fees.**

Pursuant to and to the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax or other similar tax or governmental assessment, and upon entry of the Plan Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfer of property without payment of any such tax, recordation fee, or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Plan Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

F.  **Debtors' Privileges as to Certain Causes of Action.**

Effective as of the Effective Date, all Privileges of the Trustee, Debtors and Estates relating to the Liquidating Trust Assets shall be deemed transferred, assigned, and delivered to the Liquidating Trusts, as applicable, without waiver or release, and shall vest with the Liquidating Trusts. The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Privileges relating to the Liquidating Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; *provided, however*, prior to waiving such privilege, the Liquidating Trustee shall provide such third party with any written notice to the extent such notice is required by any joint defense or common interest agreements that might have existed on the Petition Date.  Nothing contained herein or in the Plan Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges.

G.  **Insurance Policies.**

Except as otherwise specifically stated herein, nothing in this Plan, the Plan Confirmation Order, or the Liquidating Trust Agreements, alters the rights and obligations of the Debtors or their Estates and the Debtors' insurers and third-party claims administrators under the Insurance Policies or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.  On the Effective Date, all of the Debtors' and Estates' rights under any Insurance Policy to which the Debtors and/or the Estates may be beneficiaries shall vest with the Liquidating Trusts.  For the avoidance of doubt, the Debtors are deemed to have assumed all of the Insurance Policies prior to such vesting.

4854-5325-8041.11

Nothing in this provision shall be deemed to be an admission of any fact, liability or other matter whatsoever.

Each applicable insurer under the Insurance Policies is prohibited from, and the Plan Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, this Plan or any provision herein, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action.  For the avoidance of doubt, nothing in this Plan impairs the rights of the Debtors, Estates, Trustee, the Debtors' directors and officers, or the Liquidating Trusts with respect to the Insurance Policies.

## H.   <u>Filing of Monthly and Quarterly Reports and Payment of Statutory Fees.</u>

All Statutory Fees due and payable prior to the Effective Date shall be paid by the Trustee on the Effective Date. On and after the Effective Date, the Liquidating Trustee shall be responsible for paying any and all Statutory Fees when due and payable.  The Trustee shall file all monthly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee.  Provided that the Debtors dissolve on the Effective Date, after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. If, after the Effective Date, disbursements, other than those made by the Liquidating Trusts, are made in any quarter, the entity making such disbursements shall report same to the Liquidating Trustee for inclusion in the appropriate separate quarterly reports. The Estates or the Liquidating Trustee, as applicable, shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Chapter 11 Cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Expense Claim in the Chapter 11 Cases and shall not be treated as providing any release under the Plan in connection therewith.

Section IV B of the Plan provides for limited substantive consolidation solely for the purposes of the Plan, including making distributions to Holders of Claims.  For purposes of Statutory Fee assessments and calculations under 28 U.S.C. § 1930(a)(6)(A) and (B), Section IV of the Plan will not result in a *de facto* substantive consolidation of the Debtors and Estates as provided therein; rather, all of the pre-confirmation Chapter 11 Cases will be treated as separate Chapter 11 Cases post-confirmation solely for purposes of the calculation and payment of Statutory Fees, until such Chapter 11 Cases are closed, dismissed, or converted.

## I.   <u>Completion of Services of Professionals.</u>

On the Effective Date, the Professionals for the Trustee, Debtors and Committee shall be deemed to have completed their services to the Estates and such Professionals shall be able to file final and interim applications and be paid for reasonable compensation and reimbursement of expenses related thereto allowed by the Bankruptcy Court in accordance with the provisions of this Plan. Any of such Professionals may be retained by the Liquidating Trustee to represent the Liquidating Trusts as provided in Section IV H, 1 and 5.

**J.**    **Operations of the Debtors Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Trustee shall continue to serve trustee for the Debtors and Estates, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**K.**    **Preservation of Causes of Action**

**1.**    **Vesting Causes of Action**

Except as otherwise provided in the Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trusts, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date.  After the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Liquidating Trust Causes of Action in his or her sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

**2.**    **Preservation of All Causes of Action Not Expressly Settled or Released**

Unless a Cause of Action against any Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Plan Confirmation Order), the Estates expressly reserve such Cause of Action, including all Causes of Action to be transferred by the Estates to the Liquidating Trusts pursuant to this Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order).  In addition, the Liquidating Trusts reserve the right to pursue or adopt any claims or causes of action alleged in any lawsuit in which the Trustee, Debtors or Committee is a party, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

The failure of the Trustee to specifically identify a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by the Debtors of such claim, right, cause of action, suit or proceeding.  IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS AND ESTATES, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS. **NO ENTITY MAY RELY ON THE ABSENCE OF A SPECIFIC REFERENCE IN THE PLAN OR DISCLOSURE STATEMENT TO ANY CAUSES OF ACTION AGAINST THEM AS ANY INDICATION THAT THE LIQUIDATING TRUSTEE WILL NOT PURSUE ANY AND ALL AVAILABLE CAUSES OF ACTION AGAINST THEM.**

4854-5325-8041.11

Notwithstanding the foregoing, the Trustee will make a further good faith effort to identify and describe Causes of Action in the Plan Supplement.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### A.    General Settlement of Claims and Equity Interests.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

### B.    Distribution Record Date.

On the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Estates, or their agents, shall be deemed closed, and there shall be no further changes in the record holders, or record ownership of any of the Claims or Equity Interests.  Except as set forth in Article VII Section C, the Liquidating Trustee shall have no obligation to recognize any transfer of record ownership of the Claims or Equity Interests occurring on or after the Distribution Record Date.

### C.    Transfer of Claims

In the event that the Holder of any Claim transfers such Claim after the Effective Date, such Holders shall immediately advise the Liquidating Trustee in writing of such transfer and provide sufficient written evidence of such transfer.  The Liquidating Trustee shall be entitled to assume that no transfer of any Claim has been made unless and until the Liquidating Trustee shall have received written notice to the contrary and supporting documentation deemed sufficient by the Liquidating Trustee, in her or his discretion, evidencing such assignment or transfer.

### D.    Method of Distributions Under the Plan

#### 1.    Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

#### 2.    Procedure for Distribution of Liquidating Trust Assets

The Liquidating Trustee shall distribute Cash, in accordance with the Liquidating Trust Agreements, beginning on the Effective Date or as soon thereafter as is practicable, from the Liquidating Trust Assets on hand (including any Cash received from the Debtors on the Effective Date), except such amounts (i) as would be distributable to a Holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the applicable Liquidating Trust Assets, (iii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the Liquidating Trusts or on the Liquidating Trust Assets), and

4854-5325-8041.11

(iv) to satisfy other liabilities incurred by the Liquidating Trusts in accordance with this Plan or the Liquidating Trust Agreements.

### 3. Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim filed by such Holders; (ii) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules, if not reflected in the Schedules, then in other records of the Debtors, if no proof of Claim is filed and the Liquidating Trustee, Debtors or Trustee have not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Trustee or Liquidating Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Trustee or Liquidating Trustee, as applicable, are notified in writing of such Holder's then current address. Undeliverable Distributions shall remain in the possession of the Trustee or Liquidating Trustee until the earlier of (i) such time as a Distribution becomes deliverable, or (ii) such undeliverable Distribution becomes an Unclaimed Distribution pursuant to Section VII G of this Plan. Undeliverable Distributions shall revert to the applicable Liquidating Trust. The Liquidating Trustee shall not have any obligation to update or correct the contact information for recipients of undeliverable Distributions.

### 4. Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Liquidating Trustee shall, to the extent practicable, comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

### E. Fractional Dollars; *De Minimis* Distributions.

Notwithstanding any other provision of the Plan to the contrary, (a) the Trustee and Liquidating Trusts shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Trustee and Liquidating Trusts shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $100,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) if the amount of the final Distribution to such Holder is $50.00 or less. If the Liquidating Trustee or Trustee withholds any Distribution under this provision, the withheld funds shall inure to the benefit of the Liquidating Trusts.

4854-5325-8041.11

## F.      **Excess Funds.**

After final Distributions have been made from the Liquidating Trusts in accordance with the terms of the Plan and the Liquidating Trust Agreements, if the amount of remaining Cash in the Liquidating Trusts is $15,000 or less, in the aggregate, the Liquidating Trustee, may donate such amount to charity; *provided that* the charity shall be unrelated to the Trustee, Debtors, Committee and its members, Liquidating Trustee, Liquidating Trust Advisors, and their respective professionals.

## G.      **Unclaimed Distributions.**

If the Holder of an Allowed Claim fails to negotiate a check for a distribution issued to such Holder within sixty (60) days of the date the check was issued, then the Liquidating Trusts shall provide written notice to such Holder that, unless such Holder negotiates the check within thirty (30) days after the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan with respect to such Claim.

If a check for a distribution under the Plan is return to the Liquidating Trustee due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Trustee as to such check within sixty (60) days of the date of such distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim with respect to such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan with respect to such Claim.

Any unclaimed distributions shall become Liquidating Trust Assets to be distributed to Holders of Allowed Claims pursuant to the terms of the Plan.

## H.      **Set-Off and Recoupment.**

Except as otherwise provided herein, the Debtors or Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with the Debtors' books and records.  Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action or Avoidance Actions of the Debtors, their Estates, or the Liquidating Trustee and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

## I.      **Maximum Recovery and Postpetition Interest.**

Except as may be expressly provided herein, interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under Section 506(b) of the Bankruptcy Code.

4854-5325-8041.11

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan Distributions in excess of the Allowed amount of such Claim.

## J.    **Allocation of Distributions Between Principal and Interest.**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

## K.    **Prepayment.**

Except as otherwise provided herein or the Plan Confirmation Order, the Trustee and the Liquidating Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## L.    **Objections to and Allowance of Disputed Claims**

### 1.    **Claim Objection Deadline.**

The Trustee or Liquidating Trustee, as applicable, to the extent permitted pursuant to this Plan or section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claim no later than the Claims Objection Deadline; *provided, however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion of the Trustee or the Liquidating Trustee, as applicable, and notice to the Bankruptcy Rule 2002 service list and all parties holding claims as to which the objection is to be extended for cause.  If a motion to extend is filed before the Claims Objection Deadline, the Claims Objection Deadline shall be extended automatically through entry of a Final Order resolving such motion.

### 2.    **No Distribution Pending Allowance**

Notwithstanding any other provision of the Plan or the Liquidating Trust Agreements, no Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by the Plan or the Liquidating Trust Agreements.

### 3.    **Reserve of Cash Distributions**

On any date that Distributions are to be made under the terms of the Plan, the Trustee or Liquidating Trustee, or their respective agents, as applicable, shall reserve Cash or property equal to (i) 100% of the Cash or property that would be distributed on such date on account of Disputed General Unsecured Claims as if each such Disputed General Unsecured Claim were an Allowed General Unsecured Claim, but for the pendency of a dispute with respect thereto, or (ii) such other amount (A) set forth in a Notice of Disputed Claim Reserve filed by the Trustee or Liquidating Trustee in the Chapter 11 Cases and served on the Holders of any Disputed Claims subject to the Notice of Disputed Claim Reserve, (B) agreed upon by the parties, or (C) approved by the

Bankruptcy Court. Such Cash or property shall be held in a designated bank account maintained by the Trustee or Liquidating Trust, as applicable, for the benefit of the Holders of Disputed Claims pending determination of their entitlement thereto, if any. No reserve shall be required for Disputed Claims other than Disputed General Unsecured Claims; *provided, however*, the Trustee or Liquidating Trustee may in its discretion reserve for such Disputed Claims.

    **4.**       **Distribution After Allowance**

The Trustee shall make any and all Distributions to Holders of Allowed Claims payable on the Effective Date. After the Effective Date, the Liquidating Trustee shall make any and all Distributions required under the Plan in accordance with the Plan and Liquidating Trust Agreements.

    **5.**       **Estimation**

Pursuant to the Plan, the Trustee or Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim, pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount, if any, of such Claim, regardless of whether the Trustee, Debtors, Liquidating Trustee, or any other party in interest has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any Disputed Claim for allowance purposes, that estimated amount will constitute either the "Allowed" amount of such Claim or a maximum limitation on such Claim as determined by the Bankruptcy Court solely for estimating Distributions or an appropriate Disputed Claim reserve amount for the subject Claims. If the estimated amount constitutes a maximum limitation on such Claim, the Trustee or Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

## VIII.  EXECUTORY CONTRACTS AND UNEXIPRED LEASES

**A.**      **Rejection of Executory Contracts and Unexpired Leases.**

The Plan shall constitute a motion to reject all executory contracts and unexpired leases not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise set forth in the Plan or Plan Supplement or (ii) expressly assumed by the Debtors under the Plan or Final Order of the Bankruptcy Court. Upon the Effective Date, the Debtors and Estates shall have no further obligation under any rejected executory contracts or unexpired leases. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a finding that the rejection thereof is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases.

Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be executory, (i) the Trustee does not seek to reject the Insurance Policies through this general

rejection provision and (ii) the Insurance Policies shall be assumed by the Debtors and assigned to the subject Liquidating Trust(s) pursuant to the Plan.

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Plan, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Trustee no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims.  Any Claims arising from the rejection of an executory contract or unexpired lease, for which proofs of Claim are not timely filed within that period will be forever barred from assertion against the Debtors, their Estates, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Unless subsequently disallowed or Disputed, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims and classified as a Class 2, 3 or 4 Claim based on the Debtor party to the subject executory contract or unexpired lease and shall be subject to the provisions of this Plan.

## IX.  EFFECTIVENESS OF PLAN

**A.      Conditions Precedent to Effective Date**

The Effective Date shall not occur until all of the following conditions have been satisfied or waived in writing by the Trustee:

1.      The Confirmation Order shall have become a Final Order;

2.      No stay of the Confirmation Order shall then be in effect;

3.      The Liquidating Trustee shall have been appointed and shall have executed and delivered the Liquidating Trust Agreements, in form and substance reasonably acceptable to the Trustee;

4.      All ancillary documents necessary to implement and confirm the Plan have been approved by the Trustee;

5.      All actions agreements, instruments or other documents necessary to implement the terms and conditions of the Plan are effected or executed and delivered; and

6.      All authorizations, consents and regulatory approvals, if any, required by the Trustee in connection with the consummation of the Plan are obtained and not revoked.

Notwithstanding the foregoing, the Trustee may waive the occurrence of any condition precedent to the Effective Date.  Any such written waiver of a condition precedent set forth in this Section may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and

without any formal action other than proceeding to consummate this Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**B.**     **Substantial Consummation**

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**C.**     **Notice of Effective Date**

Within five (5) Business Days after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court a notice that informs all parties in interest of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems to be appropriate.

**D.**     **Satisfaction of Conditions**

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously. If the Trustee decide that one of the conditions precedent set forth in Section IX A hereof cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Trustee shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

**E.**     **Effect of Nonoccurrence of Conditions to Effective Date**

If each of the conditions to consummation and the occurrence of the Effective Date has not been satisfied or duly waived on or before ninety (90) days after the Confirmation Order becomes a Final Order, the Confirmation Order may be vacated by the Bankruptcy Court upon motion by the Trustee. If the Confirmation Order is vacated pursuant to this Section, then the Plan shall be null and void *ab initio* in all respects, and nothing contained in the Plan shall constitute a waiver, or release of any Claims against the Debtors or the Estates.

## X.  RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS

**A.**     **Settlement, Compromise and Release of Claims and Equity Interests**

Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Liquidating Trustee), Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Estates or any of their Assets, regardless of whether any

4854-5325-8041.11

Liquidating Trust Assets shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Equity Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Equity Interests subject to the occurrence of the Effective Date.

**B.    Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any Assets of the Estates shall be fully released, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Liquidating Trusts and/or their successors and assigns.

**C.    Exculpation.**

The Exculpated Parties shall neither have nor incur any liability to any Entity, including the Exculpated Parties and Liquidating Trusts, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Debtors or Estates, including, without limitation, those that any of the Debtors would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates and further including those in any way related to the Liquidating Trust Agreements, Chapter 11 Cases, or the Plan, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Liquidating Trust Agreements, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other post-Petition Date act taken or omitted to be taken in connection with the Debtors or the Estates; provided, however, the foregoing provisions of this Section shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud, or willful misconduct. Notwithstanding anything provided herein, the foregoing provisions of this Section shall have no effect on the liability of any Entity that results from any act or omission that occurred prior to the Exculpation Timeframe. Moreover,

45

notwithstanding anything provided herein, the foregoing provisions of this Section shall have no effect on the liability, if any, of any Entity in connection with the expenditure of provider relief funds at Ellwood Medical Center.

## D.    <u>Injunction.</u>

From and after the Effective Date, all Persons are permanently enjoined from commencing or continuing in any manner against the Debtors, the Trustee, the Committee or its members, the Liquidating Trusts or the Liquidating Trustee, or their respective predecessors, successors, and assigns, current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, limited partners, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case in their capacity as such, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Plan Confirmation Order.

Notwithstanding any other provision of the Plan, the Debtors shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).

Except as otherwise specifically provided in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or Estates and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan.  Except as otherwise expressly provided for in the Plan or with respect to obligations issued or incurred pursuant to the Plan, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: commencing or continuing in any manner any action or other proceeding of any kind against any the Liquidating Trusts or the Liquidating Trustee, or their predecessors, successors and assigns, and their assets and properties; enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any the Liquidating Trusts or the Liquidating Trustee, their predecessors, successors and assigns, and their assets and properties; creating, perfecting, or enforcing any encumbrance of any kind against any the Liquidating Trusts or the Liquidating Trustee, or the property or estate of the Liquidating Trust; asserting any right of subrogation against any the Liquidating Trusts or the Liquidating Trustee, or against the property or estate of any of the Liquidating Trusts, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.

Notwithstanding any provision in this Plan or the Plan Confirmation Order to the contrary, nothing contained in this Plan or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any creditor or

vendor which is asserted in a timely filed proof of claim or objection to this Plan, or pursuant to section 503(b)(1)(d) of the Bankruptcy Code or (b) that is or may be asserted as an affirmative defense or other defense to a cause of action or claim asserted by a Debtor, the Trustee, or the Liquidating Trusts against such creditor or vendor or (ii) affect the applicability of 26 U.S.C. § 7421(a).

**E.      Prohibition of Discriminatory Treatment**

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Trustee, the Estates, the Liquidating Trusts, or Liquidating Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Trustee, the Estates, the Liquidating Trusts, or Liquidating Trustee, as applicable, or another Entity with whom the Trustee, the Estates, the Liquidating Trusts, or Liquidating Trustee, as applicable, has been associated, solely because of the Chapter 11 Cases, the Debtors' status as debtors under chapter 11 of the Bankruptcy Code, the insolvency of the Debtors and/or their Estates before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or any Debtor and/or its Estate having not paid a debt that is subject to compromise or administration in the Chapter 11 Cases.

**F.      Termination of All Employee and Workers' Compensation Benefits.**

Except as otherwise provided in the Liquidating Trust Agreements, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by the Debtors or Trustee will be deemed terminated on or before the Effective Date.

**G.      Exclusions and Limitations on Liability.**

Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Plan Confirmation Order, including, without limitation, the exculpation provision contained in Section X C of this Plan, shall (a) modify, release or otherwise limit the liability of any Entity not specifically released or exculpated hereunder, including, without limitation, any Entity that is otherwise liable under theories of vicarious or other derivative liability or that is a non-Debtor third party guarantor of any obligation of the Debtor, or (b) affect the ability of the Internal Revenue Service to pursue non-Debtor to the extent allowed by non-bankruptcy law for any liabilities that are related to any federal income tax liabilities that owed by the Debtors or the Debtors' Estates.

**H.      No Discharge of Claims.**

For the avoidance of doubt, notwithstanding any other provision of this Plan, neither confirmation nor substantial consummation of the Plan shall result in the Debtors receiving a discharge under section 1141(d) of the Bankruptcy Code.

**XI.  RETENTION OF JURISDICTION**

After the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the

4854-5325-8041.11

Debtors, the Trustee, and this Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and Liquidating Trust Agreements;

5. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving a Debtor, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trusts after the Effective Date, including any Liquidating Trust Causes of Action;

6. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Liquidating Trusts or the Liquidating Trust Agreements or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of the Liquidating Trust Causes of Action;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of this Plan, the Confirmation Order, the Liquidating Trust Agreements and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, Plan Supplement or the Disclosure Statement;

8. resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

9. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of this Plan, except as otherwise provided in this Plan;

10. enforce all of the provisions of this Plan;

11. enforce all Orders previously entered by the Bankruptcy Court;

12. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in this Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

13. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement;

15. enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases; and

16. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Case, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Case.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court retains jurisdiction to the fullest extent permitted by applicable law to adjudicate Liquidating Trust Causes of Action and to hear and determine disputes concerning Liquidating Trust Causes of Action and any motions to compromise or settle such Liquidating Trust Causes of Action or disputes relating thereto.  Despite the foregoing, if the Liquidating Trustee on behalf of the Liquidating Trusts chooses to pursue any Liquidating Trust Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action in any other court of competent jurisdiction.

## XII.  <u>MISCELLANEOUS PROVISIONS</u>

### A.    <u>Modification of Plan.</u>

Subject to the limitations contained in this Plan: (1) the Trustee reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 (a), to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Plan Confirmation Order and before substantial consummation of the Plan, the Liquidating Trusts may upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, and Bankruptcy Rule 3019(b).

4854-5325-8041.11

B.      **Revocation of Plan.**

The Trustee reserves the right to revoke or withdraw this Plan, prior to the entry of the Plan Confirmation Order and to file subsequent plans of liquidation.  If the Trustee revokes or withdraws this Plan, then: (1) this Plan shall be null and void *ab initio* in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void *ab initio*; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Trustee, the Estates, the Debtors, or any other Entity; or (c) constitute an admission of any sort by the Trustee, the Estates, the Debtors, or any other Entity.

C.      **Nonconsensual Confirmation.**

If any impaired class votes to accept the Plan by the requisite statutory majorities provided in sections 1126(c) and 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtors reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(c) of the Bankruptcy Code and/or amend the Plan to the extent necessary to obtain entry of a Confirmation Order.

D.      **Binding Effect; Successors and Assigns.**

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Estates or the Debtors, and their respective successors and assigns, including, but not limited to, the Liquidating Trusts and the Liquidating Trustee, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.  The rights, benefits, and obligations of any Creditor, Beneficiary, or other Entity named or referred to herein or subject hereto shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.      **Term of Injunctions and Stays**

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

F.      **Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New York, without giving effect to the principles of conflict of laws thereof.

4854-5325-8041.11

### G. Reservation of Rights.

Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Trustee, any Debtor, or any Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor or Estate with respect to the Holders of Claims or Equity Interests or other parties-in-interest; or (2) any Holder of a Claim or other party-in-interest prior to the Effective Date.

### H. Effectuating Documents; Further Transactions.

The Trustee or the Liquidating Trustee, or its valid designee, in accordance with the Liquidating Trust Agreements, shall be authorized to (1) execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan and (2) certify or attest to any of the foregoing actions.

### I. Further Assurances.

The Trustee and the Liquidating Trustee shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Plan Confirmation Order.

### J. Discharge of the Chapter 11 Trustee

On the Effective Date, the Trustee shall be deemed discharged from her appointment and released from any and all further obligations as chapter 11 trustee for the Debtors.

### K. Dissolution of the Debtors and Closing of the Chapter 11 Cases.

On the Effective Date, the Debtors' officers and directors shall be deemed to have resigned their respective positions with the Debtors. From and after the Effective Date, the Debtors shall be deemed to be immediately dissolved upon the Effective Date under applicable law and shall have no corporate existence thereafter without the necessity for any other or further actions to be taken by or on behalf of the Debtors or action or formality which might otherwise be required under applicable non-bankruptcy laws. The Debtors shall be treated as having completely liquidated for state, local, and U.S. federal income tax purposes, and neither the Debtors nor the Estates shall be required to pay any taxes or fees to cause such dissolution.

The Liquidating Trustee shall file a motion closing the Chapter 11 Cases after the Liquidating Trust Assets are fully administered or as soon as reasonably permissible.

### L. Dissolution of the Committee.

On the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (i) obligations arising under confidentiality agreements or Plan, which shall remain in full force and effect, (ii) prosecuting applications for payment of fees and reimbursement of expenses of Professionals,

4854-5325-8041.11

or Committee members, or attending to any other issues related to applications for payment of fees and reimbursement of expenses of Professionals, and (iii) prosecuting or participating in any appeal of the Plan Confirmation Order or any request for reconsideration thereof.

**M.**     **Exhibits.**

All exhibits to the Plan, Plan Supplement, and Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full herein.

**N.**     **Time.**

The provisions of Bankruptcy Rule 9006 shall apply when computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court.

**O.**     **Notice; Service of Documents.**

All notices, requests and demands to or upon the Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed. Any pleading, notice or other document required by this Plan to be served on or delivered to the Trustee, Debtors, Committee, or Liquidating Trustee shall be sent by first class U.S. mail, postage prepaid to:

| | |
|---|---|
| To the Trustee: | Carol Fox<br>200 East Broward Blvd.<br>Suite 1010<br>Fort Lauderdale, FL 33301<br><br>With a copy to:<br><br>Baker & Hostetler LLP<br>Attn: Elizabeth A. Green<br>    Jimmy D. Parrish<br>200 South Orange Avenue<br>Suite 2300<br>Orlando, FL  32801-3432 |
| To the Committee: | Nelson Mullins<br>Attn: Frank P. Terzo<br>100 S.E. 3rd Avenue, Suite 2700<br>Fort Lauderdale, FL 33394<br><br>Nelson Mullins<br>Attn: Gary Freedman<br>2 South Biscayne Blvd., 21st Floor<br>Miami, FL 33131 |

4854-5325-8041.11

| To the Liquidating Trust: | Carol Fox<br>200 East Broward Blvd.<br>Suite 1010<br>Fort Lauderdale, FL 33301 |
|---|---|

## P.    Integration

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan. Notwithstanding, on or before the Effective Date, the Trustee may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof, which shall be considered integrated into this Plan, to the extent applicable.

## Q.    Non-Severability of Plan Provisions.

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Trustee, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

## R.    Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of a conflict between the Confirmation Order and the Plan, the Confirmation Order shall control.

Respectfully submitted, as of the date first set forth above,

*/s/ Carol L. Fox*

*Carol L. Fox, as Chapter 11 Trustee for the Debtors*

and

*/s/ Elizabeth A. Green*

ELIZABETH A. GREEN (*admitted pro hac vice*)
Florida Bar No, 0600547
JIMMY D. PARRISH (*admitted pro hac vice*)

53

Florida Bar No. 526401
BAKER & HOSTETLER LLP
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32802-0112
Telephone:      407-649-4000
Facsimile:      407-841-0168
Email:          egreen@bakerlaw.com
                jparrish@bakerlaw.com

*Counsel to the Chapter 11 Trustee*

4854-5325-8041.11