**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

| | |
|---|---|
| IN RE: | Chapter 11 |
| AMERICORE HOLDINGS, LLC, *et al.*,[1] | Case No. 19-61608-grs |
| Debtors. | Jointly Administered |

**ORDER (A) AUTHORIZING AND APPROVING THE LIQUIDATING TRUSTEE'S ENTRY INTO AN ASSET PURCHASE AGREEMENT FOR THE SALE OF THE CYPRESS CREEK PROPERTY; (B) APPROVING, AT THE SPECIAL SET HEARING ON SEPTEMBER 16, 2024, THE SALE OF THE CYPRESS CREEK PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f);  AND (C) GRANTING RELATED RELIEF**

Upon consideration of the Motion[2] [Doc. No. 2438] of Carol Fox, Liquidating Trustee (the "Trustee") of the Ellwood Liquidating Trust (the "Trust" or the "Ellwood Trust") in the above-captioned chapter 11 cases, seeking, pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and KYEB LBR 2002-1 and 6004-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky (the "Local Rules"), and the Court's entry of an Order dated August 23, 2024 (the "Bidding Procedures Order") [Doc. No. 2499]: (I) approving (a) certain revised bidding procedures [Doc. Nos. 2499, Ex. 1] (as revised, the "Bidding Procedures") for the sale (the "Sale")

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Americore Holdings, LLC (0115); Americore Health, LLC (6554); Americore Health Enterprises, LLC (3887); Ellwood Medical Center, LLC (1900); Ellwood Medical Center Real Estate, LLC (8799); Ellwood Medical Center Operations, LLC (5283) ("Ellwood"); Pineville Medical Center, LLC (9435); Izard County Medical Center, LLC (3388); Success Healthcare 2, LLC (8861); St. Alexius Properties, LLC (4610); and St. Alexius Hospital Corporation # 1 (2766) (collectively, the "Debtors").

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of the real property located at 1200 and 1400 NW 62 Street, Fort Lauderdale, Florida 33309, more fully described in the Motion (the "Cypress Creek Property" or the "Property"), free and clear of all liens, claims, encumbrances, setoff rights, possessory rights and others interests and approving the form and manner of notice thereof  (the "Sale Notice") [Doc. No. 2438-2], (b) approving the Trustee's proposed form of Purchase and Sale Agreement for the Cypress Creek Property, as revised (the "PSA") [Doc. No. 2499, Ex. 4] and the Stalking Horse PSA [Doc. No. 2499, Ex. 3]; (c) authorizing, but not directing, the Trustee to designate the Stalking Horse Bidder (as defined below) in accordance with the Bidding Procedures and allowing a break-up fee of up to $200,000 without further order of the Court;[3] (d) scheduling an Auction and a Sale Hearing in connection with the Sale, and (e) related relief; and, following compliance with the terms and conditions of the Bidding Procedures Order and after such notice as required therein, the (II) entry of a Sale Order, (a) authorizing and approving the Trustee's entry into the PSA with the Successful Bidder, 1200 W. Cypress Creek Property, LLC (the "Purchaser") dated as of September 11, 2024, attached hereto as **Exhibit 1** (the "1200 W. Cypress Creek Property, LLC  PSA"), or  with the Next-Highest Bidder Access Restoration Services US, Inc., the ("Back-up Purchaser"), a copy of same is attached hereto as **Exhibit 2** (the "Back-up PSA"); (b) authorizing the Sale either to the Successful Bidder or the Next-Highest Bidder of the Cypress Creek Property free and clear of all liens, claims, encumbrances, setoff rights, possessory rights and others interests (collectively, the "Encumbrances"), including, without limitation, all Encumbrances of or asserted by any other federal, state or local regulatory or taxing agency (each an "Agency," and, collectively, the "Agencies") or the United States Government, and (c) granting related relief; and the Trustee having determined that it was in the best interests of the Ellwood Trust to seek approval of the Sale

---

[3] The Trustee of the Ellwood Liquidating Trust did not designate a Stalking Horse Bidder.

of the Cypress Creek Property to the Successful Bidder or the Back-up Purchaser; and the Trustee having complied with the requirements of the Bidding Procedures Order, including all notices contemplated thereunder; and the Court having held a hearing on September 16, 2024 , at 9:00 a.m. (ET) to consider the approval of the Sale (the "Sale Hearing"); and this Bankruptcy Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and in consideration of the Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing and all other pleadings and proceedings in the above-captioned jointly administered chapter 11 cases, including (without limitation) the Motion and the certificates of service regarding the Motion, Bidding Procedures Order, and all Notices contemplated thereunder [Doc. Nos. 2438, 2439, 2440, 2461, 2462, 2467, 2499, 2504, 2518, and 2519[4]]; and it appearing that the relief requested in the Motion is in the best interests of the Estate and its creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[5]**

A.    **Bankruptcy Petition, Plan Confirmation, Liquidating Trustee**. On December 31, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code. On October 2, 2023, the Court entered Order Confirming Amended Joint Plan of Liquidation under Chapter 11 of the Bankruptcy Code of Americore

---

[4] Trustee of the Ellwood Liquidating Trust's Notice of Extension of Certain Deadlines.

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Holdings, LLC and its Debtor Affiliates as Modified [Doc. No. 2180] (the "Confirmed Plan"), and

the Debtors' Confirmed Plan became effective as of January 1, 2024. *See* Doc. No. 2257. By virtue

of the confirmation of the Debtors' Confirmed Plan, Carol Fox now serves as Liquidating Trustee.

B.     **Jurisdiction and Venue**. The Court has jurisdiction over the Motion pursuant to

28 U.S.C. §§ 157 and 1334, the Confirmed Plan, the Settlement Agreement and Order Granting

Liquidating Trustee's Motion to Approve Compromise and Settlement of Adversary Against the Hurt

Parties (the "Action") (the "Hurt Settlement Order") [Doc No. 2325] pursuant to the terms of the Hurt

Settlement Agreement, and the Settlement Agreement and Order Granting Liquidating Trustee's

Motion to Approve Compromise and Settlement of BCP 1200 Cypress Creek RD, LLC ("BCP"),

Rockin G Ranch, LLC ("RGR") and Thomas Gonzalez ("Gonzalez") (the "BCP Settlement

Order") [Doc No. 2501]  pursuant to the terms of the BCP Settlement Agreement [Doc. No. 2456-

1]. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Case and the

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.     **Statutory Predicates**. The statutory bases for the relief requested in the Sale

Motion and for the approvals and authorizations herein are (i) Bankruptcy Code §§ 105, 363, 365,

503, 507 and 541, (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014, and (iii) Local Rules 2002-

1 and 6004-1.

D.     **Entry of Bidding Procedures Order**. On August 23, 2024, this Court entered the

Bidding Procedures Order [Doc. No. 2499], which included, *inter alia*, (a) approval of the Revised

Bidding Procedures [Doc. No. 2499, Ex. 1] with respect to bids for the Sale of the Cypress Creek

Property free and clear of all liens, claims, Encumbrances, setoff rights, possessory rights and

others interests, and approving Sale Notice therefor [Doc. No. 2438-2], (b) approving the Trustee's

proposed PSA [Doc. No. 2499, Ex. 4] (the "PSA") for use in connection with the Sale of the

Property; (c) authorizing, but not directing, the  Trustee to designate the Stalking Horse Bidder (as defined below) in accordance with the Bidding Procedures and allowing a break-up fee of up to $200,000 without further order of the Court; (d) scheduling an Auction and a Sale Hearing in connection with the Sale, and (e) approving a special set Sale Hearing on September 16, 2024.

E.    **Compliance with Bidding Procedures Order**. As demonstrated by evidence presented at the Sale Hearing and the representations of counsel, the Trustee has marketed the Cypress Creek Property, conducted the sale process in compliance with the Bidding Procedures Order, duly noticed the timing for the submission of bids and proposed Auction in a non-collusive, fair and good faith manner, and has afforded potential purchasers a full and fair opportunity to make higher and better offers. In accordance with the Bidding Procedures, the Trustee has determined that the Bid submitted by the Purchaser and as memorialized by the 1200 W. Cypress Creek Property, LLC  PSA is the Successful Bid (as defined in the Bidding Procedures), and that the Bid submitted by the Back-up Purchaser as memorialized in the Back-up PSA may be treated as the Successful Bid, and may close without further order of the Court, in the event the 1200 W. Cypress Creek Property, LLC  PSA with the Purchaser does not close pursuant to the terms thereof.

E.    **Notice.** As evidenced by the certificates of service filed with the Court [Doc. Nos. 2438, 2439, 2440, 2461, 2462, 2467, 2504, 2518 and 2519], and based on the representations of counsel at the Sale Hearing: (i) proper, timely, and sufficient notices of the Motion, the Bidding Procedures Order, designation and selection of the Stalking Horse Bidder, the form PSAs, the Sale Hearing, qualified bids, and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 6006, 9007, 9008, and 9014, the Local Rules, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order; and (ii) no other or further notice of the Motion,

the Bidding Procedures Order, designation and selection of the Stalking Horse Bidder, the form

PSAs, the Sale Hearing, qualified bids, and the Sale is or shall be required.

      F.      **Opportunity to Object**. A fair and reasonable opportunity to object or be heard

with respect to the Motion, the Bidding Procedures, designation and selection of the Stalking Horse

Bidder, the Auction, the Sale Hearing, the form PSA, the Sale of the Cypress Creek Property free

and clear of all Encumbrances, and the entry of this Order having been provided to all interested

Persons and those requiring notice, and the relief requested therein has been afforded to all

interested persons and entities.

      G.      **Sale in Best Interest.** Consummation of the Sale of the Cypress Creek Property at

this time is in the best interests of the Ellwood Trust, its creditors, and other parties in interest.

      H.      **Business Justification.**  The Trustee has presented good and sufficient business

reasons justifying the Sale of the Cypress Creek Property as set forth herein, including, but not

limited to, the following: (i) the 1200 W. Cypress Creek Property, LLC PSA with the Successful

Bidder constitutes the highest and best offer for the Cypress Creek Property, and the Back-up PSA

with the Back-up Purchaser being the next highest and best offer; and (ii) the 1200 W. Cypress

Creek Property, LLC PSA and the closing thereon, and the Back-up PSA and the closing thereon

if the 1200 W. Cypress Creek Property, LLC PSA fails to close, will present the best opportunity

to realize the value of the Cypress Creek Property and avoid continuing accrual of interest under

the terms of the BCP Settlement Agreement and alleviate the Ellwood Trust of the expense and

burden of maintenance and upkeep of the Property. The terms and conditions of the 1200 W.

Cypress Creek Property, LLC PSA (and if necessary, the Back-up PSA), including, without

limitation, the consideration to be realized by the Ellwood Trust, are fair and reasonable. Approval

of the Motion, the 1200 W. Cypress Creek Property, LLC PSA and the Back-up PSA if such

becomes necessary, and the transactions contemplated thereby, including, without limitation, the

Sale,  is in the best interests of the Ellwood Trust, its creditors, and all other parties in interest.

I.      **Successful Bid Valid**.  In accordance with the Bidding Procedures Order, the

Purchaser executed and timely delivered a Bid for the Cypress Creek Property in the amount of

**$25,200,000** pursuant to the terms of the Bidding Procedures and tendered the required Good Faith

Deposit (5% of Purchaser's original bid of $18,500,000), to acquire and assume from the Trustee

and Ellwood Trust the Cypress Creek Property in accordance with the 1200 W. Cypress Creek

Property, LLC PSA, attached hereto as **Exhibit 1**.  The Back-up Purchaser likewise executed and

timely delivered a Bid for the Cypress Creek Property in the amount of **$25,100,000** pursuant to

the terms of the Bidding Procedures and tendered the required Good Faith Deposit (5% of

Purchaser's original bid of $18,500,000), to acquire and assume from the Trustee and Ellwood

Trust all rights, title and interest in and to the Cypress Creek Property in accordance with the Back-

up PSA attached hereto as **Exhibit 2**.

J.      The Successful Bid and Next-Highest Bid, pursuant to the respective 1200 W.

Cypress Creek Property, LLC APA and Back-up APA are valid, proper and enforceable offers

pursuant to the Bidding Procedures Order and sections 363(b) and 363(k) of the Bankruptcy Code

and are not subject to avoidance, equitable subordination, defense, offset, counterclaim, or

recharacterization by any party in interest. The Successful Bid is binding on the Trustee, the

Ellwood Trust, all of its creditors and parties-in-interest, and any of their respective predecessors,

successors or assigns.

K.      **Arm's Length Sale**. The terms of the 1200 W. Cypress Creek Property, LLC PSA

were negotiated, proposed and entered into by the Trustee on the one hand, and the Purchaser, on

the other hand, and the Back-up PSA was negotiated, proposed and entered into by the Trustee, on

the one hand, and the Back-up Purchaser, on the other hand, each without collusion, in good faith, and at arm's length.  Neither the Trustee nor the Purchaser or Back-up Purchaser have engaged in any conduct that would warrant avoidance of the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA under section 363(n) of the Bankruptcy Code. The Purchaser and Back-up Purchaser have not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders. Neither the Purchaser nor the Back-up Purchaser are an "insider" of the Debtors as defined in section 101(31) of the Bankruptcy Code. The Court finds that the Trustee, the Purchaser, and Back-up Purchaser each have the full power and authority to execute, deliver, and perform under the respective 1200 W. Cypress Creek Property, LLC PSA and Back-Up PSA.

L.        **Good Faith Purchaser**. The Purchaser and Back-up Purchaser are each good faith purchasers for value and are entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code. Specifically, (i) the Purchaser and Back-up Purchaser recognized that the Trustee was free to deal with any other party interested in purchasing the Cypress Creek Property, (ii) the Purchaser and Back-up Purchaser complied in all respects with the provisions in the Bidding Procedures Order, (iii) the Purchaser and Back-up Purchaser agreed to subject their bids to the competitive bid procedures set forth in the Bidding Procedures Order, (iv) all payments to be made by the Purchaser or Back-up Purchaser in connection with the Sale have been disclosed, (v) neither the Purchaser nor the Back-up Purchaser is an "insider" of the Debtors, as such term is defined in section 101(31) of the Bankruptcy Code, and (vi) the negotiation and execution of the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA were at arm's length and in good faith, and at all times each of the Purchaser/Back-up Purchaser and the Trustee were represented by competent counsel of their choosing.

M.    **Free and Clear.**  The Trustee may sell the Cypress Creek Property free and clear of all obligations, liabilities and the Encumbrances, which shall transfer from the Cypress Creek Property to the proceeds thereof upon Sale, because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied, subject to the terms of the BCP Settlement Agreement with respect to the BCP Debt as set forth herein. Those holders of Encumbrances, who did not object or withdrew objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code and fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.[6]

N.    **Prompt Consummation**. The sale of the Cypress Creek Property must be approved and consummated promptly to preserve the value of the Property and alleviate the Ellwood Trust of the financial burden of maintenance and upkeep thereof. Therefore, time is of the essence in consummating the Sale, and the Trustee and the Purchaser (or Back-up Purchaser, as applicable) intend to close the Sale as soon as reasonably practicable, and in no event later than the Closing Date established in the Bidding Procedures Order.

O.    **Valid Transfer**. The transfer of the Cypress Creek Property to the Purchaser/Back-up Purchaser will vest the Purchaser/Back-up Purchaser with all rights, title, and interests of the Estate to the Property free and clear of all Encumbrances. The Cypress Creek Property constitutes property of the Ellwood Trust and good title is vested in the Trust within the meaning of section 541(a) of the Bankruptcy Code. The Ellwood Trust is the sole and rightful

---

[6] The only monetary obligation, liability and Encumbrance affecting the Cypress Creek Property known to the Trustee that has not otherwise been satisfied is the one asserted by the City of Fort Lauderdale in the amount of $128,000 ("FL Claim"). The Trustee applied for forgiveness or reduction of the FL Claim under the City of Fort Lauderdale's Lien Amnesty Program and the City of Fort Lauderdale has agreed to the sum of $13,967.33 in satisfaction of the FL Claim.

owner of the Cypress Creek Property, the Trustee is the sole Person with authority to sell same, and no other person has any ownership right, title, or interests therein.

P.  **PSA and Back-up PSA Not Modified.** The Order shall not modify the terms of the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.  The Motion is GRANTED and APPROVED in all respects as set forth herein.

2.  All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.

**Approval of the Sale of the Cypress Creek Property**

3.  The 1200 W. Cypress Creek Property, LLC PSA (and as may become necessary the Back-up PSA), including any amendments, supplements and modifications thereto, and all of the terms and conditions therein, is hereby approved.

4.  Pursuant to section 363(b) of the Bankruptcy Code, the sale of the Cypress Creek Property to the Purchaser (or Back-up Purchaser, as may become necessary), and the transactions contemplated thereby, are approved in all respects, and are free and clear of all obligations, liabilities and Encumbrances of every kind or nature.

**Sale and Transfer of the Cypress Creek Property**

5.  Pursuant to section 363(b) of the Bankruptcy Code, the Trustee is hereby authorized and directed (a) to sell the Cypress Creek Property to the Purchaser/Back-up Purchaser and consummate the Sale in accordance with, and subject to the terms and conditions of, 1200 W. Cypress Creek Property, LLC PSA (or Back-up PSA as necessary); (b) to transfer and assign all

rights, title and interests to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA, and (c) to execute and deliver, and is empowered to perform under, consummate and implement, the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA, and all additional instruments and documents that may be reasonably necessary or desirable to implement the 1200 W. Cypress Creek Property, LLC APA and Back-up APA.

6.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Cypress Creek Property shall be transferred to the Purchaser/Back-up Purchaser upon consummation of the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA, as applicable, at the closing thereon (first upon closing of the 1200 W. Cypress Creek Property, LLC PSA, and then if such agreement fails to close, upon the closing of the Back-up PSA) free and clear of any and all claims (as defined in section 101(5) of the Bankruptcy Code), and all obligations, liabilities and Encumbrances of any kind or nature whatsoever based on successor or transferee liability, which shall transfer from the Cypress Creek Property to the Sale proceeds.

7.    Upon the closing of the Sale, this Order shall be construed and constitute for all purposes a general assignment, conveyance and transfer of the Cypress Creek Property or a conveyance deed and record, legal and marketable title in such Cypress Creek Property to the Purchaser/Back-up Purchaser. Each and every federal, state, and local governmental Agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA.

8.    All persons and entities and their principals, representatives, agents and affiliates, which are presently, or as of the closing may be, in possession of some or all of the Cypress Creek

Property are hereby directed to surrender possession of the Property to the Purchaser or Back-up Purchaser (as may become necessary) upon the closing of the Sale.

9.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Trustee to transfer the Cypress Creek Property to the Purchaser/Back-up Purchaser in accordance with the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA, as applicable, and this Order.

10.     Except as expressly set forth herein and permitted by the 1200 W. Cypress Creek Property, LLC PSA, Back-up PSA, or this Order, all persons and entities holding claims or Encumbrances against or in the Debtors' estates, the Ellwood Trust, or the Cypress Creek Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), are forever barred and permanently enjoined from asserting against the Purchaser/Back-up Purchaser, its successors and assigns, their respective property and the Cypress Creek Property, such claims or Encumbrances.

11.     On the closing of the Sale, each of the Ellwood Trust's creditors, including without limitation, BCP, RGR, and Gonzales  (BCP, RGR and Gonzales are collectively referred to as, the "BCP Parties") are authorized and directed to execute such documents and take all other actions as may be necessary to release its Encumbrances on the Cypress Creek Property, if any, with such Encumbrances to attach to the proceeds of  the Sale.

12.     Subject to the terms and conditions of this Order, the 1200 W. Cypress Creek Property, LLC PSA or the Back-up PSA, the transfer of the Cypress Creek Property to the Purchaser or Back-up Purchaser pursuant to the 1200 W. Cypress Creek Property, LLC PSA or the Back-up PSA, as applicable, constitutes a legal, valid, and effective transfer of the Cypress Creek Property, and shall vest the Purchaser or Back-up Purchaser with all rights, title, and

interests of the Ellwood Trust in and to the Cypress Creek Property free and clear of all Encumbrances of any kind or nature whatsoever.

**Good Faith**

13.     The Purchaser/Back-up Purchaser is a purchaser in good faith of the Cypress Creek Property and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

14.     Neither the Trustee nor any successor in interest to the Trust shall be entitled to bring an action against the Purchaser/Back-up Purchaser, and the Sale may not be avoided, pursuant to section 363(n) of the Bankruptcy Code.

**Additional Provisions**

15.     On the Closing, the Trustee and the Purchaser/Back-up Purchaser are authorized to take such actions as may be necessary to obtain a release of any and all obligations, liabilities and Encumbrances in the Cypress Creek Property, including without limitation, those relating to the BCP Debt (as defined in the BCP Settlement Agreement) if any, to the extent contemplated hereby and by the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA, as applicable. This Order (a) shall be effective as a determination that, upon the closing of the Sale, all Encumbrances of any kind or nature whatsoever existing as to the Cypress Creek Property prior to such closing have been unconditionally released, discharged and terminated except as otherwise provided in this Order or the 1200 W. Cypress Creek Property, LLC PSA/Back-up PSA, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Cypress Creek Property. Each and every federal, state and local governmental Agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the 1200 W. Cypress Creek Property, LLC PSA/Back-up PSA.

16.     The Purchaser/Back-up Purchaser and the Trustee shall take such further steps and execute such further documents, assignments, instruments and papers as shall be reasonably requested by the other to implement and effectuate the transactions contemplated in this paragraph. All interests of record as of the date of this Order shall be forthwith deemed removed and stricken as against Cypress Creek Property. All entities described in this Paragraph and in Paragraph 15, above, are authorized and directed to strike all recorded liens, claims, rights, interests and encumbrances against the Cypress Creek Property from their records, official and otherwise.

17.     Upon the closing of the Sale of the Cypress Creek Property, in accordance with the terms of the BCP Settlement Agreement, the net proceeds of the Sale (after deducting closing costs) shall be applied first to the payment in full of the BCP Debt (as defined in the BCP Settlement Agreement) via wire transfer to BCP's legal counsel's trust account. The Escrow Agent (as defined in the 1200 W. Cypress Creek Property, LLC PSA) is further authorized to release said funds in the amount and in satisfaction of the BCP Debt upon Closing in accordance with the terms of the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA, as applicable.

18.     In addition, the City of Fort Lauderdale asserts a lien on the Cypress Creek Property in the amount of $128,000 (the "FL Claim"). The Trustee applied for forgiveness or

reduction of the FL Claim under the City of Fort Lauderdale's Lien Amnesty Program. The City of Fort Lauderdale has had agreed to reduce the FL Claim to $13,976.33. Accordingly, the Escrow Agent (as defined in the 1200 W. Cypress Creek Property, LLC PSA) is further authorized to release said funds in the amount of $13,967.33 in satisfaction of the FL Claim.

19.    If any person or entity that has filed statements or other documents or agreements evidencing claims, liens, Encumbrances, or interests in any of the Cypress Creek Property assets being sold, including without limitation, the BCP Parties, does not deliver to the Trustee or the Purchaser/Back-up Purchaser prior to the Sale closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all interests and other interests that the person or entity has or may assert with respect to any of the Cypress Creek Property as and to the extent required by this Order or under the 1200 W. Cypress Creek Property, LLC PSA/Back-up PSA, the Trustee and/or the Purchaser/Back-up Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such persons or entity with respect to any of the Cypress Creek Property.

20.    The Trustee will cooperate with the Purchaser/Back-up Purchaser the BCP Parties, on the one hand,  and on the other hand, the Purchaser/Back-up Purchaser and the BCP Parties will cooperate with the Trustee, in each case, to ensure that the transaction contemplated in the 1200 W. Cypress Creek Property, LLC PSA/Back-up PSA is consummated.

21.    The terms and provisions of the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA and this Order shall be binding in all respects upon, and shall inure to the benefit of the Ellwood Trust, its successors and assigns, and its creditors, the Purchaser/Back-up Purchaser, and its affiliates, successors and assigns, and any affected third parties, including but not limited

to, persons asserting Encumbrances on the Cypress Creek Property and any subsequently appointed trustee(s) under any chapter of the Bankruptcy Code.

22.    The failure specifically to include any particular provision of the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA be authorized and approved in their entirety.

23.    The 1200 W. Cypress Creek Property, LLC PSA and Back-up PSA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate. To the extent that any provision of the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.

24.    Nothing contained in the Confirmed Plan, including any order entered after any conversion of the Case to a case under chapter 7 of the Bankruptcy Code, shall alter or conflict with the provisions of the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA or the terms of this Order. The provisions of this Order, the 1200 W. Cypress Creek Property, LLC PSA and the Back-up PSA and any actions taken pursuant thereto shall survive conversion of the Case from chapter 11 to chapter 7 of the Bankruptcy Code.

25.    The provisions of this Order are non-severable and mutually dependent.

26.    In connection with the marketing and the Sale of the Cypress Creek Property, the Trustee has employed the services of Avison Young, LLC ("Avison") as broker. Pursuant to the terms of the agreement among and between the Trustee and Avison, for its brokerage services,

Avison will receive a two percent (2%) Brokerage Fee of the Property's contracted price to be deducted from the proceeds of the Sale. 1200 W. Cypress Creek Property, LLC  has employed the services and Cushman & Wakefield as Purchaser's broker (the "Purchaser's Broker"). Pursuant to the agreement between 1200 W. Cypress Creek Property, LLC and Purchaser's Broker and pursuant to the terms of the 1200 W. Cypress Creek Property, LLC PSA, Purchaser's Broker will receive a one percent (1%) Brokerage Fee of the Property's contracted price to be deducted from the proceeds of the Sale. The Escrow Agent (as defined in the 1200 W. Cypress Creek Property, LLC PSA) is further authorized to release said respective Brokerage Fees to Avison and Cushman and Wakefield upon Closing.

27.     Nothing in this Order, the 1200 W. Cypress Creek Property, LLC PSA or Back-up PSA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order, the 1200 W. Cypress Creek Property, LLC PSA, or Back-up PSA precludes any governmental unit from enacting any police or regulatory law, ordinance, rule, or regulation. Nothing in this Order, the 1200 W. Cypress Creek Property, LLC PSA, or Back-up PSA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under

police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

28.     Compliance with the legal requirements relating to bulk sales and transfers is not required.

29.     The Trustee and each other person having duties or responsibilities under the 1200 W. Cypress Creek Property, LLC PSA, the Back-up PSA, or this Order, and their respective agents, representatives, and attorneys, are authorized and empowered to carry out all of the provisions of the 1200 W. Cypress Creek Property, LLC PSA and the Back-up PSA and to perform all acts as are consistent with, and necessary or appropriate to, implement, effectuate and consummate the 1200 W. Cypress Creek Property, LLC PSA, the Back-up PSA, and this Order and the Sale all without further notice or application to, or order of, the Court.

30.     This Court shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the 1200 W. Cypress Creek Property, LLC PSA, the Back-up PSA, and this Order.

31.     As soon as practicable after the Closing, the Trustee shall file a Report of Sale in accordance with Bankruptcy Rule 6004(f)(1).

32.     Unless otherwise provided herein, to the extent this Order is inconsistent with the Bidding Procedures Order, the Motion, or any other prior order or pleading in this Bankruptcy Case, or the terms of the 1200 W. Cypress Creek Property, LLC  PSA or Back-up PSA (including all ancillary documents executed in connection with such agreements), this Order shall govern.

33.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, or

9014, or otherwise, the provisions of this Order shall be immediately effective and enforceable upon its entry.

34.    The 14-day stay periods provided under Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

DATED: _____, 2024

SO ORDERED:

_____
Hon. Chief Judge Gregory R. Schaaf
United States Bankruptcy Judge

---

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.



**Signed By:**
***Gregory R. Schaaf***
**Bankruptcy Judge**
**Dated: Monday, September 16, 2024**
**(grs)**

# **Exhibit 1**

## PURCHASE AND SALE AGREEMENT (PSA)

THIS Purchase and Sale Agreement (PSA) (the "Agreement") is entered into as of the 11th day of September, 2024, between **CAROL L. FOX, IN HER CAPACITY AS THE LIQUIDATING TRUSTEE OF THE ELLWOOD LIQUIDATING TRUST,** (the "Trustee"), and **1200 W Cypress Creek Property LLC,** a Florida limited liability company and/or its assigns (the "Purchaser").

1.       Purchase and Sale. In consideration of their mutual covenants set forth in this Agreement, Trustee agrees to sell to Purchaser, and Purchaser agrees to purchase from Trustee, for the Purchase Price (as hereinafter defined) and on the terms and conditions set forth herein, that certain real property more particularly described on **Exhibit A,** hereto, and made a part hereof, and generally described as Lots 47, 48 and 49 of Fort Lauderdale Industrial Airpark - Section 2, located at 1200 NW 62nd Street, Fort Lauderdale, FL 33309 and 1400 NW 62nd Street, Fort Lauderdale, FL 33309, and Personal Property thereon (also known as the "Cypress Creek Property") together with all rights, privileges, easements and appurtenances pertaining thereto, any improvements located thereon, intangible property, rights and entitlements, including, without limitation, those "Trustee's Permits", and "Trustee's Contracts," as each is hereinafter defined, (collectively, the "Property"), such Property as further described in *Liquidating Trustee's Motion For Entry of an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof; (B) Scheduling an Auction and a Hearing on the Approval of the Sale of the Cypress Creek Property and [and other related relief]* (the "Bidding Procedures Motion") filed in the United States Bankruptcy Court, Eastern District of Kentucky, London Division, Case #19-61608-grs (the "Bankruptcy Court"), and pursuant to the auction and bidding procedures (the **"Bid Procedures"**) which were approved by the Bankruptcy Court for the Trustee's sale of the Property [Doc. No. 2499].

The sale of the Property includes the sale and conveyance and/or transfer of all of Trustee's right, title and interest in all guarantees, certificates, if any, licenses, bonds, permits, authorizations, consents and approvals, which in any respect whatsoever relate to or arise out of the use, occupancy, possession, development, construction and operation of the Property, as identified on **Schedule A**, attached hereto and incorporated herein (hereinafter collectively called the "Trustee's Permits").

To the extent any exist, all of Trustee's intangible personal property, including, without limitation, all water and sewer hook-ups, lines and agreements, accruing from the Property as of the Closing Date and thereafter, together with Trustee's right, title and interest under any service contracts with respect to the Property (to the extent assumed by Purchaser in accordance herewith) as identified on **Schedule B**, attached hereto and incorporated herein (hereinafter collectively called the "Trustee's Contracts"), all of which are intended to encompass all of Trustee's contractual rights or benefits relating to the Property, shall be assigned to Purchaser at the Closing via the execution of a mutually agreeable Assignment and Assumption of Assumed Contracts, and both copies of all such Trustee's Contracts, and an accompanying list thereof, shall all be provided to Purchaser within three (3) days of Escrow Agent's receipt of Purchaser's Good Faith Deposit (as defined in Section 4).

2.       Effective Date. The "Effective Date" of this Agreement shall be the earlier of: (i)

the mutual execution of this Agreement or (ii) the date on which the Bankruptcy Court has entered the Approval Order (as defined in <u>Section 25(a)</u>, herein) and such Approval Order has become final and non-appealable under the Federal Rules of Bankruptcy Procedure.

3.     <u>Purchase Price; Good Faith Deposit</u>.

(a)     Subject to the terms of this Agreement and the sale of the Property pursuant to the Bid Procedures (defined below), attached as <u>Exhibit 1</u> to the Bankruptcy Court's order approving the Bidding Procedures Motion [Doc. No. 2499] (the "<u>Bid Procedures Order</u>"),  as may be modified from time to time by the Liquidating Trustee, the purchase price for the Property shall be Twenty Five Million Two Hundred Thousand AND 00/100 DOLLARS ($25,200,000.00) (the "<u>Purchase Price</u>"). The Purchase Price shall be payable as follows:

(b)     Nine Hundred Twenty-Five Thousand AND 00/100 DOLLARS ($925,000.00), which Trustee acknowledges receipt thereof and which represents 5% of the initial bid by Purchaser (the "<u>Good Faith Deposit</u>"). The Good Faith deposit is held in escrow by First American Title Insurance Company, as Trustee's designated escrow agent (the "<u>Escrow Agent</u>"), located at 2121 Ponce de Leon Boulevard, Suite 710, Coral Gables, Florida 33134, Attention: Yessie Gonzalez. The Good Faith Deposit shall immediately be non-refundable to Purchaser, except as otherwise expressly set forth in this Agreement, the Bid Procedures Order, or the Approval Order.

(c)     The Escrow Agent shall abide by and operate pursuant to the terms of this Agreement, and the terms and conditions of the Good Faith Deposit Escrow Agreement attached hereto as **Exhibit C** (the "<u>Escrow Agreement</u>"), subject only to mutually agreed upon modifications executed by the parties hereto in writing.  The Good Faith Deposit shall be remitted to the Escrow Agent by wire transfer or check, subject to clearance, and shall be held in Escrow Agent's trust or escrow account pursuant to the Escrow Agreement executed by the Purchaser, Trustee and Escrow Agent.

(d)     The Good Faith Deposit shall be held in escrow by the Escrow Agent and disbursed as provided for in the Bid Procedures and the Approval Order, but subject to the terms and conditions of this Agreement, which shall control and take precedence over the Bid Procedures and the Approval Order.

(e)     Purchaser shall pay the Purchase Price, subject to a credit for the Good Faith Deposit, and subject to the prorations and credits described below, in cash by wire transfer of immediately available federal funds to Escrow Agent in accordance with the terms and conditions of this Agreement no later than 3:00 P.M. (Eastern Time) on the Closing Date (as hereinafter defined).

4.     <u>Closing</u>.

(a)     The consummation of the purchase and sale of the Property contemplated in this Agreement (the "<u>Closing</u>") shall occur by overnight courier service or "mail away" structure with Escrow Agent acting as the closing agent, on September 26, 2024, or such date that is set forth in

2

the final non-appealable Approval Order (as defined in Section 25(a) below) authorizing the sale (the "Closing Date"), unless such date is extended by the Bankruptcy Court.

(b)    Purchaser shall pay the Purchase Price and Trustee shall deliver possession of the Property to Purchaser on the Closing Date.

(c)    At Closing, Trustee shall deliver the following documents:

(i)    A Deed in recordable form properly executed on behalf of Trustee in the form attached hereto and made a part hereof as **Exhibit B**, conveying to Purchaser the Property described on **Exhibit A** hereto, in fee simple, free and clear of liens and encumbrances except those Permitted Exceptions, as identified on a pro-forma title policy or a marked-up title commitment issued by Nelson Mullins in its capacity as title agent.

(ii)    A Bill of Sale conveying to Purchaser the personal property and equipment identified in Exhibit A, free and clear of all encumbrances and adverse claims.

(iii)    An Affidavit executed by Trustee attesting to the absence of any liens, parties in possession, or other claims as provided in the Approval Order and a FIRPTA certification.

(iv)    An Assignment and Assumption of Assumed Contracts (if any).

(v)    Evidence of Trustee's authority to sell and convey the Property.

(vi)    A certified copy of the Approval Order.

(vii)    A Closing Statement executed by Trustee.

(viii)    Such other reasonable and customary documents and instruments required by the First American Title Insurance Company (the "Title Company") to consummate the transactions contemplated by this Agreement.

(d)    At or before Closing if required pursuant to the Bid Procedures, Purchaser shall deliver the following documents:

(i)    Any and all of the documents required to demonstrate to the Court that it is a Qualified Bidder pursuant to the Bid Procedures, including but not limited to evidence of Purchaser's authority and financial ability to purchase the Property.

(ii)    A countersigned Assignment and Assumption of Contracts executed by Purchaser.

(iii)    A Closing Statement executed by Purchaser.

(iv)    Such other reasonable and customary documents and instruments required by

the Title Company to consummate the transactions contemplated by this Agreement.

5.      Evidence of Title and Survey.  At least five (5) business days prior to the expiration of the Due Diligence Period, Nelson Mullins, as title agent, shall cause the Title Company to deliver to Purchaser a pro-forma title policy or a marked-up title commitment in the form to be issued by the Title Company (the "Title Evidence") at Closing insuring Purchaser's fee simple interest in and to the Property. Purchaser, at Purchaser's expense may obtain such lien letters, code violation searches, and other searches (collectively, the "Additional Searches") that it deems necessary. Purchaser shall provide copies of any Additional Searches to Trustee within three (3) days of Purchaser's receipt of the same.  Trustee shall have no affirmative obligation hereunder to expend any funds or incur any liabilities in order to cause any title exceptions to be removed from any title commitment. The Approval Order must provide that all of the estate's rights, title, and interests in and to the Assets will be transferred free and clear of all liens, tenancies, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code. Notwithstanding anything to the contrary in this Agreement, the Approval Order shall provide that the Property shall be sold free and clear of any mortgages, deeds of trust, liens, code violations, tenancies, and encumbrances that can be satisfied or released by the payment of a liquidated amount.

6.      Representations and Warranties of Trustee.

(a)      As Is/Where Is.  Purchaser shall acquire the Property on an "**AS IS**," "**WHERE IS**" basis, free and clear of all liens, claims, tenancies, and encumbrances in accordance with section 363(f) of the Bankruptcy Code and this Agreement. Except for the representations and warranties contained in this Agreement and as approved for sale, transfer, and assignment pursuant to the Approval Order, Trustee makes no express or implied representation or warranty with respect to Trustee, the Property or the transaction contemplated by this Agreement, and Trustee hereby disclaims all other representations or warranties, whether made by any Trustee or any of its representatives.

(b)      No Condemnation Pending or Threatened.  Trustee has no actual knowledge of any pending or threatened condemnation or similar proceeding affecting the Property or any portion thereof, and to Trustee's actual knowledge no such action is contemplated or threatened.

(c)      Prior Application or Commitments.  Trustee has no actual knowledge of any applications or commitments to any governmental or quasi-governmental agency or utility which would affect any portion of the Property, which has not been disclosed in writing to Purchaser.

(d)      FIRPTA.  Trustee is not a "foreign person," as defined by Section 1445 of the Internal Revenue Code, and shall comply with all requirements imposed by the Internal Revenue Service, as more specifically described in Section 4(c)(iii) of this Agreement.

(e)      Trustee's Permits and Contracts.  Trustee has no Permits, other than those disclosed to Purchaser.  All of Trustee's Service Contracts, if any, are terminable upon not greater than thirty (30) days written notice to the respective providers.

All representations and warranties by Trustee in this Agreement shall be true and correct as of the Effective Date hereof and as of the Closing Date.

4

7.     <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Trustee that as of the date hereof and as of the Closing Date, Purchaser is a limited liability company, organized under the laws of Florida, and qualified to do business in Florida. The execution, delivery, and performance of this Agreement by Purchaser have been duly authorized and no consent of any other person, court, or other entity to such execution, delivery, and performance is required to render this Agreement a valid and binding instrument enforceable against Purchaser in accordance with its terms, except for any consents which have been obtained by Purchaser prior to its execution hereof. Neither the execution of this Agreement or the consummation of the transactions contemplated hereby will result in a breach of, or cause a default or acceleration under, any agreement to which Purchaser is a party (unless such agreement is being terminated or satisfied at Closing) or by which Purchaser is bound. To induce Trustee to enter into this Agreement, and as material consideration therefor, Purchaser acknowledges and agrees that Trustee shall have no obligations or liability whatsoever regarding the title to, or encumbrances on, the Property and that, in the event of any claims, demands, damages or disputes with respect thereto following the Closing, Purchaser shall look solely to the Title Company pursuant to its title policy.

8.     <u>Trustee's Actions Prior to Closing</u>. Commencing as of the Effective Date and continuing for the entire period in which Trustee has any legal or equitable interest in the Property or any portion thereof:

(a)     <u>Access; Consents; and Approvals</u>.   Trustee shall reasonably cooperate with Purchaser, including providing of access, during the Due Diligence Period, pertaining to Purchaser's investigation of the Property, and if the Bankruptcy Court enters an Approval Order determining Purchaser as the Successful Bidder for the Property, at all times prior to Closing for purposes of the obtaining necessary consents and approvals for the ownership of the Property;

(b)     <u>Physical Condition of the Property</u>. Trustee will not cause, permit or suffer any act to be performed or the absence of same which might cause damage, waste or destruction to the Property.

(c)     <u>Laws</u>. Trustee shall comply with all federal, state and municipal laws, statutes, ordinances, regulations and orders relating to the Property, including its use, leasing and operation.

(d)     <u>Trustee's Contracts and Trustee's Permits</u>.   Purchaser shall be provided with documentation, as described in Section 6(e), as to each of Trustee's Permits and Trustee's Contracts, to the extent such exist.

9.     <u>Taxes; Assessments; Utilities</u>. Accrued general real estate taxes for the year of Closing not yet due and payable shall be prorated as of the Closing Date on the basis of the actual taxes for the year, if known, or if unknown, on the basis of the most recent ascertainable taxes. In either case the taxes shall be prorated based on the maximum allowable discount for early payment. Purchaser shall pay all such taxes when they become due and payable. Special assessments which become a lien prior to Closing and pending assessments for work substantially completed as of Closing shall be credited to Purchaser at Closing. Purchaser shall receive no credit for other

5

pending special assessments. All other assessments levied against the Property as of the Closing Date shall be shared by the parties pro rata on the Closing Date. If applicable, there shall be a proration of the charges for water, gas, electricity and any other utility service for the Property. Trustee shall pay all charges for water and electricity and any other utilities accrued through Closing. Purchaser shall, at Closing, replace any utility deposits now in Trustee's name, if applicable.

10.     Transfer Taxes; Title Charges; Miscellaneous Costs and Fees. Trustee and Purchaser agree to execute any real estate transfer declarations required by the state, county, or municipality in which the Property is located. Trustee shall pay the cost for any state or county deed or transfer tax, including documentary stamp tax and Broward surtax. Purchaser shall pay the cost of recording the instruments of conveyance, and all mortgage registration taxes, if any. Trustee shall pay the cost of the owner's title insurance policy and any title search fees associated with the procurement of the Title Evidence. Purchaser shall pay any fees charged by Escrow Agent in its capacity as closing agent. Each party shall pay its own attorneys' fees except as otherwise provided in this Agreement.

11.     Condemnation. If between the Effective Date and the Closing Date, any condemnation or eminent domain proceedings are initiated which might result in the taking of a substantial portion of the Property which would materially adversely affect the development of the Property, Purchaser may: (a) terminate this Agreement by written notice to Trustee in which event the Good Faith Deposit shall be returned to Purchaser, or (b) proceed with the Closing with no reduction in the Purchase Price, in which event Trustee shall assign to Purchaser all of Trustee's right, title, and interest in and to any award made in connection with such condemnation or eminent domain proceedings. Trustee shall notify Purchaser in writing of the commencement or occurrence of any condemnation or eminent domain proceedings. If such proceedings would result in any such taking, Purchaser shall then notify Trustee, within ten (10) days of Purchaser's receipt of Trustee's notice, whether Purchaser elects to exercise its rights under subparagraph (a) or subparagraph (b) of this Section 11. Closing shall be delayed, if necessary, until Purchaser makes such election. If Purchaser fails to make an election within such ten (10) day period, Purchaser shall be deemed to have elected to exercise its rights under subparagraph (b) hereof and Closing shall be delayed, if necessary, until the later to occur of (i) the Closing Date or (ii) five (5) days after the expiration of the ten (10) day period.

12.     Failure to Consummate Transaction.

(a)     If the transaction contemplated herein is not consummated because of a default of Purchaser under the terms of this Agreement, Escrow Agent shall promptly pay the Good Faith Deposit to Trustee and Trustee shall be entitled to retain the Good Faith Deposit as liquidated damages and in full settlement of any claims or damages, whereupon this Agreement shall become null and void and of no further force or effect, except with respect to those indemnities and obligations of Purchaser set forth in this Agreement which survive termination. It is hereby agreed that Trustee's damages may be difficult to ascertain and that the Good Faith Deposit constitutes reasonable liquidation thereof and is intended not as a penalty, but as liquidated damages. Trustee shall have no right to seek specific performance of this Agreement or to seek damages from Purchaser (other than the liquidated damages referred to above) as a result of any default by Purchaser under this Agreement.

4870-2495-6130 v.2

(b)     If the transaction contemplated herein is not consummated because of a default of Trustee or because the Bankruptcy Court denies approval of the Approval Order, Purchaser, as Purchaser's sole and exclusive remedies, may terminate this Agreement by written notice to Trustee thereof, and then the Good Faith Deposit shall be refunded to Purchaser by Escrow Agent upon demand. If the Bankruptcy Court approves the sale of the Property to a different purchaser in accordance with the Bid Procedures and Purchaser has not elected nor been approved by the Bankruptcy Court as the Back-Up Bidder, it shall not constitute a default hereunder, but the Agreement shall be automatically terminated and Purchaser's Good Faith Deposit shall be returned to Purchaser.

(c)     Notwithstanding anything to the contrary contained in this Agreement, neither party shall be deemed to be in default of this Agreement unless the defaulting party fails to cure the default within five (5) business days after written notice of such default from the non-defaulting party (except no notice and opportunity to cure is required for a party's failure to close on the Closing Date).

13.     <u>Notice</u>. All notices required or permitted hereunder shall be in writing and shall be served on the parties at the following address:

| | |
|---|---|
| If to Trustee: | Carol L. Fox, as Trustee<br>5000 T-Rex Avenue, Suite 300<br>Boca Raton, FL 33431<br>cfox@brinleyfin.com |
| With a copy to: | Gary M. Freedman<br>Lauren Deutch<br>NELSON MULLINS RILEY & SCARBOROUGH LLP<br>2 South Biscayne Boulevard - 21st Floor<br>Miami, FL 33131<br>gary.Freedman@nelsonmullins.com<br>lauren.deutch@nelsonmullins.com |
| | Frank P. Terzo<br>Nelson Mullins Riley & Scarborough LLP<br>100 S.E. 3rd Avenue, Suite 2700<br>Fort Lauderdale, FL 33394<br>frank.Terzo@nelsonmullins.com |
| | Christopher Staller<br>Nelson Mullins Riley & Scarborough LLP<br>1905 NW Corporate Boulevard, Suite 310<br>Boca Raton, FL 33431<br>chris.staller@nelsonmullins.com |
| If to Purchaser: | Lion Holdings Group, LLC c/o<br>1200 W Cypress Creek Property LLC<br>5100 North Dixie Highway |

|  | Oakland Park, FL 33334 |
|  | Patrick@vt.com |

|  | |
|---|---|
| With a copy to: | RJ Milnor |
|  | Chief Human Resources Officer |
|  | Lion Holdings Group, LLC |
|  | 5100 North Dixie Highway |
|  | Oakland Park, FL 33334 |
|  | rj@vt.com |
|  |  |
|  | Thomas Ellsworth |
|  | President |
|  | Lion Holdings Group, LLC |
|  | 5100 North Dixie Highway |
|  | Oakland Park, FL 33334 |
|  | tom@vt.com |
|  |  |
|  | Jeff Deutsch |
|  | Overtime Consulting, Inc. |
|  | 2604 Devon Court |
|  | Delray Beach, FL 33445 |
| If to Escrow Agent: | Yessie A. Gonzalez, CLA, FRP |
|  | First American Title Insurance Company |
|  | Commercial Escrow Manager |
|  | South Florida Agency Division |
|  | 2121 Ponce de Leon Boulevard, Suite 710 |
|  | Coral Gables, Florida 33134 |
|  | Email: yegonzalez@firstam.com |
| If to Broker: | John K. Crotty |
|  | Avison Young |
|  | 2020 Ponce De Leon Blvd., Suite 1200 |
|  | Miami, FL 33134 |
|  | Email: john.crotty@avisonyoung.com |

Any such notices shall be sent by U.S. certified mail, return receipt requested, or by nationally recognized overnight courier service, or by e-mail, and notices shall be deemed delivered upon actual receipt, provided, however, that if delivery is refused or a notice is unclaimed, notice shall be deemed received (i) if mailed, three (3) days after mailing, (ii) if overnight courier service, one (1) business day after deposit with the courier service, or (iii) if e-mail, on the date the e-mail was sent. The above addresses may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice.

14.    Time of the Essence; Governing Law; Mandatory and Exclusive Venue. Time is of the essence of this Agreement. If any date on which either party's performance hereunder is to occur falls on a Saturday, Sunday, or national holiday, then the time for such performance shall be extended until the next following business day. The validity, meaning, and effect of this Agreement

4870-2495-6130 v.2

shall be determined in accordance with the laws of the State of Florida. Trustee and Purchaser irrevocably agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters, disputes, or controversies relating to this Agreement, and/or any other matter that in any way relates to the foregoing. Any and all such matters, disputes, or controversies must only be instituted in the Bankruptcy Court, which shall be the exclusive venue for any matter, dispute, or controversy relating to this Agreement. The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court in any such matters, disputes, and controversies and stipulate that the Bankruptcy Court may enter final orders and judgments relating thereto.

15.    Broker. Trustee and Purchaser hereby represent each to the other that, except as set forth below, they have not disclosed this Agreement, or the transactions contemplated hereby or the subject matter hereof, to any real estate broker, agent, or salesperson so as to create any legal right or claim in any such broker, agent, or salesperson for a real estate brokerage commission or compensation with respect to the negotiation or consummation of this Agreement. Purchaser hereby indemnifies Trustee against, and agrees to hold and save Trustee harmless from, any claims (or expenses related thereto, including, but not limited to, expenses for its reasonable attorneys' fees incurred in defending any such claims or enforcing this indemnity) for any real estate brokerage commissions or similar fees arising out of a breach of the foregoing representation and warranty. The parties recognize Avison Young – Florida, LLC (the "Trustee's Broker") (representing Trustee) and Cushman & Wakefield (the "Purchaser's Broker") (representing Purchaser) as the sole brokers in this transaction. Trustee shall pay any commissions or co-broker commissions payable to Trustee's Broker and Purchaser's Broker pursuant to separate agreement. Purchaser shall be responsible for any additional commissions payable to Purchaser's Broker pursuant to separate agreement. This Section shall survive the Closing or any termination of this Agreement.

16.    Assignment. Purchaser may assign its rights under this Agreement to an entity affiliated with, or controlled by Purchaser, without Trustee's consent; provided, however, that (a) the original Purchaser shall remain liable for the performance of all Purchaser's obligations hereunder accruing through the Closing Date (whether Trustee seeks to enforce such obligations prior to Closing, or after Closing, as to obligations that survive Closing; (b)Trustee shall incur no additional expenses on account of such assignment; (c) Purchaser shall disclose the identity of such assignee to Trustee, and shall supply to Trustee all information regarding such assignee as may be reasonably requested by Trustee, and (d) the Approval Order approving the sale of the Property pursuant to this Agreement shall approve the sale to Purchaser's assignee. Any assignment to an entity not affiliated with or controlled by Purchaser shall be subject to Trustee's prior written consent, in Trustee's commercially reasonable discretion, and to Court approval as specified in clause (d) above.

17.    Survival. No representations, warranties, covenants, agreements, and other obligations, excepting those matters that expressly survive the Closing of this transaction, of Trustee in this Agreement shall survive the Closing of this transaction and no action based thereon shall be commenced after the Closing of this transaction. However, the obligations of Trustee and Purchaser in Sections 9 and 15 hereof, and any other indemnity provisions by Purchaser in this agreement shall survive the Closing of this transaction or the termination of this Agreement.

9

4870-2495-6130 v.2

18.     Prevailing Party. In connection with any litigation arising out of this Agreement, the prevailing party shall be entitled to recover all costs incurred by such party, including, but not limited to, reasonable attorneys' fees and court costs, before, during, and after trial, and at appellate levels.

19.     No Third Party Rights. Nothing in this Agreement, express or implied, is intended to confer upon any person, other than the parties hereto and their respective successors and assigns, any rights or remedies under or by reason of this Agreement.

20.     OFAC Compliance. All funds to be used by Purchaser as payment of the Purchase Price at Closing are from sources operating under, and in compliance with, all federal, state and local statutes and regulations relating to the laundering of money and terrorism and are free of all liens and claims of lien. Neither Purchaser nor any of its affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents is, nor will they become prior to Closing, a person or entity with whom United States persons or entities are restricted from doing business under regulations of the OFAC of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action, and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities prior to Closing.

21.     Miscellaneous. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed by e-mail or other electronic means which shall, for all purposes, serve as an original executed counterpart of this Agreement upon delivery of an executed copy hereof by e-mail or other electronic means. The captions in this Agreement are inserted for convenience of reference and in no way define, describe, or limit the scope or intent of this Agreement or any of the provisions hereof. No waiver, modification, amendment, discharge, or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge, or change is sought. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors, and permitted assigns. This Agreement contains the entire agreement between the parties relating to the transactions contemplated hereby and all prior or contemporaneous agreements, understandings, representations, or statements, oral or written, are superseded hereby. Any provision of this Agreement which is unenforceable or invalid or the inclusion of which would adversely affect the validity, legality, or enforcement of this Agreement shall be of no effect, but all the remaining provisions of this Agreement shall remain in full force and effect. Each and every Exhibit referred to in this Agreement is attached to and made a part of this Agreement.

22.     Radon Notice. Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be

obtained from your county health department.

23.     <u>PROPERTY TAX DISCLOSURE</u>. PURCHASER SHOULD NOT RELY ON THE TRUSTEE'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE PURCHASER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

24.     <u>Bankruptcy Court Approval.</u>

(a)     <u>Approval</u>. Purchaser and Trustee understand, acknowledge and agree that this Agreement and the sale of the Property are subject to approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens and encumbrances at a special set hearing on September 16, 2024, which is presiding over the Case rendering the following order: Order Granting Liquidating Trustee's Motion for Entry of: (I) An Order: (A) Authorizing and Approving the Liquidating Trustee's Entry into an Asset Purchase Agreement for the Sale of the Cypress Creek Property; (B) Approving, at a Subsequent Hearing, the Sale of the Cypress Creek Property Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f); (C) Approving the Assumption and Assignment of the Assumed Contracts; and (D) Granting Related Relief (collectively, the "<u>Approval Order</u>").

(b)     <u>Bid Procedures</u>. Purchaser and Trustee also understand, acknowledge and agree that the sale of the Property is subject to higher and better offers in accordance with the Bankruptcy Court-approved Bid Procedures [Doc. No. __], as may be revised by the Trustee as necessary, which Bid Procedures are explicitly incorporated by reference into this Agreement.

(c)     <u>Bidding Matter</u>. Purchaser and Trustee understand, acknowledge and agree that Trustee may seek or entertain one or more bids for the purchase of the Property in accordance with the Bid Procedures and that the Bankruptcy Court shall have exclusive authority to approve the sale of the Property to the highest and best offer submitted to the Trustee and that the Trustee has complete discretion to recommend to the Bankruptcy Court that Bidder that in her opinion provides the highest and best recovery for the Liquidating Trust, even to reject this Agreement as neither the highest and best or suitable as a back-up bid. However, nothing contained in this Agreement shall prohibit Purchaser from participating in the Auction as a bidder if an auction is held.

25.     <u>WAIVER OF JURY TRIAL</u>. NO PARTY SHALL HAVE THE RIGHT TO SEEK A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND EACH WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE TERMS OF THIS AGREEMENT OR ANY CLOSING DOCUMENT, THE TRANSACTIONS CONTEMPLATED HEREBY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY, AND IS INTENDED TO

4870-2495-6130 v.2

ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. ANY PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY EACH PARTY HERETO.   THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR ANY TERMINATION OF THIS AGREEMENT.

*[Signatures on Following Page]*

THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT AS OF THE DAY AND YEAR FIRST ABOVE WRITTEN.

TRUSTEE:

**CAROL L. FOX IN HER CAPACITY
AS LIQUIDATING TRUSTEE OF THE
ELLWOOD LIQUIDATING TRUST**

_____
Carol L. Fox
Liquidating Trustee of the Ellwood
Liquidating Trust

Date:_____, 2024

PURCHASER:

**1200 W Cypress Creek Property LLC**
a Florida limited liability company

By:_____
Name: Patrick Bet-David
Title: Chief Executive Officer

Date:    September 5, 2024

4870-2495-6130 v.2

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

Real Property

Lots 47 and 48, of FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 63, Page 8, of the Public Records of Broward County, Florida;

And

Lot 49, of RESUBDIVISION OF LOTS 49, 50 AND 51, FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 69, Page 18, of the Public Records of Broward County, Florida.

All Less the North 5.00 feet thereof.

Street Addresses: 1200 NW 62nd Street, Fort Lauderdale, FL 33309
1400 NW 62nd Street, Fort Lauderdale, FL 33309

Parcel ID #: 4942 09 02 0010
4942 09 01 0470

Personal Property

All of the right, title and interest of Cypress Creek Florida, LLC (the "Debtor") in and to all personal property of every kind and description, whether now existing or later acquired, which now is or which at any time hereafter may be attached to, erected upon, situated in or upon, forming a part of, appurtenant to, used or useful in the construction or operation of or in connection with, or arising from the use or enjoyment of all or any part of, or from any lease or AGREEMENT pertaining to, the real property or interests in it located in the County of Broward, State of Florida, as more particularly described above (the "Land"), including, without limitation:

(a) Any and all buildings, structures, improvements, alterations or appurtenances now or hereafter situated or to be situated on the Land (collectively, the "Improvements");

(b) All fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies, and other articles of personal property, of every kind and character, now owned or hereafter acquired by the Debtor, which are now or hereafter attached to or situated in, on or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing; and

4870-2495-6130 v.2

(c) All accounts of or arising from the properties, rights, titles and interests referred to above.

Any term used or defined in the Florida Uniform Commercial Code, as in effect from time to time, which is not defined herein has the meaning given to that term in the Florida Uniform Commercial Code, as in effect from time to time, when used herein. However, if a term is defined in Article 9 of the Florida Uniform Commercial Code differently than in another Article of the Florida Uniform Commercial Code, the term has the meaning specified in Article 9.

4870-2495-6130 v.2

## SCHEDULE A

**TRUSTEE'S PERMITS**

1.    None.

## <u>SCHEDULE B</u>

### SERVICE CONTRACTS

1.      None.

4870-2495-6130 v.2

## Exhibit "B"

This Instrument was Prepared By,
Record and Return To:

Lauren Deutch, Esquire
Nelson Mullins Riley & Scarborough LLP
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131

Folio Nos.: 4942 09 02 0010 and 4942 09 01 0470
Consideration: $_____

## SPECIAL WARRANTY DEED

**This Special Warranty Deed,** made this _____ day of _____, 202_ by Carol L. Fox, as Liquidating Trustee of The Ellwood Liquidating Trust, whose post office address is 500 T-Rex Avenue, Suite 300, Boca Raton, FL 33431 (**"Grantor"),** to _____, whose post office address is _____ (**"Grantee"**).

(Whenever used herein the terms Grantor and Grantee include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth,** that said Grantor, for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, to Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said Grantee and Grantee's heirs and assigns forever, the following described land, situate, lying and being in Gulf County, Florida, to-wit:

### SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

**SUBJECT TO taxes for the year 202_ and subsequent years; covenants, conditions, restrictions, easements, reservations and limitations of record, if any; and**

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold,** the same in fee simple forever.

**And** the Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land; that the Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under Grantor.

4870-2495-6130 v.2

**In Witness Whereof**, Grantor has hereunto set Grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

WITNESSES:

CAROL L. FOX IN HER CAPACITY AS LIQUIDATING TRUSTEE OF THE ELLWOOD LIQUIDATING TRUST

_____

Print Name:_____

By:_____

Address:_____

    Carol L. Fox, Liquidating Trustee

_____

_____

Print Name:_____

Address:_____

_____

STATE OF _____        )

COUNTY OF _____        )

    The foregoing instrument was acknowledged before me, by means of ☐ physical presence or ☐ online notarization, this ___ day of _____, 2024, by Carol L. Fox as Liquidating Trustee of The Ellwood Liquidating Trust, on behalf of the trust. She/He is ☐ personally known to me or ☐ has produced _____ as identification.

_____

(Signature of Notary Public)

My commission expires:

## EXHIBIT "A"

## Legal Description

Real Property

Lots 47 and 48, of FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 63, Page 8, of the Public Records of Broward County, Florida;

And

Lot 49, of RESUBDIVISION OF LOTS 49, 50 AND 51, FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 69, Page 18, of the Public Records of Broward County, Florida.

All Less the North 5.00 feet thereof.

4870-2495-6130 v.2

<u>**Exhibit C**</u>

<u>**Good Faith Deposit Escrow Agreement**</u>

# **Exhibit 2**

## PURCHASE AND SALE AGREEMENT (PSA)

THIS Purchase and Sale Agreement (PSA) (the "Agreement") is entered into as of the 11th day of September, 2024, between **CAROL L. FOX, IN HER CAPACITY AS THE LIQUIDATING TRUSTEE OF THE ELLWOOD LIQUIDATING TRUST**, (the "Trustee"), and **ACCESS RESTORATION SERVICES US, INC**., a Delaware corporation, authorized to do business in the State of Florida and/or its assigns (the "Purchaser").

     1.    Purchase and Sale. In consideration of their mutual covenants set forth in this Agreement, Trustee agrees to sell to Purchaser, and Purchaser agrees to purchase from Trustee, for the Purchase Price (as hereinafter defined) and on the terms and conditions set forth herein, that certain real property more particularly described on **Exhibit A**, hereto, and made a part hereof, and generally described as Lots 47, 48 and 49 of Fort Lauderdale Industrial Airpark - Section 2, located at 1200 NW 62nd Street, Fort Lauderdale, FL 33309 and 1400 NW 62nd Street, Fort Lauderdale, FL 33309, and Personal Property thereon (also known as the "Cypress Creek Property") together with all rights, privileges, easements and appurtenances pertaining thereto, any improvements located thereon, intangible property, rights and entitlements, including, without limitation, those "Trustee's Permits", and "Trustee's Contracts," as each is hereinafter defined, (collectively, the "Property"), such Property as further described in *Liquidating Trustee's Motion For Entry of an Order (A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof; (B) Scheduling an Auction and a Hearing on the Approval of the Sale of the Cypress Creek Property and [and other related relief]* (the "Bidding Procedures Motion") filed in the United States Bankruptcy Court, Eastern District of Kentucky, London Division, Case #19-61608-grs (the "Bankruptcy Court"), and pursuant to the auction and bidding procedures (the **"Bid Procedures"**) which were approved by the Bankruptcy Court for the Trustee's sale of the Property [Doc. No. 2499].

     The sale of the Property includes the sale and conveyance and/or transfer of all of Trustee's right, title and interest in all guarantees, certificates, if any, licenses, bonds, permits, authorizations, consents and approvals, which in any respect whatsoever relate to or arise out of the use, occupancy, possession, development, construction and operation of the Property, as identified on **Schedule A**, attached hereto and incorporated herein (hereinafter collectively called the "Trustee's Permits").

     To the extent any exist, all of Trustee's intangible personal property, including, without limitation, all water and sewer hook-ups, lines and agreements, accruing from the Property as of the Closing Date and thereafter, together with Trustee's right, title and interest under any service contracts with respect to the Property (to the extent assumed by Purchaser in accordance herewith) as identified on **Schedule B**, attached hereto and incorporated herein (hereinafter collectively called the "Trustee's Contracts"), all of which are intended to encompass all of Trustee's contractual rights or benefits relating to the Property, shall be assigned to Purchaser at the Closing via the execution of a mutually agreeable Assignment and Assumption of Assumed Contracts, and both copies of all such Trustee's Contracts, and an accompanying list thereof, shall all be provided to Purchaser within three (3) days of Escrow Agent's receipt of Purchaser's Good Faith Deposit (as defined in Section 4).

     2.    Effective Date. The "Effective Date" of this Agreement shall be the earlier of: (i)

the mutual execution of this Agreement or (ii) the date on which the Bankruptcy Court has entered the Approval Order (as defined in Section 25(a), herein) and such Approval Order has become final and non-appealable under the Federal Rules of Bankruptcy Procedure.

3.      Purchase Price; Good Faith Deposit.

(a)      Subject to the terms of this Agreement and the sale of the Property pursuant to the Bid Procedures (defined below), attached as Exhibit 1 to the Bankruptcy Court's order approving the Bidding Procedures Motion [Doc. No. 2499] (the "Bid Procedures Order"),  as may be modified from time to time by the Liquidating Trustee, the purchase price for the Property shall be Twenty Five Million One Hundred Thousand AND 00/100 DOLLARS ($25,100,000.00) (the "Purchase Price"). The Purchase Price shall be payable as follows:

(b)      Nine Hundred Twenty-Five Thousand AND 00/100 DOLLARS ($925,000.00), which Trustee acknowledges receipt thereof and which represents 5% of the initial bid by Purchaser (the "Good Faith Deposit"). The Good Faith Deposit is held in escrow by First American Title Insurance Company, as Trustee's designated escrow agent (the "Escrow Agent"), located at 2121 Ponce de Leon Boulevard, Suite 710, Coral Gables, Florida 33134, Attention: Yessie Gonzalez. The Good Faith Deposit shall immediately be non-refundable to Purchaser, except as otherwise expressly set forth in this Agreement, the Bid Procedures Order, or the Approval Order.

(c)      The Escrow Agent shall abide by and operate pursuant to the terms of this Agreement, and the terms and conditions of the Good Faith Deposit Escrow Agreement attached hereto as **Exhibit C** (the "Escrow Agreement"), subject only to mutually agreed upon modifications executed by the parties hereto in writing. The Good Faith Deposit shall be remitted to the Escrow Agent by wire transfer or check, subject to clearance, and shall be held in Escrow Agent's trust or escrow account pursuant to the Escrow Agreement executed by the Purchaser, Trustee and Escrow Agent.

(d)      The Good Faith Deposit shall be held in escrow by the Escrow Agent and disbursed as provided for in the Bid Procedures and the Approval Order, but subject to the terms and conditions of this Agreement, which shall control and take precedence over the Bid Procedures and the Approval Order.

(e)      Purchaser shall pay the Purchase Price, subject to a credit for the Good Faith Deposit, and subject to the prorations and credits described below, in cash by wire transfer of immediately available federal funds to Escrow Agent in accordance with the terms and conditions of this Agreement no later than 3:00 P.M. (Eastern Time) on the Closing Date (as hereinafter defined).

4.      <u>Closing</u>.

(a)      The consummation of the purchase and sale of the Property contemplated in this Agreement (the "<u>Closing</u>") shall occur by overnight courier service or "mail away" structure with Escrow Agent acting as the closing agent, on September 30, 20024, or such date that is set forth in the final non-appealable Approval Order (as defined in Section 24(a) below) authorizing the sale (the "<u>Closing Date</u>"), unless such date is extended by the Bankruptcy Court.

(b)      Purchaser shall pay the Purchase Price and Trustee shall deliver possession of the Property to Purchaser on the Closing Date.

(c)      At Closing, Trustee shall deliver the following documents:

(i)      A Deed in recordable form properly executed on behalf of Trustee in the form attached hereto and made a part hereof as **<u>Exhibit B</u>**, conveying to Purchaser the Property described on **<u>Exhibit A</u>** hereto, in fee simple, free and clear of liens and encumbrances except those Permitted Exceptions, as identified on a pro-forma title policy or a marked-up title commitment issued by Nelson Mullins in its capacity as title agent.

(ii)      A Bill of Sale conveying to Purchaser the personal property and equipment identified in Exhibit A, free and clear of all encumbrances and adverse claims.

(iii)      An Affidavit executed by Trustee attesting to the absence of any liens, parties in possession, or other claims as provided in the Approval Order and a FIRPTA certification.

(iv)      An Assignment and Assumption of Assumed Contracts (if any).

(v)      Evidence of Trustee's authority to sell and convey the Property.

(vi)      A certified copy of the Approval Order.

(vii)      A Closing Statement executed by Trustee.

(viii)      Such other reasonable and customary documents and instruments required by the First American Title Insurance Company (the "<u>Title Company</u>") to consummate the transactions contemplated by this Agreement.

(d)      At or before Closing if required pursuant to the Bid Procedures, Purchaser shall deliver the following documents:

(i)      Any and all of the documents required to demonstrate to the Court that it is a Qualified Bidder pursuant to the Bid Procedures, including but not limited to evidence of Purchaser's authority and financial ability to purchase the Property.

(ii)      A countersigned Assignment and Assumption of Contracts executed by

Purchaser.

(iii)    A Closing Statement executed by Purchaser.

(iv)    Such other reasonable and customary documents and instruments required by the Title Company to consummate the transactions contemplated by this Agreement.

5.    Evidence of Title and Survey. At least five (5) business days prior to the expiration of the Due Diligence Period, Nelson Mullins, as title agent, shall cause the Title Company to deliver to Purchaser a pro-forma title policy or a marked-up title commitment in the form to be issued by the Title Company (the "Title Evidence") at Closing insuring Purchaser's fee simple interest in and to the Property. Purchaser, at Purchaser's expense may obtain such lien letters, code violation searches, and other searches (collectively, the "Additional Searches") that it deems necessary. Purchaser shall provide copies of any Additional Searches to Trustee within three (3) days of Purchaser's receipt of the same. Trustee shall have no affirmative obligation hereunder to expend any funds or incur any liabilities in order to cause any title exceptions to be removed from any title commitment. The Approval Order must provide that all of the estate's rights, title, and interests in and to the Assets will be transferred free and clear of all liens, tenancies, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code. Notwithstanding anything to the contrary in this Agreement, the Approval Order shall provide that the Property shall be sold free and clear of any mortgages, deeds of trust, liens, code violations, tenancies, and encumbrances that can be satisfied or released by the payment of a liquidated amount.

6.    Representations and Warranties of Trustee.

(a)    As Is/Where Is. Purchaser shall acquire the Property on an "**AS IS**," "**WHERE IS**" basis, free and clear of all liens, claims, tenancies, and encumbrances in accordance with section 363(f) of the Bankruptcy Code and this Agreement. Except for the representations and warranties contained in this Agreement and as approved for sale, transfer, and assignment pursuant to the Approval Order, Trustee makes no express or implied representation or warranty with respect to Trustee, the Property or the transaction contemplated by this Agreement, and Trustee hereby disclaims all other representations or warranties, whether made by any Trustee or any of its representatives.

(b)    No Condemnation Pending or Threatened. Trustee has no actual knowledge of any pending or threatened condemnation or similar proceeding affecting the Property or any portion thereof, and to Trustee's actual knowledge no such action is contemplated or threatened.

(c)    Prior Application or Commitments. Trustee has no actual knowledge of any applications or commitments to any governmental or quasi-governmental agency or utility which would affect any portion of the Property, which has not been disclosed in writing to Purchaser.

(d)    FIRPTA. Trustee is not a "foreign person," as defined by Section 1445 of the Internal Revenue Code, and shall comply with all requirements imposed by the Internal Revenue Service, as more specifically described in Section 4(c)(iii) of this Agreement.

(e)    Trustee's Permits and Contracts. Trustee has no Permits, other than those disclosed

to Purchaser. All of Trustee's Service Contracts, if any, are terminable upon not greater than thirty (30) days written notice to the respective providers.

All representations and warranties by Trustee in this Agreement shall be true and correct as of the Effective Date hereof and as of the Closing Date.

7.    <u>Representations and Warranties of Purchaser</u>. Purchaser represents and warrants to Trustee that as of the date hereof and as of the Closing Date, Purchaser is a corporation, organized under the laws of Delaware, and qualified to do business in Florida. The execution, delivery, and performance of this Agreement by Purchaser have been duly authorized and no consent of any other person, court, or other entity to such execution, delivery, and performance is required to render this Agreement a valid and binding instrument enforceable against Purchaser in accordance with its terms, except for any consents which have been obtained by Purchaser prior to its execution hereof. Neither the execution of this Agreement or the consummation of the transactions contemplated hereby will result in a breach of, or cause a default or acceleration under, any agreement to which Purchaser is a party (unless such agreement is being terminated or satisfied at Closing) or by which Purchaser is bound. To induce Trustee to enter into this Agreement, and as material consideration therefor, Purchaser acknowledges and agrees that Trustee shall have no obligations or liability whatsoever regarding the title to, or encumbrances on, the Property and that, in the event of any claims, demands, damages or disputes with respect thereto following the Closing, Purchaser shall look solely to the Title Company pursuant to its title policy.

8.    <u>Trustee's Actions Prior to Closing</u>. Commencing as of the Effective Date and continuing for the entire period in which Trustee has any legal or equitable interest in the Property or any portion thereof:

(a)    <u>Access; Consents; and Approvals</u>. Trustee shall reasonably cooperate with Purchaser, including providing of access, during the Due Diligence Period, pertaining to Purchaser's investigation of the Property, and if the Bankruptcy Court enters an Approval Order determining Purchaser as the Successful Bidder for the Property, at all times prior to Closing for purposes of the obtaining necessary consents and approvals for the ownership of the Property;

(b)    <u>Physical Condition of the Property</u>. Trustee will not cause, permit or suffer any act to be performed or the absence of same which might cause damage, waste or destruction to the Property.

(c)    <u>Laws</u>. Trustee shall comply with all federal, state and municipal laws, statutes, ordinances, regulations and orders relating to the Property, including its use, leasing and operation.

(d)    <u>Trustee's Contracts and Trustee's Permits</u>. Purchaser shall be provided with documentation, as described in Section 6(e), as to each of Trustee's Permits and Trustee's Contracts, to the extent such exist.

9.    <u>Taxes; Assessments; Utilities</u>. Accrued general real estate taxes for the year of Closing not yet due and payable shall be prorated as of the Closing Date on the basis of the actual taxes for the year, if known, or if unknown, on the basis of the most recent ascertainable taxes. In

either case the taxes shall be prorated based on the maximum allowable discount for early payment. Purchaser shall pay all such taxes when they become due and payable. Special assessments which become a lien prior to Closing and pending assessments for work substantially completed as of Closing shall be credited to Purchaser at Closing. Purchaser shall receive no credit for other pending special assessments. All other assessments levied against the Property as of the Closing Date shall be shared by the party's pro rata on the Closing Date. If applicable, there shall be a proration of the charges for water, gas, electricity and any other utility service for the Property. Trustee shall pay all charges for water and electricity and any other utilities accrued through Closing. Purchaser shall, at Closing, replace any utility deposits now in Trustee's name, if applicable.

10.    Transfer Taxes; Title Charges; Miscellaneous Costs and Fees. Trustee and Purchaser agree to execute any real estate transfer declarations required by the state, county, or municipality in which the Property is located. Trustee shall pay the cost for any state or county deed or transfer tax, including documentary stamp tax and Broward surtax. Purchaser shall pay the cost of recording the instruments of conveyance, and all mortgage registration taxes, if any. Trustee shall pay the cost of the owner's title insurance policy, and any title search fees associated with the procurement of the Title Evidence. Purchaser shall pay any fees charged by Escrow Agent in its capacity as closing agent. Each party shall pay its own attorneys' fees except as otherwise provided in this Agreement.

11.    Condemnation. If between the Effective Date and the Closing Date, any condemnation or eminent domain proceedings are initiated which might result in the taking of a substantial portion of the Property which would materially adversely affect the development of the Property, Purchaser may: (a) terminate this Agreement by written notice to Trustee in which event the Good Faith Deposit shall be returned to Purchaser, or (b) proceed with the Closing with no reduction in the Purchase Price, in which event Trustee shall assign to Purchaser all of Trustee's right, title, and interest in and to any award made in connection with such condemnation or eminent domain proceedings. Trustee shall notify Purchaser in writing of the commencement or occurrence of any condemnation or eminent domain proceedings. If such proceedings would result in any such taking, Purchaser shall then notify Trustee, within ten (10) days of Purchaser's receipt of Trustee's notice, whether Purchaser elects to exercise its rights under subparagraph (a) or subparagraph (b) of this Section 11. Closing shall be delayed, if necessary, until Purchaser makes such election. If Purchaser fails to make an election within such ten (10) day period, Purchaser shall be deemed to have elected to exercise its rights under subparagraph (b) hereof and Closing shall be delayed, if necessary, until the later to occur of (i) the Closing Date or (ii) five (5) days after the expiration of the ten (10) day period.

12.    Failure to Consummate Transaction.

(a)    If the transaction contemplated herein is not consummated because of a default of Purchaser under the terms of this Agreement, Escrow Agent shall promptly pay the Good Faith Deposit to Trustee and Trustee shall be entitled to retain the Good Faith Deposit as liquidated damages and in full settlement of any claims or damages, whereupon this Agreement shall become null and void and of no further force or effect, except with respect to those indemnities and obligations of Purchaser set forth in this Agreement which survive termination. It is hereby agreed that Trustee's damages may be difficult to ascertain and that the Good Faith Deposit constitutes

reasonable liquidation thereof and is intended not as a penalty, but as liquidated damages. Trustee shall have no right to seek specific performance of this Agreement or to seek damages from Purchaser (other than the liquidated damages referred to above) as a result of any default by Purchaser under this Agreement.

(b)    If the transaction contemplated herein is not consummated because of a default of Trustee or because the Bankruptcy Court denies approval of the Approval Order, Purchaser, as Purchaser's sole and exclusive remedies, may terminate this Agreement by written notice to Trustee thereof, and then the Good Faith Deposit shall be refunded to Purchaser by Escrow Agent upon demand. If the Bankruptcy Court approves the sale of the Property to a different purchaser in accordance with the Bid Procedures and Purchaser has not elected nor been approved by the Bankruptcy Court as the Back-Up Bidder, it shall not constitute a default hereunder, but the Agreement shall be automatically terminated, and Purchaser's Good Faith Deposit shall be returned to Purchaser.

(c)    Notwithstanding anything to the contrary contained in this Agreement, neither party shall be deemed to be in default of this Agreement unless the defaulting party fails to cure the default within five (5) business days after written notice of such default from the non-defaulting party (except no notice and opportunity to cure is required for a party's failure to close on the Closing Date).

13.    <u>Notice</u>. All notices required or permitted hereunder shall be in writing and shall be served on the parties at the following address:

If to Trustee:                Carol L. Fox, as Trustee
                              5000 T-Rex Avenue, Suite 300
                              Boca Raton, FL 33431
                              cfox@brinleyfin.com

With a copy to:               Gary M. Freedman
                              Lauren Deutch
                              NELSON MULLINS RILEY & SCARBOROUGH LLP
                              2 South Biscayne Boulevard - 21st Floor
                              Miami, FL 33131
                              gary.Freedman@nelsonmullins.com
                              lauren.deutch@nelsonmullins.com

                              Frank P. Terzo
                              Nelson Mullins Riley & Scarborough LLP
                              100 S.E. 3rd Avenue, Suite 2700
                              Fort Lauderdale, FL 33394
                              frank.Terzo@nelsonmullins.com

                              Christopher Staller
                              Nelson Mullins Riley & Scarborough LLP
                              1905 NW Corporate Boulevard, Suite 310
                              Boca Raton, FL 33431

chris.staller@nelsonmullins.com

| | |
|---|---|
| If to Purchaser: | [_Robert J. Meek _____] <br> [_President _____] <br> [_ Access Restoration Services, US, Inc.] <br> [_27657 Commerce Oaks Drive] <br> [__Conroe, TX 77385 _____ ] |
| With a copy to: | [_Scott Jacobi _____ ] <br> [__ SEVP_CFO_____] <br> [_27657 Commerce Oaks Drive] <br> [_Conroe, TX 77385 _____ ] |
| If to Escrow Agent: | Yessie A. Gonzalez, CLA, FRP <br> First American Title Insurance Company <br> Commercial Escrow Manager <br> South Florida Agency Division <br> 2121 Ponce de Leon Boulevard, Suite 710 <br> Coral Gables, Florida 33134 <br> Email: yegonzalez@firstam.com |
| If to Broker: | John K. Crotty <br> Avison Young <br> 2020 Ponce De Leon Blvd., Suite 1200 <br> Miami, FL 33134 <br> Email: john.crotty@avisonyoung.com |

Any such notices shall be sent by U.S. certified mail, return receipt requested, or by nationally recognized overnight courier service, or by e-mail, and notices shall be deemed delivered upon actual receipt, provided, however, that if delivery is refused or a notice is unclaimed, notice shall be deemed received (i) if mailed, three (3) days after mailing, (ii) if overnight courier service, one (1) business day after deposit with the courier service, or (iii) if email, on the date the e-mail was sent. The above addresses may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice.

14.    Time of the Essence; Governing Law; Mandatory and Exclusive Venue. Time is of the essence of this Agreement. If any date on which either party's performance hereunder is to occur falls on a Saturday, Sunday, or national holiday, then the time for such performance shall be extended until the next following business day. The validity, meaning, and effect of this Agreement shall be determined in accordance with the laws of the State of Florida. Trustee and Purchaser irrevocably agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters, disputes, or controversies relating to this Agreement, and/or any other matter that in any way relates to the foregoing. Any and all such matters, disputes, or controversies must only be instituted in the Bankruptcy Court, which shall be the exclusive venue for any matter, dispute, or controversy relating to this Agreement. The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court in any such matters, disputes, and controversies and stipulate that the Bankruptcy Court may enter final orders and judgments relating thereto.

15.    Broker. Trustee and Purchaser hereby represent each to the other that, except as set forth below, they have not disclosed this Agreement, or the transactions contemplated hereby or the subject matter hereof, to any real estate broker, agent, or salesperson so as to create any legal right or claim in any such broker, agent, or salesperson for a real estate brokerage commission or compensation with respect to the negotiation or consummation of this Agreement. Purchaser hereby indemnifies Trustee against, and agrees to hold and save Trustee harmless from, any claims (or expenses related thereto, including, but not limited to, expenses for its reasonable attorneys' fees incurred in defending any such claims or enforcing this indemnity) for any real estate brokerage commissions or similar fees arising out of a breach of the foregoing representation and warranty. The parties recognize Avison Young – Florida, LLC (the "Trustee's Broker") (representing Trustee) and Enrique Ros (the "Purchaser's Broker") (representing Purchaser) as the sole brokers in this transaction. Trustee shall pay any commissions or co-broker commissions payable to Trustee's Broker and Purchaser's Broker pursuant to separate agreement. Purchaser shall be responsible for any additional commissions payable to Purchaser's Broker pursuant to separate agreement. This Section shall survive the Closing or any termination of this Agreement.

16.    Assignment. Purchaser may assign its rights under this Agreement to an entity affiliated with, or controlled by Purchaser, without Trustee's consent; provided, however, that (a) the original Purchaser shall remain liable for the performance of all Purchaser's obligations hereunder accruing through the Closing Date (whether Trustee seeks to enforce such obligations prior to Closing, or after Closing, as to obligations that survive Closing; (b)Trustee shall incur no additional expenses on account of such assignment; (c) Purchaser shall disclose the identity of such assignee to Trustee, and shall supply to Trustee all information regarding such assignee as may be reasonably requested by Trustee, and (d) the Approval Order approving the sale of the Property pursuant to this Agreement shall approve the sale to Purchaser's assignee. Any assignment to an entity not affiliated with or controlled by Purchaser shall be subject to Trustee's prior written consent, in Trustee's commercially reasonable discretion, and to Court approval as specified in clause (d) above.

17.    Survival. No representations, warranties, covenants, agreements, and other obligations, excepting those matters that expressly survive the Closing of this transaction, of Trustee in this Agreement shall survive the Closing of this transaction and no action based thereon shall be commenced after the Closing of this transaction. However, the obligations of Trustee and Purchaser in Sections 9 and 15 hereof, and any other indemnity provisions by Purchaser in this agreement shall survive the Closing of this transaction or the termination of this Agreement.

18.    Prevailing Party. In connection with any litigation arising out of this Agreement, the prevailing party shall be entitled to recover all costs incurred by such party, including, but not limited to, reasonable attorneys' fees and court costs, before, during, and after trial, and at appellate levels.

19.    No Third Party Rights. Nothing in this Agreement, express or implied, is intended to confer upon any person, other than the parties hereto and their respective successors and assigns, any rights or remedies under or by reason of this Agreement.

20.    OFAC Compliance. All funds to be used by Purchaser as payment of the Purchase Price at Closing are from sources operating under, and in compliance with, all federal, state and local statutes and regulations relating to the laundering of money and terrorism and are free of all liens and claims of lien. Neither Purchaser nor any of its affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents is, nor will they become prior to Closing, a person or entity with whom United States persons or entities are restricted from doing business under regulations of the OFAC of the Department of the Treasury (including those named on OFAC's Specially Designated and Blocked Persons List) or under any statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action, and is not and will not engage in any dealings or transactions or be otherwise associated with such persons or entities prior to Closing.

21.    Miscellaneous. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed by e-mail or other electronic means which shall, for all purposes, serve as an original executed counterpart of this Agreement upon delivery of an executed copy hereof by e-mail or other electronic means. The captions in this Agreement are inserted for convenience of reference and in no way define, describe, or limit the scope or intent of this Agreement or any of the provisions hereof. No waiver, modification, amendment, discharge, or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge, or change is sought. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, successors, and permitted assigns. This Agreement contains the entire agreement between the parties relating to the transactions contemplated hereby and all prior or contemporaneous agreements, understandings, representations, or statements, oral or written, are superseded hereby. Any provision of this Agreement which is unenforceable or invalid or the inclusion of which would adversely affect the validity, legality, or enforcement of this Agreement shall be of no effect, but all the remaining provisions of this Agreement shall remain in full force and effect. Each and every Exhibit referred to in this Agreement is attached to and made a part of this Agreement.

22.    Radon Notice. Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

23.    PROPERTY TAX DISCLOSURE. PURCHASER SHOULD NOT RELY ON THE TRUSTEE'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE PURCHASER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

24.    <u>Bankruptcy Court Approval.</u>

(a)    <u>Approval</u>. Purchaser and Trustee understand, acknowledge and agree that this Agreement and the sale of the Property are subject to approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens and encumbrances at a special set hearing on September 16, 2024, which is presiding over the Case rendering the following order: Order Granting Liquidating Trustee's Motion for Entry of: (I) An Order: (A) Authorizing and Approving the Liquidating Trustee's Entry into an Asset Purchase Agreement for the Sale of the Cypress Creek Property; (B) Approving, at a Subsequent Hearing, the Sale of the Cypress Creek Property Free and Clear of All Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(f); (C) Approving the Assumption and Assignment of the Assumed Contracts; and (D) Granting Related Relief (collectively, the "<u>Approval Order</u>").

(b)    <u>Bid Procedures</u>. Purchaser and Trustee also understand, acknowledge and agree that the sale of the Property is subject to higher and better offers in accordance with the Bankruptcy Court-approved Bid Procedures [Doc. No. __], as may be revised by the Trustee as necessary, which Bid Procedures are explicitly incorporated by reference into this Agreement.

(c)    <u>Bidding Matter</u>. Purchaser and Trustee understand, acknowledge and agree that Trustee may seek or entertain one or more bids for the purchase of the Property in accordance with the Bid Procedures and that the Bankruptcy Court shall have exclusive authority to approve the sale of the Property to the highest and best offer submitted to the Trustee and that the Trustee has complete discretion to recommend to the Bankruptcy Court that Bidder that in her opinion provides the highest and best recovery for the Liquidating Trust, even to reject this Agreement as neither the highest and best or suitable as a back-up bid. However, nothing contained in this Agreement shall prohibit Purchaser from participating in the Auction as a bidder if an auction is held.

25.    <u>WAIVER OF JURY TRIAL</u>. NO PARTY SHALL HAVE THE RIGHT TO SEEK A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND EACH WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE TERMS OF THIS AGREEMENT OR ANY CLOSING DOCUMENT, THE TRANSACTIONS CONTEMPLATED HEREBY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. ANY PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY EACH PARTY HERETO. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR ANY TERMINATION OF THIS AGREEMENT.

*[Signatures on Following Page]*

THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT AS OF THE DAY AND YEAR FIRST ABOVE WRITTEN.

TRUSTEE:

**CAROL L. FOX IN HER CAPACITY AS LIQUIDATING TRUSTEE OF THE ELLWOOD LIQUIDATING TRUST**

_____
Carol L. Fox
Liquidating Trustee of the Ellwood
Liquidating Trust

Date: _____ , 2024

PURCHASER:

**Access Restoration Services US, Inc.**
a Delaware corporation

By: _____

Name: Robert J. Meek
_____

Title: _President_ _____

Date: _September 11_____, 2024

## EXHIBIT A

## LEGAL DESCRIPTION OF PROPERTY

Real Property

Lots 47 and 48, of FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 63, Page 8, of the Public Records of Broward County, Florida;

And

Lot 49, of RESUBDIVISION OF LOTS 49, 50 AND 51, FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 69, Page 18, of the Public Records of Broward County, Florida.

All Less the North 5.00 feet thereof.

Street Addresses: 1200 NW 62nd Street, Fort Lauderdale, FL 33309
1400 NW 62nd Street, Fort Lauderdale, FL 33309

Parcel ID #: 4942 09 02  0010
            4942 09 01  0470

Personal Property

All of the right, title and interest of Cypress Creek Florida, LLC (the "Debtor") in and to all personal property of every kind and description, whether now existing or later acquired, which now is or which at any time hereafter may be attached to, erected upon, situated in or upon, forming a part of, appurtenant to, used or useful in the construction or operation of or in connection with, or arising from the use or enjoyment of all or any part of, or from any lease or AGREEMENT pertaining to, the real property or interests in it located in the County of Broward, State of Florida, as more particularly described above (the "Land"), including, without limitation:

(a) Any and all buildings, structures, improvements, alterations or appurtenances now or hereafter situated or to be situated on the Land (collectively, the "Improvements");

(b) All fixtures, equipment, systems, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies, and other articles of personal property, of every kind and character, now owned or hereafter acquired by the Debtor, which are now or hereafter attached to or situated in, on or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing; and

4889-6790-1667 v.2

(c) All accounts of or arising from the properties, rights, titles and interests referred to above.

Any term used or defined in the Florida Uniform Commercial Code, as in effect from time to time, which is not defined herein has the meaning given to that term in the Florida Uniform Commercial Code, as in effect from time to time, when used herein. However, if a term is defined in Article 9 of the Florida Uniform Commercial Code differently than in another Article of the Florida Uniform Commercial Code, the term has the meaning specified in Article 9.

## **SCHEDULE A**

### **TRUSTEE'S PERMITS**

1.      None.

# **SCHEDULE B**

## **SERVICE CONTRACTS**

1.      None.

**<u>Exhibit "B"</u>**

This Instrument was Prepared By,
Record and Return To:

Lauren Deutch, Esquire
Nelson Mullins Riley & Scarborough LLP
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131

Folio Nos.: 4942 09 02 0010 and 4942 09 01 0470
Consideration: $

## SPECIAL WARRANTY DEED

**This Special Warranty Deed,** made this _____ day of _____, 202_ by Carol L. Fox, as Liquidating Trustee of The Ellwood Liquidating Trust, whose post office address is 500 T-Rex Avenue, Suite 300, Boca Raton, FL 33431 (**"Grantor"),** to                                        , whose post office address is                            (**"Grantee"**).

(Whenever used herein the terms Grantor and Grantee include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth,** that said Grantor, for and in consideration of the sum of Ten and 00/100 Dollars ($10.00) and other good and valuable consideration, to Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said Grantee and Grantee's heirs and assigns forever, the following described land, situate, lying and being in Gulf County, Florida, to-wit:

## SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

**SUBJECT TO taxes for the year 202_ and subsequent years; covenants, conditions, restrictions, easements, reservations and limitations of record, if any; and**

**Together** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**To Have and to Hold**, the same in fee simple forever.

**And** the Grantor hereby covenants with said Grantee that the Grantor is lawfully seized of said land in fee simple; that the Grantor has good right and lawful authority to sell and convey said land; that the Grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under Grantor.

4889-6790-1667 v.2

**In Witness Whereof**, Grantor has hereunto set Grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

WITNESSES:

CAROL L. FOX IN HER CAPACITY AS LIQUIDATING TRUSTEE OF THE ELLWOOD LIQUIDATING TRUST

_____

Print Name: _____

Address: _____    By:

_____    Carol L. Fox, Liquidating Trustee

_____

Print Name: _____

Address:_____

_____

STATE OF _____ )

COUNTY OF _____ )

The foregoing instrument was acknowledged before me, by means of ☐ physical presence or ☐ online notarization, this ____ day of_____ , 2024, by Carol L. Fox as Liquidating Trustee of The Ellwood Liquidating Trust, on behalf of the trust. She/He is ☐ personally known to me or ☐ has produced _____ as identification.

_____

(Signature of Notary Public)

My commission expires:

4889-6790-1667 v.2

**EXHIBIT "A"**

**Legal Description**

<u>Real Property</u>

Lots 47 and 48, of FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 63, Page 8, of the Public Records of Broward County, Florida;

And

Lot 49, of RESUBDIVISION OF LOTS 49, 50 AND 51, FORT LAUDERDALE INDUSTRIAL AIRPARK - SECTION 2, according to the Plat thereof, as recorded in Plat Book 69, Page 18, of the Public Records of Broward County, Florida.

All Less the North 5.00 feet thereof.

4889-6790-1667 v.2

## Exhibit C

## Good Faith
## Deposit Escrow
## Agreement